UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FERNANDO HERNANDEZ, KENNETH CHOW,
BRYANT WHITE, DAVID WILLIAMS,
MARQUIS ACKLIN, CECILIA JACKSON,
TERESA JACKSON, MICHAEL LATTIMORE,
and JUANY GUZMAN, each individually, and on
behalf of all other persons similarly situated,

                                                  Case No. 12-CV-4339 (ALC)

                  Plaintiffs,

      -against-

THE FRESH DIET, INC., SYED HUSSAIN,
Individually, JUDAH SCHLOSS, Individually, and
ZALMI DUCHMAN, Individually,

                  Defendants.
------------------------------------------------------------X

## AFFIDAVIT OF SYED HUSSAIN IN OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF

STATE OF NEW YORK      }
                                } S.S.
COUNTY OF KINGS       }

Syed Hussain, being duly sworn, does hereby depose and say:

1.     I am the Delivery Manager for Late Night Express, Inc. ("Late Night Express"). Late Night Express is responsible for the delivery of all meals produced by The Fresh Diet, Inc. ("The Fresh Diet"), a named Defendant in the instant action. I submit this affidavit in opposition to Plaintiffs' motion for injunctive relief.

2.     Established in November of 2005, The Fresh Diet offers clients fresh daily-prepared meals that are never frozen, freeze-dried or vacuum packed. Instead, The Fresh Diet, via Late Night Express, delivers three (3) freshly prepared meals and two (2) snacks directly to its clients on a daily basis.

3. I have been advised that Plaintiffs Juany Guzman ("Guzman") and Fernando Hernandez ("Hernandez") are alleging that they have been retaliated against by The Fresh Diet and me individually due to their participation in the above captioned lawsuit. I unequivocally deny any and all allegations of that kind.

4. At no point before or after the filing of the instant lawsuit have I retaliated against or otherwise made statements to Hernandez, Guzman or any other employee regarding their involvement in this action.

**My Duties with Late Night Express**

5. I have been employed by Late Night Express since 2007.

6. In that capacity, my duties include overseeing deliveries in the Tri-State area, hiring drivers, creating routes, and assigning drivers to routes and new clients.

7. I have worked with Guzman since his hire on or about February 1, 2012. Similarly, I have known Hernandez since his hire in or about April 2010.

**Juany Guzman**

8. Contrary to the allegations in Guzman's affidavit, I never once interrogated him or otherwise questioned him about any potential lawsuit against The Fresh Diet. Such accusations are patently false.

9. Until I was informed that the company had been served with a copy of a complaint, I had no idea whatsoever that a few employees were considering such an action.

10. Even after we were informed of the lawsuit, I would not even consider discussing the litigation with the employees. That is not my place. Such allegations are without merit.

11. Guzman's own statements in his affidavit bely the claims set forth in the instant motion. While Guzman claims I spoke with him in late May 2012 regarding the lawsuit, service of the complaint was not effectuated until June 5, 2012. As such, I had no knowledge of the instant lawsuit, nor did any named Defendant, until days or weeks after Guzman alleges.

12. Moreover, Guzman's insinuations that he was the sole driver for "Route P" is inaccurate. Guzman was never assigned any specific route, rather his job was to cover any and all available routes. This is Late Night Express' standard practice.

13. While Guzman did handle "Route P", so did other drivers. He also covered other routes in the New York tri-state area that he had previously driven during the five (5) months since he began his employment. *Samples of work schedules for the Tri-State drivers, from both before and after the complaint was filed, are annexed hereto as Exhibit "A."*

14. Any time Guzman was assigned a longer route, he was compensated for the additional time and travel.

15. Guzman's assignments were similar to those that co-Plaintiff Hernandez attests to in his Affidavit (i.e., "each day when I reported to work, [the company] would tell me which delivery routes I would be responsible for that day").

16. Contrary to Guzman's baseless assertions, Diana Salazar had also been assigned "Route P" throughout the month of May, well before the instant lawsuit was filed. See Ex. "A."

