**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------------X
FERNANDO HERNANDEZ, KENNETH CHOW,                           **12 CV 4339 (ALC)(JLC)**
BRYANT WHITE, DAVID WILLIAMS,
MARQUIS ACKLIN, CECILIA JACKSON,
TERESA JACKSON, MICHAEL LATTIMORE
and JUANY GUZMAN, Each Individually, And On Behalf Of
All Other Persons Similarly Situated,

        *Plaintiffs*,

      -against-

THE FRESH DIET INC.,
LATE NIGHT EXPRESS COURIER SERVICES, INC. (FL),
FRESH DIET EXPRESS CORP. (NY),
THE FRESH DIET - NY INC. (NY),
FRESH DIET GRAB & GO, INC. (FL) a/k/a
YS CATERING HOLDINGS, INC. (FL) d/b/a
YS CATERING, INC. (FL),
FRESH DIET EXPRESS CORP. (FL),
SYED HUSSAIN, Individually,
JUDAH SCHLOSS, Individually,
and ZAIMI DUCHMAN, Individually

        *Defendants*.

----------------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR**
**PRELIMINARY CLASS ACTION CERTIFICATION PURSUANT TO**
**FED. R. CIV. P. 23 REGARDING FAIR LABOR STANDARDS ACT AND NEW YORK**
**LABOR LAW CLAIMS**

**THE HARMAN FIRM, PC**
Walker G. Harman, Jr. [WH-8044]
Peter J. Andrews [PA-3295]
*Attorneys for Plaintiffs*
200 West 57th Street, Suite 900
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com
pandrews@theharmanfirm.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

PRELIMINARY STATEMENT .....................................................................................1

STATEMENT OF FACTS ..............................................................................................2

PROCEDURAL HISTORY..............................................................................................6

SUMMARY OF ARGUMENT.......................................................................................12

ARGUMENT ..................................................................................................................14

I.    A MOTION FOR PRELIMINARY CLASS ACTION CERTIFICATION IS NOT "PREMATURE" OR
      IMPROPER SIMPLY BECAUSE THERE IS ALSO AN ONGOING COLLECTIVE ACTION UNDER THE
      FLSA ......................................................................................................................14

II.   LEGAL STANDARDS FOR CLASS ACTION CERTIFICATION. ....................................16

III.  THE PROPOSED CLASS MEETS ALL FED. R. CIV. P. 23(c) REQUIREMENTS....................17

      A.   There Is Numerosity Under Rule 23(a)(1). ........................................................17
      B.   There Are Common Questions of Law or Fact, As Required By Fed. R. Civ. P. 23(a)(2). .......18
      C.   The Typicality Requirement of Fed. R. Civ. P. 23(a)(3) Is Met. ............................19
      D.   The Plaintiffs Are Adequate Class Representatives, As Required By
           Fed. R. Civ. P. 23(a)(4). ..................................................................................21

IV.   THE PROPOSED CLASS SATISFIES FED. R. CIV. P. 23(b)(3). ..........................................21

      A.   Common Legal Or Factual Issues Predominate. ..................................................21
      B.   A Class Action Is Superior To Other Methods Of Adjudication.............................24

V.    THIS MATTER SHOULD BE CERTIFIED AS A CLASS ACTION BECAUSE AN "OPT-IN"
      COLLECTIVE ACTION IS INADEQUATE GIVEN THE FEAR OF RETALIATION THAT EXISTS
      AMONG CURRENT EMPLOYEES. ................................................................................25

VI.   THE HARMAN FIRM SHOULD BE DESIGNATED AS CLASS COUNSEL PURSUANT TO
      FED. R. CIV. P. 23(g). ..............................................................................................26

CONCLUSION ..............................................................................................................27

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods, Inc. v. Windsor*,
521 U.S. 591 (1997) ...............................................................20

*Ansoumana v. Gristede's Operating Corp.*,
201 F.R.D. 81 (S.D.N.Y. 2001)...............................................22

*Belbis v. County of Cook*,
01-cv-6119, 2002 WL 31600048 (N.D. Ill. Nov. 18, 2002)....................22

*Berwecky v. Bear, Sterns & Co., Inc.*,
197 F.R.D. 65 (S.D.N.Y.2000)................................................19

*Briceno v. USI Services Group, Inc.*,
2012 U.S. Dist. LEXIS 144866 (E.D.N.Y., Sept. 28, 2012) ....................15

*Brickey v. Dolencorp*,
244 F.R.D. 176 (W.D.N.Y. 2007) ...........................................19

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010) .................................................22

*Caridad v. Metro-North Commuter R.R.*,
191 F.3d 283 (2d Cir. 1999) .................................................16

*Consol. Rail Corp. v. Town of Hyde Park*,
41 F.3d 473 (2d Cir. 1995) .................................................17

*Cromer Finance Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001).............................................20

*Cutler v. Perales*,
128 F.R.D. 39 (S.D.N.Y. 1989)..............................................20

*Damassia v. Duane Reade, Inc.*
250 F.R.D. 152 (S.D.N.Y. 2008).............................................23

*Daniels v. City of New York*,
198 F.R.D. 409 (2001).......................................................18

*Donovan v. Burger King Corp.*,
675 F.2d 516 (2d Cir. 1982) .................................................22

*Ervin v. Os Restaurant Services, Inc.*,
632 F.3d 971 (7th Cir. 2011) ..........................................................................14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .........................................................................19

*Hirschfeld v. Stone*,
193 F.R.D. 175 ................................................................................................21

*In Re Agent Orange Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987) ............................................................................18

*In re FEDEX Ground Package System, Inc. Employment Practices Litigation*,
273 F.R.D. 424 (N.D. Ind., 2008).............................................................25, 26

*In re Initial Pub. Offering Sec. Litig. ("IPO")*,
471 F.3d 24 (2d Cir. 2006) ..............................................................................16

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
241 F.R.D. 435 (S.D.N.Y. 2007) .....................................................................16

*In re Nasdaq Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) .....................................................................22

*In re NTL, Inc. Sec. Litig.*,
02-cv-3013, 2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) ...............................18

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) ............................................................................21

*Jankowski v. Castaldi*,
01-cv-0164, 2006 WL 118973 (E.D.N.Y. Jan. 13, 2006) ...............................22

*Lee v. ABC Carpet & Home*,
236 F.R.D. 193 (S.D.N.Y. 2006)......................................................................22

*Mack v. General Elec. Co.*,
329 F. Supp. 72 (E.D. Pa. 1971).......................................................................25

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997). ...........................................................................16

*Noble v. 93 Univ. Place Corp.*,
224 F.R.D. 330 (S.D.N.Y. 2004).......................................................................23

*O'Brien v. Encotech Constr. Servs.*,
203 F.R.D. 346 (N.D. Ill. 2001).......................................................................22

*Robinson v. Metro-North Commuter R.R.*, 267
    F.3d 147 (2d Cir. 2001) ......................................................................................20

*Romero v. Producing Dairy Foods,*
    235 F.R.D. 474 (E.D. Ca. 2006). ........................................................................23

