UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

FERNANDO HERNANDEZ, KENNETH CHOW,
BRYANT WHITE, DAVID WILLIAMS, MARQUIS
ACKLIN, CECILIA JACKSON, TERESA JACKSON,
MICHAEL LATTIMORE, and JUANY GUZMAN, each
individually, and on behalf of all other persons similarly
situated,

Case No.:
12-CV-4339 (ALC)(JLC)

Plaintiffs,

-against-

THE FRESH DIET, INC., LATE NIGHT EXPRESS
COURIER SERVICES, INC. (FL), FRESH DIET
EXPRESS CORP. (NY), THE FRESH DIET – NY INC.
(NY), FRESH DIET GRAB & GO, INC. (FL) a/k/a YS
CATERING HOLDINGS, INC. (FL) d/b/a YS CATERING,
INC. (FL), FRESH DIET EXPRESS CORP. (FL), SYED
HUSSAIN, Individually, JUDAH SCHLOSS, Individually,
and ZALMI DUCHMAN, Individually,

Defendants.

-------------------------------------------------------------------X

## AFFIDAVIT IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR CLASS CERTIFICATION

STATE OF NEW YORK     }
                            } S.S.

COUNTY OF KINGS      }

SYED HUSSAIN, being duly sworn, does hereby depose and say:

1.     I am the Delivery Manager for Late Night Express Courier Services, Inc.

("Late Night"), a named Defendant in this action.  Late Night is responsible

for the delivery of all meals produced by The Fresh Diet, Inc. ("The Fresh

Diet").  I submit this affidavit in opposition to Plaintiffs' motion for class

certification.

2.     The Fresh Diet offers clients fresh daily-prepared meals that are never frozen, freeze-dried or vacuum packed. Instead, The Fresh Diet, via Late Night, delivers three (3) freshly prepared meals and two (2) snacks directly to its clients on a daily basis.

3.     I have been advised that current and former drivers are alleging that they were improperly classified as independent contractors by Late Night, and that they are seeking class certification for alleged unpaid wages.

4.     In my role as Delivery Manager, my duties include overseeing deliveries in the Tri-State area, hiring drivers, creating routes, and assigning drivers to routes based on their availability and preference.

5.     The drivers would pick up the meals bags from The Fresh Diet's facility in Brooklyn.  The earliest time the meal bags are ready to go out for delivery in the Tri-State area is 7:00 p.m.  However, for those meals being delivered on New York City routes, the meals do not go out until 9:00 p.m.

6.     The drivers would then drop off the meal bags and pick up the empty ones from customers on the delivery route.  All deliveries are expected to be completed by 5:00 a.m.

7.     Compensation for the drivers is based on the number of drop offs and/or mileages of their routes, which varies depending on whether they work in our outside New York City.

8.     After being assigned their routes, the drivers were free to deliver the meals in their vehicles in any manner they saw fit.  Late Night was not concerned how

the drivers delivered the meals, but only wanted to ensure that all meals provided to the drivers were delivered to The Fresh Diet's clients.

9.     It is my understanding that some of the drivers even took their family members with them during deliveries, or gave certain meals to family members to provide the deliveries on their behalf. Again, this was of no concern to Late Night so long as the meals were delivered.

10.    Despite what Plaintiffs may claim, they were not under any direction or control by me. It is my understanding that Plaintiffs are claiming that if they did not: (a) report back to me at the end of their route; (b) return empty meal backs after completing their route to the Brooklyn facility; (c) refused a work assignment; (d) missed an assigned stop; or (e) changed their route assignment without prior approval from me, that they were subject to discipline, up to and including termination.

11.    However, it is also my understanding that Plaintiffs have not provided a single incident where such "discipline" or "termination" actually occurred that would support Plaintiffs' allegations.

12.    I never disciplined or terminated Plaintiffs Chow, Hernandez, Guzman, Jackson or Acklin for any of the infractions they claimed they could have been disciplined or terminated for.

13.    In fact, I submitted a detailed Affidavit in opposition to Plaintiffs Hernandez and Guzman's motion for injunctive relief on their purported retaliation claims, with supporting text messages, demonstrating that it was their own actions that caused them not to be assigned certain routes.

