```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

------------------------------X
                              :
HERNANDEZ, et al,             :  12-CV-04339 (ALC)
                              :
            Plaintiffs.       :  October 15, 2013
       v.                     :
                              :  500 Pearl Street
THE FRESH DIET, INC., et al,  :  New York, New York
                              :
            Defendants.       :
                              :
------------------------------X

       TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY HEARING
            BEFORE THE HONORABLE JAMES L. COTT
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:        PETER J. ANDREWS, ESQ.
                           The Harman Firm PC
                           200 West 57th Street, Suite 900
                           New York, NY 10123


For the Defendants:        JEFFREY A. MEYER, ESQ.
                           YALE B. POLLACK, ESQ.
                           Kaufman, Dolowich, Voluck & Gonzo
                           135 Crossways Park Drive
                           Woodbury, NY 11797




Court Transcriber:         MARY GRECO
                           TypeWrite Word Processing Service
                           211 N. Milton Road
                           Saratoga Springs, NY 12866




Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

                                                                2

1            THE CLERK:  <u>Fresh Diet</u>.  Counsel, state your name for
2    the record.
3            MR. ANDREWS:  Peter Andrews from the Harman Firm for
4    the plaintiffs.  Good afternoon.
5            THE COURT:  Good afternoon, Mr. Andrews.
6            MR. MEYER:  Good afternoon, Your Honor.  Jeff Meyer
7    and Yale Pollack for the defendants.
8            THE COURT:  Good afternoon, gentlemen.  We're
9    starting 15 minutes late, Mr. Andrews, because you were on the
10   line.  Is that what I hear?
11           MR. ANDREWS:  That's correct, Your Honor.  I was at
12   500 Pearl Street at 2 o'clock but there's --
13           THE COURT:  The line took 45 minutes?
14           MR. ANDREWS:  It was a very long line, Your Honor.
15   It was moving very slowly.  Eventually they moved me to Worth
16   Street.
17           THE COURT:  Okay.  So gentlemen, fact discovery is
18   over.  What are we doing next in this case?
19           MR. ANDREWS:  Would you like to hear from me first,
20   Your Honor?
21           THE COURT:  You're the plaintiff's counsel, so yes, I
22   would.
23           MR. ANDREWS:  Yes, Your Honor.  We would like to have
24   a -- there's a scheduling order that's very old in this case.
25           THE COURT:  Yes, I have it, docket number 33.  I

1  looked at it today myself.
2          MR. ANDREWS:  Okay.  We would like to schedule -- we
3  would like to reach a briefing schedule for any dispositive
4  motions the defendants might wish to make.
5          THE COURT:  Are defendants contemplating a summary
6  judgment motion in this case?
7          MR. MEYER:  We are, Your Honor.
8          THE COURT:  You are?  And what's the basis of it?
9          MR. MEYER:  The basis is that they are -- the
10 plaintiffs are independent contractors and represent themselves
11 as independent contractors and treated themselves as
12 independent contractors.  Therefore, there's no overtime claim
13 that would apply to employees.
14         THE COURT:  And that's something that you think the
15 Court can resolve on papers as opposed to a fact finder
16 deciding it?  There aren't going to be issues of fact?
17         MR. MEYER:  Well, Your Honor, the issues of fact,
18 there are -- we've concluded depositions in this matter.
19         THE COURT:  Hallelujah.
20         MR. MEYER:  Well, let me condition that with there
21 are three plaintiff depositions that were noticed who have not
22 been -- who have not appeared, who were not produced, who have
23 not appeared.
24         THE COURT:  All right.  We'll come back to that.
25         MR. MEYER:  Okay.  A key element of our case, of our

1  summary judgment motion would be there is a case, eastern
2  district case, Judge Spatt, <u>Ceva Freight</u> I believe it is, which
3  addresses very similar issues of this case, almost directly on
4  point factually.  And there are a number of factors under which
5  Judge Spatt held the plaintiffs to be independent contractors
6  and dismissed -- granted defendant's summary judgment motion.
