**MEMO ENDORSED**



**KAUFMAN DOLOWICH VOLUCK**
ATTORNEYS AT LAW

Yale Pollack, Esq.
ypollack@kdvlaw.com

[SDNY ECF stamp: ELECTRONICALLY FILED, DATE FILED: 12-5-13]

Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797

Telephone: 516.681.1100
Facsimile: 516.681.1101
www.kdvlaw.com

November 22, 2013

**VIA ELECTRONIC MAIL (ALCarterNYSDChambers@nysd.uscourts.gov)**
The Honorable Andrew L. Carter, U.S.D.J.
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 17C
New York, New York 10007-1312

      Re:   *Hernandez, et al. v. The Fresh Diet, Inc., et al.*
            **12 Civ. 4339 (ALC) (JLC)**

Dear Judge Carter:

     This office represents the Defendants in the above-referenced matter. Pursuant to Your Honor's Individual Practices, we write this letter seeking a pre-motion conference for permission to file motions: (a) for summary judgment pursuant to Fed. R. Civ. P. 56; and (b) to decertify the collective action.

**A.**   **Factual and Procedural Background**

     By way of brief background, Plaintiffs were drivers for Late Night Express Courier Services, Inc. ("Late Night") in the Tri-State area. Plaintiffs were hired as independent contractors by Late Night Express to deliver meals prepared by The Fresh Diet, Inc. ("Fresh Diet"). Fresh Diet cooks freshly prepared meals for its customers, and offers them the option to receive either daily or weekly meal plans. The meals are then delivered to the customers in temperature controlled bags so that they are waiting for them at their residence.

     The drivers would pick up the meals bags from the Fresh Diet's facility in Brooklyn. The drivers would then drop off the meal bags and pick them up from customers on their delivery route. All deliveries are expected to be completed by 5:00 a.m. Fresh Diet is open six days a week (closed on Saturdays). Compensation for the drivers is based on the number of drop-offs and/or mileages of their routes, which varied depending on whether they worked in or outside of New York City.

     Plaintiffs filed their class action and collective action Complaint on June 1, 2012, which was amended on October 26, 2012. *ECF Nos. 1 and 46*. In Plaintiffs' Complaint, they allege claims under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), New Jersey Wage and Hour Law, and Connecticut Wage and Hour Law. Each of Plaintiffs' claims are premised on their contention that they were misclassified as independent contractors performing delivery services for Defendants and, therefore, should have been paid overtime under federal and state law.[1]

---

[1] As the Court may recall, at the outset of this action, Plaintiffs Hernandez and Guzman filed an order to show cause seeking reinstatement claiming that they were retaliated against for filing the Complaint, which motion was denied. Plaintiffs' Complaint, however, does not contain any retaliation claims.

The Honorable Andrew L. Carter
November 22, 2013

On or about November 21, 2012, the Court issued an Order to disseminate notice to putative collective action members no later than November 30, 2012. *ECF No. 50.* Ultimately, the deadline for putative collective action members to opt-in the action was February 19, 2013. *ECF No. 60.* There are twenty-nine Plaintiffs that are now part of this action. On August 16, 2013, the Court issued an Order denying Plaintiffs' motion for preliminary class certification. *ECF No. 108.* Discovery in the action was closed on October 11, 2013.[2] *ECF No. 110.*

**B.   Basis for Defendants' Motions**

As discussed above, the crux of Plaintiffs' claims in the Complaint is that they were "employees" of Defendants, and not independent contractors. However, now that discovery is complete, there are no issues of fact that Plaintiffs were properly classified as independent contractors, as a matter of law, and the Complaint should be dismissed.

The facts of this case are very similar to those in the case of Browning v. Ceva Freight, LLC, 885 F. Supp.2d 590 (E.D.N.Y. 2012), a case in which Judge Spatt granted summary judgment to the defendants on the same misclassification issue at bar in this action. In Browning, the plaintiffs were drivers who performed pick-ups and drop offs for the defendants. Judge Spatt analyzed the factors under both the FLSA and NYLL and found that the drivers were properly classified as independent contractors under both statutes. This conclusion was found despite the fact that the drivers in Browning were required to: (1) cover their vehicles with the defendant's logo; (2) wear the defendant's uniforms while working; (3) work within the parameters of the schedule provided to them by the dispatcher and follow the decisions by the dispatcher; (4) remain in constant contact with the defendants by using a cellular device tied to the defendants' computer system; and (5) attend monthly meetings.

At bar, similar to Browning, based on the totality of the circumstances, Plaintiffs were properly classified as independent contractors under the FLSA's economic realities test because:
(1) Late Night had a limited degree of control over the drivers; (2) the drivers used their own vehicles and all of their own tools and supplies to perform their deliveries (including maintaining their own insurance and expenses for the vehicles); (3) the tasks performed by the drivers required a degree of skill based on their driving and business management skills; (4) the duration of the relationship between the parties was terminable at any time by either party; and (5) while their services were integral to Defendants' operations, they were easily replaceable by other drivers to perform the tasks.

