**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
FERNANDO HERNANDEZ, KENNETH CHOW,
BRYANT WHITE, DAVID WILLIAMS,
MARQUIS ACKLIN, CECILIA JACKSON,
TERESA JACKSON, MICHAEL LATTIMORE
and JUANY GUZMAN, Each Individually, And On Behalf Of
All Other Persons Similarly Situated,

                        *Plaintiffs*,                           **12 CV 4339 (ALC)(JLC)**

        -against-

THE FRESH DIET INC.,
LATE NIGHT EXPRESS COURIER SERVICES, INC. (FL),
FRESH DIET EXPRESS CORP. (NY),
THE FRESH DIET - NY INC. (NY),
FRESH DIET GRAB & GO, INC. (FL) a/k/a
YS CATERING HOLDINGS, INC. (FL) d/b/a
YS CATERING, INC. (FL),
FRESH DIET EXPRESS CORP. (FL),
SYED HUSSAIN, Individually,
JUDAH SCHLOSS, Individually,
and ZAIMI DUCHMAN, Individually

                        *Defendants*.

------------------------------------------------------------------------X

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56,**
**AND IN OPPOSITION TO THEIR MOTION FOR**
**DECERTIFICATION OF THE COLLECTIVE ACTION**

---

Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, P.C.
*Attorneys for Plaintiffs*
1776 Broadway, Suite 2030
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com

**Table of Contents**

Preliminary Statement ................................................................................................ 1

Relevant Procedural History ....................................................................................... 1

Statement of Facts ...................................................................................................... 2

Argument .................................................................................................................... 5

    I.   Defendants' Motion for Summary Judgment should be denied. ........................................ 6

        A.   Plaintiffs are misclassified under the FLSA. ............................................. 6

            1.   Defendants control Plaintiffs. ........................................................ 7

            2.   Plaintiffs make no formal investment and no opportunity for profit or loss. ............ 11

            3.   Plaintiffs' job requires minimal skill. .......................................... 12

            4.   Plaintiffs worked for Defendants for a long period; generally for several years. ....... 13

            5.   Plaintiffs services are integral to Defendants' business. ............................ 14

        B.   Plaintiffs are misclassified under the NYLL. .......................................... 14

            1.   Plaintiffs did not work at their own convenience; they worked on Defendants' fixed schedule. ................................................................................... 15

            2.   Plaintiffs did not have time to engage in other employment. .................................... 16

            3.   Plaintiffs were reimbursed for business expenses. ...................................... 16

    II.  Defendants' Motion for Decertification should be denied. ................................ 16

Conclusion ................................................................................................................ 17

## Table of Authorities

**Cases**

*Ansoumana v. Gristede's Operating Corp.*,
  255 F. Supp. 2d 184 (S.D.N.Y.2003) ................................................................. 14

*Brock v. Superior Care*,
  840 F.2d 1054 (2nd Cir. 1988) .......................................................................... 7

*Browning v. Ceva Freight, LLC*,
  885 F. Supp. 2d 590 (E.D.N.Y. 2012) ............................................. 11, 13, 14, 15

*Cardinale v. S. Homes of Polk Cnty.*,
  06 CV 1295, 2008 WL 788460 (M.D. Fla. Mar. 19, 2008) ............................. 8

*Carter v. Dutchess Cmty. Coll.*,
  735 F.2d 8 (2d Cir. 1984) ................................................................................. 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................................... 6

*Cifarelli v. Vill. of Babylon*,
  93 F.3d 47 (2d Cir. 1996) ................................................................................. 6

*Deboissiere v. Am. Mod. Agency*,
  09 CV 2316, 2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010) ............................. 14

*Gustafson v. Bell Atl. Corp.*,
  171 F. Supp. 2d 311, 324 (S.D.N.Y. 2001) ................................................. 6, 7

*Hart v. Rick's Cabaret Int'l*,
  09 CV 3043, 2013 WL 4822199 (Nov. 18, 2013) ........................................... 15

*Herman v. Express Sixty-Minutes Delivery Serv.*,
  161 F.3d 299 (5th Cir. 1998) ........................................................................... 11

*Hernandez v. Chefs Diet Delivery*,
  915 N.Y.S.2d 623 (2d Dep't 2011) .................................................................. 15

*Holtz v. Rockefeller & Co.*,
  258 F.3d 62 (2d Cir. 2001) ............................................................................... 6

*Hopkins v. Cornerstone Am.*,
  545 F.3d 388 5th Cir. 2008) ............................................................................. 13

*Indergit v. Rite Aid*,
  293 F.R.D. 632 (S.D.N.Y. 2013) ...................................................................... 16

*Lewis v. ASAP Land Express*,
  554 F. Supp. 2d 1217 (D. Kan. 2008) ............................................................. 8

