UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

FERNANDO HERNANDEZ, KENNETH CHOW,
BRYANT WHITE, DAVID WILLIAMS, MARQUIS
ACKLIN, CECILIA JACKSON, TERESA JACKSON,
MICHAEL LATTIMORE, and JUANY GUZMAN, each
individually, and on behalf of all other persons similarly
situated,

Case No.:
12-CV-4339 (ALC)(JLC)

Plaintiffs,

-against-

THE FRESH DIET, INC., LATE NIGHT EXPRESS
COURIER SERVICES, INC. (FL), FRESH DIET
EXPRESS CORP. (NY), THE FRESH DIET – NY INC.
(NY), FRESH DIET GRAB & GO, INC. (FL) a/k/a YS
CATERING HOLDINGS, INC. (FL) d/b/a YS CATERING,
INC. (FL), FRESH DIET EXPRESS CORP. (FL), SYED
HUSSAIN, Individually, JUDAH SCHLOSS, Individually,
and ZALMI DUCHMAN, Individually,

Defendants.

-------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants*
By: Jeffery A. Meyer, Esq.
Yale Pollack, Esq.
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ..........................................................................................1

POINT I ..............................................................................................................................2

    Plaintiff's Reliance on *Sakacsi* is Misplaced ...................................................................2

    A. Plaintiffs Were Properly Classified As Independent
       Contractors Under The FLSA .........................................................................................3

       1. Defendants Did Not Exercise A Degree Of Control
          Over Plaintiffs Sufficient To Create An
          Employer-Employee Relationship ...........................................................................3

       2. Plaintiffs Made Substantial Investments To Perform
          Deliveries For Late Night .........................................................................................6

       3. Plaintiffs Used Their Skills To Perform Their Services
          For Late Night...........................................................................................................8

       4. Plaintiffs Did Not Have A Permanent Business
          Relationship With Late Night ..................................................................................9

       5. The "Integral" Factor Under The Economic Realities
          Test Does Not Alter The Independent Contractor
          Relationship Between the Parties............................................................................10

    B. Plaintiffs Were Properly Classified As Independent
       Contractors Under the NYLL ......................................................................................10

       1. Plaintiffs Worked At Their Own Convenience.......................................................10

       2. Plaintiffs Were Free To Engage In Other
          Employment............................................................................................................12

       3. Plaintiffs Did Not Receive Fringe Benefits, Were Not
          On Payroll, and Received Substantial Tax Benefits
          Associated With Their Independent Contractor
          Status.......................................................................................................................13

CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**                                                    **PAGE NO.**

Browning v. Ceva Freight, LLC
885 F. Supp.2d 590 (E.D.N.Y. 2012) ....................................................................................... *passim*

Nichols v. All Points Transp. Corp.
364 F. Supp.2d 621 (E.D. Mich. 2005)................................................................................... 9, 10

Deboissiere v. American Modification Agency
2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010)............................................................................... 13

Dole v. Amerilink Corp.
729 F. Supp. 73 (E.D. Mo. 1990)................................................................................................... 7

Freund v. Hi-Tech Satellite, Inc.
185 F. App'x 782 (11th Cir. 2006) ............................................................................................... 6

Herman v. Mid-Atlantic Installation Servs., Inc.
164 F. Supp.2d 667 (D. Md. 2000)............................................................................................... 6

In re Jarzabek
292 A.D.2d 668, 738 N.Y.S.2d 742 (3d Dep't 2002).................................................................... 12

Sakacsi v. Quicksilver Delivery Systems, Inc.
2007 WL 4218984 (M.D. Fla. Nov. 28, 2007) ...................................................................... *passim*

Sellers v. Royal Bank of Can.
2014 WL 104682 (S.D.N.Y. Jan. 8, 2014) ................................................................................. 13

United States v. Silk
331 U.S. 704 (1947)......................................................................................................................... 2

Velu v. Velocity Express, Inc.
666 F. Supp. 2d 300 (E.D.N.Y. 2009) ................................................................................. *passim*

## PRELIMINARY STATEMENT

Defendants respectfully submit this Memorandum of Law in opposition to Plaintiffs' cross-motion for partial summary judgment. In opposition to Plaintiffs' motion, Defendants incorporate by reference the papers submitted in support of their motion for summary judgment, including the Memorandum of Law (*ECF No. 134*), the Declaration of Jeffery A. Meyer ("Meyer Decl.") with the exhibits annexed thereto (*ECF No. 141*), and Defendants' Local Rule 56.1 Statement of Material Facts (*ECF No. 142*).

