UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

FERNANDO HERNANDEZ, KENNETH CHOW,
BRYANT WHITE, DAVID WILLIAMS, MARQUIS
ACKLIN, CECILIA JACKSON, TERESA JACKSON,
MICHAEL LATTIMORE, and JUANY GUZMAN, each
individually, and on behalf of all other persons similarly
situated,

                         Plaintiffs,

           -against-

THE FRESH DIET, INC., LATE NIGHT EXPRESS
COURIER SERVICES, INC. (FL), FRESH DIET
EXPRESS CORP. (NY), THE FRESH DIET – NY INC.
(NY), FRESH DIET GRAB & GO, INC. (FL) a/k/a YS
CATERING HOLDINGS, INC. (FL) d/b/a YS CATERING,
INC. (FL), FRESH DIET EXPRESS CORP. (FL), SYED
HUSSAIN, Individually, JUDAH SCHLOSS, Individually,
and ZALMI DUCHMAN, Individually,

                        Defendants.

-------------------------------------------------------------------X

Case No.:
12-CV-4339 (ALC)(JLC)

 

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' SECOND MOTION FOR PRELIMINARY CLASS CERTIFICATION
PURSUANT TO FED. R. CIV. P. 23**

KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants*
By: Jeffery A. Meyer, Esq.
Yale Pollack, Esq.
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT.................................................................................................3

    STANDARD FOR CLASS CERTIFICATION UNDER RULE 23 .................3

POINT I .........................................................................................................5

    PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF PROOF
    UNDER RULE 23(A) OF THE FEDERAL RULES OF CIVIL PROCEDURE...............5

    A.  Plaintiffs Failed To Establish Numerosity Under Rule 23(a)(1) ...................................6

    B.  Plaintiffs Have Not Demonstrated That There Are Questions of Law
       Or Fact Common To The Class Or That Their Claims Are Typical
       To Those of Putative Class Members ........................................................7

    C.  Plaintiffs Have Not Demonstrated That They Are Adequate
       Class Representatives .................................................................17

POINT II.......................................................................................................19

    PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT A RULE 23(B)(3) CLASS
    BECAUSE ANY ANALYSIS OF CLASS-WIDE LIABILITY WILL REQUIRE
    A BURDENSOME, INDIVIDUALIZED INQUIRY .......................................19

    A.  Questions Of Law And Fact Common To The Class Generally Do Not
       Predominate Over Questions Affecting Plaintiffs Specifically ...................................20

    B.  A Class Action Is Not A Superior Method Of Adjudicating Class Claims .................24

CONCLUSION..............................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                              **PAGE NO.**

*Amchem Products, Inc. v. Windsor*
521 U.S. 591 (1997)...........................................................................6, 20, 22

*Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*
238 F.R.D. 82 (S.D.N.Y. 2006) ..................................................................8

*Bakalar v. Vavra*
237 F.R.D. 59 (S.D.N.Y. 2006) ................................................................21

*Brown v. Kelly*
609 F.3d 467 (2d Cir. 2010) ......................................................................5

*Browning v. Ceva Freight, LLC*
885 F. Supp.2d 590 (E.D.N.Y. 2012) .........................................................9

*Caridad v. Metro-North Commuter R.R.*
191 F.3d 283 (2d Cir. 1999) ...................................................................4, 7

*Comcast Corp. v. Behrend*
133 S. Ct. 1426 (2013).............................................................................22

*Deboissiere v. American Modification Agency*
2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010)..............................8, 9, 17, 21

*Dunnigan v. Metro. Life Ins. Co.*
214 F.R.D. 125 (S.D.N.Y. 2003) .........................................................24, 25

*Edge v. C. Tech Collections, Inc.*
203 F.R.D. 85 (E.D.N.Y. 2001) .................................................................6

*Edwards v. Publishers Circulation Fulfillment, Inc.*
268 F.R.D. 181 (S.D.N.Y. 2010) ..............................................................21

*Espenscheid v. DirectSat USA, LLC*
705 F.3d 770 (7th Cir. 2013) ...................................................................23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*
574 F.3d 29 (2d Cir. 2009) ........................................................................5

*Gardner v. Western Beef Properties, Inc.*
2011 WL 6140518 (E.D.N.Y. Sept. 26, 2011) ...........................................21

iii

*General Tel. Co. v. Falcon*
457 U.S. 147 (1982).........................................................................................................4

*Heerwagen v. Clear Channel Communs.*
435 F.3d 219 (2d Cir. 2006) ...........................................................................................5

*In re Initial Pub. Offerings Sec. Litig.*
471 F.3d 24 (2d. Cir. 2006) ....................................................................................4, 5, 6

*Jones v. Ford Motor Credit Co.*
2005 WL 743213 (S.D.N.Y. Mar. 31, 2005)................................................................17

*Khait v. Whirlpool Corp.*
2009 WL 64900085 (E.D.N.Y. Oct. 1, 2009)...............................................................16

*Levinson v. Primedia*
2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003)................................................................6

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*
211 F.R.D. 228 (S.D.N.Y. 2002) ..................................................................................21

*Lewis v. National Financial Systems, Inc.*
2007 WL 2455130 (E.D.N.Y. Aug. 23, 2007)..............................................................19

*Mike v. Safeco Ins. Co. of Am.*
274 F. Supp.2d 216 (D. Conn. 2003)............................................................................22

*Moore v. PaineWebber, Inc.*
306 F.3d 1247 (2d Cir. 2002) .................................................................................17, 20

*Myers v. Hertz Corp.*
2007 WL 2126264 (E.D.N.Y. July 24, 2007)................................................................8

*Myers v. Hertz Corp*
624 F.3d 537 (2d Cir. 2010) ...................................................................................5, 20

*In re Nassau County Strip Search Case*
461 F.3d 219 (2d Cir. 2006) .........................................................................................20

*Noble v. 93 University Place Corp.*
224 F.R.D. 330 (S.D.N.Y. 2004) ...................................................................................8

*Novella v. Westchester County*
661 F.3d 128 (2d Cir. 2011) ...........................................................................................4

