UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
FERNANDO HERNANDEZ, et al., each : 
individually, and on behalf of all other persons :
similarly situated, :
 :
                                                  Plaintiffs, :
 :
        -against- :
 :
THE FRESH DIET, INC., et al., :
 :
                                                 Defendants. :
-----------------------------------------------------------x

12-cv-4339 (ALC) (JLC)

<u>OPINION & ORDER</u>

ANDREW L. CARTER, JR., United States District Judge:

## I. INTRODUCTION

On June 1, 2012, Plaintiffs Fernando Hernandez, Kenneth Cho, Bryant White, David Williams, Marquis Acklin, Cecilia Jackson, Michael Lattimore, and Juany Guzman ("named Plaintiffs," together with opt-in plaintiffs, "Plaintiffs") brought this putative class and collective action under, *inter alia*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York State Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.*, to recover unpaid overtime against, among others, The Fresh Diet, Inc., Late Night Express Courier Services, Inc., Syed Hussain, Judah Schloss and Zalmi Duchman (collectively "Defendants").[1] On November 21, 2012, the Honorable Magistrate Judge James L. Cott approved the dissemination of notices of the FLSA claims to putative collective action members. (ECF No. 49.) On January 14, 2014, Defendants filed a motion for summary judgment against Plaintiffs' on all claims or, in the alternative, for decertification of the FLSA collective action. (ECF No. 129.) On February 21, 2014, Plaintiff filed an opposition and cross-motion for partial summary judgment on their FLSA claims. (ECF No. 140.) On May 20, 2014, Plaintiffs filed a motion to certify their NYLL

---

[1] The Court grants Defendants' unopposed motion dismiss Plaintiffs' claims against all other Defendants for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.

claims as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). (ECF No. 154.) For the reasons described below, Defendants' motion for decertification of the FLSA collective action is granted, Plaintiffs' motion to certify the NYLL claims as a class action is denied, and both pending summary judgment motions are denied.

## II. BACKGROUND

The following facts are largely undisputed facts and drawn from Plaintiffs' "Opposition to Defendant's Local Rule 56.1 Statement of Material Facts" (ECF No. 38 ("Pls.' Counter-Stmt."), submitted as a counterstatement to Defendants' Local Rule 56.1 Statement in support of their motion for summary judgment, as well as Defendants' "Local Rule 56.1 Counter-Statement to Plaintiffs' Statement of Undisputed Material Facts" (ECF No. 39 ("Defs.' Counter-Stmt.")), submitted as a counterstatement to Plaintiffs' Local Rule 56.1 Statement submitted in support of their cross-motion for partial summary judgment, as well the underlying evidence cited in both.

Defendant The Fresh Diet Inc. ("Fresh Diet") provides fresh daily-prepared meals that are delivered directly to customers. (Pls.' Counter-Stmt. ¶ 1.) Defendant Late Night Express Courier Services Inc. ("Late Night") generally entered into purported independent contractor agreements with Plaintiffs as delivery drivers of the meals to Fresh Diet's clients in the tri-state area. (Pls.' Counter-Stmt. ¶ 2.) Syed Hussain was the Delivery Manager for Late Night, and he oversaw the deliveries, hired drivers, and created and assigned drivers to routes based in part on their availability and preference. (Pls.' Counter-Stmt. ¶ 10.) Plaintiffs would show up at the Late Night facility where the meals were prepared anywhere between 3:00 p.m. and midnight to begin their deliveries, and completed their deliveries anywhere between 2:00 a.m. and 7:00 a.m. (Pls.' Counter-Stmt. ¶¶ 14-15.) Plaintiffs took unreported breaks for meals, restroom use and gas. (Pls.' Counter-Stmt. ¶ 16.) Plaintiffs were given company identification cards and

uniforms, but only after requesting them for use in identifying themselves to doormen of customers and to police officers during their deliveries. (Defs.' Counter-Stmt. ¶ 7; Jan. 14, 2014 Declaration of Jeffrey Meyer (hereinafter "Meyer Decl."), Ex. E (Kenneth Chow Dep.) 38:14-39:4.)

