**THE HARMAN FIRM, LLP**

Attorneys & Counselors At Law
www.theharmanfirm.com

April 11, 2016

**VIA EMAIL and ECF (ALCarterNYSDChambers@nysd.uscourts.gov)**

Hon. Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, New York 10007

  Re: *Hernandez v. The Fresh Diet et al., 12 CV 4339 (ALC)(JLC)*

Dear Judge Carter:

  We represent the Plaintiffs in the above-referenced action. We write in support of our request, dated April 6, 2016, for a pre-motion conference in contemplation of Plaintiffs' anticipated motion to enforce the settlement agreement reached in this action and for sanctions related to the costs and expenses to all enforce that agreement.

**I.**  **Facts**

  After three years of litigation and protracted settlement negotiations, the Parties submitted a finalized settlement agreement (the "Agreement") to the Court on January 28, 2016, which the Court approved on February 2, 2016. The Agreement was executed by the Plaintiffs and by its terms became binding on the Parties shortly thereafter. The Agreement required the Defendants to tender payment of four hundred and seventy eight thousand nine hundred and eighty nine dollars and sixty-seven cents ($478,989.67) (the "Settlement Payment") in full by March 24, 2016. Defendants did not tender payment on that date. The following is a description of recent events.

  Innovative Food, Inc.'s ("Innovative") attorneys represented to us that Innovative would be responsible for making the Settlement Payment. Indeed, Howard Rhine, Esq., stated on numerous occasions that, while The Fresh Diet, Inc. ("Fresh Diet") did not have the funds for the settlement payment, Innovative did and would be making the payments. Innovative's making of those payment is reasonable in light of the fact that during the time period leading up to the Agreement and at the time it was reached, Innovative wholly owned and controlled Fresh Diet and was funding its operations after having purchased Fresh Diet from its founder, Zalmi Duchman. Indeed, it was made clear to us at the time the settlement was consummated that Mr. Rhine's clients, Innovative and Fresh Diet, would be funding the settlement and not the individual Defendants, even though all Defendants, including the individuals are jointly and severely liable. In further support of this conclusion, Mr. Rhine insisted upon a forty-five (45) day deadline for payment, because his clients, Innovative and Fresh Diet, needed more than one

Hon. Andrew L. Carter, Jr.
April 11, 2016
Page 2 of 4

month to position the companies to make the Settlement Payment.  Further, according to Mr. Rhine, the funds could only come from Innovative because Fresh Diet did not have the funds to pay.

Days before the Settlement Payment was due, we received a call from counsel for the individual Defendants, attorneys from Kaufman, Dolowich & Koluck, LLP ("Kaufman"), who explained that one month ago, around early March 2016, Innovative sold Fresh Diet back to Duchman.  Counsel explained that Duchman, who is individually liable for the Settlement Payment, repurchased Fresh Diet because Innovative intended to bankrupt the Fresh Diet to avoid making the Settlement Payment, and that Kaufman now represented Fresh Diet.   Counsel also stated that Innovative and its counsel, Mr. Rhine, always intended to bankrupt Fresh Diet and never intended to make the Settlement Payment.  While we had been suspicious of the possibility of bankruptcy in the past, this conversation made explicitly clear that bankruptcy was indeed the plan.

As part of the repurchase of Fresh Diet, Mr. Duchman purportedly received one million dollars ($1,000,000) in financing; he has stated to the media that he expects to receive millions more in funding with plans to take Fresh Diet public by the end of the year.   However, it is evident that Mr. Duchman is far more interested in lining his pockets than in meeting his financial obligations, as on April 5, 2016, Duchman's attorneys represented that Duchman did not have the funds to pay the full amount of the Settlement Agreement.

While Kaufman did propose a payment plan consisting of monthly payments in the amount of $18,000 until the total is paid (which would take approximately two years), Plaintiffs have no reason to believe that Defendants would abide by this proposed agreement any more than they have the extant agreement.  Further, we have no authority to negotiate a payment plan; this has been repeatedly made clear to the Defendants from the beginning of the settlement process.  That Defendants, being aware of this, would consummate a settlement with no payment plan, collect a million dollars in funding and then, claiming poverty, refuse to pay without a multi-year payment plan, is no less than bad faith.

Accordingly, Plaintiffs intend to move to enforce the Agreement and for sanctions.

