**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
FERNANDO HERNANDEZ, KENNETH CHOW,
BRYANT WHITE, DAVID WILLIAMS,
MARQUIS ACKLIN, CECILIA JACKSON,
TERESA JACKSON, MICHAEL LATTIMORE
and JUANY GUZMAN, Each Individually, And On Behalf Of
All Other Persons Similarly Situated,

*Plaintiffs,*

-against-                                                            12 CV 4339 (ALC) (JLC)

THE FRESH DIET INC.,
LATE NIGHT EXPRESS COURIER SERVICES, INC. (FL),
FRESH DIET EXPRESS CORP. (NY),
THE FRESH DIET - NY INC. (NY),
FRESH DIET GRAB & GO, INC. (FL) a/k/a
YS CATERING HOLDINGS, INC. (FL) d/b/a
YS CATERING, INC. (FL),
FRESH DIET EXPRESS CORP. (FL),
SYED HUSSAIN, Individually,
JUDAH SCHLOSS, Individually,
and ZALMI DUCHMAN, Individually

*Defendants.*
-------------------------------------------------------------------------X

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND FOR SANCTIONS**

---

**THE HARMAN FIRM, LLP**
Walker G. Harman, Jr.
Edgar M. Rivera
220 Fifth Avenue, Suite 900
New York, New York 10001
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*

**PRELIMINARY STATEMENT**

Plaintiffs Fernando Hernandez, Kenneth Chow, Bryant White, David Williams, Marquis Acklin, Cecilia Jackson, Teresa Jackson, Michael Lattimore and Juany Guzman (collectively referred to as "Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion to Enforce the Settlement Agreement and for Sanctions against Defendants The Fresh Diet Inc. ("Fresh Diet"), Late Night Express Courier Services, Inc. (FL), Fresh Diet Express Corp. (NY), The Fresh Diet - NY Inc. (NY), Fresh Diet Grab & Go, Inc. (FL) a/k/a S Catering Holdings, Inc. (FL) d/b/a YS Catering, Inc. (FL), Fresh Diet Express Corp. (FL), Syed Hussain, ("Mr. Hussain"), Judah Schloss ("Mr. Schloss"), and Zalmi Duchman ("Mr. Duchman") (collectively referred to as "Defendants").

After over three (3) years of litigation (the Complaint was filed on June 1, 2012) and protracted settlement negotiations, the Parties submitted a finalized "Master Settlement and General Release Agreement" (the "Agreement") to the Court on January 28, 2016, which the Court approved on February 2, 2016. The Agreement was executed by the Plaintiffs along with their Individual Confidential Releases (the "Releases") and, by its terms, became binding on the Parties upon Defendants' receipt of the Agreement on February 5, 2016. The Agreement required the Defendants to tender payment of four hundred and seventy-eight thousand nine hundred and eighty nine dollars and sixty-seven cents ($478,989.67) (the "Settlement Payment") in full within forty-five (45) calendar days of Defendants' receipt of the executed Agreement and Releases, which Plaintiffs provided. Pursuant to the terms of the Agreement, all Defendants are jointly and severally liable for the entire amount of the settlement agreement. However, Defendants never tendered payment.

Plaintiffs now move to enforce the terms of the Agreement and seek sanctions against all Defendants for their bad faith in agreeing to a settlement and then each refusing to pay the Settlement Payment. As will be shown below, Defendants are financially able to pay: Fresh Diet purports to have $38 million in revenue and Innovative Food Holdings, Inc. ("Innovative") $32.1. The Fresh Diet Revenue, Harman Decl. Ex. A. The Court must grant Plaintiffs' motion and require the Defendants to pay the agreed upon Settlement Payment; Defendants should not be allowed to induce Plaintiffs to halt litigation and enter into an Agreement waiving their rights and then refuse to perform their obligations under the existing contractual Agreement. If defendants are free to ignore or rewrite settlement agreements at their pleasure, then the entire mechanism of settlement is itself flawed; Defendants should not be allowed to aver to the Court that they commit to settle Plaintiff's claims and then blithely ignore their obligations when it suits them. The only way to cure Defendants' bad faith and address the breach is for the Court to enforce the Agreement and award sanctions. As such, Plaintiffs' motion to enforce should be granted and Plaintiffs should be awarded sanctions for their efforts in enforcing the Agreement.

