UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

FERNANDO HERNANDEZ, KENNETH CHOW,
BRYANT WHITE, DAVID WILLIAMS, MARQUIS
ACKLIN, CECILIA JACKSON, TERESA JACKSON,
MICHAEL LATTIMORE, and JUANY GUZMAN, each
individually, and on behalf of all other persons similarly
situated,

Case No.:
12-CV-4339 (ALC)(JLC)

Plaintiffs,

-against-

THE FRESH DIET, INC., LATE NIGHT EXPRESS
COURIER SERVICES, INC. (FL), FRESH DIET
EXPRESS CORP. (NY), THE FRESH DIET – NY INC.
(NY), FRESH DIET GRAB & GO, INC. (FL) a/k/a YS
CATERING HOLDINGS, INC. (FL) d/b/a YS CATERING,
INC. (FL), FRESH DIET EXPRESS CORP. (FL), SYED
HUSSAIN, Individually, JUDAH SCHLOSS, Individually,
and ZALMI DUCHMAN, Individually,

Defendants.

---------------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENFORCEMENT AND FOR SANCTIONS**

KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants*
By: Jeffery A. Meyer, Esq.
Aaron N Solomon, Esq.
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iv

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT ...................................................................................................................... 3

STANDARD OF REVIEW ............................................................................................... 3

POINT I ................................................................................................................................ 4

      PLAINTIFFS' MOTION FOR ENFORCEMENT MUST BE DENIED AS
      DEFENDANTS WERE UNDER NO OBLIGATION TO PAY THE
      SETTLEMENT AMOUNT ...................................................................................... 4

      A.  Conditions Precedent to Payment of the
          Settlement Amount Have Not Been Met ........................................................ 5

      B.  Defendants Have Not Excused or Frustrated Plaintiffs' Compliance with the
          Conditions Precedent to Payment of the Settlement Amount ........................ 9

POINT II ............................................................................................................................ 19

      THE COURT PRESENTLY LACKS ANCILLARY JURISDICTION TO
      ENFORCE THE SETTLEMENT ........................................................................ 12

POINT III .......................................................................................................................... 13

      PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANTS
      MUST BE DENIED ............................................................................................... 13

      A.  Plaintiffs Are Not Entitled to Pre-Judgment and Post-Judgment
          Interest ............................................................................................................ 13

      B.  Plaintiffs Are Not Entitled to Sanctions ....................................................... 14

POINT IV ........................................................................................................................... 18

      DEFENDANTS SHOULD BE PERMITTED TO PAY THE SETTLEMENT
      AMOUNT OVER TIME INSTEAD OF IN A LUMP SUM ........................... 18

CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                                                                                          **PAGE NO.**

*Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital*
No. 11 CV 0505 (CM) (GWG), 2013 WL 3146824 (S.D.N.Y. June 19, 2013) ............................. 6

*Benicorp Ins. Co. v. National Medical Health Card Systems, Inc.*
447 F.Supp.2d 329 (S.D.N.Y. 2006) ......................................................................................... 4

*Chambers v. NASCO, Inc.*
501 U.S. 32 (1991) .................................................................................................................... 14

*Cheeks v. Freeport Pancake House*
796 F.3d. 199 (2d Cir. 2015) ............................................................................................... 7, 18

*Febus v. Guardian First Funding Grp., LLC*
90 F.Supp.3d 240, 250 (S.D.N.Y. 2015) ................................................................................. 13

*Ferguson v. Hannover Ruckversicherungs-Akteinengesellchaft*
No. 04-CV-9254 (PKL), 2007 WL 2493692 (S.D.N.Y. Aug. 21, 2007) ...................................... 9

*Guareno v. Vincent Perito, Inc.*
No. 14 Civ. 1635, 2014 WL 4953746 (S.D.N.Y. Sept. 26, 2014) ............................................... 19

*Hendrickson v. U.S.*
791 F.3d. 354 (2d Cir. 2015) ............................................................................................... 3, 12

*Henry v. Little Mint*
No. 12 CV 3996 (CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ...................................... 19

*Howard v. Klynveld Peat Marwick Goerdeler*
977 F.Supp. 654 (S.D.N.Y. 1997) ........................................................................................... 15

*In re Am. Express Fin. Advisors Sec. Litig.*
672 F.3d 113 (2d Cir. 2011) ..................................................................................................... 3

*In re Bankers Trust Co.*
450 F.3d 121 (2d Cir. 2006) ..................................................................................................... 9

*Inside Connect., Inc. v. Fischer*
No. 13-CV-1138 (CS), 2014 WL 2933221, fn. 20 (S.D.N.Y. June 30, 2014) ........................... 12

*International Prods. Corp. v. Koons*
325 F.2d 403 (2d Cir. 1963) ..................................................................................................... 14

*Israel v. Chabra*
537 F.3d 86 (2d. Cir. 2008) ............................................................ 5

*Kokkonen v. Guardian Life Insurance Co. of America*
511 U.S. 375 (1994) ....................................................................... 3

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*
424 F.3d 195 (2d Cir. 2005) ........................................................... 5

*Lazaro-Garcia v. Sengupta Food Services*
No. 15 Civ. 4259, 2015 WL 9162701 (S.D.N.Y. Dec. 12, 2015) ............... 18

*Lopez v. Nights of Cabiria, LLC*
96 F. Supp. 3d 170 (S.D.N.Y. 2015) ................................................. 19

*Massie v. Metro. Museum of Art*
651 F.Supp.2d 88 (S.D.N.Y. 2009) ................................................... 4

*Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.*
61 N.Y.2d 106 (1984) .................................................................... 5

*Mullinix v. Mount Sinai School*
No. 12-CV-8659 (PKC), 2015 WL 328059 (S.D.N.Y.  Jan 23, 2015) ........... 10

