UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                            :
FERNANDO HERNANDEZ, KENNETH                                 :
CHOW, BRYANT WHITE, DAVID                                   : Case No.: 12-cv-4339 (ALC)
WILLIAMS, MARQUIS ACKLIN,                                   :
CECELIA JACKSON, TERESA                                     :
JACKSON, MICHAEL LATTIMORE,                                 :
and JUANY GUZMAN, each individually,                        :
and on behalf of all other persons                          :
similarly situated,                                         :
                                                            :
                    Plaintiffs,                             :
                                                            :
         -- against --                                      :
                                                            :
THE FRESH DIET, INC., LATE NIGHT                            :
EXPRESS COURIER SERVICES, INC.                              :
(FL), FRESH DIET EXPRESS CORP.                              :
(NY), THE FRESH DIET – NY INC. (NY),                        :
FRESH DIET GRAB & GO, INC. (FL)                             :
a/k/a YS CATERING HOLDINGS, INC.                            :
(FL) d/b/a YS CATERING, INC. (FL),                          :
FRESH DIET EXPRESS CORP. (FL),                              :
SYED HUSSAIN, Individually, JUDAH                           :
SCHLOSS, Individually, and ZALMI                            :
DUCHMAN, Individually,                                      :
                                                            :
                    Defendants.                             :
-----------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFFS' MOTION TO ENFORCE AND FOR SANCTIONS

FEDER KASZOVITZ LLP
845 Third Avenue
New York, New York 10022
(212) 888-8200

Of Counsel:

Howard I. Rhine
David Sack

## Table of Contents

|   |   | Page |
|---|---|---|
| Preliminary Statement | | 1 |
| Statement of Facts | | 3 |
| ARGUMENT | | 8 |
| I. | THE COURT HAS NO JURISDICTION OVER INNOVATIVE | 8 |
| II. | FEDER CANNOT BE SANCTIONED PURSUANT TO 28 U.S.C. § 1927 | 11 |
| III. | PLAINTIFFS' MATERIAL MISSTATEMENTS WARRANT SANCTIONS AGAINST PLAINTIFFS' COUNSEL | 14 |
| Conclusion | | 17 |

## Table of Authorities

**Cases**                                                                                                                                    **Page**

*Callahan v. The Image Bank*,
    2007 WL 222002 (S.D.N.Y. Jan. 25, 2007) .................................................... 8-9

*City of New York v. Exxon Corp.*,
    697 F. Supp. 677 (S.D.N.Y. 1988) ............................................................ 8

*Green v. Georgia-Pacific Corp.*,
    199 F.3d 1322 (Table), 1999 WL 1022479 (2d Cir. Oct. 29, 1999) ................. 11

*Keller v. Mobil Corp.*,
    55 F.3d 94 (2d Cir. 1995) ......................................................................... 11

**Statutes:**

28 U.S.C. § 1927 ................................................................................................. *passim*

Fed. R. Civ. P. 11 ................................................................................................ 14

Feder Kaszovitz LLP ("Feder"), attorneys for non-party Innovative Food Holdings, Inc. ("Innovative"), respectfully submits this memorandum of law in connection with Plaintiffs' motion to enforce the Master Settlement and General Release Agreement ("the Agreement") and in opposition to their motion for sanctions as against Feder.

## Preliminary Statement

It is ironic that in a motion that seeks sanctions pursuant to 28 U.S.C. § 1927, *inter alia*, for alleged misrepresentations made by attorneys, is itself replete with misstatements, many of which will be obvious to the Court based solely on Plaintiffs' counsel's blatant mischaracterization of the documents he submits in support of this motion, and many involving misreadings (or non-readings) of public corporate filings available to all. Counsel's misstatements, at best, result from his inability to read corporate public filings, and ignorance of corporate law,[1] and at worst, a blatant attempt to mislead the Court to enable Plaintiffs to receive relief to which they are not entitled under the law and under the terms and conditions of the Agreement.[2]

---

[1] Indeed, one would hope that Mr. Harman is more proficient in his mastery of the FLSA, New York Labor Law, and the New York City Human Rights law than he apparently is at the basics of New York corporate law, and at reviewing public documents relating to public companies. Plaintiffs' memorandum demonstrates profound ignorance of the law of shareholder liability, successor liability, and the law governing basic corporate mergers and acquisitions. It is also quite clear that Mr. Harman is unaware of, or chooses to ignore, basic business accounting concepts such as the difference between gross revenue and income, and solvency.

