UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
FERNANDO HERNANDEZ, KENNETH CHOW,
BRYANT WHITE, DAVID WILLIAMS,
MARQUIS ACKLIN, CECILIA JACKSON,
TERESA JACKSON, MICHAEL LATTIMORE
and JUANY GUZMAN, Each Individually, And On Behalf Of
All Other Persons Similarly Situated,

                                      *Plaintiffs,*

-against-                                                              12 CV 4339 (ALC) (JLC)

THE FRESH DIET INC.,
LATE NIGHT EXPRESS COURIER SERVICES, INC. (FL),
FRESH DIET EXPRESS CORP. (NY),
THE FRESH DIET - NY INC. (NY),
FRESH DIET GRAB & GO, INC. (FL) a/k/a
YS CATERING HOLDINGS, INC. (FL) d/b/a
YS CATERING, INC. (FL),
FRESH DIET EXPRESS CORP. (FL),
SYED HUSSAIN, Individually,
JUDAH SCHLOSS, Individually,
and ZALMI DUCHMAN, Individually

                                      *Defendants.*
---------------------------------------------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM OF LAW TO DEFENDANTS' OPPOSITION AND IN FURTHER SUPPORT OF THEIR MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND FOR SANCTIONS**

**THE HARMAN FIRM, LLP**
Walker G. Harman, Jr.
Edgar M. Rivera
220 Fifth Avenue, Suite 900
New York, New York 10001
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*

# PRELIMINARY STATEMENT

This motion arises from Defendants' failure to make a Court-approved settlement payment of $478,989.67 (the "Settlement Payment"). Defendants—after months of negotiations, Court approval, and detailed correspondence regarding the date the Settlement Payment was due—argue now for the first time that they never had any obligation to pay because they purportedly did not receive a signed copy of the Master Settlement and General Release Agreement (the "Master Agreement") and Stipulation of Dismissal (the "Stipulation") until Plaintiffs filed the instant motion. Defendants' argument fails because Defendants did receive a signed copy of the Master Agreement and Stipulation well before Plaintiffs filed their motion. As Plaintiffs had provided Defendants with all prerequisite documents and asked that Defendants confirm receipt of those documents, and Defendants repeatedly assured Plaintiffs that they would pay the Settlement Payment by a date certain, Defendants have waived any prerequisites and breached the Master Agreement by failing to make the Settlement Payment.

During the many months leading up to the filing of this motion, Defendants never once raised any purported deficiency on the part of the Plaintiffs. In fact, the very opposite is true: Defendants consistently maintained that all was in order and that the Settlement Payment would be made on a date certain in late March. The Settlement Payment was never made. At the time the Settlement Payment was due on behalf of all Defendants, Defendants then claimed both to this Court and to Plaintiffs' counsel that they were not going to pay because they just could not make the payment. Now, Defendants have switched gears and manufactured a story, one not supported by evidence, as to why they now believe that they never had to pay in the first place. The fact remains: Defendants have not paid a dollar toward the settlement and have only offered hollow excuses. Defendants' conduct is the opposite of good faith, which case law makes clear

amounts to bad faith.  Accordingly, the Court should enforce the Master Agreement and should award Plaintiffs interest, fees and costs for their efforts to enforce.

## STATEMENT OF FACTS

For a full statement of the facts, Plaintiffs respectfully refer the Court to Plaintiffs' "Facts" section of their memorandum of law in support of their Motion to Enforce the Settlement Agreement and for Sanctions, dated May 26, 2016; the Declaration of Walker G. Harman, Jr. ("Harman Decl.") dated May 26, 2016; the Supplemental Declaration of Walker G. Harman, Jr. ("Harman Supp. Decl.") dated July 19, 2016; the Declaration of Yarelyn Mena ("Mena Decl.") dated July 19, 2016; and the exhibits annexed thereto.  The following is a summary of the parties' correspondence since Plaintiffs' counsel's execution of the Master Agreement and Stipulation.

On February 4, 2016, Plaintiff's counsel executed the Master Agreement and Stipulation. Harman Supp. Decl. ¶ 4; Agreement, Harman Decl., Ex. I.  The next day, February 5, 2016, Plaintiffs' counsel sent the original, executed Master Agreement and Stipulation (as well as a transmittal letter (the "Transmittal Letter") nine (9) individual releases, nine (9) Form W-9s, and an affidavit) to Defendants by mail.  Mena Decl. ¶ 4.  Plaintiffs' counsel also intended to send courtesy copies of the same by email, but did not attach the Master Agreement or Stipulation. Harman Supp. Decl. ¶ 6.  Regardless, the Master Agreement and Stipulation were sent by regular email on February 5, 2016.  Mena Decl. ¶ 4.

