**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------------X
FERNANDO HERNANDEZ, KENNETH CHOW,
BRYANT WHITE, DAVID WILLIAMS,
MARQUIS ACKLIN, CECILIA JACKSON,
TERESA JACKSON, MICHAEL LATTIMORE
and JUANY GUZMAN, Each Individually, And On Behalf Of
All Other Persons Similarly Situated,

*Plaintiffs,*

-against-   12 CV 4339 (ALC) (JLC)

THE FRESH DIET INC.,
LATE NIGHT EXPRESS COURIER SERVICES, INC. (FL),
FRESH DIET EXPRESS CORP. (NY),
THE FRESH DIET - NY INC. (NY),
FRESH DIET GRAB & GO, INC. (FL) a/k/a
YS CATERING HOLDINGS, INC. (FL) d/b/a
YS CATERING, INC. (FL),
FRESH DIET EXPRESS CORP. (FL),
SYED HUSSAIN, Individually,
JUDAH SCHLOSS, Individually,
and ZALMI DUCHMAN, Individually

*Defendants.*
---------------------------------------------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM OF LAW TO FEDER KASZOVITZ'S OPPOSITION AND IN FURTHER SUPPORT OF THEIR MOTION FOR SANCTIONS**

**THE HARMAN FIRM, LLP**
Walker G. Harman, Jr.
Edgar M. Rivera
220 Fifth Avenue, Suite 900
New York, New York 10001
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*

# PRELIMINARY STATEMENT

Plaintiffs Fernando Hernandez, Kenneth Chow, Bryant White, David Williams, Marquis Acklin, Cecilia Jackson, Teresa Jackson, Michael Lattimore and Juany Guzman (collectively referred to as "Plaintiffs") submit this Reply in response to the Memorandum of Law in Opposition to Plaintiffs' Motion to Enforce and for Sanctions filed by Fresh Diet's former counsel, Feder Kaszovitz LLP ("Feder") on June 21, 2016 (Docket No. 258) ("Opposition") and in further support of Plaintiffs' motion i) to enforce the terms of the Settlement Agreement in the instant action and ii) for sanctions against both Defendants and former counsel for Defendant The Fresh Diet, Inc. ("Fresh Diet") for their bad faith in agreeing to a settlement and then each refusing to pay the agreed upon sum of four hundred and seventy-eight thousand nine hundred and eighty-nine dollars and sixty-seven cents ($478,989.67) ("Settlement Payment.")[1]

Feder's conduct during settlement negotiations has directly caused the failure of the "Master Settlement and General Release Agreement" (the "Agreement" or "Settlement Agreement"). Feder, as counsel for Fresh Diet, repeatedly misled the Plaintiffs regarding several crucial items, including, but not limited to, i) the viability of the Settlement Agreement, ii) the decision-makers who confirmed the Agreement, and iii) the source of the Settlement Payment. This is bad faith on the part of Feder as they knew Fresh was insolvent and, nevertheless, committed to make the Settlement Payment.

---

[1] As discussed at length in Plaintiffs' original motion, the Parties, after more than three (3) years of litigation and months of negotiation, reached an agreement to settle this matter. The Court approved this agreement February 2, 2016, and it became effective on February 5, 2016. However, to date, Plaintiffs have not received one cent of the settlement amount; Defendants claim to be unable to pay. Plaintiffs, after fulfilling their end of the agreement, halting litigation, and releasing Defendants, have received nothing in return.

The appropriate response to Feder's bad faith negotiation is for the Court to award sanctions to Plaintiffs. As such, Plaintiffs' motion should be granted and Plaintiffs should be awarded sanctions for their efforts in enforcing the Agreement.

Plaintiffs do not seek to enforce the Settlement Agreement against Innovative; Plaintiffs' original motion seeks to enforce the Settlement Agreement only against the Defendants named in this action.

## FACTS

For a full statement of the facts, Plaintiffs respectfully refer the Court to Plaintiffs' "Statement of Facts" section of its memorandum of law in support of its Motion to Enforce the Settlement Agreement and for Sanctions, dated May 24, 2016; the Declaration of Walker G. Harman, Jr. ("Harman Decl.") dated May 24, 2016; the Supplemental Declaration of Walker G. Harman, Jr. ("Harman Supp. Decl.") dated June 19, 2016, and the exhibits annexed to those declarations.

## LEGAL ARGUMENT

### I. Plaintiffs Are Entitled to Sanctions.

Plaintiffs seek sanctions under 28 U.S.C. 1927 against Defendant Fresh's former counsel Feder. As shown below, the present circumstances and Feder's conduct justify these sanctions.