17. With regard to Guzman's specific allegation that "Route P" was taken away from him immediately after the company was served with the complaint, such a statement is entirely erroneous. _See_ Ex. *"A."*

18. While Guzman claims that his earnings have dropped in the month of June, it is likely due him calling out of work on June 8, 10, 22, and 23, 2012. Similarly, due to Guzman reporting late to work on June 14, 15, 24 and 26, 2012, the route(s) which he would have otherwise been assigned were given to other drivers who were available and ready to work.

19. These events had nothing to do with Guzman joining the lawsuit, they were simply a result of Guzman not being reliable and/or failing to report to work on time, if at all. Indeed, Guzman also told me that he was not interested in other routes and that it was not a problem when "Route P" was assigned to others.

20. Further evidencing the lack of merit to Guzman's claims is the baseless allegation that he has not been given any work since June 26, 2012.

21. Quite to the contrary, Guzman worked on June 27 and June 28, 2012. *Copies of text messages with Guzman indicating that he was being assigned work throughout the month of June 2012, including after June 26, 2012, are annexed hereto as Exhibit "B."*

22. Thereafter, Guzman called out of work on June 29 and June 30, 2012. Since then, Guzman has been a "no call no show" – in other words, he has simply failed to report to work.

23. Since June 30, 2012, when Guzman informed me that he was not coming into work that day, I have had no communications with him whatsoever. I have not received any text messages, nor have I sent him any text messages as alleged.

24. At no point did Late Night Express seek to limit and/or reduce Guzman's work schedule in retaliation for him joining the instant lawsuit. Rather, while Late Night Express always had consistent work available for Guzman, he chose not to accept same. He either called out of work or simply failed to report to work without any notice to the company. In fact, after this lawsuit was filed, Late Night Express offered Guzman routes that paid more, but he simply chose not to show up to work.

25. As set forth herein, since the lawsuit was filed, it was Guzman that became entirely unreliable, not Late Night Express' assignment of work to him.

**Fernando Hernandez**

26. As set forth above, I had no knowledge of any lawsuit to which Hernandez or Guzman was a party until approximately June 5, 2012 when the company was served.

27. Since May 21, 2012, Hernandez has worked a full day on twenty-one (21) occasions, called out on seven (7) days and otherwise reported to work late or failed to notify the company that he was not coming into work on seven (7) other occasions, which necessitated the company staffing another driver to the routes which Hernandez was assigned. *Copies of text messages with Hernandez evidencing that he was assigned work in June 2012 and not*

*appearing for work or rejecting routes provided to him are annexed hereto as Exhibit "C."*

28. These facts squarely contradict Hernandez's claims that he is only being offered sporadic work assignments. As set forth above, Hernandez has worked a full complement of shifts on days when he has made himself available to work. Simply stated, Hernandez cannot be assigned work on days when he calls out or fails to show up for work.

29. At no point did Late Night Express seek to limit and/or reduce Hernandez's work schedule in retaliation for him joining the instant lawsuit. Rather, while Late Night Express always had consistent work available for Hernandez, he chose not to accept same. He either called out of work or simply failed to report to work without any notice to the company.

**Conclusion**

30. The Fresh Diet and Late Night Express have taken no action whatsoever against Hernandez or Guzman that is retaliatory. Both Plaintiffs simply have failed to report to work and/or make themselves available for routes which they have been assigned.

31. Based on the foregoing, Plaintiffs' motion for injunctive relief should not be granted.

Wherefore, it is respectfully submitted that Plaintiffs' motion for injunctive relief be denied in its entirety and that Defendants be awarded such other relief as this Court deems just and proper.

_____
Syed Hussain

Sworn to before me this
30 day of July, 2012

_____
Notary Public

ND: 4830-2512-6160, v. 1

PETER K. JACOB
NOTARY PUBLIC, STATE OF NY
NO. 01JA6053666
QUALIFIED IN KINGS COUNTY
COMMISSION EXP: DEC. 26, 20 13