*Shahriar v. Smith & Wollensky Restaurant Group*,
    659 F.3d 234 (2d Cir. 2011) ................................................................................15

*Sharif v. N.Y. State Educ. Dept.*,
    127 F.R.D. 84, 87 (S.D.N.Y. 1989) ....................................................................17

*Smellie v. Mount Sinai Hosp.*,
    03-cv-0805, 2004 WL 2725124 (Nov. 29, 2004) ...............................................22

*Tierno v. Rite Aid Corp.*,
    05-cv-02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006)..............................22

*Velez v. Majik Cleaning Serv., Inc.*,
    03-cv-8698, 2005 WL 106895 (S.D.N.Y. Jan. 19, 2005).....................................22

*Westerfield v. Wash. Mut. Bank*,
    06-cv-2817, 2007 WL 2162989 (E.D.N.Y. July 26, 2007) ....................................19

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239 (3d Cir. 1975) ................................................................................25

*Wilder v. Bernstein*,
    499 F. Supp. 980 (S.D.N.Y. 1980) ......................................................................19

*Yon v. Positive Connections, Inc.*,
    04- cv-2680, 2005 WL 628016 (N.D.Ill. Feb. 2, 2005) ......................................22

**Statutes**

28 U.S.C. § 1367 ...............................................................................................7

29 U.S.C. § 216 (b) ...........................................................................................9

Fair Labor Standards Act...............................................................1, 12, 19, 24, 27

Fed. R. Civ. P., 23 .....................................1, 6, 8, 10, 11, 12, 13, 14, 16, 17, 19, 20, 21, 24, 26, 27

New York Labor Law..................................................................1, 6, 7, 8, 12, 19, 27

<u>PRELIMINARY STATEMENT</u>

Plaintiffs Fernando Hernandez, Kenneth Chow, Bryant White, David Williams, Marquis Acklin, Cecilia Jackson, Theresa Jackson, Michael Lattimore and Juany Guzman (collectively "Plaintiffs") submit this Memorandum of Law in Support of their Motion for Preliminary Class Action Certification pursuant to Fed. R. Civ. P. 23.  The Plaintiffs' Motion also is supported by the Declaration of Walker G. Harman, Jr., sworn to on February 7, 2013 ("Harman Dec.").[1]

The class action claims of Plaintiffs, who are former drivers and food delivery employees of Defendants are based on the Fair Labor Standards Act ("FLSA") as well as on the laws of the State of New York, including the New York Labor Law ("NYLL").  The Plaintiffs seek to serve as Class Representatives and also seek to have their counsel, The Harman Firm, P.C. ("The Harman Firm"), designated as Class Counsel.  Harman Dec., ¶¶ 18-31.

---

[1]  For ease of reference, various affidavits of individual Plaintiffs have been attached as exhibits to the Harman Dec. The Affidavit of Kenneth Chow In Support of Plaintiffs' Motion for Preliminary Class Action Certification ("Chow Aff."), sworn to on February 1, 2013 is attached as Ex. A; the Affidavit of Fernando Hernandez In Support of Plaintiffs' Motion for Preliminary Class Action Certification ("Hernandez Aff."), sworn to on February 1, 2013, is attached as Ex. B; the Affidavit of Juany Guzman In Support of Plaintiffs' Motion for Preliminary Class Action Certification ("Guzman Aff."), sworn to on February 1, 2013, is attached as Ex. C; the Affidavit of Theresa Jackson In Support of Plaintiffs' Motion for Preliminary Class Action Certification ("Jackson Aff."), sworn to on January 25, 2013, is attached as Ex. D; the Affidavit of Marquis Acklin In Support of Plaintiffs' Motion for Preliminary Class Action Certification ("Acklin Aff."), sworn to on January 25, 2013, is attached as Ex. E; the Affidavit of Fernando Hernandez In Support of Motion for Injunctive Relief Re: Retaliation ("Hernandez Retaliation Aff."), sworn to on July 9, 2012, is attached as Ex. F; the Affidavit of Juany Guzman In Support of Motion for Injunctive Relief Re: Retaliation ("Guzman Retaliation Aff."), sworn to on July 9, 2012, is attached as Ex. G; the Affidavit of Fernando Hernandez In Support of Preliminary or Conditional Collective Action Certification ("Hernandez Collective Action Aff."), sworn to on September 24, 2012, is attached as Ex. H; and the Affidavit of Juany Guzman In Support of Preliminary or Conditional Collective Action Certification (Notice) ("Guzman Collective Action. Aff."), sworn to on September 24, 2012, is attached as Ex. I.

## STATEMENT OF FACTS

The Defendants are various closely related companies and individuals.  The standardized business operations of the Defendants are described on Defendant the Fresh Diet, Inc.'s (the "Fresh Diet's") website as follows:

### HOW IT WORKS

\*     \*     \*

### DAILY DELIVERY

It's simple to start losing weight now.  Just select your plan and then your meals are cooked fresh daily using garden fresh premium ingredients.  ***Our meals will arrive in our temperature controlled thermally insulated refrigerated bags*** so your food is guaranteed fresh and cold when you receive it.  ***Every day our little green bag will be waiting for you at your doorstep.***

\* \* \*

**SERVICE AREAS** – The Fresh Diet has state of the art kitchens in N.Y. . . ***Our daily delivery service*** is currently available in the NY Tri-State area . . .

Harman Dec., Ex. P (http://www.thefreshdiet.com; accessed on February 7, 2013).

Under the "Daily FAQ [Frequently Asked Questions]" section of the Fresh Diet's website, the company states, *inter alia*:

**When will I receive food?**
We deliver anywhere from 7pm to 5am. Your food will be packed in an insulated cooler with ice packs and placed by your front door unless instructed otherwise.

\*   \*   \*

**What do I do with my empty bag?**
Leave it outside your door and your driver will pick it up when he drops off your new one.

\*   \*   \*

**Are there ever times that The Fresh Diet might not be able to deliver my meals?**

2

> The Fresh Diet's goal is to deliver the freshest prepared gourmet meals daily to your home. To accomplish this we have developed a meal preparation and driver delivery service that is highly sophisticated. We have a very strong, dedicated management team and drivers who are extremely committed to your health and well-being.

Harman Dec., Ex. P.