14.   The baseless nature of their motion for injunctive relief, which the Court

denied, only further demonstrates that these individuals are not credible and

that any statements made by them to support the class action claims are not

reliable.

15.   The fact of the matter is that Plaintiffs and putative class members were hired

as independent contractors by Late Night to deliver meals prepared by The

Fresh Diet and that they were properly treated as such while working for Late

Night.

16.   Many of the drivers executed independent contractor agreements with Late

Night.  A sample Independent Contractor Agreement is annexed hereto as

Exhibit "1."

17.   It is my understanding that Kenneth Chow is one of the plaintiffs who

submitted an affidavit in support of Plaintiffs' class certification motion.

Annexed as Exhibit "2" is a copy of the Independent Contractor Agreement

signed by Mr. Chow.

18.   It is simply incorrect for Plaintiffs to claim that all drivers were treated the

same way based on the affidavits of a select few individuals, whose credibility

has already been seriously undermined.

19.   Based on the foregoing, Plaintiffs' motion for class certification should be

denied.

Wherefore, it is respectfully submitted that Plaintiffs' motion for class certification be denied in its entirety and that Defendants be awarded such other relief as this Court deems just and proper.

SYED HUSSAIN

Sworn to before me this
___ day of June 2013

Notary Public

HENRY NINA
Notary Public, State of New York
No. 01NI6210606
Qualified in New York County
Commission Expires August 24, 2013

ND: 4810-4226-1780. v. 1

# EXHIBIT 1

# LATE NIGHT EXPRESS COURIER SERVICE, INC.

## INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is entered into as of the _____ day of _____ 20____ between Late Night Express Courier Service, Inc. and _____

1. <u>Independent Contractor.</u>  Subject to the terms and conditions of this Agreement, the Company hereby engages the Contractor as an independent contractor to perform the services set forth herein, and the Contractor hereby accepts such engagement.

2. <u>Duties, Term, and Compensation.</u>  The Contractor's duties, term of engagement, compensation and provisions for payment thereof shall be as set forth in the estimate previously provided to the Company by the Contractor and which is attached as Exhibit A, which may be amended in writing from time to time, or supplemented with subsequent estimates for services to be rendered by the Contractor and agreed to by the Company, and which collectively are hereby incorporated by reference.

3. <u>Expenses.</u>  During the term of this Agreement, the Contractor shall bill and the Company shall reimburse him or her for all reasonable and approved out-of-pocket expenses which are incurred in connection with the performance of the duties hereunder. Notwithstanding the foregoing, expenses for the time spend by Consultant in traveling to and from Company facilities shall not be reimbursable.

4. <u>Written Documentation.</u>  The Company may request manifests, reports or other documentation to be provided by Contractors on a daily basis. A completed manifest shall be due at the conclusion of the assigned day's route and shall be submitted to the Regional Delivery Manager at such time.   The manifest, report or other documentation shall be in such form and setting forth such information and data as is reasonably requested by the Company.

5. <u>Inventions.</u>  Any and all inventions, discoveries, developments and innovations conceived by the Contractor during this engagement relative to the duties under this Agreement shall be the exclusive property of the Company; and the Contractor hereby assigns all right, title, and interest in the same to the Company. Any and all inventions, discoveries, developments and innovations conceived by the Contractor prior to the term of this Agreement and utilized by him or her in rendering duties to the Company are hereby licensed to the Company for use in its operations and for an infinite duration. This license is non-exclusive, and may be assigned without the Contractor's prior written approval by the Company to a wholly owned subsidiary of the Company.