7           THE COURT:  I think you cited that case to me
8  somewhere along the way.
9           MR. MEYER:  I think in our settlement conference we
10 probably did.  One of the key elements of that are the tax
11 returns, the manner in which the plaintiffs represented their
12 earnings as non-employee compensation under I think it's Table
13 2 or Table C of their tax returns, and certain line items.
14 We've demanded those documents not only in our initial
15 discovery but in followup conversations with plaintiff counsel,
16 as well as at their depositions.  They have not been produced.
17 Those --
18          THE COURT:  How come you didn't write me a letter?
19          MR. MEYER:  This occurred the end of last week
20 towards --
21          THE COURT:  It didn't occur at the end of last week
22 if you included it in your document demands whenever you served
23 that.
24          MR. MEYER:  After the conclusion of the depositions
25 we filed a supplemental document request just outlining all the

5

1  documents from the depositions that we requested and we were
2  informed by plaintiff's counsel that even though it was served
3  within the time of discovery that discovery had ended actually
4  back on September 25th, which based upon the Court's order, I
5  don't believe is true.  And these were documents that came up
6  during the course of each plaintiff's deposition which they did
7  not object to previously during the document production, but
8  only produced certain documents and not the tax returns, 1099
9  forms.
10             THE COURT:  It's never easy in this case, is it?
11             MR. MEYER:  I'm sorry, Your Honor?
12             THE COURT:  It's never easy in this case, is it?
13             MR. MEYER:  We wish it could be.
14             THE COURT:  I thought we were just going to talk
15  about a summary judgment motion and now you're telling me
16  there's all this residual discovery still to be resolved.
17             MR. MEYER:  The very number, a finite number of
18  documents which --
19             THE COURT:  And discovery was closed last week and it
20  was reopened essentially, or extended further for a limited
21  purpose, not so that you could be making post fact discovery
22  motions to compel which is what it sounds like you're talking
23  about now.  Where have you been with respect to these tax
24  returns if you've contemplated this motion which I know you
25  have for months now?

                                                                6

1            MR. MEYER:  We requested them originally.  Every time
2    we spoke with plaintiff's counsel, we'd ask for them.  We asked
3    for them again at the depositions when the issue came up.
4    There was no objection made to their production.  We further
5    demanded their production at each individual's deposition.
6    Some said they didn't have them, which is fine.  But for those
7    that do, we've requested their production again.  There was no
8    objection at the depositions.
9            THE COURT:  All right.  Is there now an objection?
10           MR. ANDREWS:  Yes, there is an objection, Your Honor.
11   As Mr. Meyer said, first of all, many of our clients do not
12   have tax returns.
13           THE COURT:  Can't produce something you don't have.
14   He understands that.  What about the ones who have them?
15           MR. ANDREWS:  For the ones that may have them, we do
16   not think they are relevant to the issue of Mr. Meyer's
17   contemplated summary --
18           THE COURT:  Did Judge Spatt make reference in his
19   written decision to tax returns of plaintiffs in his case?
20           MR. MEYER:  Very specifically, almost as a
21   dispositive issue in that case.
22           THE COURT:  How are you going to get past that?
23           MR. ANDREWS:  How am I going to get past that?
24           THE COURT:  Yes.
25           MR. ANDREWS:  Your Honor, if the Court so orders, we

7

1  will consult with our clients again.  Our clients have advised
2  us in many instances that they do not have these returns.
3              THE COURT:  Well, hold on.
4              MR. ANDREWS:  Yes, Your Honor.
5              THE COURT:  Let's be clear.
6              MR. ANDREWS:  Yes.
7              THE COURT:  If your clients don't have tax returns,
8  they can't produce them.