As well, under the NYLL control test, discovery has confirmed that Plaintiffs were properly classified as independent contractors as they: (1) worked at their own convenience and it was reasonable for Late Night to require deliveries within a certain time frame based on the nature of Fresh Diet's business; (2) were free to engage in any other employment for other companies; (3) did not receive fringe benefits; (4) were not on Defendants' payroll; and (5) were not on a fixed schedule.

---

[2] At a status conference held before Magistrate Cott on October 16, 2013, at which time he granted a limited extension of time for Plaintiffs to produce outstanding documents, which was further adjourned until December 4, 2013 during a telephone conference held on November 18, 2013. *ECF Nos. 111 and 119.*

The Honorable Andrew L. Carter
November 22, 2013

  Of importance, the courts analyzing misclassification cases have held that "significant consideration" is to be given with regard to how individuals treat themselves for tax purposes. As noted in <u>Browning</u>:

> Indeed, though not quite rising to the level of estoppel, if a plaintiff signs a tax return "under penalty of perjury" that declares independent contractor status and seeks "numerous deductions for business purposes associated with independent contractor status, such as travel, entertainment, lodging, supplies, telephone and depreciation of business assets," such a tax return may significantly impede the plaintiff's ability to claim employee status for purposes of filing an overtime or minimum wage claim.

<u>Id.</u> at 605 (*quoting* <u>Deboissiere v. Am. Modification Agency</u>, 09-CV-2316 JS MLO, 2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010)).

  While the plaintiffs in <u>Browning</u> filed tax returns claiming themselves as independent contractors for tax purposes, in this action, almost each Plaintiff deposed testified that they never filed tax returns declaring the income they received from Defendants.[3] This factor (along with the others set forth above) clearly weighs heavily in determining that Plaintiffs were properly classified by Defendants as independent contractors.

  Finally, now that discovery is complete, Plaintiffs have not satisfied the more "stringent standard" of proof in determining that they are similarly situated so that decertification of the collective action is warranted.

  Based on the foregoing, Defendants respectfully request that they be permitted to proceed on their motion for summary judgment and to decertify the collective action.

  Thank you for your time and consideration.

Respectfully submitted,
Kaufman Dolowich & Voluck, LLP

Yale Pollack

cc: Walker Harman, Esq. (wharman@theharmanfirm.com)
   Peter Andrews, Esq. (pandrews@theharmanfirm.com)

ND: 4836-0069-6855, v. 1

*[Handwritten order:]* In lieu of a pre-motion conference, the Court sets the following briefing schedule for Defendants' motion for summary judgment: Defendants' motion due January 10, 2014. Plaintiffs' opposition due January 31, 2014. Defendants' reply due February 14, 2014. SO ORDERED. [signature] 12-5-13

---

[3] One of the outstanding discovery disputes raised with Magistrate Cott during the most recent court conference was Plaintiffs' failure to produce their tax returns. While most Plaintiffs who were deposed stated that they did not file tax returns, some said that they did. Plaintiffs' counsel was given until December 4, 2013 to produce all outstanding documents, including tax returns, which are relevant to show how those Plaintiffs who did file tax returns treated themselves for tax purposes.

# THE HARMAN FIRM, PC
### ATTORNEYS & COUNSELORS AT LAW

200 WEST 57th STREET, SUITE 900, NEW YORK, NEW YORK 10019

TELEPHONE 212 425 2600   FAX 212 202 3926

WWW.THEHARMANFIRM.COM

November 27, 2013

**VIA ECF**
Hon. Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, New York 10007

    Re:    *Hernandez v. The Fresh Diet*
             12 CV 4339 (ALC)(JLC)

Dear Judge Carter:

    We represent the Plaintiffs in the above-referenced wage-and-hour matter involving claims under both the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL").

    We are writing in response to Defendants November 22, 2013 pre-motion conference letter (Docket Entry 120). In that letter, Defendants state that they intend to move for summary judgment on the purported grounds that Plaintiffs, who are current and former food delivery personnel, distributing Defendants' prepared meals to Defendants' customers in the Tri-State Metropolitan Region on a nightly basis, were, as a matter of law, independent contractors. Defendants therefore claim that Plaintiffs' Complaint for wage-and-hour violations should be dismissed. Defendants also indicate that they intend to seek decertification of this collective action under the FLSA. Plaintiffs strongly oppose both intended motions.

    Defendants have taken the depositions of eight (8) Plaintiffs, each of whom is a current or former meal deliverer, and Plaintiffs have taken the depositions of three (3) individually named Defendants. This deposition discovery clearly establishes that, at the very least, significant material disputes of fact exist that would make it impossible for Defendants to meet the standards for the relief they now seek via pre-trial motion practice.

    The founder of Defendant The Fresh Diet, which is the lead corporate Defendant is Defendant Zalmi Duchman (A.K.A. Scher Zalman Duchman). Defendant Duchman testified that he personally created a second company (*i.e.* Late Night Express) for the sole purpose of using it as a channel for hiring and compensating the food delivery employees. Mr. Duchman testified that he was at all relevant times the sole owner of Late Night Express, and that Late Night Express had no function other than to serve as the delivery arm of Defendant Duchman's food preparation and distribution business—Defendant The Fresh Diet.