*Molina v. S. Fla. Express Bankserv*,
  420 F. Supp. 2d 1276 (M.D. Fla. 2006) ................................................ 7, 11, 14

*Murphy v. ERA United Realty*,
  674 N.Y.S.2d 415 (2d Dep't 1998) .................................................................. 15

*Sakacsi v. Quicksilver Delivery Sys.*,
  06 CV 1297 (SCB)(MAP), 2007 WL 4218984 (M.D. Fla. Nov. 28, 2007) ..................... passim

*Swatch Grp. Mgmt. Servs v. Bloomberg*,
  12-2412-CV, 2014 WL 274407 (2d Cir. Jan. 27, 2014) ......................................................... 1

*United States v. Silk*,
  331 U.S. 704 (1947) ......................................................................................................... 6

*Usery v. Pilgrim Equip.*,
  527 F.2d 1308 (5th Cir. 1976) ......................................................................................... 7

*Velu v. Velucity Express*,
  666 F. Supp. 2d 300 (E.D.N.Y. 2009) ..................................................................... 10, 12

**Rules**

Fed. R. Civ. P. 56(c) ............................................................................................................ 6

**Preliminary Statement**

Defendants are a food delivery service. Plaintiffs are drivers who deliver Defendants'
meals to their customers. Through this lawsuit, Plaintiffs seek unpaid overtime compensation
under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

Defendants' Summary Judgment Motion should be denied, as Defendants have
unequivocally misclassified Plaintiffs as independent contractors. Plaintiffs are employees of
Defendants because they perform an integral part of Defendants' business; namely, delivering
meals to Defendants' clients. Plaintiffs work full-time for Defendants. Defendants' control all
aspects of Plaintiffs work, including disciplining them, creating and assigning their driving
schedules, and dictating the order in which deliveries are made. The case *Sakacsi v. Quicksilver
Delivery Sys.*, 06 CV 1297 (SCB)(MAP), 2007 WL 4218984 (M.D. Fla. Nov. 28, 2007),
discussed herein, strongly suggests that summary judgment should actually be granted to
**Plaintiffs**, *sua sponte*.[1]

Defendants' Motion for Decertification should similarly be denied. There are currently
29 Plaintiffs, and the class of similarly situated drivers is approximately 100. All drivers are
misclassified as independent contractors. All drivers were supervised by the same individual and
performed the same job functions. None are paid overtime compensation.

**Relevant Procedural History**

On June 1, 2012, Plaintiffs commenced this action.

On September 24, 2012, Plaintiffs filed a Motion for Preliminary Class Certification.

On October 26, 2012, Plaintiffs filed an Amended Complaint.

---

[1]     We identified this case while researching this opposition. We have sought leave from the
Court to file a cross-motion for summary judgment. However, the Court is empowered to grant
summary judgment *sua sponte* after discovery is completed. *See Swatch Grp. Mgmt. Servs v.
Bloomberg*, 12-2412-CV, 2014 WL 274407, at *4 (2d Cir. Jan. 27, 2014).

1

On November 19, 2012, Defendants filed their Answer to the Amended Complaint.

On November 21, 2012, this Court ordered that a notice be disseminated no later than November 30, 2012.

On December 4, 2012, this Court further ordered that opt-in notices be sent directly to the Clerk of Court.

On February 7, 2013, Plaintiffs moved for class certification, which was denied without prejudice on or about July 28, 2013.

Discovery closed on December 20, 2013.

### Statement of Facts

Defendants advertise as "the easiest way to have FRESH, nutritionally balanced, gourmet meals delivered to your door . . . ." (*Harman Decl., Ex. A*).  Defendants do not operate a retail store, which is what distinguishes it from a supermarket.  (*Harman Decl., Ex. A*).  Plaintiffs are drivers who deliver Defendants' meals to their clients.  (Rule 56.1 Statement, ¶ 3).

Plaintiffs are misclassified as independent contractors and not paid overtime compensation.  Although many Plaintiffs executed agreements with Defendant Late Night Express Courier Services, Inc. ("Late Night"), which purport to be independent contractor agreements, the terms of those agreements are boilerplate.  (Rule 56.1 Statement, ¶ 2; *Harman Decl., Ex. H*).  Plaintiffs are employees of Defendants.  Plaintiffs worked full time.  (*Harman Decl., Ex. K,* M. Acklin Tr. 70; *Harman Decl., Ex. L,* T. Jackson Tr. 28; *Harman Decl., Ex. C,* H. Fernandez Tr. 19, 29).  Plaintiff Juan Correa testified "we always had to be available for twenty-four hours."  (*Harman Decl., Ex. B,* J. Correa Tr. 55).