The entire basis for Plaintiffs' cross-motion for summary judgment and opposition to Defendants' motion for summary judgment is based on a 2007 Florida case, *Sakacsi v. Quicksilver Delivery Systems, Inc.*, 2007 WL 4218984 (M.D. Fla. Nov. 28, 2007), which found that pharmacy delivery drivers were employees and not independent contractors. While Plaintiffs cite the facts in *Sakacsi* in an attempt to analogize their own experiences with Defendants, a review of the actual record indicates that their facts are in no way even remotely similar to those proffered in *Sakacsi*. Furthermore, as set forth in Defendants' moving papers, the facts of this case are much more aligned with those in *Browning v. Ceva Freight, LLC*, 885 F. Supp.2d 590 (E.D.N.Y. 2012), a New York case decided in 2012.

In this action, the Court can determine, as a matter of law, that Plaintiffs were properly classified as independent contractors under both the FLSA and NYLL because they: (a) made investments in the delivery vehicles they used to provide delivery services for Defendants; (b) used their own vehicles, for which they paid their own expenses, to perform the delivery services; (c) chose the times they began and finished their delivery routes; (d) maintained positions with other companies while performing delivery services for Defendants; (e) were permitted to and did, in fact, engage others to assist them in their deliveries for Defendants; (f)

1

did not receive fringe benefits from Defendants; (g) were not on Defendants' payroll; and (h) did not file tax returns declaring the compensation they received from Late Night and/or affirmatively held themselves out as independent contractors in their tax filings.   Glaringly, nowhere in Plaintiffs' papers do they address the fringe benefit, payroll, or tax elements of the independent contractor analysis under the NYLL.   Indeed, in Plaintiffs' Opposition to Defendants' Local Rule 56.1 Statement of Material Facts, Plaintiffs admit that they did not file tax returns declaring their compensation from Late Night. *See Plaintiffs' 56.1 Statement, No 8.*

## POINT I

## PLAINTIFFS' RELIANCE ON *SAKACSI* IS MISPLACED

As set forth above, Plaintiffs' entire cross-motion is based on a 2007 Florida case, which is not binding on this Court.   Defendants offered persuasive authority from both the United States Supreme Court and Courts within the Second Circuit, including the Eastern District, in support of their motion, which demonstrates that summary judgment in Defendants' favor is warranted.   *See Browning*, supra; *United States v. Silk*, 331 U.S. 704, 716 (1947); *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 305 (E.D.N.Y. 2009).   Moreover, as discussed herein, Plaintiffs' case does not align with the facts in *Sakacsi* because the purported evidence Plaintiffs refer to in the record is misleading as it does not support the propositions for which they are relying on to advance their position.

In *Sakacsi*, the court found that five of the six factors under the FLSA's economic realities test weighed in favor of finding that the drivers were improperly classified as independent contractors.   The drivers in *Sakacsi* worked for a courier delivery company, which provided delivery services for institutional pharmacies. *Sakacsi*, 2007 WL 4218984, at *1. The drivers all were supervised by account managers. *Id.*   Notably, the drivers could not be

2

employed until he or she signed "a variety of documents, including a consent form to be drug tested ..., a drug screen form ..., a notice that an occupational license or tax identification number is required within ten days of employment ..., and a variety of other forms, including the Independent Contractor Agreement." *Id.* at *2. The drivers were trained before they were allowed to begin delivering, and were offered a "Drivers Guide." *Id.* Part of the training for the drivers included "how to fill our required [company] paperwork and use the [company]-issued iPAQ devices." *Id.* at *4.