*Odom v. Hazen Transport*
275 F.R.D. 400 (W.D.N.Y. 2011)..................................................................16

*Palmer Kane LLC v. Scholastic Corp.*
2012 WL 2952898 (S.D.N.Y. July 16, 2012).............................................20

*RBS Citizens, N.A. v. Ross*
133 S. Ct. 1722 (2013).................................................................................22

*Robidoux v. Celani*
987 F.2d 931 (2d Cir. 1993) .........................................................................7

*Saleem v. Corporate Transp. Group, Ltd.*
2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013).....................................10, 16

*Shayler v. Midtown Investigations, Ltd.*
2013 WL 772818 (S.D.N.Y. Feb. 27, 2013)................................9, 10, 17

*Spann v. AOL Time Warner, Inc.*
219 F.R.D. 307 (S.D.N.Y. 2003) .......................................................7, 17, 20

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*
546 F.3d 196 (2d. Cir. 2008) ........................................................................4

*Toure v. Central Parking Systems of New York*
2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).........................................21

*Vengurlekar v. Silverline Techs.*
220 F.R.D. 222 (S.D.N.Y. 2003) ...........................................................5, 8, 20

*In re Visa Check/Mastermoney Antitrust Litig.*
280 F.3d 124 (2d Cir. 2001) .......................................................................20

*Wal-Mart Stores, Inc. v. Dukes*
131 S. Ct. 2541 (2011).........................................................................*passim*

*Xuedan Wang v. Hearst Corp.*
293  F.R.D. 489 (S.D.N.Y. 2013) .............................................................5, 24

## **STATUTES**

Fed. R. Civ. P. 23................................................................................*passim*

## PRELIMINARY STATEMENT

Defendants respectfully submit this Memorandum of Law, with the accompanying Declaration of Jeffery A. Meyer ("Meyer Decl.") and exhibits annexed thereto, in opposition to Plaintiffs' second motion to preliminary certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Defendants incorporate by reference to this motion their: (a) opposition to Plaintiffs' first motion for preliminary class certification (*ECF Nos. 100-101*); and (b) motion for summary judgment and decertification of the collective action (*ECF Nos. 129, 134, 144-145 and 148*).

As the Court may recall, Plaintiffs previously filed a motion for preliminary class certification, which was denied by this Court. In its Order denying Plaintiffs' first motion for preliminary class certification, the Court stated, in relevant part, the following:

> The proposed definition for a class is a fail-safe definition. The proposed definition is misclassified as exempt employees or independent contractors and have not been paid overtime wages.

> Plaintiffs make no allegations of typicality or common questions of fact beyond conclusory allegations.

> There is no commonality indicated in the plaintiffs' motion.

> …

> Plaintiffs' proposed common questions do not lead to common answers.

> These common questions include, but are not limited to, whether defendants employed the class members within the meaning of the New York labor law; whether the class members were misclassified as independent contractors – does not yield common answers as contemplated by *Dukes*; what proof of hours worked is sufficient where employers fail to maintain adequate time records; whether defendants failed to pay class members premium pay of time and a half for those hours worked in excess of 40 hours a week; whether defendants are liable for all damages claimed, including compensatory, punitive and statutory damages.

1

> The listed duties for The Fresh Diet drivers to not establish typicality.  Even if true, having the same job duties does not establish that they all worked over 40 hours and thus are eligible for overtime, or suggests that all drivers were not in fact independent contractors and thus ineligible for FLSA protection or ineligible for New York labor law protection.

*See* ECF No. 106.

On this motion, Plaintiffs have not cured any of the deficiencies highlighted by the Court in its August 9, 2013 Order.  Just as in the first motion, Plaintiffs' class action claims are premised on their contention that they were misclassified as independent contractors while performing delivery services for Defendants and, therefore, should have been paid overtime under federal and state law.  For the reasons set forth below, Plaintiffs have failed to satisfy Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements, as well as Rule 23(b)(3)'s predominance and superiority requirements.

Initially, as with their first motion, nowhere in Plaintiffs' moving papers do they define the class of individuals they are seeking to certify a class on behalf of.  In their Complaint, Plaintiffs allege claims for relief under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), but also seeks relief under New Jersey and Connecticut Wage and Hour Law.  The Complaint seeks relief for residents of New Jersey under New Jersey Wage and Hour Law (*ECF No. 46 (Complaint), ¶¶97-101*), and for residents of Connecticut under Connecticut's Wage and Hour Law (*ECF No. 46 (Complaint), ¶¶102-106*).  Yet, Plaintiffs' class motion only addresses relief under the NYLL which, according to their Complaint, is only being sought on behalf of New York residents (*ECF No. 46 (Complaint), ¶¶92-36*).  The failure of Plaintiffs to even define the individuals that would comprise of their purported class warrants a denial of their motion.

Moreover, Plaintiffs' instant Rule 23 motion improperly operates on the premise that the same evidence by which the Court may find them to be "similarly situated" under the FLSA is also sufficient to satisfy the requirements of Rule 23. However, as the Supreme Court has confirmed, the Rule 23 standard is much more rigorous, and Plaintiffs fail to satisfy the applicable class certification requirements for several reasons. Plaintiffs' support for their motion – consisting of conclusory allegations contained in four (4) affidavits (which are the same affidavits relied on by Plaintiffs in their first motion) and conflicting deposition testimony – fails to address Plaintiffs' rigorous burden to show numerosity, commonality, typicality, adequacy, superiority or predominance as required by Rule 23.

As discussed herein, Plaintiffs have not submitted any evidence in support of their claims and, therefore, have not met their substantial burden of proof. Contrary to Plaintiffs' assertions and allegations, based on the applicable caselaw, it is clear that the claims in question are fundamentally individual in nature. Specifically, whether each driver was properly classified as an independent contractor requires an individual analysis under the NYLL's control test. As the determination of liability in this case necessarily requires an individual, fact-specific analysis for each Plaintiff, opt-in Plaintiff and potential class member, there is no commonality, typicality or predominance of class issues.