Late Night generally paid the Plaintiffs based, not on the amount of time worked, but on the number of deliveries they made or number of miles they drove, or both, depending on the delivery area. (Pls.' Counter-Stmt. ¶6.) Late Night did not withhold taxes from Plaintiffs' compensation, and issued IRS Form 1099s to them at year end instead. Plaintiffs were solely responsible for filing local, state, provincial, and federal income tax returns related to their earnings. (Pls.' Counter-Stmt. ¶ 8.) Many Plaintiffs testified that they did not file tax returns declaring the compensation they received form Late Night, and the four plaintiffs who produced tax returns claiming their Late Night compensation claimed independent contractor deductions. (Pls.' Counter-Stmt. ¶¶ 8-9.) Plaintiffs did not receive health insurance or any other fringe benefits from Late Night. (Pls.' Counter-Stmt. ¶¶ 21-22.) Plaintiffs used their own vehicles, which they generally maintained and purchased gas and insurance for out of pocket. (Pls.' Counter-Stmt. ¶¶ 26-27.)

### III.   FLSA CLAIMS

#### A.   Applicable Law

Plaintiffs claim that they were not paid overtime to which they were entitled under the FLSA because the Defendants misclassified them as independent contractors instead of employees. The FLSA defines an "employee" as any "individual employed by an employer," 29 U.S.C. § 203(e)(1), and to "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). "Under the FLSA, the question of whether an employee-employer relationship exists is one of

'economic reality,'" which turns upon a determination of whether the "worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself].'" *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 305, 306 (E.D.N.Y. 2009) (alterations in original) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961); *Godoy v. Restaurant Opportunity Ctr. of N.Y., Inc.*, 615 F. Supp. 2d 186, 192-93 (S.D.N.Y. 2009)). In determining that "economic reality," courts consider the non-exhaustive five-factor test provided by the Supreme Court in *United States v. Silk*, 331 U.S. 704, 716 (1947):

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Godoy*, 615 F. Supp. 2d 186, 192-93 (S.D.N.Y. 2009) (quoting *Brock v. Superior Care Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988)). There are no bright-line rules or precise formulas for determining whether an employer-employee relationship exists, however. Instead, the weight to be given to each factor is evaluated on a case-by-case basis and determined by the totality of the circumstances. *See, e.g., Barfield v. N.Y.C. Health and Hospitals Corp.*, 537 F.3d 132, 141-42, 143 (2d Cir. 2008) (employee/independent contractor status is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances"); *Brock*, 840 F.2d at 1059 (2d Cir. 1988) (observing that mechanical application of the test should be avoided).

Named Plaintiffs, along with 20 opt-in plaintiffs, assert their FLSA claims on a collective action basis under 29 U.S.C. § 216(b). Such certification involves a two-step process. At the initial, "conditional" certification stage, plaintiffs are required to make a "modest factual

4

showing" that they and the other "potential plaintiffs were victims of a common policy or plan violating [the] FLSA." *Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295(GEL), 2007 WL 2873929, at *2 (S.D.N.Y. Oct. 2, 2007). At the second, post-discovery, "decertification" stage, courts apply a more "stringent standard" of proof in determining whether plaintiffs are similarly situated for the purposes of the FLSA. *See id.* at *3; *see also Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."). At both stages, the burden is on the plaintiffs to prove that they and other employees are similarly situated. *Ayers v. SGS Control Servs.*, No. 03 Civ. 9077 RMB, 2007 WL 646326, at *4 (S.D.N.Y. Feb. 27, 2007).

While the Second Circuit has not prescribed standards for determining whether proposed collective action members are similarly situated, district courts in this Circuit generally consider the: "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment]." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (quoting *Guzman v. VLM, Inc.*, No. 07-CV-1126, 2007 WL 2994278, at *3 (E.D.N.Y. Oct. 11, 2007)). Further, although the merits of plaintiffs' claims are not determined at this stage, an "understanding [of] their claims is essential to deciding whether [they] are similarly situated in *relevant respects* and allowed to proceed as a collective." *Stevens v. HMSHost Corp.*, No. 10 CV 3571(ILG)(VVP), 2014 WL 4261410, at *7 (E.D.N.Y. Aug. 27, 2014) (quoting *Simmons v. Valspar Corp.*, No. 10–3026, 2013 WL 2147862, at *2 (D. Minn. May 16, 2013)). "[T]he decision to certify or decertify a

5

collective action under section 216(b) is soundly within the district court's discretion." *Id.* (quoting *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1348-49 (S.D. Fla. 2007)). "If the plaintiffs are similarly situated, the collective action proceeds to trial; but if they are not, 'the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims.'" *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)).

In this case, after careful consideration of the applicable law, the evidence in the record and the parties' respective summary judgment motions, the Court concludes Plaintiffs are not similarly situated and that it must decertify the collective action.