## II.    Summary of Argument

A.    *The Court should grant Plaintiff's motion to enforce the Agreement.*

A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it*.  Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974)*.*  An attorney's actual authority to settle a case "may be inferred from words or conduct which the principal has reason to know indicates to the agent that he is to do the act." *Royal Indian Raj Int'l Corp. v. Domains by Proxy, Inc.*, No. 08 CIV. 3445 JGK, 2011 WL 2946367, at *2 (S.D.N.Y. July 20, 2011) (quoting *United States v. International Bhd. Of Teamsters*, 986 F.2d 15, 20 (2d Cir. 1993).  New York law is clear that when multiple promisors agree to pay a stated sum to the same promisee, they will be jointly liable unless the

promisors unambiguously expressed a contrary intention. *Lemus v. Manhattan Car Wash, Inc.*, 2010 U.S. Dist. LEXIS 33263, at *22 (S.D.N.Y. Mar. 25, 2010). A litigant cannot unilaterally decide to ignore a signed and approved settlement agreement due to a change of circumstances. *See Febus v. Guardian First Funding Grp., LLC*, 90 F. Supp. 3d 240, 245 (S.D.N.Y. 2015) ("Settlement agreements receive a 'presumption in favor of enforcement' and will not be disturbed by a 'change of heart' of one of the parties.").

Here, Defendants explicitly agreed to the terms of the Agreement, which the Court then approved. Moreover, Defendants' attorneys had at least apparent authority to agree to the settlement terms. "The doctrine of apparent authority comes into play when a party ... reasonably believes that another party ... has delegated authority to enter into an agreement on its behalf to an agent...." *Trustees of UIU Health & Welfare Fund v. New York Flame Proofing Co., Inc.,* 828 F.2d 79, 83–84 (2d Cir. 1987). In this case, Defendants' attorneys negotiated the Agreement for several months and represented in letters and in open court that they had agreed to the Settlement Agreement. Defendants' counsel had at least apparent authority to settle the claims according the terms of the Agreement; therefore, the Court should enforce the Agreement.

B.   *The Court should grant Plaintiff's motion for sanctions.*

Federal courts have "inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." *Royal Indian Raj Int'l Corp.*, 2011 WL 2946367, at *2 (quoting *International Prods. Corp. v. Koons,* 325 F.2d 403, 408 (2d Cir.1963) (internal quotes omitted)). Courts may impose sanctions even "where the conduct at issue is not covered by one of the other sanctioning provisions." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991). The Court of Appeals for the Second Circuit " requires "a particularized showing of bad faith to justify the use of the courts inherent power." *United States v. International Bhd. of Teamsters, Chauffers, Warehousemen and Helpers of Am., AFL–CIO,* 948 F.2d 1338, 1345 (2d Cir.1991).

The chronology of the Defendants' actions indicates that they have proceeded in negotiations of the Settlement Agreement in bad faith. Plaintiffs agreed to the settlement terms, foregoing a trial, based on the belief that they would promptly receive the Settlement Payment. However, Defendants never made that payment and refuse to correct that failure; instead, they proposed new, more favorable settlement terms, terms which Plaintiffs had already rejected, abusing the litigating process. A litigant's entering into a settlement agreement and refusing to pay it to procure additional concessions indicates bad faith. *Micromedia B.V. v. ByteShield, Inc.*, No. C 10-3861 EDL, 2011 WL 5573345, at *4 (N.D. Cal. Nov. 16, 2011) (finding bad faith where a litigant "engaged in self-help tactics to procure additional concessions.") Moreover, such conduct is an abuse of the litigation process and, therefore, fees and costs incurred in enforcing the Agreement should be awarded to the Plaintiffs. See *Bilodeau v. Vlack*, No. 3:07CV1178 JCH, 2010 WL 2232484, at *6 (D. Conn. Mar. 17, 2010), *report and recommendation adopted in part,* No. 07-CV-1178 JCH, 2010 WL 2232480 (D. Conn. May 26, 2010) (awarding fees and costs to defendant where the parties agreed to a settlement, and the Defendant understood that he was paying to obtain a cessation of hostilities, and the plaintiff refused to release the defendant).

Hon. Andrew L. Carter, Jr.
April 11, 2016
Page 4 of 4

      Accordingly, the Court should award Plaintiffs costs and fees related to the enforcement of the Settlement Agreement.

*     *     *     *

      Defendants are not excused from their responsibilities to promptly tender payment to the Plaintiffs.  Accordingly, Plaintiffs will seek the enforcement of the Agreement and sanctions.

                                      Respectfully submitted,

                                      Walker G. Harman, Jr.


cc:    David J. Sack, Esq. (via ECF)
        Jeffrey A. Meyer, Esq. (via ECF)
        Aaron N. Solomon, Esq. (via ECF)