## **FACTS**

Plaintiffs worked as drivers delivering meals for Fresh Diet. On June 1, 2012, Plaintiffs brought this lawsuit against Defendants for failure to pay wages under the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("NYSLL"). Declaration of Walker G. Harman, Jr., dated May 24, 2016 (the "Harman Decl.").

On August 15, 2014, pursuant to a merger agreement, Innovative acquired Fresh Diet, which became a wholly owned subsidiary of Innovative. Form 10-Q, dated November 16, 2015, Harman Decl. Ex. B. Innovative purchased ninety percent (90%) of Fresh Diet from Defendant

Duchman, for 10,000,000 shares of Innovative's common stock, valued at $14,000,000.[1]  Form 10-K, dated March 30, 2016, Harman Decl. Ex. C.  Fresh Diet operated as an independent subsidiary subject to the oversight of its board of directors and Innovative's President and CEO.  Form 10-Q, dated November 16, 2015, Harman Decl. Ex. B.  Innovative's attorneys were instrumental in negotiating the Settlement Agreement, agreed to the terms of the Settlement Agreement and provided no further communication to Plaintiffs when the settlement payment was due.  Harman Decl. ¶ 37.

In or around October 2015, the Parties began settlement talks, which resulted in a settlement in principal on November 5, 2015, as reported to the Court by Defendants' counsel.  Emails, dated November 5, 2015, Harman Decl. Ex. D.  Attorneys representing all Defendants, including Fresh Diet, Innovative, and Mr. Duchman all participated in reaching that Agreement.  Letter, dated November 5, 2015, Harman Decl. Ex. D.  As part of the settlement, each Defendant agreed to pay the Settlement Payment by a date certain.  Shortly after the parties arrived at the Agreement, Innovative announced on November 12, 2015 that an institutional investor agreed to provide $1 million in funding directly to Fresh Diet.  Form 8-K, dated November 20, 2015, Harman Decl. Ex. E.  It was subsequently announced in the Media that Fresh Diet did in fact receive the $1 million in funding.  Form 8-K, dated February 12, 2016, Harman Decl. Ex. N.  As such, as of the end of January 2016, it was evident both that i) Fresh Diet, along with all Defendants, is obligated to make the Settlement Payment and ii) Fresh Diet's attorneys were confirming that it, along with all other Defendants, was ready, willing and able to

---

[1] Although Innovative is not an actual Defendant in this case, Innovative is a Defendant in *Hernandez. v. The Fresh Diet, Inc., et al*, 15-cv-1338 (S.D.N.Y., August 25, 2015) ("*Hernandez* II"), a case involving a second set of Plaintiffs bringing nearly identical claims against Defendants concerning the same time period.

make the Settlement Payment.[2]

During the two-month negotiation of the terms of the Agreement, Innovative's attorneys consistently represented to Plaintiffs that Innovative would be responsible for making the Settlement Payment. Email, dated December 8, 2015, Harman Decl. Ex. G. Innovative's lead counsel, Howard Rhine, Esq., stated on numerous occasions that, despite the recent $1 million direct cash infusion, Fresh Diet did not have the funds for the Settlement Payment, but Innovative did and so would be making the payments. Letter, dated December 9, 2015, Harman Decl. Ex. F. As such, Plaintiffs' counsel agreed to Innovative's insistence of a forty-five (45) day deadline for payment, as Innovative and Fresh Diet needed more than thirty (30) days to position themselves to make the Settlement Payment.