*O'Grady v. Bluecrest Captial Management, LLP.*
No. 15-CV-2240, --- Fed.Appx. ---, 2016 WL 1459673 (2d Cir. April 14, 2016) ........ 9

*Oliveri v. Thompson*
803 F.2d 1265 (2d Cir. 1986) ......................................................... 14

*Omega Eng'g, Inc. v. Omega, S.A.*
432 F.3d 437 (2d Cir. 2005) ........................................................... 4

*Oppenheimer & Co. v. Oppenheim, Appeal, Dixon & Co.*
86 N.Y.2d 685 (1995) .................................................................... 5

*Palmer v. County of Nassau*
977 F.Supp.2d 161 (E.D.N.Y. 2013) ................................................. 15

*Rosenberg v. Inner City Broadcasting Corp.*
No. 99-CV-9579 (AKH), 2001 WL 995349 (S.D.N.Y. Aug. 30, 2001) ............ 4

*SCS Commc'ns, Inc., v. Herrick Co.*
360 F.3d 329 (2d Cir. 2004) ........................................................... 5

*Spanos v. Skouras Theatres Corp.*
364 F.2d 161 (2d Cir. 1966) ............................................................................................... 9

*Tiro v. Public House Investments*
  No. 11-CV-8429 (CM), 2013 WL 4830949 (S.D.N.Y. Sept. 13, 2010).................................. 19

*United States v. Int'l Broth. of Teamsters, Chauffeurs Warehousemen and Helpers of America,*
  *AFL – CIO*
948 F.2d 1338 (2d Cir. 1991) ............................................................................................. 14

*Van Nostrand v. Froehlich*
44 A.D.3d. 54, 844 N.Y.S.2d 293 (2d Dep't 2007).............................................................. 14

*Wells Fargo Bank, N.A. v. Sovereign Bank, N.A.*
44 F.Supp.3d 394 (S.D.N.Y. 2014) ..................................................................................... 5

**Statutes**

Fed R. Civ. P. 41 ................................................................................................................ 7

## PRELIMINARY STATEMENT

Defendants The Fresh Diet Inc. ("Fresh Diet"), Late Night Express, Inc. ("Late Night"), Zalmi Duchman ("Mr. Duchman"), and Judah Schlass ("Mr. Schlass") respectfully submit this Memorandum of Law, with the accompanying Declaration of Howard Rhine ("Rhine Dec."), and Declaration of Jeffery A. Meyer ("Meyer Dec."), and exhibits annexed thereto, in opposition to Plaintiffs' motion for enforcement and for sanctions.

Plaintiffs' motion for enforcement and sanctions is founded upon their assumption that a settlement payment of $478,989.67 (the "Settlement Amount") is overdue. Although Defendants agreed to settle this matter, what Plaintiffs fail to realize is that their agreement with Defendants provides for certain conditions precedent that must be satisfied before Defendants have any obligation to tender the Settlement Amount. These conditions precedent included: 1) delivery of a Master Settlement and General Release Agreement (the "Master Agreement") and Stipulation of Dismissal executed by Plaintiffs' counsel; and 2) Court approval of the settlement and dismissal of this action pursuant to Fed. R. Civ. P. 41. Defendants had no obligation to tender the Settlement Amount until forty-five (45) days after the satisfaction of all of these conditions precedent.

Plaintiffs did not deliver an executed Master Agreement and Stipulation of Dismissal to Defendants until the instant motion was filed. In addition, the Court has never formally approved the settlement by dismissing this action. As these conditions precedent to payment have not been waived and, in the case of court approval and dismissal, cannot be waived, payment of the Settlement Amount is not overdue. For this reason, Defendants have not breached the Master Agreement and Plaintiffs' motion for enforcement of the settlement must be denied.

Plaintiffs' motion for sanctions and for pre-judgment and post-judgment interest is also without basis. As the Master Agreement was not breached, and the Settlement Amount is not overdue, no basis exists for an award of pre-judgment and post-judgment interest.

Likewise, as Defendants have no obligation to pay the Settlement Amount until all conditions precedent to payment are met, their failure to pay does not constitute "bad faith" justifying sanctions under the Court's inherent powers. To the extent that Plaintiffs claim that "bad faith" is demonstrated by Defendants involvement in certain corporate transactions, Plaintiffs fail to offer any factual basis for the imposition of sanctions. Instead, Plaintiffs rely upon blatant mischaracterizations and abject speculation, neither of which provides any basis for the Court to exercise its "potent" power to sanction a party.

As will be explained herein, Plaintiffs' motion must be denied. As Defendants have now executed the Stipulation of Dismissal, the Court can now formally approve the settlement and dismiss this action. If the Court elects to do this, at the very least, Defendants should be permitted to pay the settlement within forty-five (45) days of dismissal in accordance with the terms of the Master Agreement. Alternatively, in lieu of dismissal, Defendants respectfully request that the Court direct the parties to attend a conference before a Magistrate Judge to negotiate a mutually agreeable payment plan.

## STATEMENT OF FACTS

Defendants respectfully refer the Court to the Declaration of Jeffery A. Meyer dated June 21, 2016 and the exhibits annexed thereto, for a concise statement of facts relevant to Defendants' opposition.

## ARGUMENT

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375, 377 (1994). In keeping with this principle, a District Court does not automatically retain jurisdiction to hear a motion to enforce a settlement agreement simply by virtue of having disposed of the original case. *In re Am. Express Fin. Advisors Sec. Litig.,* 672 F.3d 113, 134 (2d Cir. 2011). A motion for enforcement of a settlement agreement is "fundamentally a claim for breach of contract, part of the consideration of which was dismissal of an earlier federal suit," and "requires its own basis for jurisdiction." *Hendrickson v. U.S.* 791 F.3d. 354, 358 (2d Cir. 2015).