[2] Plaintiff's counsel claims that it is only "now clear" to him that Defendants and Innovative engaged in a series of transactions "to avoid making the Settlement Payment," and that Defendant The Fresh Diet, Inc. ("Fresh") "never intended" to make the settlement payment. (Declaration of Walker G. Harman, Jr. (the "Harman Decl."), dated May 24, 2016, ¶¶ 25-27; Plaintiffs' moving memorandum of law ("Pl. Br.") at 5) This contention is belied both by Innovative's public filings (Harman Decl., Ex. C; Declaration of Howard I. Rhine (the "Rhine Decl."), executed June 21, 2016, ¶¶ 25-31, and Exs. A and B), and by Mr. Harman himself, who concedes (Harman Decl. ¶ 7) that he became aware of the corporate transactions he now complains of "during the negotiation process," yet failed to demand any assurances with respect to what he now claims (falsely) to be a promise to pay made by a non-party.

Feder, in its capacity as then-counsel to Defendant Fresh – *and only in that capacity* – participated in the settlement negotiations in good faith because it believed the settlement of this action served the interests of all parties involved, including its client Fresh.[3] Contrary to the statements of Plaintiffs' counsel, Feder never represented the interests of Innovative with respect to the settlement negotiations, or indeed, with respect to any other facet of this action, and never so stated. There is a very good reason for this: Innovative was not, and is not a party to this case, had no potential liability in the event a judgment was entered against Defendants, including Defendant Fresh, and therefore had no abiding interest in this case other than as a shareholder of Fresh with a 100% ownership interest. Innovative still has no interest in this case.[4]

Feder, acting for Fresh, participated in settlement negotiations which took place over several months, both under the auspices of the Court (before Magistrate Judge Cott) and privately (before Mediator Ira Cure, Esq.), ultimately resulting in the negotiated Agreement (Harman Decl., Ex. I), resolving this matter.

---

[3] Indeed, this is why on October 16, 2015, Defendant Late Night Express Courier Services, Inc. ("Late Night") served offers of judgment, which, if accepted, would have released all Defendants, including Fresh. While the offers of judgment were not accepted, Feder believes that they were a factor in restarting settlement negotiations.

[4] Plaintiffs' counsel, (Pl. Br. at 3, n.1), concedes that Innovative "is not an actual Defendant in this case," and avers that Innovative is a Defendant in the related case of *Hernandez v. The Fresh Diet, Inc., et al.*, No. 15-cv-1338 ("Hernandez II"). It is unclear what counsel means by "actual." Is he implying that Innovative is some other type of Defendant in this case? Is he implying that because Innovative is a defendant in another action, the Court has jurisdiction over Innovative at all for the purposes of *this* action? Or did counsel refer to Innovative, and Hernandez II (as to which a motion to dismiss the *third* amended complaint will be made shortly) to further his objective of finding a "deep pocket" to fund the settlement payment in this action? Counsel never takes a clear position on this matter, but as shown below, there is no basis for *any* liability on the part of Innovative in this action. Indeed, it did not even have an ownership interest in Fresh at the time the alleged statutory violations took place. The Court should not countenance counsel's playing "fast and loose" with the factual representations he makes herein.

2

Feder believed then, as it believes now, that the Agreement serves the interests of the parties with respect to their respective positions taken in this litigation, and believes that, to the extent possible in light of the financial condition of the Defendants, the Agreement should be modified so that it can be implemented.[5] This belief, however, does not give Plaintiffs or their counsel license to alter the terms and conditions of the Agreement after the fact; to make material misrepresentations to the Court about the genesis of the settlement, which representations are flatly contradicted by documentary evidence – some of which is even appended to Plaintiffs' motion papers – as well as the Agreement itself; or to invoke the jurisdiction of this Court over Innovative with respect to this action based on any alleged representation made by its counsel but not memorialized anywhere. Innovative was neither a party to this action nor a party to the Agreement and its negotiation, and is not properly before the Court with respect to this action or this motion. Plaintiffs' counsel's attempt to consistently use Fresh and Innovative interchangeably throughout his submission, in violation of well-established corporate law, is improper and should be disregarded.

Accordingly, for the reasons set forth herein, Plaintiffs' motion to sanction Feder should be denied, and to the extent that the instant motion seeks relief against Innovative (which relief has not been noticed and is not properly before the Court), such relief should not be granted.

## Statement of Facts

This action was commenced against the Defendants on or about June 1, 2012, alleging violations of the FLSA, New York Labor Law, and New York City Human Rights law based on the Defendants' alleged failure to pay Plaintiffs overtime wages as required by statute. (Harman

---

[5] Feder does not address, and leaves to Defendants' counsel to address, the issue of whether the Agreement should be enforced as against the Defendants, or whether it should be modified in light of Defendants' ability to pay the settlement amount.