Plaintiffs asked Defendants on several occasions to confirm that they received all documents.  Harman Supp. Decl. ¶ 8.  In the Transmittal Letter accompanying both the email and regular mailing, Plaintiffs informed Defendants: "As such, Plaintiffs have fully performed their obligations and wait their settlement payment."  Letter, Harman Decl., Ex. L.  In Plaintiffs'

February 8, 2016 email, Plaintiffs' counsel stated: "Please let us know if there are any other issues and we will work to promptly resolve them." February 8, 2016 email, Harman Supp. Decl., Ex. U. On February 25, 2016, Plaintiffs' counsel wrote to Defendants (by email and regular mail):

> The settlement documents have been executed and delivered to your office. Further, the Court has approved the settlement. These actions have triggered your clients' obligations to make the payments pursuant to the terms of the agreement. The deadline to make those payments is approaching.

Confirmation letter, Harman Supp. Decl., Ex. V. Defendants never responded that anything was missing. Harman Supp. Decl. ¶ 12.

On March 8, 2016, Hilda Kraker, an administrative assistant at Feder Kaszovotz LLP—the firm which represented Fresh Diet, Inc. until March 4, 2016—told Plaintiffs' counsel that the Master Agreement had not been attached to the February 5, 2016 email, and Feder Kaszovitz LLP wanted a copy to "complete [their] file." Kraker correspondence, Harman Supp. Decl., Ex. W. Plaintiffs' counsel again immediately sent the same executed copy that was mailed on February 5, 2016. Kraker correspondence, Harman Supp. Decl., Ex. W. In subsequent correspondence, Ms. Kraker asked if we had a copy of the Master Agreement signed by all parties. Harman Supp. Decl., Ex. W. Plaintiffs' counsel, now for the third time, wrote that we had sent the signed Master Agreement and Stipulation to execute and return to Plaintiffs with the Settlement Payment, which we expected at the end of March, per the terms of the Master Agreement. Harman Supp. Decl., Ex. W. Defendants did not disagree with this understanding. Harman Supp. Decl. ¶ 17.

On March 10, 2016, Plaintiffs wrote to the court in *Hernandez II*[1] to request an initial conference. March 10, 2016 letter, Harman Supp. Decl., Ex. X. In that letter, Plaintiffs informed the Court that *Hernandez I* had settled and all that remained was Defendants' making of the Settlement Payment. March 10, 2016 letter, Harman Supp. Decl., Ex. X. Defendants never disputed the content of that letter. Harman Supp. Decl. ¶ 20.

On March 22, 2016, Plaintiffs informed Defendants that the Settlement Payment had been due on March 21, 2016 and Plaintiffs had not received the payment. Email, dated March 22, 2016, Harman Decl., Ex. R. Defendants stated that the Settlement Payment deadline was actually March 25 and that they would speak with their clients regarding whether they would make a "lump sum payment or will require a payment plan." Email, dated March 22, 2016, Harman Decl., Ex. R. This was the first time that Defendants expressed any doubt of making the Settlement Payment as per the Master Agreement. Harman Supp. Decl. ¶ 23. Plaintiffs responded that they had no authority to agree to a payment plan. Email, dated March 22, 2016, Harman Decl., Ex. R. On March 25, 2016, Defendants told Plaintiffs that their clients would not be making the Settlement Payment. Harman Supp. Decl. ¶ 25.

On March 28, 2016, Plaintiffs wrote to the Court informing it that Defendants had defaulted on their payment and requested a pre-motion conference to enforce the terms of the Master Agreement. Harman Supp. Decl. ¶ 26. On March 31, 2016, Defendants responded to Plaintiffs letter stating that although Defendants were unable to fund the settlement, as the Fresh Diet has changed ownership, they "remain committed to the settlement." Letter, dated March 31, 2016, Harman Decl., Ex. P. On April 6, 2016, Plaintiffs wrote to the Court to renew their motion to enforce the Master Agreement. Harman Supp. Decl. ¶ 28. Defendants filed letters on April 6,

---

[1] *Hernandez II* is the related action, *Hernandez et al. v. Fresh Diet, Inc. et al.*, 15 CV 01338 (ALC) (JLC) (S.D.N.Y. February 24, 2015).

4

2016, and April 13, 2016, and appeared at a Court conference on April 26, 2016, concerning Plaintiffs' motion to enforce, never once taking the position that the Master Agreement was not effective. Harman Supp. Decl. ¶ 29.

Although they have now signed the Stipulation, Defendants still have not executed the Master Agreement. Harman Supp. Decl. ¶ 30.