   A. <u>Plaintiffs are entitled sanctions.</u>

Plaintiff's argument that Feder's conduct is sanctionable is simple: Feder engaged in months of negotiation with Plaintiffs while representing Fresh. Harman Supp. Decl. ¶ 3. During those negotiations, Feder repeatedly represented that Fresh would not be able to make the

2

Settlement Payment, but that Innovative would provide the funds. Harman Dec ¶ 13, Harman Supp. Decl. Ex. Y. Feder admits in its Opposition that Fresh was insolvent virtually the entire time it was owned by Innovative.[2] Opp. Mem. p. 12 fn. 14. Feder further admits that Innovative had been funding Fresh's operations. Opp. Mem. p. 5. Nonetheless, Feder negotiated and consummated the Agreement whereby Defendants, including Fresh, were obligated to make the Settlement Payment. Harman Dec ¶ 5. Contemporaneously with these negotiations, Innovative arranged for the sale of Fresh, guaranteeing that Fresh would not be able to make the settlement payments. Harman Dec ¶ 11-18, 24.

Feder claims that simultaneous to these negotiations, they were attempting to complete a transaction to enable Fresh to pay the sums at issue in the Agreement, and that these "transactions" subsequently fell through.[3] Opp. Mem. p. 12. Only Feder can speak to the substance of these alleged "negotiations." However, the documents relied on in support of this proposition suggest a different story:

> Subsequent to the announcement regarding the spinoff, discussions were initiated by several potentially interested parties with respect to acquiring our wholly-owned subsidiary, The Fresh Diet, Inc. After evaluating the various offers and weighing them against the spinoff and other options available to The Fresh Diet, we determined that one of the offers was most likely to maximize value for shareholders.

Rhine Decl. Exhibit D. Presumably, following through on its commitment to fund the settlement would not have maximized value for Innovative's shareholders, but selling Fresh back to Defendant Duchman led to maximized value for Innovative, and the creation of an Agreement

---

[2] Despite Feder's protestations to the contrary, that Feder represents Innovative in a separate, but related, action is highly relevant to this motion: Feder, as Innovative's counsel, had knowledge of Innovative's plans for Fresh. They do not dispute that they were aware of Innovative's alleged failed attempts to sell Fresh, or the ultimate successful unloading of Fresh onto Defendant Duchman.

[3] Feder has provided no evidence of the existence of these purported failed phantom transactions (*e.g.*, names, dates or other relevant details), they have identified no individuals, representing Innovative or otherwise, who participated in the negotiation or exploration of these purported transactions, and they have provided no information about the substance of these transactions.

3

that no Defendant would pay. This is the crux of Plaintiffs' motion: Feder repeatedly represented that the Settlement Agreement would be funded by Innovative, while simultaneously ensuring that it would not be. This duplicity amounts to sanctionable bad faith. Plaintiffs would not have signed away their lawsuit and their rights if they had known the Agreement was empty.

Sanctions may be imposed under § 1927 when an attorney has acted in bad faith. *See, e.g., Johnson v. University of Rochester Med. Ctr.*, 642 F.3d 121, 125-26 (2d Cir. 2011). Courts have held that an absence of good faith amounts to bad faith. *Grand St. Realty, LLC v. McCord*, No. 04-CV-4738 (CBA), 2005 U.S. Dist. LEXIS 45314, at *26 (E.D.N.Y. Sep. 30, 2005). Similarly, bad faith exists where a party "knowingly misrepresent the facts or the law." *Id.* at *28. Courts do not hesitate to sanction attorneys for frustrating settlement agreements. *See, e.g., Forman v. Mt. Sinai Med. Ctr.*, 128 F.R.D. 591, 600 (S.D.N.Y. 1989), , *In re Auction Houses Antitrust Litig.*, 2004 U.S. Dist. LEXIS 23351, at *27 (S.D.N.Y. Nov. 17, 2004), *Cameron Int'l Trading Co. v. Hawk Imps., Inc.*, No. 03-CV-02496 (JS), 2011 U.S. Dist. LEXIS 4976, at *5 (E.D.N.Y. Jan. 18, 2011). Feder's opposition fails to rebut this settled case law. In fact, Feder does not cite to any substantive case law in opposition to Plaintiffs' arguments for sanctions. The only case law in Feder's brief on this issue stands for the proposition that § 1927 sanctions are only available in instances of bad faith; Plaintiffs' agree, and have described how Feder's conduct amounts to bad faith.

Feder's hypothetical arguments against sanctions are not persuasive. Feder's attempts to paint Plaintiffs' arguments as "illogical" fall flat. Feder claims that Plaintiffs' argument that Feder and Innovative sought to render Fresh judgment proof makes no sense because Fresh never actually declared bankruptcy. Opp. Mem. p. 11-12. That Fresh did not declare bankruptcy is not inconsistent with Innovative's scheme – Innovative would be better off selling Fresh and

4

maximizing value as they did than taking Fresh through bankruptcy for little to no gain – as in either outcome Innovative dodges its commitment to pay, and Fresh is unable to pay.[4] Likewise, Feder's hypothetical arguments are futile; suggesting that Innovative would have acted differently if they had intended to implement a scheme to avoid payment has no bearing on Plaintiffs' argument that Feder did, in fact, execute such a scheme.