The Plaintiffs were employed as drivers and/or food delivery employees for the Defendants and will hereafter be referred to as drivers. Harman Dec., Ex. A, ¶¶ 1, 5 and 10 (Chow Aff.); Harman Dec., Ex. B, ¶ 1, 6 and 10 (Hernandez Aff.); Harman Dec., Ex. C, ¶¶ 1, 5 and 10 (Guzman Aff.);  Harman Dec., Ex. D, ¶¶ 1, 3 and 10 (Jackson Aff.);  Harman Dec., Ex. E, ¶ 1, 3 and 10 (Acklin Aff.).  As the Fresh Diet's website reveals, the drivers' routine was (and remains) standardized.   In a nutshell, in the afternoon, drivers arrived at the Defendants' Brooklyn facility ("the Brooklyn kitchen") where meals had been prepared by the kitchen staff for delivery to customers located throughout the tri-state New York City metropolitan area.  The Plaintiffs had fixed schedules, which were set by the Defendants, and specifically New York Regional Delivery manager, and individual Defendant, Syed Hussain.  Harman Dec., Ex. A, ¶ 10(d) (Chow Aff.); Harman Dec., Ex. B, ¶ 10(d) (Hernandez Aff.); Harman Dec. Ex. C, ¶ 10(d) (Guzman Aff.).  The Plaintiffs never considered themselves to be managers or supervisors and never possessed managerial authority.   Harman Dec., Ex. H, ¶¶ 9-10 (Hernandez Collective Action Aff.); Harman Dec., Ex. I, ¶¶ 9-10 (Guzman Collective Action Aff.).  The Plaintiffs did not have the authority to hire, fire or discipline other employees, and were not responsible for making hiring and firing recommendations.  Harman Dec., Ex. H, ¶ 8 (Hernandez Collective Action Aff.); Harman Dec., Ex. I., ¶ 8 (Guzman Collective Action Aff.)

The core job responsibilities of the drivers consisted of reporting to the Brooklyn kitchen at fixed times, waiting for the meals to come out of the cooking and preparation area, obtaining

their delivery routes or assignments, placing or loading the meals into their vehicles, and delivering them to the customers.  Harman Dec., Ex. A, ¶ 5 (Chow Aff.); Harman Dec., Ex. B, ¶ 6 (Hernandez Aff.); Harman Dec., Ex. C, ¶ 5 (Guzman Aff.); Harman Dec., Ex. D, ¶ 3 (Jackson Aff.); Harman Dec., Ex. E, ¶ 3 (Acklin Aff.).  After completing their delivery routes, the drivers would return to the Brooklyn facility to check back in, complete required paperwork, and return empty Fresh Diet meal delivery bags.

Three (3) of the named Plaintiffs, Plaintiffs Chow, Hernandez and Guzman, have submitted affidavits describing the nature of the drivers' work in great detail.  These affidavits specifically state:

> (a)     All drivers who worked for Defendants in the New York City area were under the supervision, direction and control of Defendant Hussain;
>
> (b)     All delivery assignments were received from Defendant Hussain, and the drivers had to do the work they had been assigned;
>
> (c)     All drivers had to report to Defendant Hussain at the beginning and end of each shift that they worked.  At the end of their shifts, all drivers had to report how many meals they had delivered, how many miles they had driven, and how many stops they had made.  They also had to return empty bags.  Drivers who did not comply with these requirements were subject to discipline, such as reductions in wages often characterized as "fines" and "penalties", up to and including termination.
>
> (d)     All drivers were expected to report to work at specific times.  The schedules were created by Defendant Hussain.  Drivers could not decide when to show up for work.  If they did not arrive to work at the assigned times they were subject to discipline, up to and including termination;
>
> (e)     The drivers were not at liberty to choose their assignments.  They could not refuse to do the work that they had been assigned;
>
> (f)     All drivers had to complete the routes they had been assigned and then report back to Defendant Hussain.  If they failed to complete their assigned routes or if they missed an assigned stop, they were subject to discipline, up to and including termination;

(g)    Defendant Hussain could change driver schedules and reduce or increase assignments at his complete discretion, without advance notice to the drivers;

(h)    All drivers performed the same type of work.  That is, each one showed up to The Fresh Diet, Inc.'s Brooklyn facility at his assigned time, each would receive his route assignment for his shift, each one would take the meals that had been prepared in the kitchen by the kitchen staff, and then deliver the meals to customers.  There were no meaningful differences in the duties, tasks and responsibilities of the different drivers;

(i)    The delivery work was completely standardized.  All drivers had to deliver the pre-prepared meals in the exact same way.  Each meal had to be delivered in a bag provided by The Fresh Diet, Inc., and drivers had to return empty bags to the Brooklyn facility at then end of their shifts.  What each driver was required to do as far as delivering the meals to customers was the same as what any other driver was required to do, apart from the specific delivery routes;

(j)    Drivers could not arrange with one another to change their assignments without those changes being authorized in advance by Defendant Hussain;

(k)    Drivers who changed their assignments without first obtaining Defendant Hussain's approval were subject to discipline, up to and including termination.

Harman Dec., Ex. A, ¶ 10 (Chow Aff.), Harman Dec., Ex. B, ¶ 10 (Hernandez Aff.); and,

Harman Dec., Ex. C, ¶ 10 (Guzman Aff.)

Two (2) other named Plaintiffs have also submitted similar affidavits describing their standardized job responsibilities.  Harman Dec., Exs. D (Jackson Aff.) and E (Acklin Aff.).  In addition, since the Collective Action Notice was sent out, an additional fourteen (14) opt-in Plaintiffs have joined in the collective action regarding the FLSA claims.  Harman Dec., Ex. K (docket sheet; docket entries 55, 56, 58, 59, 61, 67, 68, 69, 70, 71, 72, 73, 74, and 75).  This brings the current total number of Plaintiffs to twenty-three (23).  More persons may participate as the opt-in period for certain claimants does not end until February 19, 2013.  Further, Plaintiffs are concerned that far fewer individuals will participate as opt-ins due to current

employees' ongoing fear of retaliation, and in light of the severe retaliation against Plaintiffs Hernandez and Guzman which already has occurred.  Harman Dec., ¶¶ 34-37; Harman Dec., Ex. F ¶¶ 27-31 (Hernandez Retaliation Aff.); Harman Dec., Ex. G ¶¶ 22-26, 36-37 (Guzman Retaliation Aff.).  Plaintiffs Hernandez and Guzman had all of their assignments taken away from them and thus became completely unemployed once the Defendants learned of their participation in this lawsuit.

Plaintiffs also seek to have this matter certified as a class action because the relevant statute of limitation under the NYLL is six (6) years, as opposed to three (3) years under the FLSA.  If this matter is not certified as a class action, it is probable that dozens of former drivers will be completely cut-off from any potential recovery of unpaid wages and other available relief.  Harman Dec., ¶ 38.

## PROCEDURAL HISTORY

Plaintiffs filed their original Class and Collective Action Complaint on June 1, 2012.  On or about June 6, 2012, the Court referred the matter to Magistrate Judge James L. Cott for general pre-trial management, including the resolution of discovery disputes.  Harman Dec., Ex. K (docket sheet).

Plaintiffs filed their First Amended Class and Collective Action Complaint (the "First Amended Complaint") on or about October 26, 2012.  Harman Dec., Ex. J.  The First Amended Complaint asserts causes of action under both the FLSA and the NYLL.[2]  Harman Dec., Ex. J.

---

[2] The First Amended Complaint alleges violations of New York, New Jersey, and Connecticut wage and hour laws.  At this time, plaintiffs are seeking Fed. R. Civ. P. 23 class action certification only with respect to their FLSA and New York law claims.  Plaintiffs however certainly have not "conceded" anything regarding the New Jersey and Connecticut State law claims, despite what counsel for Defendants' suggested at a recent conference.