6. <u>Confidentiality.</u>  The Contractor acknowledges that during the engagement he or she will have access to and become acquainted with various trade secrets, inventions, innovations, processes, information, records and specifications owned or licensed by

FD000048

the Company and/or used by the Company in connection with the operation of its business including, without limitation, the Company's business and product processes, methods, customer lists, accounts and procedures. The Contractor agrees that he or she will not disclose any of the aforesaid, directly or indirectly, or use any of them in any manner, either during the term of this Agreement or at any time thereafter, except as required in the course of this engagement with the Company. All files, records, documents, blueprints, specifications, information, letters, notes, media lists, original artwork/creative, notebooks, and similar items relating to the business of the Company, whether prepared by the Contractor or otherwise coming into his or her possession, shall remain the exclusive property of the Company. The Contractor shall not retain any copies of the foregoing without the Company's prior written permission. Upon the expiration or earlier termination of this Agreement, or whenever requested by the Company, the Contractor shall immediately deliver to the Company all such files, records, documents, specifications, information, and other items in his or her possession or under his or her control. The Contractor further agrees that he or she will not disclose his or her retention as an independent contractor or the terms of this Agreement to any person without the prior written consent of the Company and shall at all times preserve the confidential nature of his or her relationship to the Company and of the services hereunder.

7. Conflicts of Interest; Non-hire Provision. The Contractor represents that he or she is free to enter into this Agreement, and that this engagement does not violate the terms of any agreement between the Contractor and any third party. Further, the Contractor, in rendering his or her duties shall not utilize any invention, discovery, development, improvement, innovation, or trade secret in which he or she does not have a proprietary interest. During the term of this agreement, the Contractor shall devote as much of his or her productive time, energy and abilities to the performance of his or her duties hereunder as is necessary to perform the required duties in a timely and productive manner. The Contractor is expressly free to perform services for other parties while performing services for the Company. For a period of six months following any termination, the Contractor shall not, directly or indirectly hire, solicit, or encourage to leave the Company's employment, any employee, consultant, or contractor of the Company or hire any such employee, consultant, or contractor who has left the Company's employment or contractual engagement within one year of such employment or engagement.

8. Right to Injunction. The parties hereto acknowledge that the services to be rendered by the Contractor under this Agreement and the rights and privileges granted to the Company under the Agreement are of a special, unique, unusual, and extraordinary character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in any action at law, and the breach by the Contractor of any of the provisions of this Agreement will cause the Company irreparable injury and damage. The Contractor expressly agrees that the Company shall be entitled to injunctive and other equitable relief in the event of, or to prevent, a breach of any provision of this Agreement by the Contractor. Resort to such equitable relief, however, shall not be construed to be a waiver of any other rights or

FD000049

remedies that the Company may have for damages or otherwise. The various rights and remedies of the Company under this Agreement or otherwise shall be construed to be cumulative, and not one of them shall be exclusive of any other or of any right or remedy allowed by law.

9. <u>Merger.</u>  This Agreement shall not be terminated by the merger or consolidation of the Company into or with any other entity.

10. <u>Termination.</u>  The Company may terminate this Agreement at any time by written notice to the Contractor. In addition, if the Contractor is convicted of any crime or offense, fails or refuses to comply with the written policies or reasonable directive of the Company, is guilty of serious misconduct in connection with performance hereunder, or materially breaches provisions of this Agreement, the Company at any time may terminate the engagement of the Contractor immediately and without prior written notice to the Contractor.

11. <u>Independent Contractor.</u>  This Agreement shall not render the Contractor an employee, partner, agent of, or joint venture with the Company for any purpose. The Contractor is and will remain an independent contractor in his or her relationship to the Company. The Company shall not be responsible for withholding taxes with respect to the Contractor's compensation hereunder. The Contractor shall have no claim against the Company hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

12. <u>Insurance.</u>  The Contractor will carry liability car insurance relative to any service that he or she performs for the Company. **This includes roadside assistance.**

13. <u>Successors and Assigns.</u>  All of the provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, if any, successors, and assigns.

14. <u>Choice of Law.</u>  The laws of the state of _____ shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties hereto.

15. <u>Arbitration.</u>  Any controversies arising out of the terms of this Agreement or its interpretation shall be settled in _____ in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof.

16. <u>Headings.</u>  Section headings are not to be considered a part of this Agreement and are not intended to be a full and accurate description of the contents hereof.

17. <u>Waiver.</u>  Waiver by one party hereto of breach of any provision of this Agreement by the other shall not operate or be construed as a continuing waiver.