9              MR. ANDREWS:  That's correct.
10             THE COURT:  And Mr. Meyer understands that.  If your
11 clients have tax returns, unless you can cite me some legal
12 authority to suggest you shouldn't produce them, Mr. Meyer has
13 articulated to me that at least the critical case from his
14 standpoint that he's going to largely rely on in fact cites to
15 the tax returns of the employees as a basis for that court
16 finding that they were independent contractors and not
17 employees, and therefore not subject to the provisions of the
18 law that's applicable here.  It sounds to me like you're going
19 to have a hard road ahead of you, but I'm not going to pre-
20 judge it if you have legal authority, which I hope you would if
21 you are not producing it on some legal grounds.  That's all.
22 You're not being required to produce anything you don't have.
23 But if your clients have tax returns in their possession -- and
24 as far as I'm concerned, and I assume Mr. Meyer probably
25 wouldn't object to this, they could be redacted at least in

1  part if that was a concern.  You don't need their whole tax
2  return.
3           MR. MEYER:  There is specific information in the tax
4  return that we would deem critical to our motion.
5           THE COURT:  Right.
6           MR. MEYER:  Granted, not all of it, yes.
7           THE COURT:  Right.
8           MR. MEYER:  We would have to --
9           THE COURT:  You don't need their, you know, Schedule
10 Ds or whatever.
11          MR. MEYER:  Your Honor, we would be more than willing
12 to work with plaintiff's counsel on a proper confidentiality
13 order or a redaction checklist to work that out, as long as the
14 information that we deem critical, as cited by Judge Spatt, is
15 present.
16          THE COURT:  So I think, Mr. Andrews, what I would
17 suggest is you have a meet and confer on this very specifically
18 that Mr. Meyer will identify to you the specific aspects of the
19 returns of your clients who do in fact have tax returns that he
20 wants.  And unless you have some legal authority that you will
21 cite to him and eventually probably have to cite to me, I
22 suggest you work it out without further court intervention
23 because it sounds to me like it's going to be germane to the
24 motion that needs to be made.  Okay?
25          MR. ANDREWS:  We will certainly meet and confer

```
 1  promptly with defense counsel.
 2           THE COURT:  Okay.
 3           MR. MEYER:  I guess just to follow up with that, Your
 4  Honor, we'd be more than willing to also entertain a briefing
 5  schedule.  We can work with plaintiff's counsel on that.  What
 6  we would propose, and if obviously plaintiffs were amenable to
 7  that, would be now that we're down to a finite number of
 8  plaintiffs again, possibly with the dismissal of three of the
 9  claims for people who didn't appear for depositions, to have a
10  second go around with the settlement conference prior to the
11  actual motions in order to cut down on costs and fees across
12  the board.
13           THE COURT:  Well, let's take this one step at a time.
14  First of all, the summary judgment motion in the case is going
15  to be before Judge Carter --
16           MR. MEYER:  Right.
17           THE COURT:  -- because it's a dispositive motion.
18  Number two, Judge Carter has a pre-motion conference
19  requirement, so any schedule for the motion is one that I
20  assume he will set after you see him for a pre-motion
21  conference.
22           MR. MEYER:  Fair enough.
23           THE COURT:  So it seems to me you should sort out
24  this tax return issue.  Once you've done that, write him a
25  letter and say you want a pre-motion conference to schedule the
```

1  summary judgment motion you're contemplating.  And then if you
2  want to, but it takes two to tango and we've already done this
3  once, so I don't want to do it unless the parties are really
4  interested, you know, you could schedule potentially a
5  settlement conference in that window between when you have your
6  pre-motion conference with Judge Carter and when you schedule
7  briefing itself.  So you know, if you see him November 1st and
8  you schedule your opening brief for December 1st, you see me
9  sometime in November, like that, if you wanted to do it that
10 way.
11          MR. MEYER:  We'd be amenable to that.
12          THE COURT:  Okay.  Mr. Andrews, your clients, many of
13 them came the last time and I met with them and they seem as a
14 group singularly uninterested in settlement.  And certainly, if
15 they're not interested, that's their absolute right, and we're
16 certainly not going to reconvene if it's an exercise in
17 futility or an academic exercise.  So do you have any further
18 thought about whether your clients, given the current posture
19 of the case in which discovery is now over, no class was
20 certified and a summary judgment is in the offing on
21 independent contractor grounds where in theory anyway if Judge
22 Carter granted the motion the case would be over and they would
23 walk away with nothing, your clients would want to have another
24 settlement conference?  Or is it something you think they're
25 not interested in doing?