    The various Plaintiffs who were deposed testified that they worked for Defendant The Fresh Diet/Late Night Express under the supervision, direction, and control of their managers and supervisors, who provided them with their assignments and specific instructions as to how to

Courtesy Copy
Original Filed by ECF

Hon. Andrew L. Carter, Jr.                                                                                 Page 2 of 3
November 27, 2013

complete them. Several Plaintiffs testified that they were provided with ID cards from Defendant The Fresh Diet, or hats, car magnets, bags and other materials with its corporate logo and which identified Plaintiffs to the public as personnel of Defendant The Fresh Diet.

Indeed, The Fresh Diet's current website, which has been changed since this lawsuit was initiated, still states, *inter alia*:

> Fresh Diet's goal is to deliver the freshest prepared gourmet meals daily to your home. To accomplish this ***we have developed a meal preparation and driver delivery service that is highly sophisticated.*** We have a very strong, dedicated management team and drivers who are extremely committed to your health and well-being. Most of the time, our delivery operation runs smoothly.

Emphasis added.

Defendant Syed Hussain, of Defendant The Fresh Diet/Late Night Express's New York area logistics or delivery manager, and the individual directly responsible for supervising the meal delivery personnel, testified that any driver who failed to meet the company's expectations would find himself no longer delivering food for Defendant The Fresh Diet.

Defendant Hussain testified that he was given pre-drafted, pre-printed "contracts" which he himself had no ability to negotiate, alter or redraft. New meal deliverers hired by Defendant Hussain were required to sign these "contracts" in order to deliver food. These "contracts" stated that drivers had to follow all instructions, and would be "fined" for errors or lapses when making meal deliveries.

The overwhelming majority of Plaintiffs deposed testified that they worked for Defendant The Fresh Diet/Late Night Express on a full-time basis, that the hours were long, and that they were continuously under the supervision, direction, and control of Defendant The Fresh Diet/Late Night Express's management, and in particular, Defendant Hussain. They typically had to remain in contact with him before, during, and after their routes each night that they worked, and were subject to his directives and disciplinary decisions. All Plaintiffs were heavily dependent on their jobs as the primarily means of financially supporting themselves and their families.

The work of the various meal deliverers was completely standardized, and required little or no skill other than the ability to drive a car to various addresses within the Tri-State Metropolitan Region and to complete assigned deliveries. In fact, a significant number of the Plaintiffs are immigrants from developing countries, some of whom have limited English-language proficiency (two (2) deponents required translators). In short, there were no educational prerequisites to delivering meals for Defendant The Fresh Diet/Late Night Express. The work at issue involved showing up the a central meal preparation facility, receiving a list or route, obtaining the meals from a kitchen area, placing the meal bags in a car, and driving the car to various addresses throughout a given evening/night, dropping off meal bags at customer locations, and then returning at the end of the route to return empty bags and report to management.

Hon. Andrew L. Carter, Jr.  Page 3 of 3
November 27, 2013

It is therefore inconceivable that Defendants have any chance of prevailing on a pre-trial motion for summary judgment seeking a finding that the meal delivers were independent contractors, each purportedly running their own business, doing work at their own convenience, in the time and manner of their choosing, with a specialized skillset. In fact, we believe that any argument along these lines is frivolous.

In a very recent decision, District Judge Paul A. Engelmayer denied a defense motion for summary judgment on the independent contractor issue in an FLSA/NYLL. *Hart v. Rick's Cabaret Int'l*, 2013 WL 4822199, 09 CV 3043 (PAE) (S.D.N.Y. Sept. 10, 2013). Judge Engelmayer explained:

> The Second Circuit has adopted an "economic realities" test to determine whether an individual is an employee or an independent contractor for FLSA purposes. The factors considered include ... (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.
>
> No factor is dispositive: "[R]ather, the test is based on a totality of the circumstances" analysis, with the ultimate question being whether the "workers depend upon someone else's business for the opportunity to render service or are in business for themselves...." That an employer does not exercise control continuously or consistently "does not diminish the significance of its existence."

*Hart* at *5 (citations omitted).

We further note that Defendants have attempted to turn the availability of the individual Plaintiffs' income tax returns into a pivotal one. In fact, in *Hart*, Judge Engelmayer expressly stated that whether someone is an employee under the NYLL or the FLSA, "it is not significant how the parties defined the employment relationship or how the worker identified [themself] on tax forms." *Id.* at *17.

For these reasons, and many others, we consider Defendants' proposed motions completely non-meritorious and Plaintiffs respectfully intend to vigorously oppose them.

    Respectfully submitted,
    THE HARMAN FIRM, PC

    ____s/____
    Walker G. Harman, Jr. [WH-8044]


cc:    Hon. Andrew L. Carter, Jr. (via email)
       Yale Pollack, Esq. (via ECF and email)
       Jeffrey A. Meyer, Esq. (via ECF and email)
       Peter J. Andrews, Esq. (via ECF and email)

Courtesy Copy
Original Filed by ECF