Defendants controlled all aspects of Plaintiffs' work including telling them in what order they had to make deliveries.  (*Harman Decl., Ex. B,* J. Correa Tr. 38).  Defendants would

2

discipline Plaintiffs, including by giving them shorter routes, which meant less pay. (*Harman Decl., Ex. C,* F. Hernandez Tr. 77). Plaintiffs were disciplined for filing this lawsuit. (*Harman Decl., Ex. B,* J. Guzman Tr. 30-33). Plaintiffs come to work each day for Defendants, receive company identification cards, and company uniforms. (*Harman Decl., Ex. E,* K. Chow. Tr. 38-39). Plaintiffs were in constant, real-time communication with Defendants throughout their deliveries. (*Harman Decl., Ex. E,* K. Chow Tr. 169; *Harman Decl., Ex. F,* S. Hussain Tr. 93). Defendants have policies and procedures that Plaintiffs were required to follow, which Defendants enforced. (*Harman Decl., Ex. G,* Y. Schlass Tr. 80-81; *Harman Decl., Ex. D,* J. Guzman Tr. 26-33).

An employee of the corporate Defendants, Defendant Syed Hussain, was the Delivery Manager for Late Night and oversaw deliveries, hired drivers, created routes, and assigned drivers routes. (Rule 56.1 Statement, ¶ 10). Mr. Hussain controlled all aspects of Plaintiffs' work. (*Harman Decl., Ex. B,* J. Correa Tr. 38). He oversaw all deliveries, including those to Boston, Washington, DC, Baltimore, and Philadelphia. (*Harman Decl., Ex. C,* F. Hernandez Tr. 20; *Harman Decl., Ex. J,* D. Williams Tr. 20-21). He was in constant contact with Plaintiffs while they made deliveries and would give them additional assignments. (*Harman Decl., Ex. B,* J. Correa Tr. 35-36; *Harman Decl., Ex. D,* J. Guzman Tr. 130-137; *Harman Decl., Ex. E,* K. Chow Tr. Pg. 169; *Harman Decl., Ex. F,* S. Hussain Tr. 141). He disciplined Plaintiffs and would threaten them with termination, withhold their pay, or change their routes. (*Harman Decl., Ex. K,* M. Acklin Tr. 54-55; *Harman Decl., Ex. E,* K. Chow Tr. 118, 129; *Harman Decl., Ex. D,* J. Guzman Tr. 82-85; 102-105; *Harman Decl., Ex. C,* F. Hernandez Tr. 77). Routes were not assigned based on driver preference; Mr. Hussain assigned them. (*Harman Decl., Ex. B,* J. Correa Tr. 28, 30-31; *Harman Decl., Ex. I,* D. DeLarosa Tr. 30). When Mr. Hussain was absent,

one of the Plaintiffs would perform his duties.  (*Harman Decl., Ex. J,* D. Williams Tr. 11-12). Plaintiffs requested time off from Mr. Hussain when they had personal issues or were sick. (*Harman Decl., Ex. D,* J. Guzman Tr. 46-51, 134-137; *Harman Decl., Ex. L,* T. Jackson Tr. 23-25).

Mr. Hussain told Plaintiffs in what order to make deliveries.  (*Harman Decl., Ex. B,* J. Correa Tr. 38).  If changes were made to the order of deliveries, Plaintiffs had to tell Mr. Hussain.  (*Harman Decl., Ex. L,* T. Jackson Tr. 92).  Plaintiffs had to return to the Defendants' facilities to hand in paperwork or Mr. Hussain would discipline them.  (*Harman Decl., Ex. L,* T. Jackson Tr. 47; *Harman Decl., Ex. D,* J. Guzman Tr. 62-65; *Harman Decl., Ex. E,* K. Chow Tr. 134).  Defendants would discipline Plaintiffs for failing to hand in paperwork, arriving late to pick up deliveries, or otherwise perform their duties.  (*Harman Decl., Ex. E,* K. Chow Tr. 118, 127; *Harman Decl., Ex. D,* J. Guzman Tr. 102-109; *Harman Decl., Ex. K,* M. Acklin Tr. 54-55). Any variations had to be condoned my Mr. Hussain.  (*Harman Decl., Ex. B,* J. Correa Tr. 41).

While making deliveries, Plaintiffs were permitted to take short breaks for gas, use of a restroom, or food.  (Rule 56.1 Statement, ¶ 16).  Breaks for food were not at restaurants but rather at convenience stores and drive-throughs.  (*Harman Decl., Ex. K,* M. Acklin Tr. 69).  At times, Plaintiffs were instructed by Defendants to make deliveries for other drivers.  (*Harman Decl., Ex. K,* M. Acklin Tr. 59).  At times, Plaintiffs made deliveries for other drivers without Defendants' knowledge, and when Defendants found out Plaintiffs were disciplined.  (*Harman Decl., Ex. E,* K. Chow Tr. 119-21).