As discussed in Defendants' moving papers, and more fully discussed herein, Plaintiffs were never subject to the type of control the defendants had over the drivers in *Sakacsi.*

**A.    Plaintiffs Were Properly Classified As Independent Contractors Under The FLSA**

Under the FLSA's economic realities test, Plaintiffs were properly classified as independent contractors, which, as explained in Defendants' papers, are supported by the facts and holdings in *Browning*, *Velu* and *Silk.*

**1.    Defendants Did Not Exercise A Degree Of Control Over Plaintiffs Sufficient To Create An Employer-Employee Relationship**

First, Plaintiffs argue that the degree of control exercised over them is similar to that exercised in *Sakacsi.* In *Sakacsi*, the drivers were required to: (a) wear uniforms; (b) wear badges; and (c) maintain a neat appearance. *Sakacsi*, 2007 WL 4218984, at *4. As well, there was "a prohibition on outsiders accompanying drivers as helpers or passengers ..., and a prohibition on subcontracting their work." *Id.* Based on the control the defendant had over the "behavior, actions, appearance, and schedule of its drivers," the court found that this factor weighed in favor of finding an employer-employee relationship. *Id.* at *6.

Here, Plaintiffs argue that the degree of control exercised over them is similar because they: (a) received daily route logs and were required to submit paperwork to be paid; (b) wore

3

uniforms and badges that were provided by Defendants; and (c) were "disciplined" by Defendants. *See Plaintiffs' Memorandum of Law, pp. 9-10.* As highlighted below (and as will be throughout this brief), Plaintiffs' contentions do not find any support in the record.

In their 56.1 Statement, Plaintiffs state that "Defendants would discipline Plaintiffs, including being given shorter routes, which meant less pay" and that "Defendant Hussain disciplined Plaintiffs and would threaten them with termination, withholding of their pay, or changing their routes." *Plaintiffs' 56.1 Statement, ¶¶4-5.* To support these contentions, Plaintiffs cite to the deposition testimony of Plaintiffs Chow, Hernandez, Guzman, and Acklin. *Id.* However, a review of that testimony demonstrates that Plaintiffs' contention has no factual support whatsoever.

A review of the pages cited by Plaintiffs to support their contention reveals the following: When Plaintiff Acklin was asked whether he ever had a route taken away from him for failing to hand in paperwork, his response was "No." *Meyer Decl., Ex. "I" (Acklin Dep.), at 55:16-18.* At worst, Plaintiff Acklin claimed that he may have received "warnings," but nowhere did he testify that he received a shorter/changed route or withholding or less pay. At Plaintiff Chow's deposition, when asked whether or not he was ever "disciplined" by having his route cut or reduced, his response was "No." *Meyer Decl., Ex. "E" (Chow Dep.), at 118:18-21.* Plaintiff Hernandez claims he was "threatened," but nowhere states that he was ever disciplined as Plaintiffs define that term (i.e. cut routes, losing routes, withholding of pay, loss of pay). *Meyer Decl., Ex. "L" (Hernandez Dep.), at 77.* Lastly, when Plaintiff Guzman was asked whether he was "ever disciplined or reprimanded," his response was "I was not." *Meyer Decl., Ex. "M" (Guzman Dep.), at 84:17-19.* Based on the foregoing testimony, there is clearly no support for

4

Plaintiffs' argument that they were disciplined by Defendants, which indicates the lack of control Defendants had over Plaintiffs.

Plaintiffs' other argument on the degree of control, *i.e.* a requirement to wear uniforms and badges, also finds no support in the record. Plaintiffs rely on the testimony of Plaintiff Chow to support this argument (*Plaintiffs' 56.1 Statement, ¶7*), but such testimony simply stated such items were given to drivers "just in case doorman, police, security guard would ask what apartment are you delivering with, which house are you delivering with overnight." *Meyer Decl., Ex. "E" (Chow Dep.), at 38:2-36:4.* The issuance of these items was clarified as Defendant Hussain's deposition, wherein he testified that drivers requested the identification items themselves in order to avoid the issues (*e.g.* questioning by doormen, police, etc.) in the future, but were not required to use the items. *See Harman Decl., Ex. "F" (Hussain Dep.), at 202:10-203:3.*

Notably, the drivers in *Browning* were held to be independent contractors as a matter of law, despite that they were required to: (1) cover their vehicles with the defendant's logo; (2) wear the defendant's uniforms while working; (3) work within the parameters of the schedule provided to them by the dispatcher and follow the decisions by the dispatcher; (4) remain in constant contact with the defendants by using a cellular device tied to the defendants' computer system; and (5) attend monthly meetings. *Browning*, 885 F. Supp.2d at 611.