Accordingly, Plaintiffs' motion for class certification should be denied.

## ARGUMENT

## STANDARD FOR CLASS CERTIFICATION UNDER RULE 23

Plaintiffs moving for class certification under Rule 23 must demonstrate all of the requirements of Rule 23(a) and one of the three (3) categories of Rule 23(b), by a preponderance of the evidence, and the Court is required to "undertake a 'rigorous analysis'" to determine

whether class certification is proper, as "Rule 23 does not merely set forth a pleading standard." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d. Cir. 2006). Specifically, Plaintiffs bear the burden of establishing that all of the requirements for a class action under Rule 23(a) – commonality, typicality, numerosity, and adequacy of representation – have been satisfied through evidence and not through unfounded allegations. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d. Cir. 2008); *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999); Fed. R. Civ. P. 23(a).

As set forth above, Rule 23(a) provides four (4) prerequisites to class certification. A court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Novella v. Westchester County*, 661 F.3d 128, 149 (2d Cir. 2011).

The Second Circuit has set forth the following guidelines regarding class certification:

> (1) [A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met;
>
> (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met;

(3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; [and]

(4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement . . . .

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 34 (2d Cir. 2009) (*quoting In re IPO*, 471 F.3d at 41).  A proponent of class certification must meet the Rule 23 requirements by a "preponderance of the evidence."  *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010); *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010); *Xuedan Wang v. Hearst Corp.*, 293 F.R.D. 489, 494 (S.D.N.Y. 2013).

In addition to the elements of Rule 23(a), Plaintiffs must also satisfy one of the elements of Rule 23(b).  *Heerwagen v. Clear Channel Communs.*, 435 F.3d 219, 225-26 (2d Cir. 2006).  Plaintiffs have chosen to move for certification under Rule 23(b)(3), requiring them to show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Id.* (*quoting* Fed. R. Civ. P. 23(b)(3)).  Plaintiffs bear the burden of establishing each requirement for class certification.  *Vengurlekar v. Silverline Techs.*, 220 F.R.D. 222, 226 (S.D.N.Y. 2003).

## POINT I

### PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF PROOF UNDER RULE 23(A) OF THE FEDERAL RULES OF CIVIL PROCEDURE

In the instant case, Plaintiffs cannot satisfy the requirements of Rule 23(a).  Plaintiffs are treating their class motion on a pleading standard, at best, which, as set forth in *Dukes*, is not sufficient for a Court to grant class certification.  *Dukes*, 131 S. Ct. at 2551.  Notably, the requirements to grant class certification under Rule 23 are much more rigorous than the

"similarly situated" standard that applies to FLSA collective actions. *Levinson v. Primedia*, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003).

The critical issue in this case is whether Plaintiffs and putative class members were properly classified as independent contractors by Late Night and, therefore, not entitled to overtime. That issue, in turn, depends on the control test under the NYLL, which requires an individualized inquiry into each individual drivers' duties, and control exercised over the driver by the putative employer.

As the putative class cannot meet each of the Rule 23 requirements, each of which Plaintiffs have the burden of proving, Plaintiffs' motion for class certification should be denied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *In re IPO*, 471 F.3d at 41.

## A.  Plaintiffs Failed To Establish Numerosity Under Rule 23(a)(1)

"[A] plaintiff seeking class certification 'must show some evidence of or reasonably estimate the number of class members.'" *Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001) (citation omitted). "Where the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails." *Id.*

Here, Plaintiffs claim, in wholly conclusory fashion, that a list was produced to Plaintiffs in connection with their collective certification motion that contained ninety-five (95) names and that, since claims under the NYLL are governed by a six (6) year statute of limitations, "it stands to reason that there are at least approximately one hundred fifty (150) members in the putative class, and as many as one hundred ninety." *See ECF No. 155 (Plaintiffs' Memorandum of Law), at 7*. Critically ignored by Plaintiffs, however, is the fact that the NYLL claims asserted in their Complaint are only being sought on behalf of New York residents. *ECF No. 46 (Complaint), ¶¶92-96*. Plaintiffs do not provide a breakdown of New York residents to demonstrate that

numerosity exists for the state law claims under the NYLL.   Indeed, Plaintiffs' failure to demonstrate the number of putative class members who could recover under the NYLL could mean that a majority of the putative class members are New Jersey and Connecticut residents, who have not asserted claims under the NYLL but, rather, under their own states' wage and hour statutes (e.g. New Jersey Wage and Hour Law and Connecticut Wage and Hour Law), which are not the subject of this motion.   Since Plaintiffs have failed to demonstrate numerosity on their class claims, the motion for preliminary class certification should be denied.

**B.     Plaintiffs Have Not Demonstrated That There Are Questions Of Law Or Fact Common To The Class Or That Their Claims Are Typical To Those Of Putative Class Members**

As acknowledged by the Court in denying Plaintiffs' first motion for preliminary class certification, commonality and typicality must be established by more than conclusory assertions.   As with their first motion, Plaintiffs have again failed to establish these elements of their Rule 23 motion.

Subsection (a)(2) of Rule 23 requires that there be "questions of law or fact common to the class," and (a)(3) requires that the "claims or defenses of the representative parties are typical" of the class.   As a practical matter, the two (2) requirements merge in the Second Circuit's inquiry.   *See Caridad,* 191 F.3d at 291.   The commonality and typicality requirements are satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove defendant's liability."   *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

The commonality requirement requires Plaintiffs to prove that the action raises issues of law or fact common to the proposed class.   *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 316 (S.D.N.Y. 2003).   Similarly, typicality focuses on the relationship of facts and issues

between the class and its representatives.  The common question must be "at the core of the cause of action alleged," and must be susceptible to "generalized proof."  *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004); *Vengurlekar,* 220 F.R.D. at 227-30.  Moreover, courts require more than self-serving affidavits, and a plaintiff generally must provide either statistical or anecdotal evidence in order to demonstrate commonality and/or typicality.  *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82 (S.D.N.Y. 2006).