### B. Application

#### 1. Disparate Factual & Employment Settings

Plaintiffs argue that they have demonstrated that they are similarly situated because they were all classified by Defendants as independent contractors and not paid overtime compensation. "Blanket misclassification" arguments are insufficient at this stage, however. *See, e.g., Stevens*, 2014 WL 4261410, at *5 ("blanket classification decisions do not automatically qualify the affected employees as similarly situated, nor eliminate the need to make a factual determination as to whether class members are actually performing similar duties") (quoting *Gardner v. W. Beef Props., Inc.*, No. 07–cv–2345, 2013 WL 1629299, at *7 (E.D.N.Y. Mar. 25, 2013)). Rather, Plaintiffs must demonstrate at this stage that they are similar in "relevant respects," i.e., with respect to the factors relevant to this Court's determination of whether they are employees or independent contractors under the FLSA which, as noted, can vary in any given case. In this case, this Court's review of the record indicates that the degree of

control exercised by Defendants over the drivers will be a critical determinant of whether any given driver was an employee or independent contractor, and that Plaintiffs are not similarly situated along this dimension.

Specifically, while Plaintiffs are certainly similarly situated with respect to some factors, application of these factors is inconclusive as to whether Plaintiffs were employees or independent contractors in this case, such that Plaintiffs are unable to carry their burden to "demonstrate that the Defendant[s] had a *common policy or plan* in violation of the FLSA *that negatively impacted the original and opt-in Plaintiffs.*" *See, e.g., Burch v. Qwest Communications Intern., Inc.*, 677 F. Supp. 2d 1101, 1114 (D. Minn. 2009) (emphasis added) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, No. 2:04–CV–00085, 2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006)). While independent contractor status is supported, for example, by the facts that the drivers signed purported independent contractor agreements that were terminable at will by either party, made not insignificant investments in using their own vehicles, purchasing gas for and maintaining insurance on and their vehicles themselves out of pocket, (*see e.g.*, Pls.' Counter-Stmt. ¶¶ 2, 26-27), relative to other cases, these factors do not strongly support independent contractor status so as to render the degree of control exercised over the drivers irrelevant. *See, e.g., Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 608 (E.D.N.Y. 2012) (relative investment and potential for profit factors supported independent contractor status where plaintiffs invested in large trucks, employees, tools and supplies for freight deliveries); *cf. Hopkins v. Cornerstone Am.*, 545 F.3d 338, 345-46 (5th Cir. 2008) (permanency weighed in favor of employee status despite at-will terminability of contracts because plaintiffs "generally remained in their positions for 'a significant period of time'"). Similarly, while employee status is supported by the fact that the drivers performed relatively

7

unskilled work and were integral to Defendant's business, these considerations are not particularly weighty given that, for example, the significance of the integral nature of the drivers' work is mitigated by the interchangeability of the drivers themselves. *See, e.g., Browning*, 885 F. Supp. 2d at 610.

In view of the foregoing, the degree of control Defendants exercised over the drivers will be a vital, if not decisive, consideration in determining the legitimacy of their classification of Plaintiffs as independent contractors. However, the record indicates that a determination of the import of this factor is not possible on a collective action basis, because it is not susceptible to common proof. This is illustrated amply by the diametrical positions the parties' have taken on their summary judgment motions, each contending that the control factor strongly militates in their favor, while cherry picking and extrapolating from the favorable testimony of some drivers and ignoring the countervailing testimony of others.

For example, some drivers testified that Late Night maintained minimal contact with and supervision over them such that they were free to perform their deliveries in the manner they saw fit, (*see* Meyer Decl. Ex. G. (Teresa Jackson Dep.) 92:15-20. 94:21-95:7, Ex. K (Denny Delarosa Dep.) 43:19-25), while another testified that Hussain was in constant, real-time contact with him about the status and any variances to his deliveries during his routes. (*See* Mar. 28, 2014 Declaration of Walker G. Harman ("Harman Decl.") Ex. B, (Juan Correa Dep.) 35:25 – 36:18; *see also* 37:8-9 ("Everything had to be done the way [Hussain] said."). Some drivers testified that, on their own initiative, they enlisted or even hired third parties unaffiliated with Late Night to aid them in their deliveries—at least some of whom were paid—without any objection from Late Night, (*see* Meyer Decl. Ex. G. (Jackson Dep.) 82:7 – 83:23; Ex. K. (Delarosa Dep. 53:17 – 55:7), while another driver testified that Hussain warned him that he could not make deliveries