As Plaintiffs raised claims under the FLSA, the Court had to approve the Agreement for Defendants to receive a dismissal with prejudice of these claims, which was an essential condition for Defendants to agree to the terms of the Agreement. Order Approving the Agreement, Harman Decl. Ex. J. After several drafts of the Agreement were rejected by the Court for reasons not material to this motion, on January 28, 2016, the Parties submitted the final Agreement, which the Court approved on February 1, 2016. The Agreement provided the following timing of the Settlement Payment:

> 7. Provided that: (1) the seven day (7) revocation period set forth in Paragraph 26 of this Agreement, and in each Plaintiff's Individual Release, has expired without revocation by any Plaintiff, (2) Defendants receive: (i) this Agreement, fully executed and signed by Plaintiff's Counsel; (ii) IRS W-9 forms separately executed by each Plaintiff and their counsel; (iii) Individual Releases separately executed by each Plaintiff before a Notary Public, and (iv) the Stipulation executed by Plaintiff's counsel, and (3) the Court approves this settlement and

---

[2] In spite of the $1 million that Fresh Diet received, it was consistently reported to counsel for Plaintiffs that Innovative would be funding the Settlement Payment on behalf of all Defendants. However, that obligation was never placed in writing and all Defendants remain jointly and severely liable for the entire Settlement Payment. Harman Decl. ¶ 19.

> endorses the stipulation of Dismissal, the settlement amount shall be paid as follows:
>
> (a) Within forty five (45) days of the date that all the aforementioned conditions are satisfied, but no earlier than January 15, 2016, Defendants shall make a payment in the amount of the Gross Settlement Amount which shall be allocated in separate checks as follows:

Agreement, Harman Decl. Ex. I.

Between February 1 and February 4, Plaintiffs' counsel facilitated each Plaintiff's execution of the Releases. Releases, Harman Decl. Ex. M. On February 4, 2016, Plaintiffs' counsel executed the Agreement, and on February 5, 2016, Plaintiffs' counsel sent the executed Agreement, Releases, and W-9's to Defendants' counsel. Transmittal Letter, dated February 5, 2016, Harman Decl. Ex. L. As a result, pursuant to the terms of the Agreement, Defendants were to deliver the Settlement Payment on March 21, 2016.

On February 9, 2016, unbeknownst to Plaintiffs at the time, Innovative entered into a letter of intent to sell a controlling interest in Fresh Diet. Form 8-K, dated February 12, 2016, Harman Decl. Ex. N. At that time, Innovative's attorneys had already committed Fresh Diet to the Settlement Payment. Nevertheless, it now anticipated closing on the transaction to sell shares in Fresh Diet by March 21, 2016, at which time Innovative would own a non-controlling interest in the outstanding shares of Fresh Diet. Form 10-K, dated March 30, 2016, Harman Decl. Ex. C. On February 23, 2016, the transaction was completed, with Innovative selling 90% of its ownership in Fresh Diet to New Fresh Co., LLC, a Florida limited liability company controlled by Defendant Duchman[3], who was appointed Interim Chief Executive Officer of Fresh Diet on February 9, 2016. Form 10-K, dated March 30, 2016, Harman Decl. Ex. C.

---

[3] In repurchasing Fresh Diet, it is apparent that Defendant Duchman chose to relinquish his shares in Innovative, worth $14 million, instead of liquidating some of his stocks for the purpose of satisfying the Settlement Payment. This is bad faith.

Days before the Settlement Payment was due, Plaintiffs' counsel received a call from counsel for the individual Defendants, attorneys from Kaufman, Dolowich & Koluck, LLP ("Kaufman"), who informed Plaintiffs' counsel of the substance of the above transaction, namely that Innovative sold Fresh Diet back to Defendant Duchman. Harman Decl. ¶ 23. Counsel explained that Defendant Duchman, who again is individually liable for the Settlement Payment, repurchased Fresh Diet because Innovative purportedly intended to bankrupt the Fresh Diet to avoid making the Settlement Payment, and that Kaufman now represented Fresh Diet, along with the individuals. Harman Decl. ¶ 26. Counsel also stated that Innovative and its counsel, Mr. Rhine, always intended to bankrupt Fresh Diet and never intended to make the Settlement Payment, something that counsel has now denied in a letter to the Court. Harman Decl. ¶ 27. Plaintiffs' counsel affirms that this information was conveyed.