In some cases, a Court may find jurisdictional basis to enforce a settlement agreement in the doctrine of ancillary jurisdiction, which allows a Court to decide matters that are "factually interdependent" with another matter before the Court, or to take actions necessary "to manage its proceedings, vindicate its authority, and effectuate its decrees." *Hendrickson,* 791 F.3d. at 358. It is not enough that the Court somehow has given the settlement its "judicial imprimatur" as even in situations where there is "judicial imprimatur," there may not be ancillary jurisdiction. See, *Id.* at 359.

In exercising jurisdiction to enforce a settlement agreement, Courts recognize that a settlement agreement is a contract that is interpreted according to general principles of contract law. *Omega Eng'g, Inc. v. Omega, S.A.,* 432 F.3d 437, 443 (2d Cir. 2005). Moreover, "a party seeking to enforce a purported settlement agreement has the burden of ... demonstrating that the parties actually entered into such an agreement." *Benicorp Ins. Co. v. National Medical Health Card Systems, Inc.,* 447 F.Supp.2d 329, 335 (S.D.N.Y. 2006). As the enforcement of a contract is "generally is a question of state law," Courts in the Second Circuit regularly apply New York law to determine the enforceability of a settlement agreement. *See Rosenberg v. Inner City Broadcasting Corp.,* No. 99-CV-9579 (AKH), 2001 WL 995349, at *2 (S.D.N.Y. Aug. 30, 2001); *Massie v. Metro. Museum of Art,* 651 F.Supp.2d 88, 93 (S.D.N.Y. 2009) ("Federal courts in the Second Circuit regularly apply New York law, observing that there is no meaningful substantive difference between federal and New York law with regard to enforceability [of an oral settlement agreement].")

## POINT I

### PLAINTIFFS' MOTION FOR ENFORCEMENT MUST BE DENIED AS DEFENDANTS WERE UNDER NO OBLIGATION TO PAY THE SETTLEMENT AMOUNT

The Master Settlement and General Release Agreement (the "Master Agreement") did not obligate Defendants to pay the Settlement Amount until after a series of conditions precedent were met. These conditions included delivery of executed settlement documents, executed tax documents, and an executed Stipulation of Dismissal. *See* Meyer Dec., at ¶¶ 11-16. In addition, the Master Agreement specifically conditioned payment of the Settlement Amount on the entry of a dismissal pursuant to Fed. R. Civ. P. 41. As this matter has not been dismissed, and

conditions precedent to payment of the Settlement Amount were not met, Plaintiffs' motion for enforcement of the settlement is premature and must be denied.

## A.  Conditions Precedent to Payment of the Settlement Amount Have Not Been Met

Under New York law, a "condition precedent" is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in an agreement arises. *Oppenheimer & Co. v. Oppenheim, Appeal, Dixon & Co.,* 86 N.Y.2d 685, 690 (1995). New York Law recognizes two types of conditions precedent: (1) a condition precedent to the formation or existence of the contract itself; and (2) a condition precedent which must occur before a party is obliged to perform a promise made pursuant to an existing contract. *See SCS Commc'ns, Inc., v. Herrick Co.,* 360 F.3d 329, 341 (2d Cir. 2004) (discussing the two types of conditions precedent). As to the latter, a failure to fulfill the condition "excuses performance by the other party whose performance is so conditioned." *Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.,* 61 N.Y.2d 106 (1984).

A provision in a contract will be construed to be a condition precedent where it is clear that the parties intended the provision to so operate. *See Wells Fargo Bank, N.A. v. Sovereign Bank, N.A.,* 44 F.Supp.3d 394, 402-3 (S.D.N.Y. 2014). In interpreting a contract, Courts must give effect to the plain meaning of the words and phrases contained therein. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 206 (2d Cir. 2005) ("In interpreting a contract under New York law, words and phrases ... should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions.") Thus, a Court can divine the existence of a condition precedent from the language contained in a contract. *See Israel v. Chabra,* 537 F.3d 86, 94 (2d. Cir. 2008) ("The language…suggests a condition, and our conclusion in that regard is consistent with the punctuation and grammatical

5

construction of the [contract]"); *Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital, No.* 11 CV 0505 (CM) (GWG), 2013 WL 3146824, at *16 (S.D.N.Y. June 19, 2013) (an express condition exists where "the occurrence of the event as a condition is expressed in unmistakable language.")[1]

Here, the Master Agreement, by its plain language, expressly provides that a series of conditions must be satisfied before Defendants are obligated to pay the Settlement Amount. Specifically the Master Agreement provides that:

> "Provided that: (1) the seven day revocation period set forth in Paragraph 26 of this Agreement, and in each Plaintiff's Individual Release, has expired without revocation by any Plaintiff, (2) Defendants receive (i) this Agreement, fully executed and signed by Plaintiff's counsel; (ii) IRS W-9 forms separately executed by each Plaintiff an their counsel; (iii) Individual Releases separately executed by each Plaintiff before a Notary Public, and (iv) the [Stipulation of Discontinuance] executed by Plaintiff's counsel, (3) the Court approves this settlement and endorses the stipulation of dismissal, the settlement amount shall be paid as follows:"

> "Within forty-five (45) days of the date that **all the aforementioned conditions are satisfied**, but no earlier than January 15, 2016, Defendants shall make a payment of the Gross Settlement Amount which shall be allocated in separate checks as follows:"

*See* Meyer Dec., Exhibit D at ¶ 7, 7(a); Declaration of Walker Harman ("Harman Dec."), Exhibit I, at ¶ 7, 7(a).

The Second Circuit has observed that where, as here, a provision in an agreement contains the words "provided that," and consists of a single sentence comprising multiple independent and dependent clauses, such construction evinces the existence of a condition. *See Israel*, 537 F.3d at 93-94.