3

Decl. ¶ 3) Critically, the events that took place in the Complaint *pre-date Innovative's acquisition of Fresh by more than two years.* (*Id.*, and Ex. C; Rhine Decl. ¶ 1, and n.1, 27, and Exs. A and B)

On August 15, 2014, Innovative purchased Fresh from its shareholders, of which Defendant Zalmi Duchman was only one of a number of other shareholders. As a result of this transaction, Fresh became a wholly-owned subsidiary of Innovative. (Harman Decl., Ex. C) At the time of the purchase, Mr. Duchman was a minority shareholder of Fresh. (Rhine Decl. ¶ 28, and Ex. B) Mr. Duchman received no cash in consideration in the sale of his shares to Innovative; he received shares of Innovative (a publicly traded company), which shares were restricted, subject to a lockup agreement for 18 months and proxy.[6] (Rhine Decl., Ex. B) All in all, all of the shareholders of Fresh, in the aggregate, were entitled to receive 10 million restricted shares of Innovative, which at the time may have had a value of $14 million, but which shares could not be freely traded or sold. (Rhine Decl. ¶ 28, and Ex. B)

At the time of the purchase, Fresh was managed not by Mr. Duchman, but by a board of directors and a chief executive officer. (Rhine Decl. ¶ 29, and n.5, and Exs. A and B) Subsequent to the purchase, Fresh's management team, including its COO, CEO, CFO, and in-house counsel (who were collectively known as Fresh's "Executive Management Committee"), remained in place. Innovative did not assume day-to-day operational control over Fresh. (Rhine Decl. ¶ 29, and n.5; Harman Decl., Ex. C)

On or about November 12, 2015, while the Agreement was being negotiated, Innovative publicly announced that it was contemplating a spinoff of Fresh. (Rhine Decl., Ex. C) This

---

[6] Mr. Harman's incorrect accusation that Mr. Duchman somehow cashed out as a result of this transaction (Harman Decl. ¶ 31) is belied by Innovative's public filings, which demonstrate that the entity holding Mr. Duchman's shares did not dispose of them at any time relevant to this motion. (Rhine Decl., Ex. A; Harman Decl, Ex. C)

4

announcement was made to the public, and available on Innovative's website. (Rhine Decl. ¶ 31, and Ex. C) The contemplated spinoff never came to fruition. (Rhine Decl. ¶ 31, and Ex. D)

In or about February 2016, after the Agreement was executed, Innovative sold 90% of its interest in Fresh to a limited liability company controlled by Mr. Duchman. (Harman Decl., Ex. C) The transaction closed on or about February 23, 2016. (*Id.*) No cash consideration was paid to Innovative by the purchaser, and Innovative was given the option, upon the occurrence of certain financial benchmarks, to acquire additional shares of Fresh. (*Id.*)

When Feder first appeared in this case, cross-motions for summary judgment on the issue of liability had been made to the Court, and denied. The Court decertified the putative class and ruled that the action may proceed as a collective action, and denied Defendants' motion for judgment as a matter of law, holding that the issue of whether Plaintiffs were employees or independent contractors of Defendants[7] presented issues of fact for trial. It was in this posture that the Court referred this case for mediation before Magistrate Judge Cott in December 2014, which took place in January 2015 with the participation of Feder on behalf of Fresh. (Rhine Decl. ¶¶ 1, and n.1, and n.3)

The mediation did not result in a settlement. (Rhine Decl. n.1) During the mediation, when settlement numbers were being discussed, Mr. Rhine stated that to date, Innovative had already loaned several million dollars to Fresh to keep its operations going, and was not prepared to make any commitments going forward. (Rhine Decl. ¶ 6, and n.3) There was no further discussion, at any time, of the possibility of Innovative paying to settle this action, in whole or in part. (Rhine Decl., n.3)

---

[7] Indeed, the issue of whether Plaintiffs were employees of Fresh (under some unargued and unasserted theory of "joint employer", as opposed to Late Night) had never been decided by this Court.

5

In late 2015, as the deadlines for pre-trial submissions were rapidly approaching, the parties once again began to earnestly engage in settlement discussions. At that time, Defendants discussed a settlement that would involve paying Plaintiffs a sum that approximated overtime for the hours they worked during their tenure as contractors for Late Night, without regard to their status, and without an admission of liability. The structure of the proposed settlement approximated that set forth in Defendants' offer of judgment, and was to include an additional component for attorneys' fees.