## LEGAL ARGUMENT

I. **Plaintiffs' Motion Should Be Granted, As Defendants Were Obligated To Pay The Settlement Payment**

A. <u>Defendants received the Master Agreement and Stipulation by regular mail and email.</u>

The Master Agreement contains three conditions precedent: (1) the seven day revocation period expire without revocation by any plaintiff; (2) Defendants receive four categories of documents—(i) a signed Master Agreement, (ii) signed Form W-9s, (iii) signed individual releases, and (iv) a signed Stipulation; and (3) the Court approve the settlement and endorse the Stipulation.[2] Defendants concede that the first precondition was met but argue that the second and third preconditions were not because they did not receive a signed Master Agreement, Stipulation, and the Court did not dismiss the action. However, Defendants did receive an executed Master Agreement and Stipulation; therefore, the second precondition was met. Defendants waived the third precondition, by not filing the stipulation.

Defendants' argument fails because Defendants received the Master Agreement, and the Stipulation contained therein. On February 5, 2016, at the same time that Plaintiffs sent courtesy copies of the settlement documents by email, they also sent the original documents to Howard

---

[2] Defendants own conduct in failing to execute and file the Stipulation over many months prohibited this precondition from ever taking place.

5

Rhine, Esq. and David Sack, Esq., of Feder Kaszovitz, LLP, who at that time represented Defendant Fresh Diet, Inc. As such, Defendants had the Master Agreement and Stipulation. Defendants were sent still another copy of the Master Agreement and Stipulation of March 8, 2016. Thus, by early March, Defendants received at least two (2) copies of the Master Agreement and Stipulation.

As evidenced by correspondence between counsel and with the Court, all parties knew that the payment was due at the end of March; Defendants' counsel represented that they had everything they needed from the Plaintiffs and that payment was going to be made. At no point did Defendants' counsel alert Plaintiffs of any purported failure to deliver any documents, even as they were preparing their opposition papers.

In sum, this argument is merely a last ditch effort to further delay Defendants' time to make the Settlement Payment, presumably to add leverage to any subsequent discussions. The Court should prevent this injustice by granting Plaintiffs' motion.

B. <u>As Defendants had the Stipulation yet did not sign and file it with the Court, Defendants have waived this precondition.</u>

As shown above, Defendants received the Master Agreement and Stipulation in February by mail, in March by email, and yet again in May in the instant motion. As such, the only precondition that has not been met is the Court's dismissal of the action, which is impossible without Defendants signing and filing the Stipulation with the Court; Defendants have not done so.[3] As a result, Defendants waived this precondition and breached the Master Agreement by not making any payment.

---

[3] Plaintiffs do not request that the Court dismiss this action with prejudice, as Defendants have not executed the Master Agreement. Dismissal of the action would leave Plaintiffs without certainty that the Master Agreement would be enforced, and Plaintiffs would likely need to spend several more months (or years) litigating the enforcement of a Mast Agreement. Defendants have now proven that they will pull any trick out of the bag to avoid making the Settlement Payment irrespective of its veracity or viability.

Defendants correctly state that the doctrine of prevention of performance provides a party cannot act to prevent the fulfillment of a condition and then argue failure of the condition precedent as a defense to a claim that it breached the contract. *See, e.g, Bogdan And Faist P.C. v. CAI Wireless Systems Inc.*, 295 A.D.2d 849, 853 (3d Dep't 2002); *D.C.R. Trucking & Excavation, Inc. v. Aetna Cas. and Sur. Co.*, No. 96 CV 3995, 2002 WL 32096594, at *7 (E.D.N.Y. 2002). However, Defendants incorrectly assert that their conduct does not trigger that doctrine. Interference that rises to the level of preventing or hindering performance is sufficient to constitute breach and trigger the doctrine of prevention. *In re Bankers Trust Co.*, 450 F.3d 121, 128 (2d Cir. 2006); *Plainview S. & S. Concrete Co., Inc. v. NVNG Development Corp.*, 151 A.D.2d 654, 655 (2d Dep't 1989); Restatement (Second) of Contracts § 225 cmt. b (1981). The failure to bring about a condition precedent, whether by active or passive steps, waives the precondition condition. *In re Bankers Trust Co.*, 450 F.3d at 128.

Assuming for the sake of argument that Defendants did not receive the Master Agreement and Stipulation, their representations during the period leading to the Settlement Payment due date still stop them from arguing now that they had no obligation to pay. Defendants, through the implied covenant of good faith and fair dealings, were obligated to inform Plaintiffs that they did not receive the documents in question after Plaintiffs told them that Plaintiffs believed all conditions requisites had been met. As such, the Court should find that Defendants waived this precondition.[4]

## II. The Court Has Jurisdiction To Enforce The Settlement

Defendants argue that the Court lacks jurisdiction to enforce the Master Agreement based on *Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375 (1994), and its progeny,

---

[4] There is no prejudice to the Defendants if the Court were deem waived this precondition; the Court may dismiss the case with prejudice upon the issuing of a judgment against Defendants, which Plaintiffs will not oppose.