That Feder has the temerity to suggest their actions benefitted the Court and the parties – Feder's opposition notes that they "negotiated a settlement that saved the parties and the Court the substantial burden and expense of preparing for and trying this matter to a jury," (Opp. Mem. p. 14) – is incredible. Feder seems to believe that Plaintiffs' loss of their rights under the FLSA and to a jury trial – in exchange for nothing – is a positive because it saved the parties and the Court's time.

In sum, Feder's negotiation of the Agreement with one hand while simultaneously working to undermine the Agreement with the other constitutes bad faith. Likewise, Feder's misrepresentation to Plaintiffs as to the source of the Settlement Payment as well as to the viability of the Settlement Agreement amounts to bad faith. Thus, the Court should hold Feder, as well as the Defendants, responsible for the additional fees and costs incurred by Plaintiffs and Plaintiffs' counsel in addressing the default and in enforcing the Agreement, including, but not limited to, costs and fees related to researching, drafting, and briefing this motion; costs and fees related to ongoing communications with the Plaintiffs; and costs and fees related to the ongoing litigation.

---

[4] Additionally, had Feder or Innovative utilized a bankruptcy filing to effectuate avoidance of the settlement sum, such a transaction could easily implicate separate bankruptcy "bad faith" provisions.
5

## II. Plaintiffs Do Not Seek to Enforce the Agreement Against Innovative.

To reiterate: Plaintiffs only seek to enforce the agreement against the Defendants that were party to the agreement, not Innovative. Similarly, Plaintiffs do not seek sanctions against Innovative, only Defendants – which sanctions are addressed in a separate Reply – and Feder. As such, the Court need not address Feder's arguments on behalf of Innovative.

## III. Feder's Request for Sanctions against Plaintiffs' Counsel Must Fail.

In response to Plaintiffs' motion for sanctions, Feder, in turn, submits that Plaintiffs' counsel should be sanctioned for making material misstatements, and they attempt to seek sanctions under Fed. R. Civ. P. Rule 11. Feder's primary example of Plaintiffs' counsel's "***intentional, material, misrepresentation of fact***" (Opp. Mem. p. 16) (emphasis in original) is Plaintiffs' assertion that Innovative, through Feder, agreed to fund the settlement agreement. Once more: this statement is accurate, and has been corroborated by Fresh's current counsel. Harman Supp. Decl. Ex. Y.[5][6] Leaving aside the fact that Feder's cited reasons for sanctions are not, in fact, sanctionable, Feder is not entitled to sanctions against Plaintiffs' counsel under Rule 11 simply because the Rule requires that a motion for sanctions under Rule 11 must be made (i) "after notice and a reasonable opportunity to respond" (Fed. R. Civ. P. Rule 11(c)(1) and (ii) "separately from any other motion" (Fed. R. Civ. P. Rule 11(c)(2)). *See Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 94 (2d Cir. 1999). Accordingly, as Feder has not served Plaintiffs or their counsel with a motion for sanctions or moved separately for sanctions,

---

[5] Feder's remaining protestations about Plaintiffs' counsel's purported misrepresentations are mere quibbles about Innovative's transactions involving Fresh. That the shares involved in these transactions were restricted, that a described agreement was actually a non-binding term sheet, or that the transaction was for some undefined amount less than one million dollars do not amount to misrepresentation; at most they are technical differences arising out of incomplete information.

[6] The Court may note that in this letter, Defendants' current counsel blames Feder and Innovative for scuttling the Settlement Agreement. Harman Supp. Decl. Ex. Y.

the Court must ignore Feder's request for sanctions against Plaintiffs' counsel as procedurally inappropriate, not in compliance with the Rules, and not supported by any evidence.

## **CONCLUSION**

Feder's bad faith actions during and after the settlement negotiations in this matter created the current dilemma. Plaintiffs' remain uncompensated and Plaintiffs' counsel is forced to make this motion. The appropriate response from the Court is for it to sanction Feder.

Dated: New York, New York  
       July 19, 2016

Respectfully submitted,

By: _/s/ Walker G. Harman, Jr._  
Walker G. Harman, Jr. [WH-8044]  
Edgar M. Rivera [ER-1378]  
220 Fifth Avenue, Suite 900  
New York, New York, 10001  
wharman@theharmanfirm.com  
erivera@theharmanfirm.com

*Attorneys for Plaintiff*