The First Amended Complaint also alleges that the Court has supplemental jurisdiction over the

Plaintiffs' NYLL claims pursuant to 28 U.S.C. §1367.  Harman Dec. Ex. J.

The First Amended Complaint summarizes the NYLL claims against the Defendants as

follows:

> Plaintiffs bring[] their New York . . . Labor Law . . . claims on behalf of all
> persons who resided in one or more of those three states [New York, New Jersey
> and Connecticut] and who were employed as FRESH DIET food delivery drivers
> in the tri-state metropolitan . . . area at any since in or about June 2006 to the
> entry of judgment in this case (the "Class Period"), and who were misclassified by
> Defendant THE FRESH DIET as either exempt employees or independent
> contractors in violation of the New York . . . Labor . . . Law[] and have not been
> paid overtime wages in violation of those [that] law[] and any regulations
> promulgated thereunder (the "Class").

Harman Dec., Ex. J (First Amended Complaint, ¶ 59).

The First Amended Complaint alleges, *inter alia*:

> The [NYLL] claims of the Plaintiffs are typical of the claims of the class and a
> class action is superior to other available methods for the fair and efficient
> adjudication of the controversy - particularly in the context of wage and hour
> litigation where individual plaintiffs typically lack the financial resources to
> vigorously prosecute a lawsuit in federal court against a corporate defendant and
> its senior management.

Harman Dec., Ex. J (First Amended Complaint, ¶ 61).

The First Amended Complaint additionally alleges that "the individually named Plaintiffs

are committed to pursuing this action and have retained competent counsel experienced in

employment law and class action litigation."  Harman Dec., Ex. J (First Amended Complaint, ¶

63).  The First Amended Complaint further states "the Plaintiffs have the same interests in this

matter as all other members of the Class and their claims are typical of the Class."  Harman Dec.,

Ex. J (First Amended Complaint, ¶ 64).

The First Amended Complaint goes on to identify some of the common questions of law

and fact affecting all members of the putative Class which predominate over any questions only

affecting the individual members of the Class.  These common questions include but are not limited to:

a. Whether Defendants employed the Class Members within the meaning of the NYLL;

b. Whether the Class Members were misclassified as "independent contractors";

c. What proof of hours worked is sufficient where employers fail to maintain adequate time records;

d. Whether Defendants failed to pay Class Members premium pay of time and a half for those hours worked in excess of forty (40) hours a week;

e. Whether Defendants are liable for all damages claimed, including compensatory punitive and statutory damages.

Harman Dec., Ex. J (First Amended Complaint, ¶ 65).

The Second Cause of Action is captioned "New York Labor Law – Failure to Pay Overtime" and alleges, *inter alia*:

The Defendants willfully violated the New York Plaintiffs['] rights and the rights of the other members of the Class who lived in New York, by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in violation of [the NYLL]  and its applicable regulations.

\* \* \*

Due to the Defendants' [NYLL]  violations, the New York plaintiffs and the other members of the Class who resided in New York during the Class Period are entitled to recover from the Defendants their unpaid overtime compensation, liquidated damages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursement of the action, pursuant to [NYLL] § 663(1).

Harman Dec., Ex. J (First Amended Complaint, ¶¶ 94, 96).

In their Prayer for Relief, the Plaintiffs request, *inter alia*, that the Court grant:

Certification of this action as a Class Action pursuant to Fed. R. Civ. P. 23 (b) (2) and (3) on behalf of the members of the Class and appointing the individually named Plaintiffs and their counsel to represent the Class.

Harman Dec., Ex. J (First Amended Complaint, ¶ 21).

On July 12, 2012, shortly after the filing of the original Complaint, Plaintiffs Fernando Hernandez ("Hernandez") and Juany Guzman ("Guzman") filed a Motion for An Order to Show Cause requesting preliminary injunctive relief.  Harman Dec., Ex. K (docket sheet, no. 11).  The submissions in support of that Motion alleged that Defendants illegally retaliated against Plaintiffs Hernandez and Guzman for participating in this action.  The Defendants' retaliatory conduct consisted of taking away Plaintiff Hernandez's and Plaintiff Guzman's regular work assignments (that is, their food delivery routes), reassigning those routes to other employees, refusing to assign Hernandez and Guzman any additional work, telling them that no other work was available, and ignoring their requests for work, thus rendering each of them completely unemployed within weeks after Defendants first learned of their participation in this action.  Hernandez and Guzman submitted affidavits detailing the specific acts of retaliation against them.  Harman Dec., Ex. F (Hernandez Retaliation Aff.) and Ex. G (Guzman Retaliation Aff.).  Their request for a preliminary injunction was denied by the Court on or about August 15, 2012.

On or about September 24, 2012, Plaintiffs filed a Motion for Preliminary Collective Action Certification pursuant to 29 U.S.C. § 216 (b).  Harman Dec., Ex. K (docket sheet, no. 36).  That Motion only concerned the Plaintiffs' FLSA claims, not their NYLL claims.  In their Memorandum in Support of the Motion, Plaintiffs argued that notice of the action, and specifically the FLSA claims, should be sent to all "similarly situated" persons.  The Plaintiffs position was and is that this proposed FLSA Collective Class includes all current and former drivers and food delivery employees who worked for or on behalf of the Defendants within the past several years.

The proposed Notice that accompanied the Motion was designed to advise current and former employees of their right to affirmatively "opt-in" to the FLSA portion of this lawsuit by filling out consent forms, which then would be filed with the Court.  Again, that motion did not pertain to the NYLL claims, which, along with the FLSA claims, are the subject of the present Motion for Preliminary Class Action Certification pursuant Fed. R. Civ. P. 23.

On or about November 21, 2012, Magistrate Cott issued a Memorandum Order setting out in detail the requirements for the Collective Action Notice to be sent out to Defendants' current and former drivers and food delivery employees.  Harman Dec., Ex. L (Nov. 21, 2012 Memorandum Order). The Memorandum Order directed the parties to finalize a Notice document consistent with the Memorandum Order and disseminate it no later than November 21, 2012.  Harman Dec., Ex. L (Nov. 21, 2012 Memorandum Order).

On or about December 4, 2012, the Magistrate issued an additional Order clarifying the process for docketing consent forms completed by those persons electing to "opt-in" to the FLSA collective action portion of this lawsuit.  Harman Dec., Ex. M. (December 4, 2012 Order).

On December 21, 2012, after complaints from the Plaintiffs regarding the completeness and accuracy of an earlier list, Defendants produced to Plaintiffs a "revised list" of drivers.  See Harman Dec., Ex. N.  There are ninety-nine (99) names on Defendants' list. Harman Dec., Ex. N.  The Defendants' December 21, 2012 list updated an earlier list sent on November 28, 2012, which contained the names of sixty-one (61) persons.