18. <u>Assignment.</u> The Contractor shall not assign any of his or her rights under this Agreement, or delegate the performance of any of his or her duties hereunder, without the prior written consent of the Company. If contractor would no longer like to receive assignments, a <u>one week notice is required.</u> Failure to provide the required notice will result penalties fees of $150.00 a day, for up to seven days.

19. <u>Notices.</u> Any and all notices, demands, or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service. If such notice, demand or other communication is given by mail, such notice shall be conclusively deemed given five days after deposit thereof in the United States mail addressed to the party to whom such notice, demand or other communication is to be given as follows:

> If to the Contractor:
>
> If to the Company: Late Night Express Courier Service, Inc.
> 3327 NW 7Th Ave.
> Miami, FL 33127

Any party hereto may change its address for purposes of this paragraph by written notice given in the manner provided above.

20. <u>Modification or Amendment.</u> No amendment, change or modification of this Agreement shall be valid unless in writing signed by the parties hereto.

21. <u>Entire Understanding.</u> This document and any exhibit attached constitute the entire understanding and agreement of the parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect.

22. <u>Unenforceability of Provisions.</u> If any provision of this Agreement, or any portion thereof, is held to be invalid and unenforceable, then the remainder of this Agreement shall nevertheless remain in full force and effect.

IN WITNESS WHEREOF the undersigned have executed this Agreement as of the day and year first written above. The parties hereto agree that facsimile signatures shall be as effective as if originals.

Late Night Express Courier Service, Inc.

By:_____          By:_____
Its: Regional Delivery Manager        Its: Driver

Facilitated by SO                                          FD000051

## SCHEDULE A

## DUTIES, TERM, AND COMPENSATION

**DUTIES:**

The Contractor *will deliver all assigned cooler bags on the assigned route and pick up any and all empty cooler bags left by the Client. In addition, contractor may be required to pick up or return other related items such as and not limited to: keys, passes, and personal belongings left in cooler bags.*

He or she will report directly to *Regional Delivery Manager* and to any other party designated by *Late Night Express Courier Service, Inc.* in connection with the performance of the duties under this Agreement and shall fulfill any other duties reasonably requested by the Company and agreed to by the Contractor.

**TERM:**

This engagement shall commence upon execution of this Agreement and shall continue in full force and effect through or earlier upon completion of the Contractor's duties under this Agreement. The Agreement may only be extended thereafter by mutual agreement, unless terminated earlier by operation of and in accordance with this Agreement.

**COMPENSATION:**

As full compensation for the services rendered pursuant to this Agreement, the Company shall pay the Contractor at the rate of *$0.___* per mile, *$1.00 per stop* or a Flat rate of *$3.00* per stop for designated city routes. Such compensation shall be payable within 5 days of receipt of Contractor's weekly invoice for services rendered supported by reasonable documentation.

**FEES:**

Contractor will be fined $25.00 for at fault, missed deliveries, *and other specific assignment(s) instructed by the Regional Delivery Manager.* If contractor is unable to **perform the assigned route, contractor must provide _____ hours notice (varies by region). Failure to comply will result in a penalty fee of 50% of that day's route (based on miles and stops).**

All fees will be deducted from Invoice (payment of service).

FD000052

# EXHIBIT 2

## ~~LATE NIGHT EXPRESS COURIER SERVICE, INC.~~

### INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is entered into as of the 30th day of SEPT 20 10 between Late Night Express Courier Service, Inc. and KENNETH CHOW ("the Contractor").

1. Independent Contractor. Subject to the terms and conditions of this Agreement, the Company hereby engages the Contractor as an independent contractor to perform the services set forth herein, and the Contractor hereby accepts such engagement.

2. Duties, Term, and Compensation. The Contractor's duties, term of engagement, compensation and provisions for payment thereof shall be as set forth in the estimate ~~previously provided to the Company by the Contractor and which is attached as~~ Exhibit A, which may be amended in writing from time to time, or supplemented with subsequent estimates for services to be rendered by the Contractor and agreed to by the Company, and which collectively are hereby incorporated by reference.