```
                                                            11
1             MR. ANDREWS:  I think they may be interested in doing
2    it.  I would have to consult with them.  I would not want to
3    schedule another repeat of what we had the last time where we
4    spent hours and hours here.  People took time off from work and
5    unfortunately very little was accomplished.  I think that's
6    something I would have to discuss with my clients before
7    committing to a settlement conference.
8             THE COURT:  That's fine.  That's totally fair.  I
9    would expect you to want to do that.  But let's set some time
10   lines here so that we can figure out what's going to go on.  So
11   I want you all to have a meet and confer by Friday on this tax
12   issue and get it resolved.  Assuming you get it resolved by
13   Friday, then Mr. Andrews, I want you to make whatever
14   production there is to be made with respect to the returns
15   within ten days thereafter.
16            MR. ANDREWS:  Yes, Your Honor.
17            THE COURT:  Okay?  So I'll put some dates on that.
18            MR. MEYER:  Your Honor, if I could just add to that,
19   and we'll do this as part of the meet and confer, there were a
20   handful, literally a handful of documents raised during the
21   depositions over the last couple of weeks.
22            THE COURT:  Okay.  So enfold that into your meet and
23   confer.
24            MR. MEYER:  We'll address all those issues.
25            THE COURT:  So I want you to have a meet and confer
```

12

1 by the 18th and with respect to these outstanding discovery
2 requests, document requests, and in particular the tax returns.
3 But if there are other stragglers, then you can feel free to
4 raise those as well.  I'm going to assume you're going to work
5 that out.  If you don't work it out for some reason and you
6 need my intervention, then write me a letter no longer than two
7 pages.  Okay?  And send it to me the following week and I'll
8 try, although I am, to be candid with you, swamped at the
9 moment, I will try my best to issue a short order either
10 granting it or denying it as the case may be so that that will
11 be clear as to where we stand on that.  And let me just, you
12 know, double back to say, Mr. Andrews, that what I'm expecting
13 in the meet and confer is that the parties are going to work
14 out some redaction of tax returns so that your clients don't
15 feel like they're, you know, sharing their entire financial
16 life story with the defendants, but that the defendants are
17 interested in very specific information that they think will
18 enhance their ability to make this motion.  That's what I
19 contemplate the parties working out.  And it doesn't sound to
20 me like Mr. Meyer is trying overreach, if you will.
21          All right.  So I'm going to assume that you've had a
22 meet and confer by the 18th and I'm going to assume that you've
23 worked it all out and that production has occurred let's say by
24 the end of October.  Okay?  October 31st I'll expect any further
25 and final document production, redacted tax returns, and any

1 other stragglers to be made.

2      Now, I assume also in that intervening period between
3 now and the 31st you're going to write Judge Carter a letter in
4 which you're going to seek a pre-motion conference and that
5 he's going to see you sometime in the early part of November.
6 And then what I would suggest you do is that you build into the
7 schedule that you're going to propose to him a window for
8 settlement of sometime let's say between the 15th and 30th of
9 November, keeping in mind that the 28th is Thanksgiving.  So it
10 probably realistically wouldn't be the week of the 25th.  We'd
11 either fit you in the week of the 18th if we could, or perhaps
12 the week of the 2nd of December.  That's I think realistically,
13 given Mr. Andrews would have to mobilize his plaintiffs again,
14 assuming that they wanted to come as a group again.  And so you
15 can plan on that.  As I remember the last time we had a
16 settlement conference, we did it on all of five days notice, so
17 hopefully we can do it on a longer period of time than that.