Plaintiffs did not have time to keep outside jobs; they had to be available for Defendants at all times.  (*Harman Decl., Ex. B,* J. Correa Tr. 55).  Plaintiffs who had an outside job at the commencement of their employment with Defendants generally had to quit the outside job.

(*Harman Decl., Ex. K*, M. Acklin Tr. 70; *Harman Decl., Ex. L*, T. Jackson Tr. 28).   Plaintiffs were reimbursed for tolls.  (*Harman Decl., Ex. L*, T. Jackson Tr. 100; *Harman Decl., Ex. B*, J. Correa Tr. 49; *Harman Decl., Ex. J*, D. Williams 48-49; *Harman Decl., Ex. E*, K. Chow Tr. 155; *Harman Decl., Ex. F*, S. Hussain Tr. 208).

Plaintiffs were reimbursed for gasoline and were given roadside assistance.  (*Harman Decl., Ex. J*, D. Williams Tr. 48; *Harman Decl., Ex. K*, M. Acklin Tr. 68-69; *Harman Decl., Ex. E*, K. Chow Tr. 64; *Harman Decl., Ex. F*, S. Hussain Tr. 210-211).   Defendants gave credit cards to some Plaintiffs.  (*Harman Decl., Ex. F*, S. Hussain Tr. 211-212).   Defendants promised Plaintiffs roadside assistance, cell phones, bonuses and raises.  (*Harman Decl., Ex. E*, K. Chow Tr. 40).   Plaintiffs generally used their own cars.  (*Harman Decl., Ex. K*, M. Acklin Tr. 68; *Harman Decl., Ex. F*, S. Hussain Tr. 203-205; *Harman Decl., Ex. I*, D. DeLarosa Tr. 8).   Plaintiffs maintained insurance on their own vehicles.  (Rule 56.1 Statement, ¶ 24).   Defendants sometimes paid for vehicle repairs or maintenance of Plaintiffs' cars.  (*Harman Decl., Ex. F*, S. Hussain Tr. 207).   Plaintiffs generally worked for Defendants for a prolonged period; many for several years.  (*Harman Decl., Ex. C*, F. Hernandez Tr. 12, 73-75; *Harman Decl., Ex. E*, K. Chow Tr. 18, 69; *Harman Decl., Ex. K*, M. Acklin Tr. 19; *Harman Decl., Ex. I*, D. DeLarosa Tr. 12; *Harman Decl., Ex. B*, J. Correa Tr. 18, 61; *Harman Decl., Ex. L*, T. Jackson Tr. 22; *Harman Decl., Ex. J*, D. Williams Tr. 10).

## Argument

As will be shown below, (I) Defendants' Motion for Summary Judgment should be denied.  Defendants misclassify Plaintiffs as independent contractors under (A) the FLSA and (B) the NYLL.  Similarly, (II) Defendants' Motion for Decertification should be denied.  All

Plaintiffs (A) are substantially similarly situated and (B) Defendants assert the same defenses as to all of them.

I.      **Defendants' Motion for Summary Judgment should be denied.**

Summary judgment should be denied unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001).  A genuine issue exists if a jury could reasonably find in favor of the nonmoving party based on that material fact. *Id.*  The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996).  The moving party has the burden of showing there is no dispute as to material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A.      **Plaintiffs are misclassified under the FLSA.**

The FLSA should be broadly construed "so that the [provisions will] have the widest possible impact in the national economy." *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 324 (S.D.N.Y. 2001) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (alterations in original)).  The test for determining if an employee is misclassified as an independent contractor for FLSA purposes is known as the "economic reality" test. *Id.*  Pursuant to this test, the court considers: (1) the degree of the control the employer exerts over the worker; (2) the worker's investment in the business and opportunity for profit or loss; (3) the degree of skill and independent initiative needed to for the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business. *Id; see also United States v. Silk,* 331 U.S. 704, 716 (1947).  No one factor of the test

is dispositive; decisions are determined on the totality of the circumstances. *Gustafson*, 171 F. Supp. 2d at 324. The salient inquiry is whether the worker economically depends on the putative employer's business. *Id.*

Here, Plaintiffs are misclassified because: (1) Defendants' controlled all aspects of Plaintiffs' work, including disciplining them, creating and assigning their driving schedules, and dictating the order in which deliveries are made; (2) Plaintiffs have minimal investment because most of them use their own cars and had no opportunity for profit or loss because they did not purchase tools or have discretion in how they made their deliveries; (3) their work requires little skill because all that is needed is a valid drivers license; (4) Plaintiffs have a permanent relationship with Defendants in that they work full-time, most for several years; and (5) delivering meals is the core aspect of Defendants' business, and thus Plaintiffs' role is integral. Accordingly, Plaintiffs satisfy all elements of the economic realities test.