In support of their motion, Defendants set forth evidence that drivers had the freedom to engage others to assist them in performing their services so that they were not personally required to service their contracts, and performed work for other drivers by taking their stops. Plaintiffs even testified that Late Night was aware that they had others performing deliveries for them and that Late Night never made any issue of that arrangement. *See Meyer Decl., Ex. "I"*

5

(Acklin Dep.), at 59:17-18; Meyer Decl., Ex. "E" (Chow Dep.), at 119:20-120:14; Meyer Decl., Ex. "G" (T. Jackson Dep.), at 82:7-83:23; Meyer Decl., Ex. "K" (DeLarosa Dep.), at 53:17-55:7. As well, while performing deliveries for Late Night, many Plaintiffs maintained other jobs, whether it was performing deliveries for newspaper companies or creating franchise companies for themselves. See Meyer Decl., Ex. "I" (Acklin Dep.), at 70:3-7; Meyer Decl., Ex. "E" (Chow Dep.), at 15:10-18:20, 20:14-21:10, 59:4-21; Meyer Decl., Ex. "G" (T. Jackson Dep.), at 28:19-22. These facts distinguish this case from Sakacsi where the drivers were prohibited from engaging other drivers to assist in their work. In addition, Plaintiffs were free to arrive at the facility to begin their deliveries as they saw fit, as some did not arrive to the facility until midnight to begin their deliveries. See Meyer Decl., Ex. "I" (Acklin Dep.), at 51:25-52:24; Meyer Decl., Ex. "J" (Correa Dep.), at 45:6-13; Meyer Decl., Ex. "E" (Chow Dep.), at 92:8-93:14, 104:18-105:7, 106:15-24, 171:4-181:15; Meyer Decl., Ex. "F" (Chow Dep. Exhibits) FD000394-FD000397, FD000402-FD000403, FD000575-FD000581; Meyer Decl., Ex. "G" (T. Jackson Dep.), at 41:9-19, 62:12-19; Meyer Decl., Ex. "L" (Hernandez Dep.), at 30:15-31:8, 34:21-35:3, 39:8-21; Meyer Decl., Ex. "M" (Guzman Dep.), at 143:11-19, FD000080.

In sum, the evidence establishes the lack of control Defendants had over Plaintiffs, a factor that supports an independent contractor relationship.

### 2. Plaintiffs Made Substantial Investments To Perform Deliveries For Late Night

As set forth in Defendants' moving papers, when evaluating investments in driver classification cases, courts have found that if the driver uses his or her own vehicle to perform services, this factor will support independent contractor status. See, e.g., Freund v. Hi-Tech Satellite, Inc., 185 F. App'x 782, 783-84 (11th Cir. 2006) (finding that a cable installer was independent contractor because, inter alia, he "drove his own vehicle and provided his own tools

6

and supplies"); *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp.2d 667, 675 (D. Md. 2000) (stating that investment by installers who used their own trucks supported independent contractor status); *Dole v. Amerilink Corp.*, 729 F. Supp. 73, 76 (E.D. Mo. 1990) (cable installers made "substantial" investment in their business when they "spen[t] significant amounts of money on their trucks and tools.").

Instead of even attempting to distinguish these holdings, Plaintiffs argue that "drivers who use their own personal vehicles have minimal investment and little opportunity for profit or loss …" and cite *Sakacsi* to support their contention. *See Plaintiffs' Memorandum of Law, p. 11.* Plaintiffs' counsel then goes onto state that "[h]ere, Plaintiffs generally used their own personal vehicles" and that "[t]hese are the same cars they would use to run personal errands." *Id.* Plaintiffs' counsel remarkably makes this statement of fact without any reference to the record upon which they rely to support their contention. Thus, the statement that Plaintiffs used their own cars, which they also used for personal errands, is nothing but pure conjecture by Plaintiffs' attorneys. Plaintiffs' counsel then attempts to distinguish *Browning* by claiming that the drivers in *Browning* used trucks, and that such drivers "*[p]resumably*" had their "own cars in addition to their trucks." *Id.* In sum, there is no basis for Plaintiffs' argument on this point and the evidence upon which Plaintiffs rely to support this argument is inadmissible speculation by someone without first-hand knowledge of the facts.