The basic issue in this case is whether Plaintiffs were entitled to overtime, which, in turn, depends on whether the drivers for Late Night were properly classified as independent contractors.  This is exactly the type of question that would require a "fact-intensive inquiry into each potential plaintiff's employment status" under the NYLL and, thus, preclude certification of a class.  *Myers v. Hertz Corp.*, 2007 WL 2126264, *4 (E.D.N.Y. July 24, 2007).  To decide whether any the drivers were properly classified as independent contractors, the fact-finder will have to review the test under the NYLL, which is fact-intensive and requires individual inquiries.

In addressing the NYLL, as set forth in *Deboissiere v. American Modification Agency*, 2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010):

> Under New York law, a person's status as an employee or an independent contractor is a fact-intensive inquiry that depends upon factors such as whether the person: (1) worked at his [or her] own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule.  ….  In addition, it is a "significant consideration" if the person classifies himself or herself as an independent contractor for income tax purposes. ….  Indeed, though not quite rising to the level of estoppel, if a plaintiff signs a tax return "under penalty of perjury" that declares independent contractor status and seeks "numerous deductions for business purposes associated with independent contractor status, such as travel, entertainment, lodging, supplies, telephone and depreciation of business assets," such a tax return may significantly impede the plaintiff's ability to claim employee status for purposes of filing an overtime or minimum wage claim. Id.

8

*Id.* at *3 (citations omitted); *see also* *Browning v. Ceva Freight, LLC*, 885 F. Supp.2d 590 (E.D.N.Y. 2012).[1]

In *Deboissiere*, the court, *sua sponte*, denied the plaintiffs' unopposed class certification motion, stating the following:

> The Court is mindful that, at this stage, the relevant inquiry considers whether common questions predominate over individualized issues, not the merits of Plaintiffs' claims. And it is true that, notwithstanding whether they support or weaken Plaintiffs' claims, Plaintiffs have at least shown that three factors are subject to common proof. But, given that certain factors suggest an employment relationship while other factors reflect a legitimate independent contractor classification, any particular proposed class member's status might be a close question that depends upon the "significant consideration" of how the proposed class member defined himself or herself on tax returns, and whether the class member sought tax benefits associated with independent contractor status. .... So this single important individualized issue might prove outcome determinative for many, if not all, of the proposed class members. .... Moreover, Plaintiffs have submitted nothing at all concerning two of the factors: (2) whether the proposed class members had freedom to engage in other employment; and (5) whether they worked a fixed schedule. Thus, Plaintiffs have not shown that these factors depend upon common instead of individualized questions. Nor have Plaintiffs provided any policy or personnel documents to otherwise supplement their allegations of an employment relationship between Defendants and the proposed class members.

*Id.* at *4 (citations omitted).

More recently, this Court denied class certification of a class of individuals who claimed they were improperly classified as independent contractors. In *Shayler v. Midtown Investigations, Ltd.*, 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013), a post-*Dukes* decision, the

---

[1] In *Browning*, Judge Spatt held that drivers who performed pick-ups and drop offs for the defendant were properly classified as independent contractors under both the FLSA and NYLL, despite the fact that the drivers were required to: (1) cover their vehicles with the defendant's logo; (2) wear the defendant's uniforms while working; (3) work within the parameters of the schedule provided to them by the dispatcher and follow the decisions by the dispatcher; (4) remain in constant contact with the defendants by using a cellular device tied to the defendants' computer system; and (5) attend monthly meetings. *Browning*, 885 F. Supp.2d at 611.

Court held, *inter alia*, that the plaintiffs failed to demonstrate, aside from conclusory allegations, that: (a) their claims were typical of other class members; (b) they had an adequate class representative; (c) common questions predominated over individualized ones; or (d) a class action was the superior method of adjudicating the claims. *Id*. at *10.

A similar result was reached in *Saleem v. Corporate Transp. Group, Ltd.*, 2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013), where the Court denied class certification to a group of drivers who claimed they were misclassified as independent contractors. The Court noted the following in denying class certification:

> Given the focus of the inquiry under New York law and the factual differences within the proposed class, answering the question of whether a particular driver "is an independent contractor or employee" is likely to be "fact specific and may be employee specific: where did he or she work and what were the conditions there? Who was the supervisor and were representations made? How was he/she compensated? For how long a period was he/she employed?"

*Id*. at *6 (*citing Shayler*, *supra*). The Court concluded that "whether plaintiffs were properly classified as independent contractors cannot be resolved through generalized proof, but rather requires individualized examination into the extent of control that CTG exercised over each driver. As a result, it cannot be said that common questions predominate over individual ones or that the named Plaintiffs'' claims are typical of those of the class." *Id*. at 7.

At bar, Plaintiffs merely set forth conclusory allegations of their alleged employee status, but do not address each factor considered by the Court under the NYLL's control test. Critically, not one Plaintiff discusses how they treated themselves for tax purposes, which, as Judge Seybert held in *Deboissiere*, would be a valid basis, in and of itself, to deny class certification.

Indeed, as discussed in Defendants' motion for summary judgment and decertification, there were vast differences amongst Plaintiffs regarding the purported control they claimed

Defendants had over them.  As set forth in Defendants' motion, drivers were free to deliver the meals in their vehicles in any manner they saw fit because Late Night was not concerned with how the drivers delivered the meals, but only wanted to ensure that all meals provided to the drivers were delivered to Fresh Diet's clients.  *Meyer Decl., Ex. "J," ¶11.*

Plaintiffs would arrive at Fresh Diet's facility in Brooklyn, where they would pick up packages that were already prepared by packers so that they could be delivered by the drivers. *Meyer Decl., Ex. "J," ¶12.*  After Plaintiffs were finished with completing their delivery routes, many went home as they were not required to go back to the facility or otherwise report to Late Night after the completion of their deliveries.  *Meyer Decl., Ex. "J," ¶13.*  For example, Plaintiff Acklin testified that after completing his delivery routes, he would "go home" and that he was not required to call Mr. Hussain after he completed his deliveries.  *Meyer Decl., Ex. "G" (Acklin Dep.), at 37:23-38:13.*   When Plaintiff Chow was asked "What would you do after you completed your last delivery?" he responded that "I would go home."  *Meyer Decl., Ex. "C" (Chow Dep.), at 58:22-59:3.*  Similarly, Plaintiff T. Jackson testified as follows:

> Q.    Where would you go after you were done?
> A.    Home.
> Q.    Would you have the empty bags in your car?
> A.    Yes.
> Q.    Did you report to anyone at The Fresh Diet when you finished your route?
> A.    Sometimes Syed.
> Q.    Were there times that you did not report?
> A.    Sometimes, yes.