8

for other drivers (the functional equivalent) without Hussain's express permission. (*See* Meyer Decl. Ex. E (Chow Dep.) 119:15 – 120:4.) Many drivers testified that they believed they could theoretically be "disciplined" for tardiness or misdeliveries, (*see, e.g.*, Meyer Decl. Ex. J. (Correa Dep.) 47:24 – 48:4), while another claimed he was constantly reprimanded and disciplined through salary and route reductions not only for tardiness or misdeliveries, but also for failing to comply with specific Late Night demands. (*See* Feb. 21, 2014 Harman Decl. Ex. C (Fernando Hernandez Dep.) 77:3 – 78:12, 79:3 – 82:14.)[2] Some drivers testified to being permitted to and in fact holding other jobs, (*see, e.g.*, Meyer Decl. Ex. E ("Chow Decl.") 15:10 – 18:20, 20:14 – 21:10, 59:4-21) (testifying that he maintained multiple jobs/business endeavors outside of his deliveries for Late Night), while another insisted that Hussain told him that they needed to be available for Late Night at all times. (*See* Harman Decl. Ex. B (Correa Dep.) 55:13-19 ("[W]e had to be available. Yes. Yes. [Hussain] told us we had to be available. We had to be available always . . . .")). Many drivers testified that they generally did not and were not required to return to the facility after finishing their deliveries, (*see e.g.*, Meyer Decl. Ex. I. (Marquis Acklin Dep.) 37:23 – 38:13), while one drivers testified that it was "mandatory for [him]." (Harman Decl. Ex. C (Guzman Dep.) 63:13.)

As the examples the Court has highlighted demonstrate, Plaintiffs' testimony "var[y] significantly with respect to the [degree of control] relevant to [determining their alleged status as employees]." *Stevens*, 2014 WL 4261410, at *7. "These wide differences in employment

---

[2] Consistent with the FLSA's emphasis on economic realities, the distinction between the perceived possibility of "discipline" or "penalties" on the one hand, and actual penalties on the other, is a meaningful one, as is the distinction between whether any imposed discipline derived from constraints inherent in "the nature of the business," (e.g., misdeliveries or tardiness in a delivery business) of the alleged employer, or emanated externally from the alleged employer itself (e.g., failure to comply with specific company guidelines). *See Browning*, 885 F. Supp. 2d 590, 602 (E.D.N.Y. 2012).

settings . . . 'greatly complicate the use of representative proof either to prove the correctness of [Defendants' independent contractor classification] or to rebut such a showing.'" *Id.* (quoting *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 582 (E.D. La. 2008)). Accordingly, Plaintiffs were clearly not subjected to a common policy of control by Defendants, and their resultant disparate and factual employment settings with respect to this issue weighs considerably in favor of decertification.[3]

### 2. Individualized Defenses

In cases where the evidence suggests a wide disparity in the relevant factual circumstances, the "individualized defenses prong of the [decertification] analysis mirrors the disparate employment settings prong." *Stevens*, 2014 WL 4261410, at *7. Quite simply, a defendant "cannot be expected to come up with 'representative' proof when the plaintiffs cannot reasonably be said to be representative of each other." *Johnson*, 561 F. Supp. 2d at 587. As a result, while Defendants in this case contend that they have separate, individualized defenses for each plaintiff based on the amount of alleged overtime worked—because of the variance in arrival and completion times and the different compensation formulas for stops inside and

---

[3] Indeed, *Sackasci v. Quicksilver Delivery Systems, Inc.*, No. 8:06-cv-1297-T-24-MAP, 2007 WL 4218984 (M.D. Fla. Nov. 28, 2007), on which Plaintiffs rely almost exclusively in support of their motion for partial summary judgment, itself supports decertification. The court in *Sackasci* found that, among other things, the delivery courier company defendant sufficiently controlled its drivers to support employee status under the FLSA because it had common policies/practices which included: providing them training which entailed how to fill out paperwork and to use scanning devices it provided them which tracked their deliveries in real-time; providing daily route sheets that established the order of deliveries with an estimated delivery time and could not be varied absent manager approval; prohibiting them from subcontracting or having outsiders accompanying them as helpers or passengers; and requiring Plaintiffs to wear uniforms bearing the company emblem. *Id.* at *4-*6. In this case, while *Sackasi*'s rationale could buttress the claims of some Plaintiffs, it is potentially fatal to the claims of others. This is perhaps nowhere more true than for the drivers who effectively subcontracted their work, as this finding strong militates against not only a finding of sufficient control, but also indicates that the drivers' had a more significant prospect for profit from their dealings with Late Night through cost-efficient subcontracting.

outside of Manhattan—the Court need not reach this issue as the conflicting, individualized evidence on the issue of control adequately establishes that Defendants have individualized defenses so as to support decertification.