During this same conversation, Defendants' counsel first informed Plaintiffs that they did not intend to make the Settlement Payment as required by the Agreement. Harman Decl. ¶ 27. Defendants' counsel proposed a payment scheme stretching over an indefinite period of time, based primarily of Defendants' theoretical "ability to pay," and providing little to no security to Plaintiffs. Harman Decl. ¶ 30. During the negotiations that led to the "final" Agreement submitted to the Court, Plaintiffs steadfastly refused to agree to any payment plan; Plaintiffs' counsel made clear to Defendants that they could not agree to any such modification of the Agreement. Harman Decl. ¶ 33.

Plaintiffs' counsel also expressed disbelief as to how none of the Defendants now intended to honor the Agreement, despite the fact that at least three (3) of the parties that participated in the negotiation of that Agreement (Mr. Duchman, a wealthy individual Defendant who received millions of dollars in the initial sale of Fresh Diet; Fresh Diet, a company which

6

had recently received at least a million dollars in additional funding; and Innovative, a publicly traded company with millions of dollars of revenue) have some ability to do so. Harman Decl. ¶ 31. Defendants agreed to a certain payment as part of the Agreement; some person or entity at that time must have been prepared to make that payment, and if this were not the case, Defendants' counsel made false statements to the Court. Harman Decl. ¶ 29. At the time the Agreement was executed, Defendants' counsel represented that Innovative would be responsible for the Settlement Payment, as Fresh Diet did not have the funds available. Letter, dated December 9, 2015, Harman Decl. Ex. F; Email, dated December 8, 2015, Harman Decl. Ex. G. In any event, as a legal matter, all Defendants remain jointly and severally liable for the Settlement Payment.

Notably, subsequent to Court Approval on February 1, 2016 and prior to the Settlement Payment due date of March 21, 2016, Defendants' counsel repeatedly sought approval from Plaintiffs to modify the Agreement so that Fresh Diet would be the sole entity responsible for the payment. Harman Decl. ¶ 35. In retrospect, it is now clear that by this time Defendants Duchman and Innovative were solely interested in avoiding responsibility for the Settlement Payment. Harman Decl. ¶ 37. Plaintiffs refused to change the Agreement; all Defendants remain jointly and severally liable. Harman Decl. ¶ 36. Defendants' counsel have subsequently made revised offers to make nominal, partial payments, all of which would be over a matter of years, and all of which Plaintiffs will not accept. The deal was done: Plaintiffs gave up a jury trial in exchange for a fixed payment on a date certain. Now, Defendants are refusing to pay, after falsely misleading Plaintiffs that they were ready, willing and able to pay by a date certain.

As it became increasingly clear that Defendants deliberately misled Plaintiffs and

7

engaged in a scheme to avoid having to make the Settlement Payment, on March 28, 2016, shortly after Defendants failed to make the Settlement Payment, Plaintiffs put Defendants and Defendants' counsel on notice that they would seek fees and costs related to this motion to enforce. Emails, dated March 22, 2016, Harman Decl. Ex. R. Specifically, Mr. Rhine and his firm were sent a litigation hold letter stating that Innovative and its attorneys had engaged in improper, unethical and illegal conduct with respect to representations to the Court concerning the Agreement. Preservation Letter, dated March 28, 2016, Harman Decl. Ex. S.