---

[1] Although the language giving rise to the condition needs to be clear and unmistakable, "specific talismanic words are not required." *Bank of New York Mellon Trust Co.*, No. 14 CV 2619, 2016 WL 1658313, at * 6 (2d Cir. 2016).

Thus, the plain language of the Master Agreement provides that the following conditions must be met before Defendants have any obligation to tender the Settlement Amount: (1) Plaintiffs must deliver an executed Master Agreement and executed Individual Releases to Defendants; (2) Plaintiffs must deliver executed W9 forms to Defendants; (3) the seven (7) day revocation period afforded to Plaintiffs must have passed; (4) Plaintiffs must deliver an executed Stipulation of Dismissal; and (5) the Court must endorse the stipulation of dismissal formally approving the settlement, and dismissing this action pursuant to Fed. R. Civ. P. 41.

Although there is no need to do so, looking beyond the plain language of the Master Agreement only serves to confirm this interpretation. Plaintiffs were indisputably aware of the impact of the Second Circuit's ruling in *Cheeks v. Freeport Pancake House,* 796 F.3d. 199 (2d Cir. 2015) on this settlement. Accordingly, as the release of Plaintiffs' FLSA claims is a nullity absent Court approval, Plaintiffs understood that Defendants did not want to have any obligation to tender the Settlement Amount until after the Court approved the settlement and executed the Stipulation of Dismissal formally disposing this matter, with prejudice, pursuant to Fed R. Civ. P. 41. The Master Agreement was drafted to address this specific concern.[2] *See* Meyer Dec. at ¶ 17. In fact, Plaintiffs recognize the importance of Court approval of this settlement.[3]

On February 5, 2016, Plaintiffs delivered executed Individual Releases (executed by each Plaintiff) and the requisite tax forms (W9s) to Defendants. *See* Meyer Dec. at ¶ 18. However,

---

[2] Understandably, in light of *Cheeks*, approval and dismissal with prejudice are critical preconditions to the payment of a settlement.

[3] Specifically Plaintiffs state "an agreement containing an FLSA waiver must be committed to writing and approved by the Court." *See* Plaintiffs' Memorandum of Law, at pg. 9. Plaintiffs have taken the position that the Court's approval of the settlement paperwork as to form constitutes judicial approval of the settlement. However, Plaintiffs fail to recognize that Court approval as to the form of a draft settlement agreement does not equate to Court approval of the settlement. As *Cheeks* makes clear, the approval process is complete once the Court endorses a stipulation of dismissal dismissing the litigation pursuant to Rule 41 after determining that the settlement is fair and reasonable. *See Cheeks,* 796 F.3d at 206 ("stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect"). **In any event, as discussed, Plaintiffs' position is foreclosed by the plain language of the Master Agreement which provides that the Court must endorse the Stipulation of Dismissal before payment becomes due.**

they did not enclose an executed revised Master Agreement and Stipulation of Dismissal. Defendants did not receive these documents until Plaintiffs filed their motion for enforcement on May 24, 2016.[4] *See* Meyer Dec. at ¶¶ 18-19. Therefore, these conditions precedent were unsatisfied until the instant motion was filed.

In addition, as Plaintiffs failed to forward an executed Stipulation of Dismissal, Defendants could not counter-execute it, and the Court never had the opportunity to endorse it. As a result, the Court never formally approved the settlement, and never dismissed this action with prejudice pursuant to Fed. R. Civ. P. 41. Even if Plaintiffs could demonstrate that they previously delivered an executed Master Agreement and Stipulation of Dismissal, it would be of no moment because **formal approval and dismissal with prejudice have never occurred.**

Therefore, as express conditions to payment of the settlement were not met, Defendants were not obligated to tender the Settlement Amount and have not breached the Master Agreement. Accordingly, Plaintiffs' for enforcement is premature and must be denied.

Of course, Defendants recognize that this Court may resolve this motion by formally approving the settlement and dismissing the action with prejudice. To this end, Defendants have counter-executed the Stipulation of Dismissal annexed to Plaintiffs' motion. Therefore, at the very least, in accordance with the Master Agreement, the Court should deny Plaintiffs' motion and permit Defendants to pay the Settlement Amount within forty-five (45) days of said dismissal.

---

[4] Plaintiffs' February 5, 2016 cover letter claims that a Master Agreement was delivered. *See* Harman Dec., Exhibit L. However, Plaintiffs submission to the Court, and the correspondence our office received, demonstrates Plaintiffs' assertion is false. *See* Meyer Dec. at ¶ 18.

**B.   Defendants Have Not Excused or Frustrated Plaintiffs' Compliance with the Conditions Precedent to Payment of the Settlement Amount**

It is anticipated that Plaintiffs will likely argue that Defendants excused compliance with the pre-conditions contained in the Master Agreement. However, the conditions precedent to payment have never been excused.

Where a promisor has no duty to bring about a condition precedent to his promise, only active conduct by the promisor to frustrate occurrence of the condition precedent constitutes a waiver of the condition. *In re Bankers Trust Co.,* 450 F.3d 121, 128 (2d Cir. 2006).[5] Moreover, a promisor's "passive acquiescence" will not constitute an actionable prevention or hindrance to the promissee's ability to satisfy its condition precedent. *Id.*[6]

Moreover, where a promisee must deliver a release before a payment is tendered, it is the promisee's obligation to bring about the occurrence of the condition precedent. Accordingly, Courts in this Circuit have determined that a promise cannot rely upon the doctrine of prevention to absolve its failure to deliver an executed release where said delivery is a condition precedent to payment under a contract. *See O'Grady v. Bluecrest Captial Management, LLP.,* No. 15-CV-2240, --- Fed.Appx. ---, 2016 WL 1459673 at * 2 (2d Cir. April 14, 2016) (Plaintiff failed to deliver an executed severance agreement the delivery of which was a condition precedent to