At no time, during the discussions leading to the settlement Agreement, and certainly not in connection with the Agreement itself, did Feder, or any of its attorneys represent that Innovative would make any payment, and there was no such request made by Plaintiffs. (Rhine Decl. ¶¶ 6, and n.3, 7-8)

Throughout the course of the settlement discussions, there was no mention of any party other than Defendants paying all or part of the settlement, and no contemporaneous evidence supports that such discussions were had. (Rhine Decl. ¶¶ 7-17, and n.4)[8] Indeed, this is the basis of one of the most blatant, and easily provable, misstatements made by Plaintiffs' counsel to the Court when he cites (Harman Decl. ¶ 13) a letter and an e-mail (Exs. F and G), in which he states that Mr. Rhine represented that Innovative would make the settlement payments to Plaintiffs.

---

[8] During the settlement negotiations, there were internal discussions among the Defendants concerning the source of funding. (Rhine Decl. ¶ 14, and n.4) Ultimately, Defendants agreed that Fresh would make the payment, reserving its right to seek *pro rata* indemnity from its co-Defendants. Much of these negotiations are memorialized in the e-mail correspondence constituting Exhibit G to the Harman Decl., demonstrating that Mr. Harman had ample notice that Fresh, and no one else, certainly not Innovative, would be among the parties responsible to effect make the settlement payment, as the Agreement states that ***Defendants*** were to make the payment. (Harman Decl., Ex. F, n.2; Ex. I) This documentary evidence, upon which Mr. Harman was copied, demonstrates that his contention (Harman Decl. ¶¶ 13-16) that Innovative would be responsible for the settlement payments was made up *post facto*, when counsel realized that Fresh is without current resources to make the payment.

6

Exhibits F and G neither mention nor refer to Innovative; they discuss the obligation of *Fresh* having agreed to the settlement, to execute the Agreement and take steps to implement it.

The Agreement was a document not easily arrived at. It was negotiated over the course of months, and throughout, Feder, on behalf of Fresh, resisted efforts both by co-Defendants and Plaintiffs to insert language in the Agreement stating that Fresh would be responsible to make the payment. (Rhine Decl. ¶ 6-7, and n.3, 15, 17, 23; Harman Decl., Ex. G) This is evidenced by the e-mails among counsel attached as Ex. G to the Harman Aff. While looking for a deep pocket in hindsight, Plaintiffs may now wish that Innovative, and not Fresh, assumed responsibility to pay the settlement, such assumption is not borne out by the contemporaneous written records *some of which are relied upon by Plaintiffs themselves in support of this motion*. Moreover, the very language of the Agreement recites that Plaintiffs expressly disclaim reliance on any alleged representation or promise that does not expressly appear in the Agreement. (Harman Decl., Ex. I at ¶ 20) That Fresh was to make the payment is further evidenced by the fact that the Agreement's release runs in favor of Fresh and not Innovative (Innovative is mentioned nowhere in the Agreement). (Harman Aff., Ex. I ¶ 2) Had the parties agreed that Innovative would make the payment, common sense dictates that Innovative would have demanded, and received, a release in its favor. (Rhine Decl. ¶ 8) The absence of any such standard release language confirms Innovative's lack of involvement in the settlement negotiations.

It cannot be disputed that the Agreement provides for the settlement payment to be made to Plaintiffs by "*Defendants*." (Harman Decl., Ex. I, first "Whereas" clause, and ¶¶ 1-2) The Agreement, in paragraph 20, provides that "Plaintiffs confirm that they have not been induced by any representation or promise that does not expressly and unequivocally appear in this

7

Agreement or by any act or omission of Defendants to execute this Agreement." (*Id.* ¶ 20) The Agreement, in paragraph 24, provides that "This Agreement may only be modified, altered or changed in writing, signed by the Parties." (*Id.* ¶ 24) The Agreement has not been altered or changed subsequent to its execution. (Harman Decl. ¶ 20)

## ARGUMENT

### I. THE COURT HAS NO JURISDICTION OVER INNOVATIVE

Innovative is not a Defendant in this action, and has not been joined as a party. (Complaint; Pl. Br. at 3, n.1) Innovative was never served with a summons in this action; was never joined as a party defendant; was never subpoenaed to produce documents or testify; and did not participate in either mediation. (Rhine Decl. ¶ 5, and n.2) As such, the Court is without jurisdiction to issue an Order, at this late date, to compel Innovative to participate in the settlement. *See City of New York v. Exxon Corp.*, 697 F. Supp. 677, 688 (S.D.N.Y. 1988) (District courts must have valid jurisdiction over a party in order to "declare the law," and where jurisdiction does not otherwise exist, "neither the litigants nor the Court itself can confer it"; "it is sometimes overlooked that an action must [also] be properly commenced before a valid judgment or order can be entered therein"; and while non-parties *may* participate in a settlement of a properly commenced action, "this court is constrained to dispose of only those claims which exist between the parties before it.") (internal punctuation and citations omitted). Thus, this Court cannot exercise its jurisdiction over Innovative, and compel it to participate in the settlement of this action, whether by making a payment or otherwise.[9] *See Callahan v. The*