7

which stand for the proposition that courts are limited in their ability to enforce settlement agreements after the underlying case is dismissed. *Kokkonen*, and the cases interpreting it, are not applicable here, as the underlying action has not been dismissed. A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it. *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974). As such, enforcing this settlement is well within the Court's jurisdiction.

### III. Plaintiffs' Motion For Sanctions Against Defendants Should Be Granted

A. <u>Defendants' argument against sanctions relies on Defendants' having not received the Master Agreement and the Stipulation, which is false.</u>

As discussed above, Defendants had signed versions of the Master Agreement and the Stipulation. As such, Defendants violated the terms of the Master Agreement by not timely making the Settlement Payment. The only issue before the Court must decide is whether that failure was the result of bad faith. As shown below in section III. B., the Court should find that it was.

B. <u>Defendants failed to make the Settlement Payment in bad faith.</u>

Defendants have never made any payments nor has any Defendant executed the Master Agreement.[5] Defendants represented to Plaintiffs' counsel that payment was forthcoming, missed the deadline without making any payment and then, for the first time, represented to Plaintiffs' counsel that Defendants could not make the payment, then opposed this motion relying on a nonsensical argument that Defendants never had any obligation to pay at all. In short, Defendants' conduct and constantly sifting explanations illustrates that their failure to

---

[5] It is incredible that Defendants' counsel only realized that they purportedly did not have a copy of the Master Agreement until Plaintiffs filed this motion; while the Plaintiffs were signing the Individual Agreements and awaiting payment, Plaintiffs' counsel was investigating the reasons for which Defendants had not paid, and the Court reviewing counsels' letters and presiding over hearings, Defendants' counsel never attempted to have their clients sign the Master Agreement.

8

make the Settlement Payment was in bad faith. *See Travelers Indem. Co. v. Excalibur Reinsurance Corp.* No. 3:13-CV-293 (AWT), 2014 U.S. Dist. LEXIS 35571, at *8 (D. Conn. Mar. 19, 2014) (holding that the failure to timely make payments pursuant to a settlement agreement amounts to bad faith and warrant sanctions where defendant purported to be unable to pay). Taken as whole, Defendants' course of action shows that Defendants are abusing the litigation process to delay a judgment against them and leverage a more favorable settlement for their clients.

**IV. Defendants Should Not Be Permitted To Renegotiate A Material Term Of The Settlement That They Already Agreed To And By Which They Are Bound To Perform**

Throughout the settlement negotiations and subsequent correspondence, Plaintiffs' counsel repeated to Defendants that we have no authority from our clients to agree to any payment plan, and we have no authority to do so now. Indeed, Plaintiffs accepted less than the full value of their claims to resolve this matter because the Settlement Payment would *not* be on a payment plan

Defendants argue that *Cheeks v. Freeport Pancake House*, 796 F.3d. 199 (2d Cir. 2015), and its antecedents establish that the Court can direct the parties to renegotiate the timing of settlement payments—that since the court must approve the settlement and a defendant's ability to pay a settlement is part of the fairness analysis, a court may somehow require a plaintiff to accept a payment plan after a settlement was already reached and approved by the court. Defendants' argument completely misses the point as to why courts require Fair Labor Standards Act ("FLSA") settlements be approved.

In *Cheeks*, the Second Circuit recognized that low wage workers were more vulnerable to coercion or more likely to accept discounted settlement offers quickly, due to extenuating

economic and social circumstances.  *Cheeks*, 796 F.3d. at 205-06.  Without judicial oversight, employers may be more inclined to offer, and employees, even when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with the FLSA.  *Id.*  Thus, in "service of the statute's remedial and humanitarian goals", the FLSA is to be interpreted liberally and afforded its protections exceptionally broad coverage.  *Id.* at 206 (citing *Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 285 (2d Cir. 2008).  In sum, the Second Circuit requires court approval for FLSA settlements to protect *workers*, not employers.

Defendants turn the FLSA on its head by asking the Court to require Plaintiffs to renegotiate the terms of the settlement, after Plaintiffs already forwent their opportunity for a trial, because of Defendants' alleged "inability to make a lump sum payment," a position for which Defendants provide no evidence.  Plaintiffs, who have awaited their wages for years, are fully within their rights to pursue Defendants' assets upon the receipt of a judgment, rather than rely on Defendants' crooked promises.

## CONCLUSION

Given these facts, the Court should enforce the Master Agreement and should award Plaintiffs interest, fees and costs for their efforts to enforce.

Dated: New York, New York  
       July 19, 2016

Respectfully submitted,

By:    s/ Walker G. Harman, Jr.  
Walker G. Harman, Jr. [WH-8044]  
Edgar M. Rivera [ER-1378]  
220 Fifth Avenue, Suite 900  
New York, New York, 10001  
wharman@theharmanfirm.com  
erivera@theharmanfirm.com  
*Attorneys for Plaintiff*