Plaintiffs Chow, Hernandez and Guzman have reviewed the December 21, 2012 list and have each stated:

> I recognize the majority of names on this list.  The people whose names I recognize also worked as drivers and/or food delivery employees for the Defendants, and were under the supervision, direction and control of Defendant Hussain.

Harman Dec., Ex. A, ¶ 12 (Chow Aff.); Harman Dec., Ex. B, ¶ 12 (Hernandez Aff.); Harman

Dec., Ex. C, ¶ 12 (Guzman Aff.)

On January 9, 2012, Magistrate Cott endorsed a letter from Plaintiffs' counsel regarding

thirty-eight (38) potential current or former drivers on the Defendants' December 21, 2012 list

who had not been previously identified by Defendants, and four (4) people whose address

information had changed since they were first identified on or prior to November 28, 2012.

Harman Dec., Ex. O (January 9, 2013 endorsement of January 4, 2013 letter).  Plaintiffs' counsel

requested additional time to send its Collective Action Notice to these individuals.   In this

endorsed letter, Plaintiffs' counsel also stated:

> Finally, Plaintiffs hereby inform the Court that they intend to move for class
> action certification under Fed. R. Civ. P. 23.

Harman Dec., Ex. O.

In his endorsement of the January 4, 2013 letter, Magistrate Cott ordered that the forty-

two (42) individuals identified in the Appendix to Plaintiff's counsel's letter be given sixty (60)

days from December 21, 2012 to "opt-in" to the FLSA collective action. Harman Decy., Ex. O.

This latter deadline for certain persons to "opt-in" is February 19, 2013.

At this time, "opt-in" forms continue to be received and are being docketed.  To date,

there are fourteen (14) additional Plaintiffs.  Harman Dec., Ex. K (docket sheet, entries 55, 56,

58, 59, 61, 67, 68, 69, 70, 71, 72, 73, 74, 75).  The most recent "opt-in" or consent forms to be

docketed were docketed on Friday, January 28, 2012.

Recently, Counsel for the Plaintiffs has received communications from current

employees of Defendants who have advised that they wish to participate in the collective action

but have not opted in due to fear of retaliation by the Defendants.  Harman Dec., ¶¶ 33-36.  Their

11

fear is based on the extreme acts of retaliation against Plaintiffs Hernandez and Guzman that they personally witnessed in the summer of 2012.  Harman Dec., ¶ 35.

## SUMMARY OF ARGUMENT

This case is well suited for Fed. R. Civ. P. 23 class treatment.  Plaintiffs' common claims are that Defendants erroneously paid Plaintiffs on 1099 forms and misclassified them as independent contractors, whereas they were employees of Defendants and thereby entitled, pursuant to the FLSA and the NYLL, to the minimum basic hourly wage, and a premium overtime wage for those hours worked in excess of forty (40) hours a week.  Harman Dec., Ex. J, ¶ 59 (First Amended Complaint).  These claims should be adjudicated on a class-wide basis.

Indeed, all drivers in the New York City tri-state area who were classified as independent contractors were misclassified.  These drivers clearly were employees of the Defendants.  The drivers had work schedules created by the Defendants that included the times that they had to report for work.  They were not allowed to go home or "off-duty" until their work was completed.  Harman Dec., Ex. A, ¶ 10(d)-(f) (Chow Aff.); Harman Dec., Ex. B, ¶ 10(d)-(f) (Hernandez Aff.) and Harman Dec., Ex. C, ¶ 10(d)-(f) (Guzman Aff.).  The drivers were under the supervision of Defendants at all times, and specifically, under the supervision of named Defendant Syed Hussain who was their direct supervisor. Drivers were given specific job responsibilities that had to be completed at certain times and in specific ways. Drivers could not deviate from their assigned duties or their employment would be terminated.  Harman Dec., Ex. A, ¶ 10(a)-(l) (Hernandez Aff); Harman Dec., Ex. B, ¶ 10(a)-(l) (Chow Aff.); Harman Dec., Ex. C, ¶ 10(a)-(l) (Guzman Aff.).

Moreover, drivers in the New York City tri-state metropolitan area regularly worked more than forty (40) hours per week.  Harman Dec., Ex. A, ¶ 8 (Chow Aff.); Harman Dec., Ex. B, ¶ 8 (Hernandez Aff.), Harman Dec., Ex. C, ¶ 8 (Guzman Aff.), Harman Dec., Ex. D, ¶ 6 (Jackson Aff.), Harman Dec., Ex. E, ¶ 6 (Acklin Aff.)  They were not paid overtime because Defendants misclassified them as independent contractors and paid them using criteria such as miles driven, number of stops made, and number of meals delivered, rather than hours actually worked.

In this action, the Fed. R. Civ. P. 23(a) prerequisites are easily met because:

i.      The proposed class has approximately one hundred (100) members based on the Defendants' own list of current and former employees, which in all probability is not even a complete and accurate list.  Harman Dec., Ex. N (list of ninety-nine (99) names produced by Defendants);

ii.     The claims and defenses involve many common factual and legal issues concerning Defendants' failure to pay minimum wage, and failure to pay overtime under the FLSA and the NYLL;

iii.    Plaintiffs' claims and the basis for those claims are the same as those of the absent class members they seek to represent.  All putative class members have been injured by Defendants' conduct and will benefit from the relief sought, and the Plaintiffs are committed to representing the Class and safeguarding its interests; and,

iv.     Plaintiffs and their counsel will vigorously prosecute this action.

In support of this Motion, and attached as exhibits to the Harman Dec. are the affidavits of five (5) of the named Plaintiffs.  Each one of these five (5) affidavits contains the following statement:

> I fully understand my responsibilities and duties as a class representative, should be designated as such, and particularly that I would owed a duty of loyalty to the class that I represent.  I understand that this means I must look after the interests of the class, and will undertake my best efforts to vigorously prosecute this action on the class members' behalf and ensure that the class is treated fairly and its interests are protected.  I will make myself available to participate in all activities required to conduct the case in a professional and effective manner, including, but not limited to locating witnesses, documents, evidence, submitting to depositions and examinations, and attending conferences.  I will not compromise the interests of the class members for my own personal gain.

Harman Dec., Ex. A, ¶ 13 (Chow Aff.), Harman Dec., Ex. B, ¶13 (Hernandez Aff.), Harman Dec., Ex. C, ¶ 13 (Guzman Aff.), Harman Dec., Ex. D, ¶ 9 (Jackson Aff.), and Harman Dec., Ex. E, ¶ 9 (Acklin Aff.)