3. Expenses. During the term of this Agreement, the Contractor shall bill and the Company shall reimburse him or her for all reasonable and approved out-of-pocket expenses which are incurred in connection with the performance of the duties hereunder. Notwithstanding the foregoing, expenses for the time spend by Consultant in traveling to and from Company facilities shall not be reimbursable.

4. Written Documentation. The Company may request manifests, reports or other documentation to be provided by Contractors on a daily basis. A completed manifest shall be due at the conclusion of the assigned day's route and shall be submitted to the Regional Delivery Manager at such time. The manifest, report or other ~~documentation shall be in such form and setting forth such information and data as is~~ reasonably requested by the Company.

5. Inventions. Any and all inventions, discoveries, developments and innovations conceived by the Contractor during this engagement relative to the duties under this Agreement shall be the exclusive property of the Company; and the Contractor hereby assigns all right, title, and interest in the same to the Company. Any and all inventions, discoveries, developments and innovations conceived by the Contractor prior to the term of this Agreement and utilized by him or her in rendering duties to the Company are hereby licensed to the Company for use in its operations and for an infinite duration. This license is non-exclusive, and may be assigned without the Contractor's prior written approval by the Company to a wholly owned subsidiary of the Company.

6. Confidentiality. The Contractor acknowledges that during the engagement he or she will have access to and become acquainted with various trade secrets, inventions,

innovations, processes, information, records and specifications owned or licensed by the Company and/or used by the Company in connection with the operation of its business including, without limitation, the Company's business and product processes, methods, customer lists, accounts and procedures. The Contractor agrees that he or she will not disclose any of the aforesaid, directly or indirectly, or use any of them in any manner, either during the term of this Agreement or at any time thereafter, except as required in the course of this engagement with the Company. All files, records, documents, blueprints, specifications, information, letters, notes, media lists, ~~original artwork/creative, notebooks, and similar items relating to the business~~ of the Company, whether prepared by the Contractor or otherwise coming into his or her possession, shall remain the exclusive property of the Company. The Contractor shall not retain any copies of the foregoing without the Company's prior written permission. Upon the expiration or earlier termination of this Agreement, or whenever requested by the Company, the Contractor shall immediately deliver to the Company all such files, records, documents, specifications, information, and other items in his or her possession or under his or her control. The Contractor further agrees that he or she will not disclose his or her retention as an independent contractor or the terms of this Agreement to any person without the prior written consent of the Company and shall at all times preserve the confidential nature of his or her relationship to the Company and of the services hereunder.

7. Conflicts of Interest; Non-hire Provision. The Contractor represents that he or she is free to enter into this Agreement, and that this engagement does not violate the terms of any agreement between the Contractor and any third party. Further, the Contractor, in rendering his or her duties shall not utilize any invention, discovery, development, improvement, innovation, or trade secret in which he or she does not have a proprietary interest. During the term of this agreement, the Contractor shall devote as much of his or her productive time, energy and abilities to the performance of his or her duties hereunder as is necessary to perform the required duties in a timely and productive manner. The Contractor is expressly free to perform services for other parties while performing services for the Company. For a period of six months following any termination, the Contractor shall not, directly or indirectly hire, solicit, or encourage to leave the Company's employment, any employee, consultant, or contractor of the Company or hire any such employee, consultant, or contractor who has left the Company's employment or contractual engagement within one year of such employment or engagement.

8. Right to Injunction. The parties hereto acknowledge that the services to be rendered by the Contractor under this Agreement and the rights and privileges granted to the Company under the Agreement are of a special, unique, unusual, and extraordinary character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in any action at law, and the breach by the Contractor of any of the provisions of this Agreement will cause the Company irreparable injury and damage. The Contractor expressly agrees that the Company shall be entitled to injunctive and other equitable relief in the event of, or to prevent, a breach of any provision of this Agreement by the Contractor. Resort to such

FD000021

equitable relief, however, shall not be construed to be a waiver of any other rights or remedies that the Company may have for damages or otherwise. The various rights and remedies of the Company under this Agreement or otherwise shall be construed to be cumulative, and not one of them shall be exclusive of any other or of any right or remedy allowed by law.

9. Merger. This Agreement shall not be terminated by the merger or consolidation of the Company into or with any other entity.