18      But if there's going to be a settlement conference, I
19 assume it would be either the week of the 18th of November, or
20 the week of the 2nd of December.  And you can be in touch with
21 my chambers once you've worked on some mutually convenient
22 dates.  And then you'll otherwise proceed with summary judgment
23 before Judge Carter either without a settlement conference if
24 Mr. Andrews' clients are not interested in coming back, or if
25 we have a settlement conference and the case doesn't settle,

14

1  then you'll otherwise have a schedule in place with Judge
2  Carter and you'll go forward and litigate.  That make sense?
3          MR. MEYER:  Very good.
4          MR. ANDREWS:  Yes, Your Honor.
5          THE COURT:  Okay.  So anything else that you want to
6  attend to today?  I know, Mr. Meyer, you said there were three
7  plaintiffs who weren't produced for deposition or didn't show
8  up?
9          MR. MEYER:  That's correct.  Mr. Perez, Delarosa, and
10 Brian White.
11         THE COURT:  What's the story with them, Mr. Andrews?
12         MR. ANDREWS:  Your Honor, the story is a very simple
13 one.  The first time the defendants in this case noticed
14 depositions was on August 28th.  On August 28th they issued ten
15 notices of deposition.  I've been scrambling since that time to
16 produce as many witnesses as possible.  I have produced seven.
17 With respect to the other three, two of them are non-English
18 speaking persons.  One of them, Mr. Delarosa, is available to
19 be deposed.  We know that discovery has ended.  Mr. White is
20 disabled and is available to be deposed telephonically.  And
21 Mr. Perez, unfortunately our office has not been able to
22 establish regular contact with.  So that's the story with
23 respect to those people.
24         So to give a short answer, between August 28th and
25 today we've been trying to produce as many --

15

1   THE COURT: Let's say this. Between now and the 31st
2   of October you should make Mr. -- was it Delarosa?
3   MR. ANDREWS: Delarosa.
4   THE COURT: Available in person.
5   MR. ANDREWS: Yes.
6   THE COURT: And you should make Mr. White available
7   either for a telephonic deposition or Skype deposition, however
8   you want to proceed. And as to Mr. Perez, you all will take
9   whatever action you need to. Either he's going to get
10  dismissed if you're not in contact with him or otherwise. But
11  since there are multiple plaintiffs here, I don't think we need
12  to worry about one individual plaintiff in the posture we're in
13  at the moment. We can deal with that in due course.
14  Obviously, if his deposition cannot be made available to the
15  defendants, then he has to understand that's at his peril, if
16  you will.
17  MR. ANDREWS: Absolutely, Your Honor.
18  THE COURT: Consequences to follow as necessary.
19  MR. ANDREWS: We always advise our plaintiffs of
20  that.
21  THE COURT: Okay. So if you want to take those
22  depositions, Mr. Meyer, take them by the end of the month.
23  MR. MEYER: Very good. Thank you, Your Honor.
24  THE COURT: Okay. Anything else, Mr. Andrews?
25  MR. ANDREWS: I don't have anything else, no.

```
                                                                16
 1            THE COURT:  Mr. Meyer, anything else?
 2            MR. MEYER:  Nothing further, Your Honor.
 3            THE COURT:  Okay, gentlemen, maybe I'll see you in
 4   November, maybe not.
 5            MR. ANDREWS:  Oh, Your Honor?
 6            THE COURT:  Yes, sir?
 7            MR. ANDREWS:  I'm sorry, I did want to apologize.  I
 8   misunderstood.  The order did say the conference was for 2:30.
 9            THE COURT:  It did.
10            MR. ANDREWS:  So I came at around 2:45, so I
11   apologize.
12            THE COURT:  Noted.
13            MR. ANDREWS:  Thank you.
14            THE COURT:  Accepted.
15            MR. ANDREWS:  Thank you.
16            THE COURT:  All right.  Have a good day everybody.
17            MR. MEYER:  Thank you, Your Honor.
18                         * * * * *
19
20
21
22
23
24
25
```

```
                                                                    17
 1       I certify that the foregoing is a court transcript from an
 2   electronic sound recording of the proceedings in the above-
 3   entitled matter.
 4
 5                                    _____
 6                                          Mary Greco
 7   Dated:  October 18, 2013
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```