### 1. Defendants control Plaintiffs.

Control that creates an employer-employee relationship exists only when "an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." *Molina v. S. Fla. Express Bankserv*, 420 F. Supp. 2d 1276, 1285 (M.D. Fla. 2006) (quoting *Usery v. Pilgrim Equip*, 527 F.2d 1308, 1312–13 (5th Cir. 1976)). "[T]he way in which the parties could have behaved under the contract terms is irrelevant; instead, it is the way in which the parties actually acted that is controlling when conducting an economic realities analysis." *Sakacsi v. Quicksilver Delivery Sys., Inc.*, 06-cv-1297-T-24, 2007 WL 4218984, at *4 (M.D. Fla. Nov. 28, 2007). "An employer does not need to look over his workers' shoulders every day in order to exercise control." *Brock v. Superior Care*, 840 F.2d 1054, 1060 (2nd Cir. 1988).

7

In the context of delivery personnel, control sufficient to form an employer-employee relationship exists when the employer places drivers in specific routes when routes become available, requires drivers to fill out paper work, has policies and procedures applicable to the drivers, disciplines the drivers, provides the drivers with daily route sheets establishing the order in which deliveries are made, requires notification if the delivery route is changed, penalizes drivers for tardiness, and requires the drivers to wear uniforms and other company identification. Additional evidence of control exists if the drivers are bound by anti-competitive contracts, such as a non-solicitation provision. *Sakacsi*, 2007 WL 4218984, at *4-5.

For example, the case of *Sakacsi v. Quicksilver Delivery Sys., Inc.*, 06-cv-1297-T-24, 2007 WL 4218984 (M.D. Fla. Nov. 28, 2007), which has been cited with approval by two (2) other district courts,[2] is directly on-point with the facts of this case, and strongly suggests that summary judgment should be granted to Plaintiffs. In *Sakacsi*, the defendant was a delivery company that provided delivery services for institutional pharmacies. It would collect prescriptions from pharmacies and deliver them to various healthcare facilities such as nursing homes. Plaintiffs were the delivery personnel whom the defendant characterized as independent contractors. *Sakacsi*, 2007 WL 4218984 at *1. Plaintiffs' pay varied per route. *Id.* at *7. They sued the defendant on a collective basis for unpaid overtime compensation. *Id.* at *1.

The defendant was responsible for ensuring that the drivers show up for deliveries, for helping drivers with any problems that arose, and for providing the drivers with their daily route sheets, which listed the drivers' deliveries. The defendant created each drivers' route sheets. Drivers could, and occasionally did, deviate from the delivery schedule set forth in their route sheet. Upon being hired, each driver executed an agreement purporting to be an independent

---

[2]     *Cardinale v. S. Homes of Polk Cnty.*, 06 CV 1295, 2008 WL 788460, at *5 (M.D. Fla. Mar. 19, 2008); *Lewis v. ASAP Land Express*, 554 F. Supp. 2d 1217, 1224 (D. Kan. 2008).

contractor agreement, which contained a non-solicitation provision.  Each driver paid their own costs, including gas and insurance, and each driver provided their own vehicle.  The drivers submitted weekly logs showing their work, which was used to calculate their pay.  Defendant made decisions on hiring new drivers and would discipline them.  Drivers had uniforms and identification badges.  *Sakacsi*, 2007 WL 4218984, at *1-2.  In light of these facts, the Court concluded the drivers were misclassified as independent contractors, and were, in fact, employees entitled to overtime compensation.  The Court reached this conclusion despite evidence that drivers were permitted to work for someone else and despite their ability to alter their routes.  In that vein, the Court said:

> There is some evidence, however, suggesting that the drivers had a small degree of control over the manner in which they functioned. Drivers are free to reject work at any time without ramification, and may swap or exchange routes with other drivers.  Additionally, drivers may terminate the Independent Contractor Agreement at will, with or without notice.  The Court also notes that there were a few examples of drivers who altered their delivery routes, although it is unclear whether they received advance approval for these alterations as required.  An independent contractor relationship exists only if the control exerted by the drivers was so meaningful that they ultimately stood as separate economic entities.  The Court finds that the parcels of control exercised by the drivers pale in comparison to the many and varying ways in which [defendant] controls the behavior, actions, appearance, and schedule of its drivers, such that it cannot be said that the drivers stood as a separate economic entity from [defendant].

*Sakacsi*, 2007 WL 4218984 at *5-6 (citations omitted).