Furthermore, Plaintiffs wholly ignore the other part of the analysis made in by the court in *Sakacsi*, being the investments made by the defendant. The court discussed the *relative* investment made by each of the parties and noted that the defendant provided all of its drivers with "iPAQ devices or Nextel telephones free of charts, and pays for all necessary upkeep and repairs to the units, so that all deliveries can be scanned into a QDS-operated computers system."

*Sakacsi*, 2007 WL 4218984, at \*6.  The costs to purchase and run the devices and software cost the defendant $925,000 ($165,000 to purchase the software for the iPAQ system, $560,000 for the servers to run the system, and $200,000 for the devices themselves).  *Id.* at \*6.  As well, the court noted that the defendant maintained an office in Florida and provided office equipment to each of its account managers.  *Id.*  After analyzing the relative investment of the parties, the court found that this factor weighed in favor of the drivers.  Such factors do not exist in this action as Defendants have made no such investment that would otherwise weigh in favor of Plaintiffs.  Accordingly, Defendants' lack of relative investment weight in favor of their summary judgment motion, not Plaintiffs.

Moreover, Plaintiffs had the opportunity for profit or loss in their business relationship with Late Night as each driver's route depended on his or her availability and capability to perform the amount of deliveries in a certain location.  Routes were given on a first come, first serve basis, which was also based on availability and comfort of the driver for the route so that there was a mutual agreement by the parties as to the route.  *See Harman Decl., Ex. "F" (Hussain Dep.), at 127:1-7, 128:2-8, 170:25-171:13.*  Therefore, Plaintiffs had the ability to be more profitable by demonstrating that they could perform routes more efficiently than others.

Furthermore, as noted in *Velu*, Plaintiffs here could simply go out the next day with the investments they made to immediately begin working for another delivery company, which also favors an independent contractor finding.  *Velu*, 666 F. Supp.2d at 307.

### 3.   Plaintiffs Used Their Skills To Perform Their Services For Late Night

In addressing the skills factor under the economic reality test, Plaintiffs again solely rely on *Sakacsi* to support their position.  Plaintiffs contend that to perform deliveries, "all that was required of Plaintiffs was that they have a driver's license."  *See Plaintiffs' Memorandum of*

*Law, p. 13.* In making this argument, Plaintiffs conveniently ignore another item that they must have to perform deliveries, being a vehicle, and, along with the vehicle, insurance.

Moreover, in order to perform deliveries for Late Night, drivers had to have the ability to drive either long or short distances (depending on whether they were performing deliveries within New York City, in more rural areas in the Tri-State area or "over the road" type deliveries to Boston, Philadelphia, or Baltimore) and navigate the roads to ensure that deliveries were made in a timely fashion. In addition, for those who made deliveries in residential buildings, Plaintiffs had to have customer service skills to ensure that meals were properly left for Fresh Diet's customers the following day.

Professional driving skills and business management skills are not "minimal," as Plaintiffs contend, and have been held as important skills in related driver cases addressing the independent contractor classification issue. *See Browning*, 885 F. Supp.2d at 609; *Nichols v. All Points Transp. Corp.*, 364 F. Supp.2d 621, 632 (E.D. Mich. 2005) (finding that the drivers were independent contractors because, *inter alia*, "the drivers must exercise entrepreneurial skills often associated with small business owners" and "must manage their operating costs and expenses and navigate the regulatory landscape associated with hauling freight.").

Accordingly, for these additional reasons, Plaintiffs were properly classified as independent contractors.

### 4.    Plaintiffs Did Not Have A Permanent Business Relationship With Late Night

With respect to the permanency of a business relationship, Plaintiffs again only look to *Sakacsi* to support their position. Plaintiffs' counsel then goes onto state that "Plaintiffs generally worked for Defendants for a prolonged period; many for several years." *See Plaintiffs' Memorandum of Law, p. 13*. Again, no evidentiary support is provided for this statement.