*Meyer Decl., Ex. "E" (T. Jackson Dep.), at 36:25-37:11, <u>see</u> <u>also</u> 46:6-11, 47:13-23.*

Plaintiffs testified that they would show up to the facility where the meals were ready anywhere between 3:00 p.m. and midnight to begin their deliveries.  *Meyer Decl., Ex. "J," ¶14.* Plaintiff Chow made clear that he had the ability to show up to work whenever he was ready, as

evidenced by text messages from him to Mr. Hussain, and that there were no consequences of him showing up as he saw fit – he still received the same delivery routes regardless of when he arrived at the facility. *Meyer Decl., Ex. "C" (Chow Dep.), at 92:8-93:14, 104:18-105:7, 106:15-24, 171:4-181:15; Meyer Decl., Ex. "D."* Since Defendants were only concerned with the deliveries arriving at the Fresh Diet's clients by the following morning, the fact that Plaintiffs were allowed to show up to work when they saw fit is consistent with their treatment of Plaintiffs as independent contractors. *Meyer Decl., Ex. "J," ¶11.* Plaintiffs testified that they completed their delivery routes anywhere between 2:00 a.m. and 7:00 a.m. *Meyer Decl., Ex. "J," ¶15.* During their delivery routes, Plaintiffs took breaks for meals, the restroom and gas, which breaks were not reported to Late Night. *Meyer Decl., Ex. "J," ¶16.* Plaintiffs were not disciplined by Late Night for failing to hand in paperwork, arriving late to pick up deliveries, or otherwise in connection with performing the duties expected of them as independent contractors. *Meyer Decl., Ex. "J," ¶17.*

Moreover, Plaintiffs were allowed to make deliveries for other drivers, and Late Night had no objection to same. *Meyer Decl., Ex. "J," ¶18.* At the deposition of Plaintiff Acklin, he testified that "sometimes I did stops for other drivers." *Meyer Decl., Ex. "G" (Acklin Dep.), at 59:17-18.* Similarly, Plaintiff Chow testified as follows:

> Q.     What did you ever do without [Mr. Hussain's] permission?
> A.     Adding stops from other drivers if they need help, adding stop without letting him know that they running late.
> Q.     "Adding stops from other drivers," what does that mean?
> A.     Like getting extra stops from other drivers from other routes.
> Q.     You would take one of their stops?
> MR. ANDREWS: Objection.
> A.     Yes.
> Q.     You would take one of their stops?
> A.     Yes.
> Q.     How would you do that?

> A.    Oh, just meet up in person.
> Q.    You would take the meal bag from their car?
> A.    Yes.

*Meyer Decl., Ex. "C" (Chow Dep.), at 119:20-120:14.*

Additionally, Plaintiffs were permitted to bring others in their vehicles to assist them in performing deliveries and Late Night had no objection to same.  *Meyer Decl., Ex. "J," ¶19.*  At her deposition, Plaintiff T. Jackson testified to the following:

> Q.    Is that your handwriting on 3497?
> A.    No, but this does look like my husband's handwriting.
> Q.    Who is your husband?
> A.    Delroy McNeil.
> Q.    He performed –
> A.    No.  Sometimes he would go with me.
> Q.    He would go with you?
> A.    Yes.
> Q.    He would fill out the manifest?
> MR. ANDREWS:  Objection.
> A.    Yes.  It looks like he filled this one out for me.
> Q.    Would he ever take any of the meals to the doors when he was with you?
> A.    Yes, sometimes he did.
> Q.    How often did he go with you?
> A.    I can't really answer that.
> Q.    Every week? Would he go with you once a night?
> MR. ANDREWS:  Objection.
> A.    No, more than that.
> Q.    More than that?
> A.    Uh-huh.
> Q.    Three nights a week?
> MR. ANDREWS:  Objection.
> A.    I can't be specifically sure how many nights.
> Q.    Would he be with you the entire time?
> MR. ANDREWS:  Objection.
> A.    Of the route?
> Q.    Yes.
> A.    The entire time that I'm on the route?
> Q.    Yes.
> A.    Yes.
> Q.    Did he go to the facility with you?
> A.    Yes.
> Q.    Did Syed ever see him?

13

> A.     Yes.
>
> Q.     Did Syed ever tell you you can't have your husband --
>
> A.     No.
>
> Q.     -- performing deliveries with you?
>
> A.     No.

*Meyer Decl., Ex. "E" (T. Jackson Dep.), at 82:7-83:23.* When similar questions were posed to

Plaintiff DeLarosa, he testified as follows:

> Q.     Did you ever have any other people work with you performing deliveries?
>
> A.     I have a friend that comes along with me.
>
> Q.     What's his name?
>
> A.     Ambiori Paez.
>
> Q.     Do you know the spelling?
>
> A.     A-M-B-I-O-R-I, and last name is, P-A-E-Z.
>
> Q.     Do you pay Ambiori?
>
> A.     I give him something to come along with me. Sometimes I do.
>
> Q.     Does he come with you to the facility to pick up the bags?
>
> A.     No. Yes, sometimes he goes with me, or we meet.
>
> Q.     Do you know if he's ever met Syed?
>
> MR. ANDREWS: Objection. Objection.
>
> A.     He's seen Syed. He's seen him and Owen.
>
> Q.     And Owen?
>
> A.     Yes, because he sometimes rides along with me, so -- or he waits for me over there, so --
>
> Q.     Does he have his own car?
>
> A.     No. He takes the train.
>
> Q.     How frequently would he come with you on the routes?
>
> A.     When I do long routes, that's the far away, I like to be with somebody because it's a risk that I could fall asleep, so he keeps me awake.
>
> Q.     Have Syed or Owen ever told you not to bring him with you?
>
> A.     No, they've never told me that.
>
> Q.     Does he ever help you deliver the bags when he comes along with you?
>
> MR. ANDREWS: Objection.
>
> A.     Yes, he sometimes helps me.