### 3. Fairness and Procedural Considerations

Decertification is warranted, finally, in light of fairness and procedural considerations. This Court is, of course, cognizant that FLSA collective actions serve valuable interests by allowing plaintiffs to "lower individual costs [and] vindicate the[ir] rights by [the] pooling of resources," and the judiciary to "efficient[ly] resol[ve] in one proceeding [all] common issues of law and fact arising from the same alleged discriminatory activity." *Zivali*, 784 F. Supp. 2d at 468. As indicated above, however, Plaintiffs have failed to carry their burden that they were subject to the *same activity* by Defendants in this case. Thus, proceeding as a collective action here will inevitably lead to "one of two results—it would either prejudice [D]efendants' ability to present their defenses, or require mini-trials for each of the opt-in plaintiffs." *Stevens*, 2014 WL 4261410, at *8; *see also Tracy v. NVR*, 293 F.R.D. 395, 398 (W.D.N.Y. 2013) (decertifying collective action because question of whether employees were "outside salespersons" under the FLSA would require "dozens of mini-trials" given the "wide variety of employment practices and time management requirements among the individual plaintiffs"). As these are equally undesirable results, the Court must decertify the collective action.

### IV. NYLL CLAIMS

#### A. Applicable Law

Under the slightly different NYLL standard for determining employee-independent contractor status, some of the factors considered under the FLSA are relevant, with a focus not on economic reality, but on "the *degree of control* exercised by the purported employer over the

11

results produced or the means used to achieve the results." *Velu*, 666 F. Supp. 2d 306-07 (emphasis added) (citing *Bynog v. Cipriani Grp. Inc.*, 1 N.Y.3d 193, 198 (2003)). The specific factors considered are whether the alleged employee "(1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule." *Id.* at 307 (quoting *Bynog*, 1 N.Y.3d at 198)). Courts have also observed that, if an alleged employee classifies himself or herself as an independent contractor for income tax purposes, that "may significantly impede" his or her ability to claim NYLL employee status. *See, e.g.*, *Deboissiere v. Am. Modification Agency*, No. 09-CR-2316 (JS)(MLO), 2010 WL 4340642, at *3 (E.D.N.Y. Oct. 22, 2010) (citing *Gagen v. Kipany Prods. Ltd.*, 27 A.D.3d 1042, 1043-44 (1st Dep't 2006)).

As previously noted, Plaintiffs seek to bring their NYLL claims as a class action pursuant to Rule 23, on behalf of "all non-exempt persons employed by Defendants as delivery drivers on or after the date that is six (6) years before the filing of the Complaint." To bring a claim on behalf of a class, the party seeking certification must "affirmatively demonstrate his compliance with Rule 23." *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12 Civ. 8450(JMF), 2013 WL 6061340, at *3 (S.D.N.Y. Nov. 15, 2013) (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)). "[T]he four threshold requirements of Rule 23(a) [are] numerosity, commonality, typicality, and adequacy of representation." *Catholic Healthcare W. v. US Foodservice Inc.*, 729 F.3d 108, 117 (2d Cir. 2013). If those threshold requirements are met, the moving party must also "demonstrate 'through evidentiary proof' that the class satisfies at least one of the three provisions for certification found in Rule 23(b)." *Id.* Here, Plaintiffs propose a Rule 23(b)(3) class and therefore "must establish: (1) predominance—'that the questions of law or fact common to class members predominate over any questions affecting only individual members';

12

and (2) superiority—'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

In evaluating a motion for class certification, a district court may consider merits questions, but only "to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013); *see also Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 464-65 (2d Cir. 2013). Significantly, Rule 23 "does not set forth a mere pleading standard." *Comcast Corp.*, 133 S. Ct. at 1432 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011)). Instead, the party seeking certification must demonstrate by a preponderance of the evidence that all the requirements of the Rule have been met. *See, e. g., Levitt*, 710 F.3d at 465. Further, in evaluating whether the moving party has done so, the Court must engage in a "rigorous analysis," in which it is permitted to "probe behind the pleadings before coming to rest on the certification question." *Comcast Corp.*, 133 S. Ct. at 1432 (quoting *Dukes*, 131 S. Ct. at 2552)).