In sum, despite years of litigation, months of negotiation, and a finalized Agreement approved by this Court, Defendants refuse to comply with the terms of the Agreement and have gone to great lengths to attempt to avoid responsibility for the Settlement Payment. As such, and as will be shown below, the Court must enforce the terms of the Agreement and grant sanctions against the Defendants for their duplicitous conduct.

## STANDARD OF REVIEW

A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it. *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974). "A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). "Once entered into, the contract is binding and conclusive." *Id*.

## LEGAL ARGUMENT

I. **The Court Must Enforce the Agreement.**

During the discussions between counsel subsequent to Defendants' failure to make the Settlement Payment, no party ever suggested that the Agreement was not valid and binding on

the Parties, even though Defendant did not countersign the Agreement. Harman Decl. ¶ 34. The power of the Court to enforce an agreement is broad and covers even those situations where an agreement has not been executed by one of the parties to the agreement. "It is well established that parties are bound to the terms of a contract even though it is not signed [or ever written]." *Omega Eng'g, Inc. v. Omega, SA,* 414 F.Supp.2d 138, 148 (D.Conn. 2004), aff'd by *Omega Eng'g, Inc. v. Omega, S.A.,* 432 F.3d 437 (2d Cir.2005) (brackets in original) (citations omitted). To determine whether an unsigned agreement is enforceable, the Court looks at factors enumerated in *Winston v. Mediafare Entm't Corp.*:

> The court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

777 F.2d 78, 80 (2d Cir. 1985).

Here, all four factors weigh in favor of enforcement. First, the Agreement was reduced to a writing and there was no reservation of rights; in fact, the Agreement states that it becomes operative when Plaintiffs deliver signed documents, which condition was satisfied on February 5, 2016. Transmittal Letter, dated February 5, 2016, Harman Decl. Ex. L. Second, there has been partial performance: Plaintiffs signed and delivered the Releases to Defendants, requested the Court vacate their trial date, and otherwise halted litigation, which is precisely what Defendants bargained for in exchange for the Settlement Payment. Third, the terms of the Agreement were confirmed by all Parties, as all Parties submitted the document to the Court as a "finalized" Agreement. Fourth, an agreement containing an FLSA waiver must be committed to writing and approved by the Court, as was done in this case; Defendants co-wrote a letter to persuade this Court that the Agreement as fair and reasonable and thus should be approved on behalf of all

parties. Neither after the Court approved of the Agreement has any Defendant ever stated that it was not bound by the terms of the Agreement nor that it never intended to be bound. Harman Decl. ¶ 34. In fact, the opposite is true, counsel for Defendants consistently confirmed that each Defendant intended to be bound and in fact were bound. Email, dated December 8, 2015, Harman Decl. Ex. G; *see also Krauth v. Exec. Telecard*, 890 F. Supp. 269, 294 (S.D.N.Y. 1995) ("joint submission [of an agreement] to this Court is strong indication of their intent to be bound.").

As such, each Defendant is bound by the Agreement, as authorized counsel for the parties negotiated a finalized settlement agreement and submitted that document to this Court for approval. Harman Decl. ¶ 15. An attorney's actual authority to settle a case "may be inferred from words or conduct which the principal has reason to know indicates to the agent that he is to do the act." *Royal Indian Raj Int'l Corp. v. Domains by Proxy, Inc.*, No. 08 CIV. 3445 JGK, 2011 WL 2946367, at *2 (S.D.N.Y. July 20, 2011) (quoting *United States v. International Bhd. Of Teamsters*, 986 F.2d 15, 20 (2d Cir. 1993).

Now, at least one Defendant, Fresh Diet, has stated through counsel that it cannot pay.[4] Defendants' counsels' statements that Defendants cannot pay is of little consequence. A litigant cannot unilaterally decide to ignore a signed and approved settlement agreement due to a change of circumstances. *See Febus v. Guardian First Funding Grp., LLC*, 90 F. Supp. 3d 240, 245 (S.D.N.Y. 2015) ("Settlement agreements receive a 'presumption in favor of enforcement' and will not be disturbed by a 'change of heart' of one of the parties.").