---

[5] In *Bankers Trust*, an indenture trustee failed to fulfill its affirmative duty, expressly imposed upon it pursuant to § 315(a) of the Trust Indenture Act, to examine a note issuer's certificates. As a result, as the trustee failed to adhere to an affirmative duty, the trustee could not argue that the examination of certificates was a pre-condition to its duty to give notice to indenture security holders of all defaults known to the trustee pursuant to § 315(b) of the Trust Indenture Act. *Bankers Trust,* 450 F.3d at 128-29. However, in reaching this conclusion, the Second Circuit also squarely held that where there is no duty imposed upon a promisor to bring about a condition precedent, only active conduct by the promisor to frustrate occurrence of the condition precedent constitutes a waiver of the condition. *Id.*

[6] Pursuant to the doctrine of prevention, "one who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition." *See Spanos v. Skouras Theatres Corp.,* 364 F.2d 161, 169 (2d Cir. 1966) (en banc). To prove a violation of the doctrine of prevention, some intent to frustrate the occurrence of the condition must be proved. *See Ferguson v. Hannover Ruckversicherungs-Akteinengesellchaft,* No. 04-CV-9254 (PKL), 2007 WL 2493692 at *23 (S.D.N.Y. Aug. 21, 2007) (observing that intent is required when holding that defendant did not violate the doctrine of prevention because it took no steps to actively frustrate the occurrence of a condition precedent.)

9

payment of a severance. Plaintiff could not argue that the condition was excused by untimely alleging, without factual support, that Bluecrest "stymied" his efforts to do so.); *Mullinix v. Mount Sinai School,* No. 12-CV-8659 (PKC), 2015 WL 328059 at *3 (S.D.N.Y. Jan 23, 2015) (plaintiff's failure to execute a severance agreement, which was a condition precedent to her former employer's obligation to pay a severance, was not excused where plaintiff failed to execute the agreement she was provided; failed to contest the inclusion of certain terms in the agreement or engage in negotiation with Mount Sinai regarding same.)

Although Plaintiffs delivered Individual Releases and the requisite tax forms, Plaintiffs never delivered an executed Master Agreement and Stipulation of Dismissal at any point in time before the instant motion was filed. *See* Meyer Dec. at ¶¶ 18-19; Harman Dec Exs. L and M; Declaration of David Sack ("Sack Dec.").

The duty to execute and deliver these documents belonged solely to Plaintiffs' counsel. As Defendants could not do anything to stop opposing counsel from signing the Master Agreement[7] and the Stipulation of Dismissal and mailing them, Defendants could not, in any way, actively frustrate the occurrence of those conditions precedent to payment.

Plaintiffs' counsel likely believed he forwarded all of the necessary settlement documents to Defendants.[8] Indeed, Defendants did not discover Plaintiffs' omission until the instant motion was filed. *See* Meyer Dec. at ¶¶ 18-20; Sack Dec. As Plaintiffs had the sole duty to deliver

---

[7] The fact that Defendants never executed the Master Agreement does not matter. Plaintiffs argue that the Master Agreement is binding on Defendants without their signature. If Plaintiffs are correct, then a binding contract exists. If a binding contract exits, the conditions precedent to payment apply and have not been satisfied. On the other hand, if Defendants needed to execute the Master Agreement before it became binding, and did not do so, then there is no settlement. Either way, Defendants were obligated to tender the settlement payment.

[8] Given the reality of modern law practice, and the various mistakes that occur, Plaintiffs' counsel understandably believed that the documents he executed on February 4, 2016 were transmitted to Defendants. Candidly, this is probably not the first time correspondence left a lawyer's office with a missing enclosure. As Defendants believe that this was an honest mistake on Plaintiffs' part, Defendants do not believe Plaintiffs' should be penalized for misrepresenting to the Court that payment of the Settlement Amount is overdue. Likewise, the Court should not penalize Defendants for Plaintiffs' mistake by granting the instant motion.

executed settlement documents, it was Plaintiffs' obligation to ensure that they were actually delivered. Therefore, as no action was needed on Defendants' part to bring about the occurrence of the condition, Defendants unawareness of Plaintiffs' mistake does not excuse the condition.

Similarly, even if Defendants were previously aware that Plaintiffs failed to deliver the executed Master Agreement and Stipulation of Dismissal, Defendants failure to inform Plaintiffs of same provides no basis for waiver of the condition because Defendants silence would not actively prevent Plaintiffs from independently discovering their error and correcting it.

Even if the Court were to conclude that the conditions precedent of delivery of an executed Master Agreement and Stipulation of Dismissal were waived, the material conditions precedent of Court approval and dismissal with prejudice cannot be waived.

Even in cases where the non-occurrence of a condition would cause a disproportionate forfeiture, a court cannot excuse the occurrence of a condition that is a material part of the agreed upon exchange. *See Oppenheimer*, 86 N.Y.2d at 691.

As the Second Circuit has made clear, an FLSA settlement is a nullity without formal approval, a process that is only complete when the Court dismisses a matter with prejudice. *See Cheeks*, 796 F.3d at 206. Indeed, without approval, Plaintiffs' release of FLSA claims means nothing and Defendants would be paying Plaintiffs for nothing. Plaintiffs' FLSA release becomes binding only after the Court approves the settlement and dismisses the action pursuant to Fed. R. Civ. P. 41.[9] As a binding FLSA release is a material term that Defendants bargained for, and is an express condition precedent to payment, it cannot be waived.[10]

---

[9] As the Master Agreement makes clear, before payment is due the Court must dismiss the action by "approving this settlement and **endors[ing] the stipulation of dismissal**." Meyer Dec., at ¶ 11.