---

[9] As stated, it is not clear that Plaintiffs are even seeking an Order from this Court compelling Innovative to do anything. Plaintiffs dance around their claims that a representation was made that Innovative would fund the settlement, despite there being no reference to such purported obligation in the Agreement, and the fact that the Agreement neither mentions Innovative in the description of the settlement payment or in the release section. It would be

8

*Image Bank*, 2007 WL 222002 at *4 (S.D.N.Y. Jan. 25, 2007) (there is "no precedent for an order compelling a non-party to consent to a settlement").

Relying on inference and innuendo, Plaintiffs' counsel suggests that since Feder represented "Innovative's interests" in this action –without explaining how[10] – it made representations on Innovative's behalf relative to the settlement, and negotiated terms and conditions of the settlement on behalf of Innovative. (*See, e.g.*, Pl. Br. at 4, 11; Harman Decl. ¶ 31)[11] Nothing could be further from the truth. In fact, and as confirmed by its own submissions to the Court, Feder represented Fresh, and only Fresh in this litigation, not Innovative, which was never before the Court with respect to this lawsuit. Since Innovative had no interest in this

---

highly unusual, if not unique, for there to be no release running in favor of the entity Plaintiffs contend committed to make the payment. Moreover, the other "documentary evidence" Plaintiffs proffer for this proposition supports the fact that Feder was acting for Fresh only (Harman Decl., Ex. K (referring to Feder's "client's" in the singular)), and even then, was not prepared to represent to Plaintiffs or undertake that the settlement payments were to be made by Fresh to the exclusion of the other Defendants. (Harman Decl., Ex. G) Plaintiffs similarly trumpet the fact that Innovative is "financially able" to make the settlement payment (Pl. Br. at 2), but never come out and ask the Court to Order Innovative to do so. It seems, therefore, that Plaintiffs do not seek relief against Innovative by way of this motion (*see*, Pl. Br. at 4, n.3, in which Plaintiffs concede that the Agreement contains no obligation for Innovative to fund the settlement) and that it is ***Defendants*** (Fresh and its co-Defendants) who are liable to pay), but since Plaintiffs so effectively attempt to muddle Innovative in with the Defendants and to conflate Fresh with Innovative, the possibility that Plaintiffs are seeking an Order against Innovative must be addressed.

[10] Mr. Harman refers to Feder as counsel for Innovative no fewer than 4 times in his Declaration, without stating the relevance of Feder's fully-disclosed representation of Innovative with respect to other matters. (Harman Decl. ¶¶ 13, 14, 16, 38) That Feder represents Innovative in other matters and even in Hernandez II, where Innovative is a named defendant, has no bearing on its representation of Fresh in this action. Moreover, Mr. Harman falsely states that Innovative participated in the settlement negotiations. (Harman Decl. ¶ 31) As more fully set forth in Mr. Rhine's Declaration, this is untrue. (Rhine Decl. ¶ 5, and n.2)

[11] Mr. Harman accurately recounts that Mr. Rhine asked for 45 days following Court approval of the settlement for Defendants to make the payment. (Pl. Br. at 4) This request was made to enable ***FRESH***, and perhaps others, to come up with the funds necessary to make the payment – it had nothing to do with Innovative. (Rhine Decl. ¶ 33) It is also the only accurate thing Mr. Harman has said about Mr. Rhine's statements concerning the settlement.

9

lawsuit, and no risk of liability pertaining thereto, it would be illogical for Innovative to have had anything to do with the settlement negotiations, or to make a gratuitous offer of payment – since Plaintiffs in no place claim that they made such a demand – on behalf of Fresh. [12]

Plaintiffs' contentions are further belied by the express language of the Agreement which, as set forth above, expressly disclaims reliance on any representations made before or during the course of the settlement negotiations other than those representations that appear expressly on the face of the Agreement. (Harman Decl., Ex. I at ¶ 20) Innovative appears nowhere in the Agreement.

Moreover, Plaintiffs are apparently unable to produce *a single piece* of contemporaneous documentation that supports Plaintiffs' current position that Innovative agreed to pay – there is no e-mail, no letter, or no note contemporaneous with, or in connection with the Agreement.[13] The fact that no contemporaneous writing exists of what would, if true, be a material term and condition of the settlement speaks volumes. This fact, coupled with Plaintiffs' express disclaimer of reliance on any extrinsic representations, should cause the Court to conclude that, contrary to Mr. Harman's *post facto* self-serving statements, no representations at all were made with respect to Innovative.