## ARGUMENT

### I. A Motion For Preliminary Class Action Certification Is Not "Premature" Or Improper Simply Because There Is Also An Ongoing Collective Action Under The FLSA

The law is absolutely clear that state law wage and hour disputes may be preliminarily certified as class actions pursuant to Fed. R. Civ. P. 23 in the same litigation as FLSA collective action claims.   Contrary to recent suggestions by defense counsel, there is no basis for denying motions for class action certification because a collective action under the FLSA is pending.  One of the first major Court of Appeals decision in this area was that of the Seventh Circuit in *Ervin v. Os Restaurant Services, Inc*., 632 F.3d 971 (7th Cir. 2011).  The Court of Appeals reversed a district court's denial of class action certification and stated:

Nothing we find suggests that the FLSA is not amenable to state law claims for related relief in the same federal proceeding. . . We expect that it would normally be the case that a claim under any such state regulations would be part of the same constitutional "case" as the FLSA claim, and thus that any claims would fall within the district court's supplemental jurisdiction.

There is ample evidence that a combined action is consistent with the regime Congress has established in the FLSA.

* * *

We conclude that the district court's decision denying certification of plaintiffs' proposed classes under Rule 23 amounted to an abuse of discretion.

632 F.3d 971 at 977, 981.

Within months, this case was relied on by the United States Court of Appeals in *Shahriar v. Smith & Wollensky Restaurant Group*, 659 F.3d 234 (2d Cir. 2011), which stated:

[T]he legislative history surrounding the FLSA's opt-in provision also provides not support for precluding joint prosecution of FLSA and state law wage claims in the same federal action. . . We do not view Congress' creation of the opt-in provision for FLSA collective actions as a choice against, or a rejection of, Rule 23's opt-out process for state law class actions. [Citing *Ervin*].

659 F.3d at 248.

As for the procedural history in the *Shahriar* case, the Court of Appeals noted:

Following joinder of issue, plaintiffs filed a . . . motion seeking an order from the District Court certifying the class of plaintiffs, as to their state law claims, pursuant to Rule 23.

659 F.3d at 242.

This approach has been followed by courts within the Second Circuit. *See, e.g., Briceno v. USI Services Group, Inc.*, 2012 U.S. Dist. LEXIS 144866 (E.D.N.Y., Sept. 28, 2012).

As these decisions make clear, there is absolutely no basis for not preliminary certifying this matter as a class action provided all of the requirements of Fed. R. Civ. P. 23 have been met. Suggestions that the present motion is somehow premature or otherwise improper because there is an ongoing collective action under the FLSA have no basis and should be rejected.

15

## II.  Legal Standards for Class Action Certification.

Class certification is appropriate where plaintiffs establish that the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, and that a class action may be maintained under one of the subsections of Fed. R. Civ. P. 23(b).  *In re Initial Pub. Offering Sec. Litig. ("IPO"), 471 F.3d 24, 41 (2d Cir. 2006).*

Fed. R. Civ. P. 23(a) permits class certification if: "(i) the class is so numerous that joinder of all members is impracticable, (ii) there are questions of law or fact common to the class (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Class certification under Fed. R. Civ. P. 23(b)(3) governs cases where questions of law or fact common to members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

In considering whether to certify a class, the district court should not assess any aspect of the merits unrelated to a Fed. R. Civ. P. 23 requirement.  *IPO*, 471 F.3d at 41; *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 241 F.R.D. 435, 443 (S.D.N.Y. 2007).  Fed. R. Civ. P. 23 is traditionally given liberal construction.  *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).  While the decision to certify a class is committed to the district court's discretion, the United States Court of Appeals for Second Circuit is noticeably "less deferential . . . when that court has denied class status than when it has certified a class." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999) (citation and internal quotation omitted), *overruled on other grounds by IPO*, 471 F.3d at 40.  Courts must err "in favor and not

against the maintenance of a class action." *Sharif v. N.Y. State Educ. Dept.*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989) (citations omitted).

**III.** **The Proposed Class Meets All Fed. R. Civ. P. 23(a) Requirements.**

The proposed Class meets all of the requirements for class action certification under Fed. R. Civ. P. 23(a), which are:  (a) numerosity; (b) commonality; (c) typicality; and, (d) adequacy.

A. <u>There Is Numerosity Under Rule 23(a)(1).</u>

The essential element of any class action is that the proposed class be so large that joinder of all individual class members is impracticable.  Herbert Newberg & Alba Conte, *Newberg on Class Actions* 3:05 (4th ed. 2002)("*Newberg*").  Here the numerosity requirement of Fed. R. Civ. P. 23(a)(1)  is easily met.  Numerosity can be presumed at a level of 40 members.  *Consol. Rail Corp. v. Town of Hyde Park*, 41 F.3d 473, 483 (2d Cir. 1995) (citing *Newberg* 3:05 (1992)). Here, numerosity is met because according to the Defendants' own revised list, the proposed class has at least ninety-nine (99) members.  See Harman Dec., Ex. N (list of drivers produced by Defendants).

In support of this Motion, of the Named Plaintiffs, Plaintiffs Chow, Hernandez and Guzman, have sworn to affidavits in which state that they have reviewed Defendants' December 21, 2012 list, and recognize the majority of names on it.  The people on the list also worked as drivers, and had the same duties, tasks and responsibilities as the Defendants. The people on the list who these Plaintiffs recognized reported to Defendant Hussain and were subject to his supervision, direction and control.   Harman Dec., Ex. A, ¶ 12 (Chow Aff.), Ex. B, ¶ 12 (Hernandez Aff.) and Ex. C, ¶ 12 (Guzman Aff.)

The Fresh Diet's own website (Harman Dec., Ex. P) and the five (5) affidavits submitted by Plaintiffs in support of this specific Motion make it apparent that the way the work performed

by all of the drivers was completely standardized. All drivers performed the same type of work. That is, each one showed up to the Brooklyn kitchen at his or her assigned time, each would received his route assignment for his shift, each would take that food that was prepared in the kitchen, by the kitchen staff, and then deliver it to the customers. There were no meaningful differences between the duties, tasks and responsibilities of the different drivers. Drivers who deviated from the routine developed by Defendants were subject to discipline, including termination.

      B.     There Are Common Questions of Law or Fact, As Required By Fed. R. Civ. P. 23(a)(2).

The commonality requirement "[is] satisfied if the class shares even one common question of law or fact." *In re NTL, Inc. Sec. Litig.*, 02-cv-3013, 2006 WL 330113, at *6 (S.D.N.Y. Feb. 14, 2006) (internal citations and quotations omitted); accord *Daniels v. City of New York,* 198 F.R.D. 409, 417 (2001) (citing *In Re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166-67 (2d Cir. 1987)). Here, Plaintiffs have a myriad of common questions of law and fact. In fact, <u>all</u> Plaintiffs' claims contain identical questions of law and fact. Harman Dec., Exs. A, B, C, D and E (Chow, Hernandez, Guzman, Jackson, and Acklin Affs.). Plaintiffs' tasks were entirely alike:

> All New York City-area drivers performed the same type of work. That is, each one showed up to The Fresh Diet, Inc.'s Brooklyn facility at their assigned time, each would receive his route assignment for their shift, each one would take the food that was prepared in the kitchen, by the kitchen staff, and then deliver it. There were no meaningful differences between the duties, tasks and responsibilities of the different drivers.