10. Termination. The Company may terminate this Agreement at any time by written notice to the Contractor. In addition, if the Contractor is convicted of any crime or offense, fails or refuses to comply with the written policies or reasonable directive of the Company, is guilty of serious misconduct in connection with performance hereunder, or materially breaches provisions of this Agreement, the Company at any time may terminate the engagement of the Contractor immediately and without prior written notice to the Contractor.

11. Independent Contractor. This Agreement shall not render the Contractor an employee, partner, agent of, or joint venture with the Company for any purpose. The Contractor is and will remain an independent contractor in his or her relationship to the Company. The Company shall not be responsible for withholding taxes with respect to the Contractor's compensation hereunder. The Contractor shall have no claim against the Company hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

12. Insurance. The Contractor will carry liability car insurance relative to any service that he or she performs for the Company.

13. Successors and Assigns. All of the provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, if any, successors, and assigns.

14. Choice of Law. The laws of the state of NEW YORK shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties hereto.

15. Arbitration. Any controversies arising out of the terms of this Agreement or its interpretation shall be settled in NEW YORK in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof.

16. Headings. Section headings are not to be considered a part of this Agreement and are not intended to be a full and accurate description of the contents hereof.

FD000022

17. Waiver.  Waiver by one party hereto of breach of any provision of this Agreement by the other shall not operate or be construed as a continuing waiver.

18. Assignment.  The Contractor shall not assign any of his or her rights under this Agreement, or delegate the performance of any of his or her duties hereunder, without the prior written consent of the Company.

19. Notices.  Any and all notices, demands, or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested  If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service.  If such notice, demand or other communication is given by mail, such notice shall be conclusively deemed given five days after deposit thereof in the United States mail addressed to the party to whom such notice, demand or other communication is to be given as follows:

        If to the Contractor:


        If to the Company:  Late Night Express Courier Service, Inc.
                            3327 NW 7Th Ave.
                            Miami, FL 33127

Any party hereto may change its address for purposes of this paragraph by written notice given in the manner provided above.

20. Modification or Amendment.  No amendment, change or modification of this Agreement shall be valid unless in writing signed by the parties hereto.

21. Entire Understanding.  This document and any exhibit attached constitute the entire understanding and agreement of the parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect.

22. Unenforceability of Provisions.  If any provision of this Agreement, or any portion thereof, is held to be invalid and unenforceable, then the remainder of this Agreement shall nevertheless remain in full force and effect.

IN WITNESS WHEREOF the undersigned have executed this Agreement as of the day and year first written above.  The parties hereto agree that facsimile signatures shall be as effective as if originals.

SYED HUSSAIN
Late Night Express Courier Service, Inc.

Kenneth Chow

FD000023

By: _____     By: _____

Its: Regional Delivery Manager     Its: Driver

FD000024

## SCHEDULE A

### DUTIES, TERM, AND COMPENSATION

DUTIES:  The Contractor *will deliver all assigned cooler bags on the assigned route and pick up any and all empty cooler bags left by the Client. In addition, contractor may be required to pick up or return other related items such as and not limited to: keys, passes, and personal belongings left in cooler bags.*

He or she will report directly to *Regional Delivery Manager* and to any other party designated by *Late Night Express Courier Service, Inc.* in connection with the performance of the duties under this Agreement and shall fulfill any other duties reasonably requested by the Company and agreed to by the Contractor.

TERM:  This engagement shall commence upon execution of this Agreement and shall continue in full force and effect through *[date]* or earlier upon completion of the Contractor's duties under this Agreement. The Agreement may only be extended thereafter by mutual agreement, unless terminated earlier by operation of and in accordance with this Agreement.

COMPENSATION:

As full compensation for the services rendered pursuant to this Agreement, the Company shall pay the Contractor at the rate of *$0.53 per mile, $1.00 per stop* or a Flat rate of *$4.00* per stop for designated city routes. Such compensation shall be payable within 5 days of receipt of Contractor's weekly invoice for services rendered supported by reasonable documentation.

FEES:  Contractor will be fined $25.00 for at fault, missed deliveries. Fee will be deducted from Invoice.

FD000025