Here, as in *Sakacsi*, where the court held the drivers misclassified, Defendants created and distributed to Plaintiffs their daily routes, which set forth the order deliveries were to be made.  Also like in *Sakacsi* where the drivers wore company uniforms had identification badges, here too, Plaintiffs wear uniforms indicating they work for Fresh Diet, and Defendants provide Plaintiffs with identification badges.  As in *Sakacsi* where the drivers had to submit paperwork

from which their pay was derived, here, Plaintiffs submitted paperwork to Defendant in order to be paid.  Moreover, as in *Sakacsi*, where the company disciplined the drivers and made sure they arrived and made their deliveries on time, here, Defendants similarly disciplined Plaintiffs.  It is important to note that also present in this case and in *Sakacsi* were that the drivers provided their own vehicles and paid for their own expenses.  Neither fact convinced the court in *Sakacsi* that an independent contractor relationship existed.  Similarly, both here and in *Sakacsi* the drivers executed agreements purporting to be independent contractor agreements, which included anti-competitive provisions.  Again, the Court was not convinced that an independent contractor relationship existed.  In *Sakacsi*, the drivers were deemed employees as a matter of law, and thus here, the Court should grant Plaintiffs summary judgment.

This is not the same situation as in *Velu v. Velucity Express*, 666 F. Supp. 2d 300 (E.D.N.Y. 2009), cited by Defendants.  In *Velu*, the plaintiff was a driver who delivered Canon USA products between various Canon USA offices.  *Id.* at 303.  He used a commercial van to make deliveries, and Cannon employees contacted him directly for work.  *Id.* at 303, 307.  The driver did not wear *Velucity Express* uniforms, and was not required to visit the *Velucity Express* premises.  *Id.* at 307.  In effect, the Court held he was running his own delivery business.  *Id.* Here, however, Plaintiffs do not contact Defendants' clients directly; they have to arrive at Defendants' premises in order to get their routes and hand in paperwork at the end of their deliveries.  Further, here, Plaintiffs wear uniforms that show they are associated with Defendants.

Accordingly, here Defendants controlled Plaintiffs' work.  Therefore, they are employees as a matter of law.  Defendants' Motion should be denied, and under the reasoning in *Sakacsi*, the Court should grant Plaintiffs summary judgment.

**2.  Plaintiffs make no formal investment and no opportunity for profit or loss.**

In the context of delivery personnel, drivers who use their own personal vehicles have minimal investment and little opportunity for profit or loss, which is a strong indication of an employer-employee relationship.  *See, e.g., Sakacsi*, 2007 WL 4218984, at *6*; Molina*, 420 F. Supp. 2d at 1285 (stating that a car is an essential household investment in denying a company's summary judgment motion); *Herman v. Express Sixty-Minutes Delivery Serv.*, 161 F.3d 299, 304 (5th Cir. 1998) ("Although the driver's investment of a vehicle is no small matter, that investment is somewhat diluted when one considers that the vehicle is also used by most drivers for personal purposes.")

Here, Plaintiffs generally used their own personal vehicles. These are the same cars they would use to run personal errands.  They do not use any special tools or equipment.  This is not the same situation as in *Browning v. Ceva Freight*, 885 F. Supp. 2d 590 (E.D.N.Y. 2012), also cited by Defendants.  In *Browning*, the plaintiffs ran delivery businesses that provided services for a large freight company.  They had separately incorporated trucking businesses.  *Id.* at 592, 594-96, 608.  Some had employees, and some had additional trucks.  *Id.* at 595, 608.  All used their own tools and supplies.  *Id.* at 608.  Further, the trucks were large because they had to deliver freight.  They were not personal cars.  *Id.* at 608. *Id.* 595.[3]  Thus, the drivers were operating their own small businesses; they could earn more money by purchasing more trucks or hiring more employees.  *Id.* at 608-09.  Presumably, they had personal cars in addition to their trucks, and thus the purchase, maintenance, upkeep and repair of the trucks were separate and apart from what was required of the drivers to maintain their personal cars.  However, in this case Plaintiffs generally use their own cars, distinguishing this case from *Browning*.  Plaintiffs in

---

[3]     The *Browning* Defendants did argue that one of the drivers used his truck as his personal vehicle.  *Id.* at 594.

this case do not have corporate entities and are not operating their own businesses. They each had a route and thus could not make more money getting an additional car. Moreover, in *Browning*, the drivers had to purchase tools to move freight, whereas here, Plaintiffs deliver packaged meals in bags that are easily carried.

This is also not the same situation as in *Velu v. Velucity Express, Inc.*, 666 F. Supp. 2d 300 (E.D.N.Y. 2009). In *Velu*, the plaintiff purchased a van, clothes, equipment, computer, printer and other supplies, which allowed him to "immediately work for another shipping company[]" upon separating from the putative employer. *Id.* at 308. He minimized his costs by trying more efficient delivery routes. *Id.* at 305. In this case, Plaintiffs have no specialized equipment that would allow them to work for a shipping company, distinguishing this case from *Velu*. Plaintiffs purchased no tools and otherwise made no investment; all they did was deliver packaged meals in bags that are easily carried. Their routes are predetermined and they cannot deviate from them to save costs.