9

Moreover, nowhere do Plaintiffs address the cases cited by Defendants (including those in New York) standing for the proposition that since there was no permanent business relationship between the parties, independent contractor status is supported. *See, e.g., Browning*, 885 F. Supp.2d at 609-610; *Velu*, 666 F. Supp.2d at 308; *Nichols*, 364 F. Supp.2d at 631; *Bonnetts v Arctic Exp., Inc.*, 7 F. Supp.2d 977, 981 (S.D. Ohio 1998) ("[T]he relationship between the parties was not one of a permanent nature, and, therefore, indicative of an independent contractor relationship."). Here, there is no dispute that Plaintiffs were entitled to terminate their relationship with Late Night at any time, and that Late Night could stop assigning routes to them.

### 5. The "Integral" Factor Under The Economic Realities Test Does Not Alter The Independent Contractor Relationship Between The Parties

As for the final factor under the economic realities test, courts have held that delivery drivers are still properly classified as independent contractors even if the services provided are "integral" to the putative employer's business. *See Browning*, 885 F. Supp.2d at 610; *Velu*, 666 F. Supp.2d at 307-08; *Nichols*, 364 F. Supp.2d at 634; *Mid-Atlantic*, 164 F. Supp.2d at 677; *Amerilink*, 729 F. Supp. at 77.

In sum, based on a totality of circumstances in examining the factors under the FLSA's economic realities test, Plaintiffs were properly classified as independent contractors as a matter of law.

### B. Plaintiffs Were Properly Classified As Independent Contractors Under The NYLL

Plaintiffs heavily rely on their FLSA arguments to claim that they were also improperly classified as independent contractors under the NYLL. In making their arguments, they again provide no evidentiary support for their contentions. A finding that Plaintiffs were properly classified as independent contractors as a matter of law is also warranted under the NYLL. The

10

test on the NYLL turns, in large part, to the control exercised by the putative employer, which, as established above, supports an independent contractor relationship in this case.

### 1.   Plaintiffs Worked At Their Own Convenience

In an attempt to support their contention that they did not work at their own convenience, Plaintiffs argue that: (a) "they always arrived at Defendants' facility during the same time period"; (b) "received company identification cards and company uniforms"; (c) there were some unspecified policies and procedures that they were required to follow and which were enforced by Defendants; (d) "[i]f Plaintiffs were late, they could be penalized"; (e) they requested time off from Defendant Hussain if they had personal issues or were sick; (f) they were told the order in which to make the deliveries and had to report any changes in their routes to Defendant Hussain; and (g) they were disciplined for failing to hand in paperwork, arriving late to pick up deliveries, or otherwise perform their duties. *See Plaintiffs' Memorandum of Law, p. 16.*

Consistent with their papers, no evidentiary support is provided for Plaintiffs' position. As discussed above, any claims of Plaintiff discipline is refuted by Plaintiffs' own testimony, wherein they admit they were never disciplined. *See Meyer Decl., Ex. "I" (Acklin Dep.), at 55:16-18; Meyer Decl., Ex. "E" (Chow Dep.), at 118:18-21; Meyer Decl., Ex. "L" (Hernandez Dep.), at 77; Meyer Decl., Ex. "M" (Guzman Dep.), at 84:17-19.* At best, Plaintiffs claimed that there were threats of discipline or that they heard others were disciplined, but not one Plaintiff has set forth any support for discipline imposed on him or herself while performing deliveries for Late Night. These arguments are also nonsensical as Plaintiffs nowhere explain how receiving identification cards or following policies does not allow one to work as his or her own convenience. As well, Defendants have clearly established in their moving papers that Plaintiffs were free to deliver the meals in any manner they saw fit and did not have to follow any "order"

11

on their manifest. *See Meyer Decl., Ex. "C" (Hussain Aff.), ¶8; Meyer Decl., Ex. "G" (T. Jackson Dep.), at 92:15-20, 94:21-95:7; Meyer Decl., Ex. "K" (DeLarosa Dep.), at 43:19-25.* Any contention by Plaintiffs that they requested time off means nothing since there is no evidence establishing that they were required to request time off.