*Meyer Decl., Ex. "H" (DeLarosa Dep.), at 53:17-55:7.*

Additionally, Plaintiffs maintained other jobs while performing deliveries for Late Night. *Meyer Decl., Ex. "J," ¶20*. Plaintiffs Acklin and T. Jackson testified that they maintained a job doing paper deliveries during the day when they started performing deliveries for Late Night. *Meyer Decl., Ex. "G" (Acklin Dep.), at 70:3-7; Meyer Decl., Ex. "E" (T. Jackson Dep.), at 28:19-22*. In addition, Plaintiff Williams' tax returns indicate that he was working for Cerebral Palsy of Westchester, and Plaintiffs Guzman's tax returns indicate that he was working for Gold Star Salon in 2012, during the time they were performing deliveries for Late Night. *Meyer Decl.), Ex. "I."* Similarly, Plaintiff Chow testified that he engaged in numerous business opportunities during the time he was performing deliveries for Late Night, including operating a cruise planning franchise, cell phone business and towel business. *Meyer Decl., Ex. "C" (Chow Dep.), at 15:10-18:20, 20:14-21:10, 59:4-21*. In fact, not only was Plaintiff Chow operating these other businesses, he was also overlapping his time in performing newspaper deliveries for another company while performing deliveries for Late Night as evidenced by the following testimony:

> Q.    What would you do after you completed your last delivery?
> A.    I would go home.
> Q.    With the bags?
> A.    Yeah, with the empty cooler (indicating).
> Q.    Did you report to anyone after you were done with your deliveries in November 2008?
> A.    With that, with the newspaper, it can overlap too at the same time.
> Q.    Were you performing meal deliveries and newspaper deliveries on the same nights in November 2008?
> A.    It happens a few times.
> Q.    Did that happen until a certain time?
> A.    I went to Fresh Diet first.  If I finish Fresh Diet, I would report to newspaper delivery.
> Q.    You had newspapers and meals in your car --
> MR. ANDREWS: Objection.
> Q.    -- for deliveries?
> MR. ANDREWS: Objection.

A.    Yes.

*Meyer Decl., Ex. "C" (Chow Dep.), at 59:4-21.*

All of the aforementioned facts support the highly individualized nature of the claims being asserted by Plaintiffs. While Plaintiffs attempt to portray a degree of control by Late Night to the putative class as a whole, it is evident that some drivers showed up to work as they pleased to begin their routes without discipline, finished their routes without reporting back to Late Night, took unreported breaks during their routes, brought others along their routes to assist performing the delivery duties, held other jobs, and assigned their work to others, all of which support a proper independent contractor classification. In other words, each Plaintiff's individual circumstances must be examined to determine whether, in the first instance, they were properly classified as independent contractors and, if they were not, whether they are entitled to compensation based on the hours they worked if they ever worked overtime. Just as in *Saleem*, *supra*, "[t]hese differences among drivers are likely to be significant – and could even be outcome determinative – given the nature of the inquiry under New York law" and, for that reason, class certification should be denied. *Saleem*, 2013 WL 6061340, at *6.

The cases discussed in Plaintiffs' moving papers on commonality and typicality do not save their cause because both were premised on the approval of class settlements. *See Khait v. Whirlpool Corp.*, 2009 WL 64900085 (E.D.N.Y. Oct. 1, 2009) and *Odom v. Hazen Transport*, 275 F.R.D. 400 (W.D.N.Y. 2011). To the extent *Odom* conducted an analysis of the Rule 23 elements before approving the class settlement, that case only involved sixteen (16) class members, as opposed to up to one hundred ninety (190) Plaintiffs contend are part of the putative class in this action. The larger class sought by Plaintiffs means that more individual issues are likely to predominate, as evidenced by Plaintiffs' own deposition testimony.

Based on the foregoing, class certification is not appropriate because Plaintiffs have not articulated a commons question that "is capable of classwide resolution – which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551; <u>see also</u> *Deboissiere, supra; Shayler, supra; Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (class certification improper where presentation of individual evidence will be necessary); *Spann*, 219 F.R.D. at 318 (individualized issue prevented a finding that the plaintiff's claims are typical of those brought for the benefit of the class).

## C. Plaintiffs Have Not Demonstrated That They Are Adequate Class Representatives

The adequacy requirement of Rule 23(a)(4) states that a class proponent must demonstrate that he or she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts should consider whether the proposed plaintiffs are providing reliable and accurate information before determining whether they may be adequate class representatives. *Jones v. Ford Motor Credit Co.*, 2005 WL 743213 (S.D.N.Y. Mar. 31, 2005).

In support of their motion, Plaintiffs submit the affidavits of four (4) individuals – Plaintiffs Chow, Hernandez, Guzman, and Acklin (the "Moving Plaintiffs") – which were the same affidavits used on Plaintiffs' first motion.[2]   In addition, Plaintiffs rely on deposition excerpts, which, as described above, do not support their motion since Plaintiffs testified as to varying degrees of alleged control by Late Night.

Notably, Plaintiffs Hernandez and Guzman previously submitted affidavits in support of their motion for injunctive relief, alleging that Defendant Hussain engaged in retaliatory conduct against them for filing the lawsuit by reducing their work schedule and/or not providing further work. *See ECF Nos. 78-6 and 78-7.* Defendants successfully opposed Plaintiffs' motion for

---

[2] Plaintiffs' first motion also included an Affidavit of T. Jackson, which was not submitted on this motion.