### B. Application

Assuming *arguendo* that Plaintiffs have satisfied all other requirements for class certification, their motion must fail because common questions do not predominate over individual questions as required under Rule 23(b)(3), largely for the reasons indicated in Section III-B, *supra*. Indeed, "[a] number of district courts in this Circuit have observed that the second-stage 'similarly situated' analysis under FLSA § 216(b) is 'considerably less stringent than the requirement of [Rule 23(b)(3)] that common questions 'predominate.'" *See Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. 10-CV-1341, 2014 WL 2534833, at *11 (E.D.N.Y. June 5, 2014) (quoting *Ayers*, 2007 WL 646326, at *4). This, together with the noted similarities

between the NYLL and FLSA employee-independent contractor analyses, *see, e.g.*, *Hart v. Rick's Cabaret Int'l Inc.*, 967 F. Supp. 2d 901, 922-23 (S.D.N.Y. 2003), is arguably sufficient to establish Plaintiffs' failure to demonstrate predominance. If there were any doubt, however, an independent evaluation of the NYLL and Rule 23 criteria demonstrates that the basis for denial of class certification is just as strong as that for decertifying the collective action, if not stronger.

In *Deboissiere v. American Modification Agency*, for example, the court was confronted with an unopposed Rule 23 class certification motion from loan modification advisor plaintiffs who argued that they were misclassified as independent contractors. 2010 WL 4340642, at *1. In evaluating the motion, the court found that, while Plaintiffs had shown that three of the NYLL factors (whether they worked at their own convenience, were on payroll and received fringe benefits) were subject to common proof, consideration of those factors was inconclusive, with only the first supporting employee status. *See id.* at *4. As a result, the court denied the motion, *sua sponte*, finding that plaintiffs' common evidence demonstrated that "any particular proposed class member's status might be a close question that depends upon the 'significant consideration' of how the proposed class member defined himself on tax returns, and whether the class member sought tax benefits associated with independent contractor status." *Id.* (citing *Gagen*, 27 A.D.3d at 1043-44).

*Deboissiere*'s reasoning applies with significant force here. While Plaintiffs have submitted common proof on four elements of the NYLL analysis, i.e., whether Plaintiffs were free to engage in other employment, received fringe benefits, were on the employer's payroll and operated on a fixed schedule, three of those four support an independent contractor status finding. Like *Deboissiere*, then, class certification is inappropriate given that any driver's case will, at best, be a close question that will turn on considerations which do not admit of common

and representative proof. This includes not only the tax return related conduct that was dispositive in *Deboissiere*, but also the chief NYLL consideration of whether the drivers worked at their own convenience and were sufficiently controlled by the Defendants. *See Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 188-89 (S.D.N.Y. 2010) (denying motion for class certification of newspaper delivery driver plaintiffs because the degree of control exercised could only be proved through "an individualized assessment of [defendant's relationship] with each deliverer"); *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 418 (S.D.N.Y. 2013) ("In making the predominance determination, a court must generally consider whether the proposed class can 'establish each of the . . . required elements of [their claims] using common evidence." quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001), *overruled on other grounds by* In re IPO, 471 F.3d 24 (2d Cir. 2006)).

IV.   **CONCLUSION**

For the reasons described above, Defendants' January 24, 2014 motion (ECF No. 129) is **DENIED** as to summary judgment but **GRANTED** as to decertification, while Plaintiffs' cross-motion for partial summary judgment (ECF No. 140) and motion for Rule 23 class certification (ECF No. 154) are **DENIED**. Opt-in plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**. All claims against defendants Fresh Diet Express Corp., The Fresh Diet – NY Inc., Fresh Diet Grab & Go, Inc., a/k/a YS Catering Holdings, Inc. d/b/a YS Catering, Inc., and Fresh Diet Express Corp. are **DISMISSED WITH PREJUDICE**.

The Court also schedules a status conference in this action for **October 22, 2014 at 10:00 a.m.** Counsel should appear-in person at this date and time at the Thurgood Marshall Courthouse, 40 Foley Square, Courtroom 1306.

**SO ORDERED.**

15

**Dated:** September 29, 2014

New York, New York

ANDREW L. CARTER, JR.
United States District Judge

16