Further, regardless of whom Defendants believed would be paying the settlement, New York law is clear that when multiple promisors agree to pay a stated sum to the same promisee,

---

[4] None of the other Defendants have made any payments as part of their obligation to make the Settlement Payment.

they will be jointly liable unless the promisors unambiguously expressed a contrary intention. *Lemus v. Manhattan Car Wash, Inc.*, 2010 U.S. Dist. LEXIS 33263, at *22 (S.D.N.Y. Mar. 25, 2010). No such contrary intention exists in the Agreement; all individual and corporate entities therein are referred to collectively.

Accordingly, the Court must enforce the Agreement.

**II.   Plaintiffs Are Entitled To Sanctions.**

Defendants' and Defendants' counsel's continual refusal to abide by the terms of the Agreement, and their active attempts to evade responsibility – responsibility that all Defendants share equally – for the Settlement Payment, necessitate sanctions. Defendants have engaged in bad faith. As such, Plaintiffs seek the following specific sanctions: i) from all Defendants, interest on the improperly withheld Settlement Payment, and ii) from all Defendants and Defendant Fresh Diet's counsel from Feder Kaszovitz LLP – the attorneys representing non-party Innovative's interests – fees and costs associated with the default and in enforcing the Agreement. As shown below, the present circumstances and Defendants' conduct justify these sanctions.

A. <u>Plaintiffs are entitled to pre-judgment and post-judgment interest on the Settlement Payment.</u>

In light of the foregoing, Plaintiffs are entitled to interest, accruing at nine (9) percent, pursuant to N.Y. C.P.L.R. §§ 5001(a), 5004. N.Y. C.P.L.R. § 5001 provides for recoverable interest "because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property. . . ." This statute applies to the failure to make payments pursuant to a settlement agreement. *See, e.g., Jean v. Auto & Tire Spot Corp.*, No. 09-CV-5394 (ARR), 2013 U.S. Dist. LEXIS 74570, at

*15 (E.D.N.Y. Mar. 7, 2013) ("there is authority . . . for awarding prejudgment interest, at the rate of nine (9) percent per annum, in connection with a motion to enforce a settlement agreement. . . ."); *Febus v. Guardian First Funding Grp., LLC*, 90 F. Supp. 3d 240, 250 (S.D.N.Y. 2015) ("A district court may award prejudgment interest where a defendant has defaulted on his settlement payments.").

Under the Agreement, Defendants were to render the Settlement Payment by March 21, 2016. They failed to do so, and have not made any payment whatsoever. Harman Decl. ¶ 22. As a result, under N.Y. C.P.L.R. § 5001(a), the Plaintiffs are entitled to compound interest on that amount from *at latest,* March 21, 2016 going forward. Pre-judgment interest can run from the date an agreement to settle is reached, rather than the date of the execution of a formal agreement. *Palmer v. Cty. of Nassau*, 977 F. Supp. 2d 161, 166 (E.D.N.Y. 2013). In the instant case, the parties informed the Court that they had reached an agreement in a letter from Defendants' counsel dated November 5, 2016, Harman Decl. Ex. D. Accordingly, given Defendants' bad faith, the Court should order pre-judgment interest on the Settlement Payment running from that date, October 29, 2015. N.Y. C.P.L.R. § 5004 sets the applicable interest rate at nine percent (9%) per annum compounding annually.

Additionally, under 28 U.S.C. § 1961, the Plaintiffs are entitled to post-judgment interest on that amount from the date upon which the Court enforces the agreement to the date of payment. *Sheet Metal Workers' Nat'l Pension Fund v. Jersey Sheet Metal Works, Inc.*, No. 07-CV-0131(FB)(ARL), 2009 U.S. Dist. LEXIS 3784, at *5 (E.D.N.Y. Jan. 13, 2009).