[10] Separately, even if approval and dismissal are waivable conditions, they have not been excused because Defendants have done nothing to actively frustrate their occurrence. In fact, there is little Defendants could do to actively prevent Court approval and dismissal of this action. Hypothetically, if Defendants stubbornly refused to execute a Stipulation of Dismissal, it might be arguable that Defendants engaged in "frustrative" conduct. Here,

Accordingly, as the conditions precedent to payment of the Settlement Amount have not been met and have not been excused or frustrated, Plaintiffs' motion for enforcement of the settlement must be denied.[11]

## POINT II

### THE COURT PRESENTLY LACKS ANCILLARY JURISDICTION TO ENFORCE THE SETTLEMENT

As discussed previously, a Court has jurisdiction to enforce a settlement agreement when it finds that "ancillary jurisdiction" for enforcement of the settlement exists. But to retain ancillary jurisdiction over enforcement of a settlement agreement, a District Court must enter an Order of Dismissal that either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order. *Hendrickson v. U.S.* 791 F.3d. 354, 358 (2d Cir. 2015).

Here, even though the terms of the Master Agreement affords the Court jurisdiction over the settlement, an Order of Dismissal must be still be entered before the Court can exercise ancillary jurisdiction to enforce the settlement. *Hendrickson,* 791 F.3d at 360-61. Accordingly, as no dismissal has occurred, no basis for ancillary jurisdiction to enforce the settlement presently exists.

---

however, this did not occur. Rather, Defendants were unaware that Plaintiffs forwarded an executed Stipulation of Dismissal and, after February 5, 2016, Plaintiffs never followed up with Defendants demanding execution of the stipulation. In addition, although Defendants dedicated a substantial amount of time attempting to work with Plaintiffs to agree on an alternative payment structure, such conduct did nothing to "frustrate" Court approval as Plaintiffs could have commenced the dismissal process by demanding a that Defendants execute a Stipulation of Dismissal at any time.

[11] Plaintiffs may point out that Defendants failed to discuss conditions precedent to payment in their pre-motion letters. As Defendants lack the capacity to fund the settlement in a lump sum even if all conditions precedent to payment were met, Defendants' correspondence to the Court highlighted the efforts Defendants made to work with Plaintiffs to find a mutually agreeable solution. In any event, pre-motion letters are a procedural tool that Courts use to manage the litigation process; they are not a strategic device to prevent Courts from resolving issues on their merits. *See Inside Connect., Inc. v. Fischer,* No. 13-CV-1138 (CS), 2014 WL 2933221, at *10 fn. 20 (S.D.N.Y. June 30, 2014). Accordingly parties are not precluded from offering additional arguments in their motions. *Id.*

## POINT III

### PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANTS MUST BE DENIED

As Defendants have not breached the Master Agreement because the conditions precedent to payment of the Settlement Amount have not been met, and Defendants have not acted in bad faith, there is no basis for an award of pre-judgement interest, post-judgment interest, and sanctions.

**A.    Plaintiffs Are Not Entitled to Pre-Judgement and Post-Judgment Interest**

Plaintiffs are not entitled to an award of pre-judgment and post-judgement interest because the settlement agreement has not been breached.

CPLR 5001(b), relied upon by Plaintiffs, provides that a Court has the discretion to apply pre-judgment interest to "a sum awarded because of a **breach of performance** of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of property." NY CPLR 5001(b) (emphasis added).

Defendants do not disagree with Plaintiffs' observation that some Courts have exercised discretion to award pre-judgement interest in cases where a party fails to pay a settlement. However, before pre-judgment interest can be awarded, there must be a **breach** of a contract. *Id.* In the case of a settlement, this means that there must be an obligation to make a payment and said payment was not timely delivered. *See e.g. Febus v. Guardian First Funding Grp., LLC,* 90 F.Supp.3d 240, 250 (S.D.N.Y. 2015). Here, as no payment is presently due, Defendants have not breached the Master Agreement. Accordingly, there is no basis for an award of pre-judgement

interest.[12] Likewise, for these reasons, it follows that an award of post-judgment interest is also unwarranted because Plaintiffs are not entitled to the entry of a judgment at this time.

## B.     Plaintiffs Are Not Entitled to Sanctions

Plaintiffs dedicate a substantial portion of their motion to a baselessly vitriolic request for sanctions against Defendants, Defendant Fresh Diet's former counsel Mr. Rhine, and his firm, Feder Kasovitz, LLP. [13] However, as Defendants have not breached the settlement agreement, and have not acted in bad faith, Plaintiffs' motion for sanctions must be denied.

Plaintiffs seek sanctions against Defendants not through a specific statute, but through the "inherent" power of the Court. Defendants do not dispute that the Court's "inherent" power to impose sanctions arises out of its equitable power over its "own process, to prevent abuses, oppression, and injustices." *International Prods. Corp. v. Koons,* 325 F.2d 403, 308 (2d Cir. 1963). However, because of the "potency" of a Court's inherent powers, sanctions should only be imposed with cautious restraint and discretion. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991). Thus, a ***particularized*** showing of bad faith must be made justifying the imposition of sanctions. *United States v. Int'l Broth. of Teamsters, Chauffeurs Warehousemen and Helpers of America, AFL – CIO,* 948 F.2d 1338, 1345 (2d Cir. 1991). Accordingly, absent ***clear evidence*** that the challenged actions are entirely without color, and are taken for reasons for harassment, delay, or other improper purpose, a request for sanctions must be denied. *See Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir. 1986) ("we have declined to uphold awards under the bad-faith exception absent both 'clear evidence' that the challenged actions 'are entirely without

---

[12] Moreover, even if Plaintiffs were entitled to pre-judgement interest, same would not begin to accrue from the date when the Parties informally agreed to settle. Plaintiffs' position is inconsistent with CPLR 5001(b) which explicitly provides that pre-judgment interest can only be awarded after a breach occurs. NY CPLR 5001(b). Accordingly, pre-judgment interest under CPLR 5001(b) begins to accrue only after liability attaches. *See e.g. Van Nostrand v. Froehlich,* 44 A.D.3d. 54, 844 N.Y.S.2d 293, 300 (2d Dep't 2007). Accordingly, here, pre-judgment interest can only accrue after Defendants are obligated to pay the settlement and fail to timely deliver the payment.