Because Innovative was not a party to this action, because Innovative could not, as a matter of law, be liable for the actions alleged in the Complaint, because Innovative is not

---

[12] While in reality, Innovative may have tried to assist Fresh in raising funds to conclude the settlement, such as by raising new capital through a spinoff or arranging for an outside entity to invest in, or even purchase the company, there was never any suggestion, at any time, that Innovative would advance funds to Fresh to settle this action. (Rhine Decl. ¶¶ 6-8, 14)

[13] Indeed, the "documentary evidence" relied upon by Plaintiffs (Harman Decl., Exs. F and G) do not contain a single mention of Innovative, but only discuss Fresh, leaving Plaintiffs to rely on the self-serving letter of Mr. Harman, sent months later, which mischaracterizes many aspects of the settlement negotiations. (Harman Decl., Ex. S)

10

otherwise subject to the jurisdiction of this Court with respect to this action, and because there is no credible evidence that Innovative agreed to participate in the settlement of this action, to the extent that Plaintiffs seek an Order with respect to Innovative, such request should be denied.

## II. FEDER CANNOT BE SANCTIONED PURSUANT TO 28 U.S.C. § 1927

Vexatious conduct under 28 U.S.C. § 1927 is conduct designed to unreasonably multiply or delay the proceedings in this case. In order for conduct to be sanctionable under 28 U.S.C. § 1927, it must be vexatious, meaning "so completely without merit as to require the conclusion that [the actions] must have been undertaken for some improper purpose, such as delay." *Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995). Thus, "the imposition of sanctions under § 1927 is authorized only when the court has made a finding of conduct that constitutes or is akin to bad faith." *Green v. Georgia-Pacific Corp.*, 199 F.3d 1322 (Table), 1999 WL 1022479 at *1 (2d Cir. Oct. 29, 1999).

Here, there has been no showing of vexatious conduct or bad faith on the part of Feder. Plaintiffs allege that, for reasons unstated, Feder conspired to render Fresh judgment proof (originally through bankruptcy (Harman Decl. ¶¶ 26-27) and then through sale (Harman Decl. ¶ 28)) to avoid making the settlement payment. This accusation, in addition to being untrue, is simply illogical, and not internally consistent!

Plaintiffs cannot, logically, argue, on the one hand, that Innovative obligated itself to pay the settlement, regardless of Fresh's financial condition, and on the other hand, that Feder engaged in some sort of conspiracy to render Fresh unable to pay and thus frustrate the settlement. If the obligation to pay devolved upon Innovative, Feder's conduct with respect to Fresh is irrelevant as a matter of law, and counterintuitive. If, on the other hand, and in fact, Fresh was and remains liable to make the settlement payment, Feder's alleged intent to take the

11

company into bankruptcy does not affect Plaintiffs' rights, since the alleged scheme was obviously never implemented. If, as Plaintiffs allege, Feder truly intended to prevent the settlement payment from being made, why would it have insisted – to the point of delaying the Agreement (Harman Decl., Ex. G) – on including language rendering all Defendants liable for the settlement payment, when the other parties seemed to insist that only Fresh should be responsible for the payment? And why would Feder have insisted upon obtaining 45 days for Fresh to make the payment? Had there truly been a scheme as alleged by Plaintiffs, Feder would have agreed to make Fresh solely liable for the settlement payment, and then filed for bankruptcy – which never occurred and is a figment of Plaintiffs' counsel's imagination; and why in that scenario would Innovative have agreed to fund the settlement?[14] Thus, Mr. Harman's contention (Harman Decl. ¶¶ 26-27), that the settlement was a sham, and that Feder always intended to structure a corporate transaction (or bankruptcy) to deprive Plaintiffs of the settlement funds, is illogical on its face, and unworthy of consideration.