Harman Dec., Ex. A, ¶ 10(i) (Hernandez Aff.); Ex. B, ¶ 10(i) (Chow Aff.); Ex. C, ¶ 10(i) (Guzman Aff.).

In any event, "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998); *accord Berwecky v. Bear, Sterns & Co., Inc.*, 197 F.R.D. 65, 68 (S.D.N.Y.2000) (same); see also *Wilder v. Bernstein*, 499 F. Supp. 980, 992 (S.D.N.Y. 1980). This commonality requirement is particularly well satisfied, where as here, the injuries complained of by the Plaintiffs resulted from the same practice or policy that allegedly injured or will injure the proposed class members. *Daniels*, 198 F.R.D. at 417; see also *Marisol A.*, 126 F.3d at 376-77.

In this case, Plaintiffs' claims all present the same common nucleus of facts, and the laws to be applied (the FLSA and the NYLL) are expressly identical or materially indistinguishable for purposes of the exemptions at issue in this case. *See, e.g.*, *Westerfield v. Wash. Mut. Bank*, 06-cv-2817, 2007 WL 2162989 (E.D.N.Y. July 26, 2007) (finding that Plaintiffs could bring class action claims under New York, California, Illinois, and New Jersey wage and hour law in conjunction with a FLSA collective action). Indeed, "Rule 23 and FLSA actions are routinely prosecuted together, and the complexities of Rule 23 and FLSA hybrid actions are a challenge that the federal judiciary, and properly instructed juries, are generally well-equipped to meet." *Brickey v. Dolencorp*, 244 F.R.D. 176, 179 (W.D.N.Y. 2007).

The Court need not - and should not - reach the merits of this issue at this stage of the litigation. It is sufficient that the exemptions present common factual and legal issues that can be resolved jointly. The inquiry into the success or failure of the claimed exemptions comes later in the litigation process, after discovery is completed.

C.    The Typicality Requirement of Fed. R. Civ. P. 23(a)(3) Is Met.

19

Fed. R. Civ. P. 23(a)(3) requires that the claims of the class representative must be "typical" of those of the absent class members. *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 607 n.11 (1997). A proposed class representative's claims or defenses are typical when they arise from the same general "course of events" as those of the absent class members and rely on "similar legal arguments" to prove defendant's liability. *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001). The typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *MTBE, 241 F.R.D.* at 444 (citations omitted). Typicality is determined by the nature of the claims of the class representative, not by the specific facts from which they arose. See generally *Newberg*: 3:15. The purpose of the typicality requirement is to ensure that maintenance of a class action is economical and that the named plaintiffs' claims and the class claims are so intertwined that the interests of the class members will be fairly and adequately protected in their absence. *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001). "[V]iewed in the most practical way, typicality is present when all members of the putative class would benefit by the success of the named plaintiff." *Cutler v. Perales*, 128 F.R.D. 39, 45 (S.D.N.Y. 1989) (citations omitted).

In this case, the violations suffered by Plaintiffs are typical of those of class they seek to represent. All claims arise out of Defendants' policy of misclassifying their drivers as independent contractors. The Plaintiffs' claims are based on the same legal theory: that they are in fact hourly employees, subject to the minimum wage regulation and overtime regulation, under state and federal law. Harman Dec., Ex. A, ¶ 8 (Chow. Aff.), Harman Dec., Ex. B, ¶ 8 (Hernandez Aff.), Harman Dec., Ex. C, ¶ 8 (Guzman Aff.), Harman Dec., Ex. D, ¶ 6 (Jackson Aff.), Harman Dec., Ex. E, ¶ 6 (Acklin Aff.).

20

D.   The Plaintiffs Are Adequate Class Representatives, As Required By Fed. R. Civ. P. 23(a)(4).

Fed. R. Civ. P. 23(a)(4) requires that class representatives must "fairly and adequately protect the interests of the class." Plaintiffs are adequate representatives because they were subjected to the same unlawful conduct as the other class members. *Hirschfeld v. Stone*, 193 F.R.D. 175, at 183.  The Plaintiffs will fairly represent the proposed class because they have no conflict with any class members, and will fairly and adequately protect the interests of the class. As discussed, each of the five (5) affiants has sworn to serve as a loyal class representative. Accordingly, the requirements of Fed. R. Civ. P. 23(a)(4) are satisfied.

## IV.  **The Proposed Class Satisfies Fed. R. Civ. P. 23(b)(3).**

Fed. R. Civ. P. 23(b)(3) certification is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication.   Courts have not developed a precise test to determine whether common issues predominate but often look for an essential common link among class members that can be remedied through litigation. *Newberg*: 4:25.  In this case, all Plaintiffs' claims revolve around common question: whether Defendants misclassified the drivers as independent contractors, and failed to pay them the wages they were legally owed.  These questions and their many common subsidiary issues can and should be adjudicated on a class-wide basis.

A.   Common Legal Or Factual Issues Predominate.

To satisfy predominance under Fed. R. Civ. P. 23(b)(3), Plaintiffs must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (citation and internal

quotations omitted), *overruled on other grounds as noted in Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010)). Predominance is generally satisfied unless it is clear that individual issues will "overwhelm" the common questions. *In re Nasdaq Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 (S.D.N.Y. 1996).

Courts have repeatedly certified classes of employees seeking overtime compensation under the different statutes, finding common questions predominated over individualized inquiries.[3]

Class certification is particularly appropriate where, as here, class members perform similar tasks, an employer uses standardized policies and procedures, and all employees in the proposed Class are classified as exempt. *Donovan v. Burger King Corp.*, 675 F.2d 516, 519-20 (2d Cir. 1982) (court extended liability for overtime wages to all employees throughout the New York area, based on evidence of corporate standardization of job duties); *see also Jankowski v. Castaldi,* 01-cv-0164, 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (finding predominance when "each proposed Plaintiff class member did substantially the same type of work for the

_____

[3] *See, e.g., Velez v. Majik Cleaning Serv., Inc.*, 03-cv-8698, 2005 WL 106895, at *4 (S.D.N.Y. Jan. 19, 2005) ("whether [defendants] breached their legal duties under the FLSA and New York Labor Law are issues that predominate in this case."); *see also Tierno v. Rite Aid Corp.*, 05-cv-02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) (common questions predominated due to defendant's standardized policies throughout its stores; certifying class action under California law and notice of FLSA action); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001) (certifying New York state law class after finding that common issues predominate over individual ones "because each Plaintiff class member did substantially the same type of work, for the same type of employer, and was assigned in the same sort of way, during the relevant time period"); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) (same); *Smellie v. Mount Sinai Hosp.,* 03-cv-0805, 2004 WL 2725124 (Nov. 29, 2004) (same); *Belbis v. County of Cook*, 01-cv-6119, 2002 WL 31600048, at *7 (N.D. Ill. Nov. 18, 2002) (finding commonality among employees when employer failed to pay overtime for pre- and post-shift activities);; *O'Brien v. Encotech Constr. Servs.*, 203 F.R.D. 346 (N.D. Ill. 2001); *Yon v. Positive Connections, Inc.,* 04- cv-2680, 2005 WL 628016 (N.D.Ill. Feb. 2, 2005).

same type of employer, and was assigned in the same sort of way") (citation omitted); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008) (Lynch, J.) ("Where, as here, there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities.") (collecting cases).