Accordingly, Plaintiffs make no formal investment and have no opportunity for profit and loss. Therefore, they are employees as a matter of law. Defendants' Motion should be denied, and under the reasoning in *Sakacsi*, the Court should grant Plaintiffs summary judgment.

### 3.   Plaintiffs' job requires minimal skill.

Having a specialized skill is indicative of an independent contractor. However, having a driver's license is not considered specialized. If a job requires only a driver's license, it strongly suggests an employer-employee relationship. *Sakacsi*, 2007 WL 4218984, at *7-8. Again, *Sakacsi* is illustrative. In *Sakacsi*, as in this case, the plaintiffs were drivers who used their own cars to deliver prescriptions to various health care facilities. *Id.* at *1. In assessing whether the drivers' job required specialized skills, the court said:

12

> There is little to be said about the skill and initiative required in order for the drivers to perform their jobs.  The evidence before the Court is ripe with testimony characterizing the delivery job as simple, straightforward, and requiring little skill aside from the ability to drive a car from point A to point B.

*Sakacsi*, 2007 WL 4218984, at *7.  This is not the same situation that was present in *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590 (E.D.N.Y. 2012).  The plaintiffs ran delivery businesses that provided services for a large freight company.   Running their businesses required "professional driving skills, business management skills, knowledge of Department of Transportation regulations, and freight-handling skills."  *Id.* at 609.  Here, all that was required of Plaintiffs was that they have a driver's license.

Accordingly, Plaintiffs' job requires minimal skill.  Therefore, they are employees as a matter of law.  Defendants' Motion should be denied, and under the reasoning in *Sakacsi*, the Court should grant Plaintiffs summary judgment.

### 4. Plaintiffs worked for Defendants for a long period; generally for several years.

Under the FLSA's economic realities test, the permanency of a business relationship is assessed by looking at how long the putative employees actually worked for the employer.  *Hopkins v. Cornerstone Am.*, 545 F.3d 388, 345–46 (5th Cir. 2008) ("[defendants] acknowledged that [plaintiffs] generally remained in their positions for 'a significant period of time.'").  That a relationship is, in theory, terminable at will, is not dispositive of independent contractor status, particularly when progressive discipline is used in lieu of immediate termination.   *See id.; Sakacsi*, 2007 WL 4218984, at *8.

Here, Plaintiffs generally worked for Defendants for a prolonged period; many for several years.  While the agreements many Plaintiffs signed are terminable at will, in practice,

Plaintiffs were generally not terminated for infractions but rather disciplined with withheld pay or assignment of unfavorable routes.

Accordingly, Plaintiffs have long-term relationships with Defendants. Therefore, they are employees as a matter of law. Defendants' Motion should be denied, and under the reasoning in *Sakacsi*, the Court should grant Plaintiffs' summary judgment.

### 5.   Plaintiffs services are integral to Defendants' business.

Drivers are an integral part to any company that provides delivery services. *Sakacsi*, 2007 WL 4218984, at *8; *Molina,* 420 F. Supp. 2d at 1287 (finding that a courier service could not operate without its couriers); *see also Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 191–92 (S.D.N.Y.2003) (holding that where a company's primary business was delivery services, the drivers who performed those deliveries were an integral part of that business). Here, Defendants are a food delivery service. Plaintiffs are drivers who deliver Defendants' meals to their customers.

Accordingly, Plaintiffs are integral to Defendants' business. Therefore, they are employees as a matter of law. Defendants' Motion should be denied, and under the reasoning in *Sakacsi*, the Court should grant Plaintiffs summary judgment, *sua sponte*.

### B.   Plaintiffs are misclassified under the NYLL.

"Under New York law, a person's status as an employee or an independent contractor is a fact-intensive inquiry that depends upon factors such as whether the person: (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule." *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 598 (E.D.N.Y. 2012) (*quoting Deboissiere v. Am. Mod. Agency*, 09 CV 2316, 2010 WL 4340642, at *3 (E.D.N.Y. Oct. 22, 2010). These factors are not exhaustive, and New York courts have considered additional factors including requirements that workers

wear uniforms, follow policies and procedures, and coordinate vacation time with the employer's selection of the jobs. *See Hart v. Rick's Cabaret Int'l*, 09 CV 3043, 2013 WL 4822199, at *17 (Nov. 18, 2013); *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 416 (2d Dep't 1998). Unlike the FLSA, which focuses on economic dependence, the New York Labor Law focuses on the degree of control the putative employer exercises over the worker. *Browning*, 885 F. Supp. 2d at 598. How a worker identifies himself for tax purposes is not dispositive. *See Hart* at *17 (Nov. 18, 2013); *Hernandez v. Chefs Diet Delivery*, 915 N.Y.S.2d 623, 626 (2d Dep't 2011).