The overwhelming evidence establishes that Plaintiffs did, indeed, work at their own convenience. For example, Plaintiff Chow often texted Mr. Hussain after 7:00 p.m. to advise that he would be at the facility anywhere between 8:00 p.m. and midnight. *See Meyer Decl., Ex. "E" (Chow Dep.), at 171:4-181:15; Meyer Decl., Ex. "F."* Furthermore, as discussed above, Plaintiffs would sometimes take other drivers' deliveries and perform them on their behalf, or bring others in their vehicles to assist them in performing their deliveries, which clearly supports an independent contractor finding as employees do not have the freedom to hire others to do their jobs or take over the jobs of others without consequence. *See In re Jarzabek*, 292 A.D.2d 668, 669, 738 N.Y.S.2d 742 (3d Dep't 2002) ("Despite the exercise of incidental control essential to [the defendant's] conduct of its business, there is substantial evidence to support the Board's conclusion that the business relationship between claimant and [the defendant] allowed him to operate independently and that he was not an employee.").

Therefore, Plaintiffs' ability to provide deliveries at their convenience and lack of a fixed schedule supports their status as independent contractors.

### 2.   Plaintiffs Were Free To Engage In Other Employment

Plaintiffs next argue that they "did not have time to keep outside jobs; they had to be available for Defendants at all times." *See Plaintiffs' Memorandum of Law, p. 16.* This argument completely ignores the discussion in *Browning*, where the court stated:

> As an initial matter, the Court finds that the fact that the Plaintiffs did not actually take on additional employment, does not

automatically result in a denial of the Defendants' motion for summary judgment. *See, e.g., Velu,* 666 F.Supp.2d at 307 ("Plaintiff has not chosen to avail himself to the opportunity to work for other shipping companies, but that is by choice."). More importantly, the Court finds that the Plaintiffs could perform work for other companies, even if it was practically difficult to do so. There are no disputed issues of material fact in this regard and the Court finds that, in light of the totality of the circumstances analyzed here, the fact that the Plaintiffs worked exclusively for the Defendants does not necessarily lead to the conclusion that they qualify as employees under the NYLL when few, if any, other factors support that determination.

*Browning,* 885 F. Supp.2d at 603.

As well, this argument ignores that Plaintiffs actually maintained other jobs while performing deliveries for Late Night, even performing work for two companies during the same night. *See Meyer Decl., Ex. "I" (Acklin Dep.), at 70:3-7; Meyer Decl., Ex. "E" (Chow Dep.), at 15:10-18:20, 20:14-21:10, 59:4-21; Meyer Decl., Ex. "G" (T. Jackson Dep.), at 28:19-22.*

Thus, Plaintiffs freedom to work for others only further supports their independent contractor status. *See, e.g., Sellers v. Royal Bank of Can.,* 2014 WL 104682, at \*6 (S.D.N.Y. Jan. 8, 2014).

### 3. Plaintiffs Did Not Receive Fringe Benefits, Were Not On Payroll, and Received Substantial Tax Benefits Associated With Their Independent Contractor Status

Plaintiffs ignore other critical factors in the NYLL analysis, being that they did not receive fringe benefits, were not on Defendants' payroll, and that they received substantial tax benefits associated with their independent contractor status. The last factor was highly relevant to the holdings in *Browning* and *Deboissiere v. American Modification Agency,* 2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010) in finding that there was a proper independent contractor relationship. Here, Plaintiffs readily admit that they did not even file taxes to declare the

13

compensation they received from Defendants (*see Plaintiffs' 56.1 Statement, No. 8*), which is far more egregious than the facts in *Browning* and *Deboissiere*, where tax benefits were sought.

In sum, Plaintiffs were properly classified as independent contractors as a matter of law. Like the plaintiffs in *Browning* and *Velu*, if either party was to terminate the relationship, Plaintiffs "could essentially go out the next day with their [vehicles] and equipment and immediately work for another [food delivery] company." *Browning*, 885 F. Supp.2d at 610; *Velu*, 666 F. Supp.2d at 307.

**CONCLUSION**

Defendants respectfully request that the Court deny Plaintiffs' cross-motion for summary judgment, grant Defendants' motion for summary judgment, and award Defendants attorneys' fees and costs and such other relief as the Court deems just, equitable and proper.

Dated:     Woodbury, New York
           March 14, 2014

                  Respectfully submitted,

                  KAUFMAN DOLOWICH & VOLUCK, LLP

                  By: _____
                       Jeffery A. Meyer, Esq.
                       Yale Pollack, Esq.
                  *Attorneys for Defendants*
                  135 Crossways Park Drive, Suite 201
                  Woodbury, New York 11797
                  (516) 681-1100

4828-4627-7145, v. 1