17

injunctive relief by demonstrating, *inter alia*, that it was Plaintiffs' own conduct – as evidenced by text messages sent by Plaintiffs Hernandez and Guzman – that caused any reduction in their assignment of work.  <u>See</u> *ECF No. 27 and Minute Entry for 8/15/12.*  The credibility of Plaintiffs Hernandez and Guzman's retaliation claims was called into serious question during the hearing on their motion for injunctive relief, as the statements in their affidavits were expressly refuted by documentary evidence submitted by Defendants.  Since Plaintiffs Hernandez and Guzman provided unreliable and self-serving statements to the Court in support of a prior motion, there is no basis to believe that such statements are now accurate and reliable in order to consider them adequate class representatives.

Moreover, as discussed above, Plaintiffs' claim for relief under the NYLL is limited to New York residents (*ECF No. 46 (Complaint), ¶¶92-96*), and Moving Plaintiffs' instant motion only implicates the NYLL.  However, three (3) of the four (4) Moving Plaintiffs admit that they are not New York residents.  In fact, one of these Moving Plaintiffs – Plaintiff Guzman – states that he is a resident of Pennsylvania.  <u>See</u> *ECF No. 156-3.*  Since Plaintiff Guzman claims to be a Pennsylvania resident, he is not entitled to relief under any of the claims alleged in the Complaint and, for this additional reason, is not an adequate class representative.  As well, one of the Moving Plaintiffs – Plaintiff Acklin – admits that he is a resident of Connecticut.  <u>See</u> *ECF No. 156-4.*  Since Plaintiffs' claim for relief in their Complaint for Connecticut residents – which necessarily includes Plaintiff Acklin – is under Connecticut's Wage and Hour Law (*ECF No. 46 (Complaint), ¶¶102-106*), Plaintiff Acklin is also not an adequate class representative.

Furthermore, each of the affidavits submitted by these individuals is nearly identical.  While the affidavits set forth conclusory allegations that Plaintiffs often worked in excess of forty (40) hours, no specific information is provided by any of the individuals to substantiate the

allegations.   Such specifics would obviously include the hours and days they claimed they worked, but such information is glaringly omitted from all of the affidavits.   Likewise, to the extent Moving Plaintiffs claim that they may have worked overtime hours, they set forth no facts indicating that any of the other putative class members worked any overtime at all.

Accordingly, Moving Plaintiffs are not adequate class representatives and, as a result, class certification should be denied.

## POINT II

### PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT A RULE 23(B)(3) CLASS BECAUSE ANY ANALYSIS  OF CLASS-WIDE LIABILITY WILL REQUIRE A BURDENSOME,  INDIVIDUALIZED INQUIRY

In addition to their many shortcomings under Rule 23(a), Plaintiffs are similarly incapable of maintaining a Rule 23(b)(3) class.   It is now well-settled that common questions will not predominate over class issues for Rule 23(b)(3) purposes where, as here, liability cannot be established on a class-wide basis. The "mini-trials" that would result if this case were to proceed as currently proposed render a 23(b)(3) class inappropriate for lack of predominance of common claims.

For a class to be certified under 23(b)(3), Plaintiffs must demonstrate: (1) that the questions of law or fact common to members of the class predominate over any questions affecting only individual members; and (2) that a class action is superior to other available methods for the full and fair adjudication of the controversy.  *See Lewis v. National Financial Systems, Inc.*, 2007 WL 2455130 (E.D.N.Y. Aug. 23, 2007).

Here, Plaintiffs' misclassification claims and, in turn, claims for compensatory damages for failure to pay overtime compensation, will necessarily require individualized inquiry into each putative member's claims.   Adjudicated in a class setting, such a case would require a

significant number of unnecessary mini-trials to resolve each particular employee's claims, a scenario which is not appropriate for a class action. *See Moore*, 306 F.3d at 1253. Certifying a class here would be inappropriate as the independent contractor issue is unique to a substantial number of individual putative Plaintiffs. There is hardly commonality or typicality in this regard. *See Spann*, 219 F.R.D. at 324 (denying class certification where individualized inquiry for plaintiff precluded finding of typicality).

A.   **Questions of Law And Fact Common To The Class Generally Do Not Predominate Over Questions Affecting Plaintiffs Specifically**

Class certification must be denied when "questions of law or fact common to class members" do not "predominate" over "questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. 591 at 623. "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); *Myers*, 624 F.3d at 549; *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) ("[A]n an issue is common to the class when it is susceptible to generalized, class-wide proof"); *Palmer Kane LLC v. Scholastic Corp.*, 2012 WL 2952898 (S.D.N.Y. July 16, 2012).

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Moore*, 306 F.3d at 1252. "The 23(b)(3) predominance requirement is far more demanding that the commonality requirement of Rule 23(a)." *Vengurlekar*, 220 F.R.D. at 228. Numerous courts have denied certification where common

issues of law are not present or where resolving the claims for relief would require individualized inquiries. *See Myers*, 2007 WL 2126264 (denying class certification where the court would have to conduct a "fact intensive inquiry into each potential plaintiff's employment status"); *see also Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228 (S.D.N.Y. 2002).

Courts are reluctant to certify class actions in independent contractor classification cases because the common question, in turn, would depend on the amount of control that the putative employer actually exercised, rather than a difference in damages only. Here, individual issues clearly predominate over common ones. Because the independent contractor analysis is fact-intensive in order to resolve Plaintiffs' NYLL claims, and is also dependent upon an individualized inquiry into each employee's actual job duties and purported control by Late Night, as discussed above, 23(b)(3) certification is inappropriate. *See Deboissiere*, 2010 WL 4340642, at *4 ("Plaintiffs have not shown that these factors depend upon common instead of individualized questions."); *Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 184 (S.D.N.Y. 2010) (holding that were the issue was the degree of control the putative employer exercised over the putative class members, class certification was inappropriate); *Gardner v. Western Beef Properties, Inc.*, 2011 WL 6140518 (E.D.N.Y. Sept. 26, 2011) (holding that an employer's policy of classifying a certain group of employees as exempt did not sufficiently satisfy the predominance requirement).