Accordingly, the Court should order that Defendants pay pre-judgment interest of nine percent, compounding annually (*Microban Prods. Co. v. API Indus., Inc.*, 2014 U.S. Dist. LEXIS 63883, at *1 (S.D.N.Y. May 8, 2014)), running from November 5, 2015 through the date of the

Court's Order enforcing the Agreement, then post-judgment interest, at the rate mandated under 28 U.S.C. 1961, from the date of the Court's Order until the Settlement Payment is made in full.

B. <u>Plaintiffs are entitled additional sanctions.</u>

The present circumstances warrant more than pre- and post-judgment interest; as Defendants have forced Plaintiffs to make the instant motion to secure payment, Plaintiffs are entitled to any fees arising out of these efforts to enforce the Agreement. Specifically, Plaintiffs are entitled to fees against certain Defendants' counsel under 28 U.S.C. 1927, and fees against the Defendants through the inherent power of this Court.

  *a. Sanctions against Defendants*

Due to Defendants' bad faith in withholding the Settlement Payment, and attempting to avoid any obligation to pay, the Court should award sanctions to Plaintiffs in the amount of the attorneys' fees and costs associated with enforcing the Agreement and securing the Settlement Payment.

> Federal courts have inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices. Courts may impose sanctions and rely upon their inherent authority even where the conduct at issue is not covered by one of the other sanctioning provisions. Moreover, a district court may resort to its inherent power to fashion sanctions, even in situations similar or identical to those contemplated by a statute or rule. The Court of Appeals for the Second Circuit has always required a particularized showing of bad faith to justify the use of the courts' inherent power.

*Royal Indian Raj Intern. Corp. v. Domains by Proxy, Inc.*, No. 08 Civ. 3445(JGK), 2011 U.S. Dist. LEXIS 78660, 2011 WL 2946367, at *3 (S.D.N.Y. July 20, 2011) (citations and internal quotation marks and brackets omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

13

Here, the chronology of Defendants' actions makes clear that Defendants proceeded in bad faith. Defendants represented during settlement negotiations that Innovative would be responsible for making the settlement payment while simultaneously engaging in a corporate sale aimed at shielding Innovative from liability. Two situations appear possible: i) during the months of negotiations over the Settlement Payment, no Defendant actually intended to pay the amount in question (which would be the very definition of "bad faith," or ii) one or more Defendants at some time intended to make the Settlement Payment but now elect not to. Both situations amount to bad faith. *Travelers Indem. Co. v. Excalibur Reinsurance Corp.* makes clear that failure to timely make payments pursuant to a settlement agreement amounts to bad faith and warrant sanctions. No. 3:13-CV-293(AWT), 2014 U.S. Dist. LEXIS 35571, at *8 (D. Conn. Mar. 19, 2014). In *Travelers*, the defendant refused to abide by a settlement agreement and pay the plaintiff; the defendant's justification for repeatedly failing to pay was simply that it was "unable to make the payment." *Id.* The Court found that Defendant's actions amounted to bad faith, as they were "without color and taken for an improper purpose." The Court then imposed both post-judgment interest and the plaintiff's attorneys' fees associated with enforcing the settlement agreement.

The facts in *Travelers* are on point here. Defendants have provided no valid justification for refusing to pay, other than their claim that Fresh Diet is not able to pay. Harman Decl. ¶ 40. This purported inability to pay, if it indeed exists, is a result of Defendants' contriving to sell Fresh Diet from Innovative back to Mr. Duchman, a sale designed and consummated by Defendants while simultaneously negotiating the Agreement. Harman Decl. ¶ 41. Defendants' admit, in a letter to the Court dated March 31, 2016, that the purported inability to pay was a result of the "change in ownership" of the Fresh Diet, but claim that the change was "not

anticipated at the time the settlement was negotiated and judicially approved." Letter, dated March 31, 2016, Harman Decl. Ex. P. However, news reports make clear that Innovative and Duchman were attempting to shift ownership of Fresh Diet as early as November 2015, simultaneous with the months before the submission of the Finalized Agreement. Harman Decl. ¶ 44.