[13] Defendants will not address Plaintiffs' motion for sanctions against Howard Rhine and Feder Kasovitz, LLP as Defendants are aware that Mr. Rhine will respond to that branch of Plaintiffs' motion.

color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual findings of [the] lower courts."); *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 668 (S.D.N.Y. 1997) (denying motion for sanctions upon an insufficient factual showing that an attorney's actions were undertaken in bad faith.).

Here, Plaintiffs have failed to demonstrate that Defendants have acted in bad faith warranting the imposition of sanctions.

Initially, as Defendants were not obligated to pay the settlement as the conditions precedent to payment were unsatisfied, it follows that Defendants failure to tender the Settlement Amount cannot be an action taken "without color" or for an "improper purpose" justifying the imposition of sanctions.

Moreover, contrary to Plaintiffs' position, the failure to timely tender a settlement payment does not automatically constitute "bad faith" warranting the imposition of sanctions pursuant to the Court's inherent powers. Indeed, there are many reasons, both sanctionable and non-sanctionable, that could explain why a settlement payment is not timely made. Accordingly, in light of the fact that Court's must exercise restraint in imposing sanctions, it is necessary to look beyond the mere failure to make timely payment to find specific particularized facts which demonstrate that the failure to pay was motivated by bad faith. *See e.g. Palmer v. County of Nassau,* 977 F.Supp.2d 161 (E.D.N.Y. 2013) (sanctions awarded due to defendant's bad faith where, after settlement agreement was reached, plaintiff's counsel spent ten hours calling and emailing defendant repeatedly to finalize the settlement, and defendant ignored plaintiff's communications).

In fact, the precedent cited by Plaintiffs supports this proposition. In *Travelers Indem. Co. v. Excalibur Reinsurance Corp.,* Defendant requested an extension of time to pay a

settlement in the amount of $217,799.67. No. 13-CV-293 (AWT), 2014 U.S. Dist. Lexis 35571 (D. Conn. Mar. 19, 2014). Plaintiff granted the extension. Defendant did not pay the settlement in accordance with the extended deadline. Rather, Defendant requested another extension advising Plaintiff that it was "unable to pay" but failing to explain why. *Id.* at 7. Plaintiff eventually made a motion to enforce the settlement and in opposition to same, Defendant failed to offer any explanation for its inability to pay, why it needed another extension, or to put forth any facts to show that Plaintiff would have been paid at some point in the absence of the motion. *Id.* at 7. Thus, the Court imposed sanctions, divining "bad faith" from the totality of Excalibur's conduct, not just its failure to tender a timely settlement payment. *Id.* at 7-8.[14]

Plaintiffs' claim that Defendants conduct demonstrates bad faith, but provides no factual basis for this conclusion whatsoever. Indeed, Plaintiffs' "factual" argument relies on deliberate misrepresentations and conclusory speculation.

Initially, as counsel for Defendants, we never represented to Plaintiffs that Mr. Duchman purchased the Fresh Diet in February 2016, because Innovative wanted to drive it into bankruptcy. Meyer Dec. at ¶ 29. Similarly, there are no facts to establish that Defendants engaged in a scheme to sell Fresh Diet while simultaneously negotiating settlement of this action. Although Plaintiffs' claim that contemporaneous "news reports" indicate that "Innovative and Duchman were attempting to shift ownership of Fresh Diet as early as November 2015," Plaintiffs fail to annex or identify the contemporaneous "news reports" which they rely upon to their motion.[15] Indeed, the only "news report" annexed to opposing counsel's

---

[14] Notably, in *Travelers*, the Court limited its award of sanctions to attorneys' fees associated with the preparation of the motion to enforce. *Id.* at 9. This contrasts sharply with the sanctions that Plaintiffs now wrongfully seek which include: 1) attorneys' fees in making and briefing their motion; 2) costs and fees related to "ongoing communications" with Plaintiffs; 3) costs and fees related to "ongoing litigation" (Plaintiffs fail to explain what "ongoing litigation" means); and 4) "whatever additional sanctions [the Court] deems appropriate." Plaintiffs Memorandum of Law at pg. 15-16.

[15] *See* Harman Dec. at ¶ 44.

16

declaration is dated March 1, 2016, after the sale was closed. It indicates that, in November 2015, Innovative was attempting to "spin off" Fresh Diet into a separate public company, but ended up selling it instead. Harman Dec., Exhibit O. This article does not mention that Mr. Duchman was involved in Innovative's efforts to "spin off" Fresh Diet, or that the sale negotiations commenced in November, 2015.[16] As a result, Plaintiffs' argument that "the sale was designed and consummated by Defendants while simultaneously negotiating the [settlement]" is based on nothing but Plaintiffs' speculation.

Likewise, there are no facts to suggest that Mr. Duchman bought Fresh Diet to shield himself from liability for payment of the settlement.[17] In fact, if all Defendants are jointly and severally liable for the settlement, as Plaintiffs suggest, then the sale has no effect on Mr. Duchman's joint and several responsibility to pay the Settlement Amount once it becomes due.[18]

Moreover, contrary to Plaintiffs' position, Defendants have never attempted to repudiate this settlement or refused to make any payment. These facts directly undercut any finding of bad faith on Defendants part.