The true facts are that Fresh believed, in good faith, that it would be able to raise sufficient funds from one of two contemplated transaction, between November 2015 and the date upon which the settlement payment was to be made. Either of these transactions would have enabled Fresh to satisfy the settlement. (Rhine Decl. ¶¶ 14, 31) What Fresh failed to anticipate was that neither transaction would come to fruition. (Rhine Decl. ¶ 33) That the anticipated

---

[14] Mr. Harman insinuates that, in and of itself, there is something nefarious about an intent to "bankrupt" Fresh. (Harman Decl. ¶¶ 26, 27, 30, 37, 38, 41) In fact, prior to the sale by Innovative of Fresh, Fresh could have filed for bankruptcy protection at any time, since it was insolvent almost from the day it was purchased (Rhine Decl. ¶¶ 21-22), a fact ignored by Mr. Harman, perhaps due to his inability to distinguish gross revenues from net income. (Harman Decl. ¶ 31) Despite insinuating that Fresh is a wealthy company, that Mr. Duchman received a substantial amount of money that he is improperly keeping, and that Innovative is a wealthy public company (Harman Decl. ¶ 31), Mr. Harman apparently fails to perceive that, at least at the time Innovative sold Fresh, the company, despite its revenues, was saddled with expenses and debt, and legally insolvent.

12

transactions failed to materialize does not retroactively render any good faith representation made by Feder false, nor is it an indication of bad faith or vexatious conduct. Plaintiffs' unfounded conspiracy theories notwithstanding, Feder did all it reasonably could both to settle this action, and to ensure that payments would be made. (Rhine Decl. ¶¶ 31-33)

Nor can Plaintiffs credibly argue that Feder made false statements either to the Court or to Plaintiffs' counsel. First, the Agreement not only disclaims reliance on extrinsic representations (Harman Decl., Ex. I ¶ 20), but also does not mention Innovative at all. Nor is Innovative mentioned in any of the extensive correspondence between the parties and the Court, including both correspondence attached as exhibits to the Harman Decl. or otherwise. Nor is Innovative mentioned in any of the documents the parties have asked the Court to consider in support of their request to approve the settlement pursuant to the FLSA.

And, despite Plaintiffs' counsel's *ex post facto* self-serving contentions, Feder did not make any representation to them as to Innovative during the settlement negotiations. (Rhine Decl. ¶¶ 6, and n.3, 11, 15) Nor can Plaintiffs credibly claim that they were misled or defrauded by Feder, since they do not claim to have asked for, or relied upon any representation that Innovative would tender the settlement payment.

All the facts concerning the corporate ownership of Fresh, and its finances, were disclosed to the public before settlement negotiations were conducted in this matter. (*See, e.g.*, Harman Decl., Ex. C) Consistent with this is Mr. Harman's admission that he became aware of the corporate transactions of which he now complains "as part of the settlement negotiation process." (Harman Decl. ¶ 7) These facts, coupled with Plaintiffs' express disclaimer of any extrinsic representations in the Agreement negate their belated claim that they were somehow

misled by statements made by Feder. (*See* Harman Decl. ¶ 27 (conceding that Plaintiffs knew that Fresh, not Innovative, was required to make the settlement payment.))

Because Plaintiffs have failed to adduce a scintilla of evidence that Feder conducted itself other than in good faith, because the corporate transactions that Plaintiffs now claim were in bad faith were disclosed to the public and known to Plaintiffs, because Feder undertook no action to delay or multiply the proceedings – in fact it negotiated a settlement that saved the parties and the Court the substantial burden and expense of preparing for and trying this matter to a jury – and because Feder no longer represents a party to this action,[15] , and therefore could not possibly have been responsible for this motion and its attendant costs, the Court should not even consider imposing costs on Feder,[16] and Plaintiffs' motion should be denied.

## III. PLAINTIFFS' MATERIAL MISSTATEMENTS WARRANT SANCTIONS AGAINST PLAINTIFFS' COUNSEL

In an attempt to overreach, and obtain relief to which they are not entitled, Plaintiffs make numerous material misstatements to the Court, perhaps in an effort to elide the very real differences between Fresh and its shareholder, Innovative, and to convey false impressions about the ability of the parties to tender the settlement payment at this time. Ironically, in arguing this point, Plaintiffs rely on false statements, which they must know are false, both as a matter of law, and based on the documentary evidence upon which they rely. Accordingly, it is not Defendants who should be sanctioned, but Plaintiffs, pursuant to Fed. R. Civ. P. 11.

Mr. Harman asserts that in 2014, Innovative acquired 90% of Fresh from Mr. Duchman, and asserts that Mr. Duchman received shares of Innovative stock valued at $14 million.