Moreover, it is well-established that a defendant's invocation of exceptions to the overtime laws (such as the ones at issue here) often makes "class action treatment [] particularly apt." See *Romero v. Producing Dairy Foods*, 235 F.R.D. 474 at 487 and 490 (E.D. Ca. 2006). "This is because if the defense succeeds, the entire litigation is disposed of.  If it fails, it will not be an issue in the subsequent individual trials." *Id.* at 490 (internal quotations and citation omitted).  The fact that the existence of a potential defense that "may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Brown v. Kelly*, 609 F.3d at 483 (internal quotations and citation omitted); *accord Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (rejecting this claim and certifying a class action of individuals claiming to be misclassified as exempt under New York law).  "Therefore, the question for purposes of determining predominance is not whether a defense exists, but whether the common issues will predominate over the individual questions raised by that defense." *Visa Check*, 280 F.3d at 137.

In this instance, it is apparent that all questions of fact are common questions of fact, as all the drivers had the same duties, tasks and responsibilities, and their work routine was completely standardized.  Harman Dec., Exs. A, B, C, D and E.  The job of a driver was to report to the Brooklyn kitchen facility, obtain the meals that had been prepared in the actual

23

kitchen area of the facility, place them into vehicles, and deliver them to customers (in Fresh Diet bags), under the supervision, direction and control of Defendants, report back to management, return empty bags, and complete paperwork.  The core factual issues relate to employee misclassification and failure to pay basic and overtime wages.  Therefore, common issues of fact, as well as of law, clearly predominate.  Harman Dec., Ex. A, ¶ 8 (Chow. Aff.), Harman Dec., Ex. B, ¶ 8 (Hernandez Aff.), Harman Dec., Ex. C, ¶ 8 (Guzman Aff.), Harman Dec., Ex. D, ¶ 6 (Jackson Aff.), Harman Dec., Ex. E, ¶ 6 (Acklin Aff.).

 B. <u>A Class Action Is Superior To Other Methods Of Adjudication.</u>

 Fed. R. Civ. P. 23(b)(3) enumerates four non-exclusive factors pertinent to determining whether a class action is superior to other methods of adjudication: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  All of these factors weigh in favor of certification.

 The superiority determination takes into account any difficulties likely to be encountered in the management of a class action.  Here, where the state law at issue is very similar to the FLSA, the case can be managed without difficulty.  As the Second Circuit has observed, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule.'"  *Visa Check*, 280 F.3d 124, 140 (2d Cir. 2001) (citing authorities).

 The proposed Class is manageable and Class Action adjudication is superior.

**V. This Matter Should Be Certified As A Class Action Because An "Opt-In" Collective Action Is Inadequate Given The Fear of Retaliation That Exists <u>Among Current Employees.</u>**

The fact the Plaintiffs are former rather than current employees does not make them inadequate class representatives.  To the contrary, this matter should be certified as a class action with former employees are class representatives because of the genuine and high risk of retaliation faced by current employees.  Under these circumstances, a class action rather than a collective action, would better protect the rights of such vulnerable individuals.  The federal courts have recognized this:

> Many courts have noted the benefits of having former employees named as class representatives. ***"[W]ith respect to plaintiffs who were former employees of the company 'being familiar with (the company's) employment practices and being free from any possible coercive influence of (the company's) management, (the plaintiffs) are better situated than either job applicants or present employees to present an intelligent and strongly adverse case against (the company's) alleged discriminatory practices."*** *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975) (*quoting Mack v. General Elec. Co.*, 329 F. Supp. 72, 76 (E.D. Pa. 1971)). Additionally, deeming former employees inadequate to represent a class that included current employees might give hiring a perverse incentive: "employers would be encouraged to discharge those suspected as most likely to initiate a Title VII suit in the expectation that such employees would thereby be rendered incapable of bringing the suit as a class action." *Wetzel v. Liberty Mut. Ins.*, 508 F.2d at 247. For these reasons, the court deems the named Tennessee plaintiffs adequate representatives.

*In re FEDEX Ground Package System, Inc. Employment Practices Litigation*, 273 F.R.D. 424, 429 (N.D. Ind., 2008) (emphasis added).

In this present action, two (2) of the named Plaintiffs have in fact already been retaliated against for simply becoming associated with the lawsuit.  They filed a Motion for a Preliminary Injunction very early in this case.  Harman Dec., Exs. F and G (Hernandez and Guzman Retaliation Affs.).  More recently, counsel for the Plaintiffs received a phone call from a husband of an employee advising that current employees were interested in participating in the case but were fearful of doing so.  Harman Dec., ¶¶ 34-36.  These employees personally witnessed the

extreme acts of retaliation against Hernandez and Guzman.  The Defendants, thus far, have not been held accountable for this retaliatory activity.  Under these circumstances, where current employees are simply too intimidated to affirmatively "opt-in," an "opt-out" class action is superior to an "opt-in" collective action.  Harman Dec, ¶. 36.  The concerns articulated by the Court in the *In re FEDEX Ground Package System, Inc.* case are all present here.

**VI. The Harman Firm Should Be Designated As Class Counsel Pursuant To Fed. R. Civ. P. 23(g).**

A "court that certifies a class must appoint class counsel" after considering counsel's experience, knowledge, and resources. Fed. R. Civ. P. 23(g)(1).  This standard is easily met as Plaintiffs have retained counsel, The Harman Firm, who is qualified and experienced in plaintiffs' wage and hour litigation.  The Harman Firm has several years of collective experience litigating plaintiffs' wage and hour actions under federal and state laws.  Harman Dec., ¶¶ 18-32. The Harman Firm has successfully represented Plaintiffs in these matters, and has resolved numerous complex collective and class action claims.  Harman Dec., ¶¶ 22-26 and 31.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that this Court:

i)      Conditionally certify a class under the FLSA and NYLL pursuant to Fed. R. Civ. P. 23;

ii)     Appoint The Harman Firm, P.C. as Class Counsel;

iii)    Order such further relief as this Court may deem just and proper.


Dated: New York, New York
       April 18, 2013


                                        By:     _____s/_____
                                                Peter J. Andrews [PA-3295]
                                                THE HARMAN FIRM, PC
                                                *Attorneys for Plaintiff*
                                                200 West 57th Street, Suite 900
                                                New York, New York 10019
                                                (212) 425-2600
                                                pandrews@theharmanfirm.com


TO:     Jeffery Meyer, Esq.
        Yale Pollack, Esq.
        KAUFMAN, DOLOWICH, VOLUCK & GONZO LLP
        *Attorneys for Defendants*
        135 Crossways Park Drive
        Woodbury, New York 11797
        (516) 681-1100
        jmeyer@kdvglaw.com
        ypollack@kdvglaw.com