Here, as was shown above at **Section A(1)**, Defendants controlled all aspects of Plaintiffs' work, which is the central inquiry for employee status under the NYLL. In addition, Plaintiffs are misclassified under the NYLL because (1) they worked according to Defendants' fixed schedule and could be penalized if they were late; (2) they generally did not have time to engage in other employment; (3) and they were reimbursed for business expenses such as payment of tolls, and were promised cell phones and roadside assistance.

> 1. **Plaintiffs did not work at their own convenience; they worked on Defendants' fixed schedule.**

Plaintiffs worked full time for Defendants. They always arrived at Defendants' facility during the same time period. Plaintiff Juan Correa testified "we always had to be available for twenty-four hours." In addition, Plaintiffs received company identification cards and company uniforms. Defendants have policies and procedures that Plaintiffs were required to follow and which Defendants enforced. If Plaintiffs were late, they could be penalized. An employee of Defendants, Syed Hussain, was the Delivery Manager for Late Night and oversaw deliveries, hired drivers, created routes, and assigned drivers routes. Plaintiffs requested time off from Mr. Hussain when they had personal issues or were sick. Mr. Hussain told Plaintiffs in what order to make deliveries. If changes were made to the order of deliveries, Plaintiffs had to tell Mr.

15

Hussain.  Plaintiffs had to return to the Defendants' facilities to hand in paperwork or Mr. Hussain would discipline them. Defendants would discipline Plaintiffs for failing to hand in paperwork, arriving late to pick up deliveries, or otherwise perform their duties.  Any variations had to be condoned my Mr. Hussain.  Accordingly, Plaintiffs did not work at their own convenience and were thus misclassified as independent contractors.

### 2.  Plaintiffs did not have time to engage in other employment.

Plaintiffs did not have time to keep outside jobs; they had to be available for Defendants at all times.  Almost all Plaintiffs who had an outside job at the commencement of their employment with Defendants had to quit the outside job.

### 3.  Plaintiffs were reimbursed for business expenses.

All Plaintiffs were reimbursed for tolls.  Reimbursements were made for gasoline and roadside assistance.  Defendants gave some Plaintiffs credit cards.  Defendants promised Plaintiffs roadside assistance, cell phones, bonuses and raises.  Plaintiffs almost always used their own cars.  Defendants paid for vehicle repairs or maintenance of Plaintiffs' cars. Accordingly, Defendants gave Plaintiffs certain benefits, further supporting Plaintiffs' misclassification.  Defendants' Motion should be denied.

## II.    Defendants' Motion for Decertification should be denied.

Defendants' alternative motion for class decertification should similarly be denied.  In assessing decertification, courts look to: (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants that are unique to individual plaintiffs; and (3) fairness and procedural considerations counseling for or against collective action status. *Indergit v. Rite Aid*, 293 F.R.D. 632, 639 (S.D.N.Y. 2013).  Here, no Plaintiffs were paid overtime compensation, and Defendants assert that all are independent contractors.  The

following are true for all Plaintiffs: they almost always drove their own cars and were reimbursed for tolls.  They wore the same uniforms, had the same job duties, and had the same supervisor who assigned them daily routes and disciplined them.  These are the same facts that were present in *Sakacsi v. Quicksilver Delivery Sys., Inc.*, 06-cv-1297-T-24, 2007 WL 4218984 (M.D. Fla. Nov. 28, 2007), where the Court determined, as a matter of law, the drivers were misclassified as independent contractors under the FLSA.  Accordingly, decertification is not proper.  Defendants' Motion should be denied.

**Conclusion**

Defendants' Summary Judgment Motion should be denied, as Defendants have unequivocally misclassified Plaintiffs as independent contractors.  Plaintiffs are employees of Defendants because they perform an integral part of Defendants' business; namely, delivering meals to Defendants' clients.  Plaintiffs work full-time for Defendants.  Defendants' control all aspects of Plaintiffs' work, including disciplining them, creating and assigning their driving schedules, and dictating the order in which deliveries are made.  The case *Sakacsi v. Quicksilver Delivery Sys., Inc.*, 06-cv-1297-T-24, 2007 WL 4218984 (M.D. Fla. Nov. 28, 2007) strongly suggests that summary judgment should actually be granted to **Plaintiffs**, *sua sponte*.

Defendants' Motion for Decertification should similarly be denied.  There are currently 29 Plaintiffs, and the class of similarly situated drivers is approximately 100.  All drivers are misclassified as independent contractors.  All drivers were supervised by the same individual and performed the same job functions.  None are paid overtime compensation.

Dated: New York, New York               Respectfully submitted by:
       February 14, 2014                         THE HARMAN FIRM, PC
                                                 *Attorneys for Plaintiffs*

17

 s/   Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
1776 Broadway, Suite 2030
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com