In addition, "Rule 23 contains an implicit requirement that the proposed class be precise, objective and presently ascertainable [and a] proposed class must be clearly defined so that it is administratively feasible for a court to determine whether a particular individual is a member." *Toure v. Central Parking Systems of New York*, 2007 WL 2872455, at *15 (S.D.N.Y. Sept. 28, 2007) (*quoting Bakalar v. Vavra*, 237 F.R.D. 59 (S.D.N.Y. 2006)). One of the reasons for this

requirement is that, without it, defining membership in the proposed class would involve a "mini-hearing on the merits of each class member's case." *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp.2d 216, 220-221 (D. Conn. 2003) (declining to allow the plaintiff to pursue class action because "the proof in this case is specific to the individual" in that the main issue was whether each individual employee was exempt). Here, based on the attached affidavits, it is clear even at this early stage that Plaintiffs cannot demonstrate that the sought after class is "precise" or even "presently ascertainable." Supporting this theory is the fact that Plaintiffs nowhere even attempt to define the class of individuals they seek to certify.

The predominance requirement also is not met here because Defendants' alleged liability for unpaid overtime pay depends heavily on individualized proof. Determining whether the drivers were properly classified as independent contractors will require the fact-finder to examine each class member's circumstances, including the manner in which they reported themselves for tax purposes to the government, the duties they performed, and other issues, such as whether they held jobs for other companies. There is a possibility, therefore, that even if some drivers were found by a fact-finder to be "employees," others will have been properly classified as independent contractors. As a result, Plaintiffs' NYLL claim is not amenable to "adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.

To this same end, as recently discussed by the Supreme Court in the wake of its holding in *Dukes*, class certification is not proper where, such as here, "questions of individual damage calculations will inevitably overwhelm questions common to the class." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Indeed, the Supreme Court recently vacated and remanded the Seventh Circuit's decision certifying a class in an overtime misclassification case based on this very issue. <u>See</u> *RBS Citizens, N.A. v. Ross*, 133 S. Ct. 1722 (2013).

As set forth above, Moving Plaintiffs fail to provide any information to support that they worked overtime at all, such as the hours and days they claimed to have worked. Also absent from Moving Plaintiffs' affidavits is the manner in which they were paid and compensation they received. Even if such information was included, it would be unreasonable to extrapolate from these four (4) individuals to the remainder of the class for class certification.

As recently discussed in *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013), class certification would inherently require a finding that the class members "have done roughly the same amount of work, including the same amount of overtime work, and had been paid the same wage." *Id*. at 774.

As further discussed in the *Espenscheid* case and relevant to the facts at bar:

> A further complication is that the [plaintiffs] have no records of the amount of time they worked but didn't report on their time sheets. They are not like lawyers, who record every bit of work they do for a client, in 6-minute segments. The plaintiffs claim that their records are incomplete because [the defendant] told them not to report all their time. But this if true does not excuse them from having to establish the amount of the unreported time. The "representative" proof they have submitted does not do this. The unreported time for each employee could be reconstructed from memory, inferred from the particulars of the jobs the technicians did, or estimated in other ways – any method that enables the trier of fact to draw a "just and reasonable inference" concerning the amount of time the employee had worked would suffice. …. But what can't support an inference about the work time of thousands of workers is evidence of the experience of a small, unrepresentative sample of them.
>
> · · ·
>
> Although each class member claims to have lost several thousand dollars as a result of [the defendant's] alleged violations, that isn't enough to finance a modern federal lawsuit; and in such a case, where it is class treatment or nothing, the district court must carefully explore the possible ways of overcoming problems in calculating individual damages. Yet there may be no way if for example there are millions of class members each harmed to a

> different extent (and many not harmed at all…. In that event the
> suit may have to be limited to injunctive relief, or nonlitigation
> remedies explored.

*Id.* at 774-76 (citations omitted).

In sum, it is evident that questions of law and fact common to the proposed class do not predominate. If a class were certified, the trial of this action could easily devolve into an examination of the duties and purported control exerted over each driver. There is, moreover, a genuine possibility that if Defendants are liable to any of the drivers, they are liable to some, but not all. If that were the case, the fact-finder would have to sift through the entire class to identify whose claim may be meritorious, a process that would require evidence specific to each Plaintiff. Plaintiffs' NYLL claim, therefore, involves at least as much individualized proof as generalized proof, and class-wide questions of law and fact do not predominate over individual questions of law and fact.

**B.      A Class Action Is Not A Superior Method Of Adjudicating Class Claims**

"The superiority question under Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication." *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 142 (S.D.N.Y. 2003). Factors the Courts must consider under the "superiority" prong of Rule 23 include: "(1) the interest of the class members in controlling the litigation of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action." *Wang*, 293 F.R.D. at 498. A class action is not a "feasible, let alone superior method for the fair, efficient and manageable adjudication" of putative class members' claims if a court

would be "required to conduct a series of mini-trials" as to each claim. *Dunnigan*, 214 F.R.D. at 142.

As more fully discussed above, individual issues in this action dominate as an assessment of each putative class member's claim (and damages, if any) will be necessary and force the Court to conduct separate mini-trials as to the viability of each claims based upon Defendants' (lack of control) over each Plaintiffs' work, each Plaintiffs' discretion in performing their duties, and the manner in which each Plaintiff treated themselves for tax purposes.

Based on the foregoing, Plaintiffs have not met their burden under Rule 23(b) to warrant class certification of their claims.

## <u>CONCLUSION</u>

Defendants respectfully request that the Court deny Plaintiffs' motion for class certification, and award Defendants attorneys' fees and costs and such other relief as the Court deems proper.

Dated:      Woodbury, New York
            June 17, 2013

                              Respectfully submitted,

                              KAUFMAN DOLOWICH & VOLUCK, LLP

                              By: _____
                                   Jeffery A. Meyer, Esq.
                                   Yale Pollack, Esq.
                              135 Crossways Park Drive, Suite 201
                              Woodbury, New York 11797
                              (516) 681-1100
                              *Attorneys for Defendants*

4819-3705-4747, v. 1

25