As described above and as media reports and public filings make clear, counsel's March 31, 2015 letter contains false statements, further illuminating Defendant's bad faith. Harman Decl. ¶ 44. Defendants are all financially capable of making the Settlement Payment, and should not be allowed to escape their liabilities simply by rearranging their assets. Harman Decl. ¶ 45.

Defendants' repeated and willful failure to deliver the Settlement Payment combined with its obvious efforts to duplicitously avoid liability and/or deflect liability onto an entity from which Plaintiffs would not be able to recover, amount to bad faith. As in *Travelers*, the Court here should find that Defendants' continued refusal to make the Settlement Payments amounts to bad faith, and sanction Defendants for it. Accordingly, the Court should impose on Defendants Plaintiffs' attorneys' fees in making and briefing this motion, and whatever additional sanctions it deems appropriate.

### b. Sanctions against Defendants' Counsel

In addition to sanctions against Defendants, Plaintiffs seek sanctions under 28 U.S.C. 1927 against Defendants' counsel from Feder Kaszovitz LLP, the attorneys representing Innovative's interests in the case. Throughout the negotiation process, counsel represented that Innovative would be responsible for making the Settlement Payment; counsel then withdrew after informing the parties that Innovative had sold Fresh Diet. Harman Decl. ¶ 42. Counsel's representations were deliberate deceptions; Counsel led Plaintiffs to believe that an Innovative-

15

backed settlement would be reached while concurrently working to render both Innovative and Fresh Diet judgment-proof by spinning off Fresh Diet and saddling it with debt. Current counsel for Defendants has confirmed this nefarious scheme. Harman Decl. ¶ 30.

Sanctions may be imposed under § 1927 when the attorney has acted in bad faith, engaging in conduct that is entirely without color and motivated by an improper purpose. *See, e.g., Johnson v. University of Rochester Med. Ctr.*, 642 F.3d 121, 125-26 (2d Cir. 2011). Courts have held that an absence of good faith amounts to bad faith. *Grand St. Realty, LLC v. McCord*, No. 04-CV-4738 (CBA), 2005 U.S. Dist. LEXIS 45314, at *26 (E.D.N.Y. Sep. 30, 2005). Similarly, bad faith exists where a party "knowingly misrepresent the facts or the law." *Id.* at *28. Defendant's counsel cannot have been negotiating a settlement in good faith while simultaneously working to undermine that same agreement; this constitutes bad faith. Likewise, misrepresenting to Plaintiffs the source of the Settlement Payment amounts to bad faith.

Courts do not hesitate to sanction attorneys for frustrating settlement agreements. *See Cameron Int'l Trading Co. v. Hawk Imps., Inc.*, No. 03-CV-02496 (JS), 2011 U.S. Dist. LEXIS 4976, at *5 (E.D.N.Y. Jan. 18, 2011), *In re Auction Houses Antitrust Litig.*, 2004 U.S. Dist. LEXIS 23351, at *27 (S.D.N.Y. Nov. 17, 2004). Here, an appropriate remedy is to hold Defendants and Fresh Diet's former counsel responsible for the additional fees and costs incurred by Plaintiffs and Plaintiffs' counsel in addressing the default and in enforcing the Agreement, including, but not limited to, costs and fees related to researching, drafting, and briefing this motion; costs and fees related to ongoing communications with the Plaintiffs; and costs and fees related to the ongoing litigation.

## CONCLUSION

Given these facts, this Court must find as a matter of law that Plaintiffs are entitled to an enforcement of the settlement agreement, pre-and post-judgment interest, and fees and costs for addressing Defendants' default and in enforcing the agreement.

Dated: New York, New York  
      May 24, 2016

Respectfully submitted,

By:   s/ Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
220 Fifth Avenue, Suite 900
New York, New York, 10001
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*