Initially, when Defendants agreed to pay the settlement in a lump sum, and when the Court approved the settlement documents as to form, Fresh Diet was still a subsidiary of Innovative, a publically traded company. Meyer Dec., at ¶ 27. Contrary to Plaintiffs' position, Defendants inability to fund the settlement in a lump sum does not arise from a desire to repudiate the settlement or a "change of heart." Rather, Defendants lack the capacity to pay the

---

[16] Moreover, Innovative's public financial disclosures, introduced into the record by Plaintiffs, confirm that the letter of intent for the sale was executed on February 9, 2016 and the sale was closed on February 23, 2016. Harman Dec., Exhibit C, at pg. 4. The disclosures make no mention of a protracted negotiation that began in November 2015.

[17] *See* Plaintiffs' Memorandum of Law, at pg. 15 ("Defendants are all financially capable of making the Settlement Payment and should not be allowed to escape their liabilities simply by rearranging their assets.")

[18] On the one hand, Plaintiffs claim that, despite Defendants' position, Mr. Duchman and Fresh Diet have the financial means to pay the settlement in a lump sum. Harman Dec. ¶ 45. On the other hand, Plaintiffs argue that Defendants are attempting to deflect liability onto Fresh Diet, an entity from which Plaintiffs will not be able to recover. Plaintiffs cannot have it both ways.

settlement in a lump sum because they no longer have Innovative's support and assistance. Meyer Dec., at ¶ 28.

However, despite this fact, Defendants have repeatedly expressed their continued commitment to this settlement and attempted to work with Plaintiffs to agree upon an alternative payment structure. Harman Dec., Exhibit P; Meyer Dec. at ¶ 31. To this end, Defendants have communicated several proposals to Plaintiffs, which have all been rejected. Meyer Dec at ¶¶ 29-31. Thus, Plaintiffs' claim that Defendants have refused to pay the Settlement Amount outright is blatantly false. Defendants remain willing to make payment once it becomes due, but Defendants need to pay the settlement over a reasonable amount of time.

Therefore, as Plaintiffs have failed to demonstrate, with any ***particularized facts***, that Defendants have acted in bad faith, and as Defendants actions belie any such finding, Plaintiffs' motion for sanctions must be denied.

## POINT IV

### DEFENDANTS SHOULD BE PERMITTED TO PAY THE SETTLEMENT AMOUNT OVER TIME INSTEAD OF IN A LUMP SUM

It is axiomatic that the Court must judicially approve FLSA settlements on terms that are fair and reasonable. *See e.g. Cheeks v. Freeport Pancake House,* 796 F.3d. 199 (2d Cir. 2015).

To this end, in the wake of *Cheeks*, Courts have directed parties to amend FLSA settlement agreements to revise specific terms, modify the scope of releases, provide for additional terms (such as mutual releases and mutual non-disparagement), or to remove certain provisions entirely before approval is granted. *See e.g. Lazaro-Garcia v. Sengupta Food Services*, No. 15 Civ. 4259, 2015 WL 9162701 (S.D.N.Y. Dec. 12, 2015) (parties directed to file a revised settlement agreement consistent with the Court's opinion as general release contained

in the submitted agreement was rejected as Court insisted on a release limited to claims at issue in the action). Some Courts exercised such authority before *Cheeks* was decided. *See Lopez v. Nights of Cabiria, LLC,* 96 F. Supp. 3d 170 (S.D.N.Y. 2015) (parties directed to remove confidentiality provisions from an FLSA settlement); *Guareno v. Vincent Perito, Inc.,* No. 14 Civ. 1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) (parties directed to remove a provision from an FLSA settlement barring Plaintiff's attorney from "representing any person bringing similar claims against Defendants"). Here, the Court already exercised such authority by directing the parties to revise the settlement paperwork.

A Defendant's ability to pay a settlement is part of the fairness analysis Court's must conduct. *See e.g. Henry V. Little Mint,* No. 12 CV 3996 (CM), 2014 WL 2199427 at *8 (S.D.N.Y. May 23, 2014) ("The parties negotiated heavily over the settlement amount taking into account Defendants' ability to pay a settlement that would compensate the class for their alleged unpaid wages and allow Defendants to remain in business. Even if the Defendants can withstand a greater judgment, a Defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."); *Tiro v. Public House Investments,* No. 11-CV-8429 (CM), 2013 WL 4830949, at *8 (S.D.N.Y. Sept. 13, 2010) ("even if Defendants could afford to pay more, a defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair").

Arguably, as the goal of any settlement is to provide a plaintiff with actual compensation for the release that is given, a settlement that a defendant lacks the ability to pay is hardly fair and reasonable. Defendants note that, as the Stipulation of Dismissal has been executed, the Court can now formally approve this settlement, dismiss this action, and commence the 45-day payment period. However, Defendants' inability to make a lump sum payment is unlikely to

change. Even if Plaintiffs eventually obtain a judgment, more time will pass before it can be successfully executed upon, if at all.

Therefore, Defendants respectfully request that the Court, in lieu of formally approving the settlement at this time, compel the parties to attend a conference before a Magistrate Judge with the direction to negotiate a reasonable payment plan.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' motion in all respects, and award Defendants such other and further relief as the Court deems proper.

Dated:      Woodbury, New York
            June 21, 2016

            Respectfully submitted,

            KAUFMAN DOLOWICH & VOLUCK, LLP

            By: _____
                  Jeffery A. Meyer, Esq.
                  Aaron N. Solomon Esq.
                  135 Crossways Park Drive, Suite 201
                  Woodbury, New York 11797
                  (516) 681-1100
                  *Attorneys for Defendants*
                  jmeyer@kdvlaw.com
                  asolomon@kdvlaw.com

4850-5138-0275, v. 1