---

[15] Plaintiffs concede this much. (Harman Decl. ¶ 42)

[16] Plaintiffs should not be able to seek costs and fees from Feder for the additional reason that Plaintiffs have already released Feder from any liability relating to this case. (Harman Decl., Ex. I at ¶ 2)

14

(Harman Decl. ¶ 10) The public filing upon which Mr. Harman relies (Harman Decl., Ex. C), demonstrates that these statements are not correct. Innovative's filings made clear that the transaction was financed with shares of Innovative stock that the company valued at $14 million in the aggregate, and that Mr. Duchman was only one of several shareholders who would receive this consideration. (Harman Decl., Ex. C; Rhine Decl., Exs. A and B) Plaintiffs similarly omit that the shares received by Mr. Duchman and the other shareholders were subject to restrictions and could not be sold for a period of 18 months. (Harman Decl., Ex. C; Rhine Decl., Ex. B) Moreover, in touting the fact that Fresh purportedly received $1 million in investment at or about the time the settlement was negotiated (Harman Decl., Ex. E) Plaintiffs' counsel fails to note that in the announced transaction the funder "had agreed" and that there was a "non-binding term sheet" and further that it never fully came to fruition, and Fresh received substantially less than $1 million. (*Id.*; Rhine Decl. ¶ 30)

In repeatedly conflating Innovative and Fresh (*e.g.*, Harman Decl. ¶¶ 14, 16), Mr. Harman ignores basic corporate law that provides that a shareholder, even if it is a controlling shareholder,[17] is not liable for the acts of a corporation, especially where, as here, there is no allegation that the corporate form was abused or ignored. Nor does common ownership of separate corporations permit the Court to consider the acts of one corporation as having been undertaken by the other. This is especially so where, as here, management was kept separate and distinct throughout the period of Innovative's ownership of Fresh, as were Fresh's books, records, financial statements, bank accounts, and all other indicia of business operations. (Rhine Decl. ¶ 29, and n.5)

---

[17] Mr. Harman misrepresents to the Court that Innovative purchased 90% of Fresh. (Harman Decl. ¶ 10) Innovative purchased 100% of Fresh, as set forth in Harman Decl., Ex. C.

15

Mr. Harman attempts this same sleight of hand by consistently referring to Feder as counsel for Innovative, and not Fresh. While it is technically true that Feder also represents Innovative, Mr. Harman omits the fact that Feder never represented Innovative in *this action*, or with respect to the negotiation or settlement. (Rhine Decl. ¶¶ 1, and n.1, 5, and n.2) This is because, *inter alia*, Innovative was never a party to this action, and never participated in the settlement discussions.[18]

In support of his contention that Innovative agreed to make the settlement payment (Harman Decl. ¶ 13), he cites to two documents, Ex. G and Ex. F. *Neither* of these documents support this contention, and *neither* even mentions Innovative. This statement alone is clearly an ***intentional, material, misrepresentation of fact***, calculated to impose liability on a party as to which Plaintiffs know has none, and is sanctionable! Not only are Plaintiffs relying on a material statement that is false, they also purport to rely on oral representations they specifically disclaimed (*compare* Harman Decl. ¶ 13, Pl. Br. at 4, 7, *with* Harman Decl., Ex. I ¶ 20), and fail to raise a single, cognizable legal argument upon which to base a claim for liability against Innovative.

Similarly, Mr. Harman's allegation that the transaction by which Innovative sold 90% of its interest in Fresh, and Feder's purported "intent" to put Fresh into bankruptcy for the sole purpose of evading responsibility for the payment of the settlement amount, aside from being both illogical and irrelevant from Plaintiffs' perspective (since all Defendants remain liable), is based on rank speculation.

---

[18] Paragraph 19 of the Harman Decl. states that the Defendants are jointly and severally liable to make the settlement payment, which is true. To the extent he implies that such obligation devolved on Innovative (Harman Decl. ¶¶ 13, 16, 26, 27, 28, 31, 32, 37, 41), he is, again, creating an argument from whole cloth. Innovative never undertook to make any payment to Plaintiffs, and no document proffered by Mr. Harman, including Exhibits F, G, and I to his Declaration, say otherwise.

16

In sum, in what may be a desperate attempt to latch onto Innovative as a source of funds, Plaintiffs have improperly conflated Innovative and Fresh, without any basis in law or fact for having done so, and made numerous facially false factual representations to this Court in support of the instant motion. This misconduct should not be countenanced, and in addition to denying this motion, the Court should sanction Plaintiffs' counsel.

## Conclusion

For the reasons stated herein, and in the accompanying Declaration of Howard I. Rhine, and its exhibits, Innovative and Feder respectfully request that the instant motion be denied in full, or in the alternative, as to them, and that the Court grant them such other and further relief as the Court deems just and proper.

Dated: New York, New York
       June 21, 2016

Respectfully submitted,

*[signature]*

Howard I. Rhine (HR-1961)
David Sack (DS-6532)
845 Third Avenue
New York, New York 10022
Telephone: (212) 888-8200

Attorneys for non-party Innovative Food
Holdings, Inc. and *pro se*
