**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x

Hernandez et al., :
                               :
                    Plaintiffs, :          1:12-cv-4339
                               :
        -against-              :          **OPINION AND ORDER**
                               :
The Fresh Diet Inc. et al.,    :
                    Defendants. :
                               :
---------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Before the Court is Plaintiffs' motion to enforce the settlement agreement against the

Defendants in this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL")

action.    Plaintiffs argue that the settlement agreement, signed only by plaintiffs' counsel, is a

valid contract and thus enforceable.    For the reasons that follow, Plaintiffs' motion to enforce

the settlement is denied.

## BACKGROUND

Plaintiffs are former employees of Defendants.    On June 1, 2012, Plaintiffs brought suit

against Defendants for failure to pay wages under the FLSA and NYLL.    In October 2015, the

parties began settlement talks.    In December 2015, the parties drafted a settlement agreement

(the "December Agreement"), which was signed by Defendants' and Plaintiffs' counsel.

Harman Decl. Ex. D.    On December 10, 2015, Plaintiffs' counsel submitted to the Court the

December Agreement, a sample Individual Release, and a joint letter arguing that the settlement

agreement was fair and reasonable.    Harman Decl. Ex. F.    On December 11, 2015, the Court

held a telephone conference to discuss the terms of the settlement and rejected the December

Agreement because of the presence of the general release and confidentiality provisions.

Counsel for all parties conferred and agreed to Defendants' proposal to modify the agreement by making the general release mutual and removing the confidentiality provision. The parties submitted the language for a mutual general release for approval on December 24, 2015, ECF No. 226, and the Court rejected the language on January 11, 2016 during a telephonic conference.

Because of the need to revise the settlement agreement and attendant burden of having the parties execute potentially successive versions of the agreements before final approval, on January 4, 2016, the parties requested permission to submit revised settlement paperwork for approval "as to *form* only." ECF No. 227 (emphasis added). The next day, the Court approved the parties' request. ECF No. 229.

On January 28, 2016, the parties submitted the "proposed final" settlement agreement (the "February Agreement") to the Court, requesting "that the Court expeditiously approve the revised final Agreements so that the Parties may obtain signatures, consummating this settlement." Harman Decl. Ex. H. The Court approved the settlement agreement papers as to form on February 1, 2016. ECF No. 233.

Afterwards, Plaintiffs' counsel signed the February Agreement, and on February 5, 2016, sent the February Agreement and executed Individual Releases and IRS W-9 Forms from each individual plaintiff to Defendants' counsel. Harman Decl. Ex. K. However, no fully executed February Agreement was presented to the Court for final approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and to February Agreement's

own terms.[1]   In addition, the Defendants did not sign the February Agreement and did not

provide any payment to Plaintiffs.   On May 24, 2016, Plaintiffs moved to enforce payment of

the settlement sum under the February Agreement and for sanctions.   On February 1, 2017, at a

conference, the Court relieved Kaufman, Dolowich, & Voluck and as counsel for Defendants due

to the "complete and total breakdown in their respective attorney-client relationships."

Conference Tr. 2:9-16, Feb 1, 2017; *see also* ECF No. 282.   The Court denied the motions

without prejudice because the briefing neglected to fully consider the issue of whether there was

a valid settlement agreement and requested briefing on the issue.   ECF No. 280.   Plaintiffs

renewed their motion to enforce the February Agreement, and Defendants, proceeding without

counsel, opposed.

## GOVERNING LAW

The fundamental issue is whether the unsigned February agreement is a valid settlement

agreement that is binding on all parties.   "A district court has the power to enforce summarily,

on motion, a settlement agreement reached in a case that was pending before it."   *Meetings &*

*Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974).   "A settlement agreement is

a contract that is interpreted according to general principles of contract law."   *Powell v.*

*Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).   The enforceability of contracts may be subject to

judicial approval depending on the nature of the subject matter of the contract.   *See* Restatement

---

[1]   Paragraph 7 of the February Agreement states: "Provided that: (1) the seven day (7) revocation period set forth in
Paragraph 26 of this Agreement, and in each Plaintiff's Individual Release, has expired without revocation
by any Plaintiff, (2) Defendants receive: (i) this Agreement, fully executed and signed by Plaintiff's Counsel; (ii)
IRS W-9 forms separately executed by each Plaintiff and their counsel; (iii) Individual Releases separately executed
by each Plaintiff before a Notary Public, and (iv) the Stipulation executed by Plaintiff's counsel, and (3) the Court
approves this settlement and endorses the stipulation of Dismissal, the settlement amount shall be paid as follows..."
Harman Decl. Ex. H ¶ 7.

(Second) of Contracts § 12(1) ("Capacity to contract may be partial and its existence in respect of a particular transaction may depend upon the nature of the transaction or upon other circumstances."). With respect to settlement of FLSA claims, judicial approval is necessary for an agreement to be enforceable. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

Although unaddressed by both parties (and perhaps a product of the Defendants' lack of counsel), there is the issue of the applicability of New York Civil Practice Law and Rules ("CPLR") § 2104. The February Agreement states that the "Agreement shall be subject to and governed by the laws of State of New York without giving effect to principles of conflicts of law." Harman Decl. Ex. H. ¶ 25. Section 2104 states in relevant part that "[a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered." The Rule suggests that the February Agreement is not binding because it has not been signed by all parties.

However, it is an open question of whether CPLR § 2104 applies in federal court. *See Figueroa v. New York City Dept. of Sanitation*, 475 Fed. App'x 365, 366 (2d Cir. 2012) ("[W]e note that the question of whether federal or state law controls the enforceability of a settlement agreement in this context is an open one."). In this district, courts have yet to reach a consensus on the issue of its applicability. *See Lyman v. New York and Presbyterian Hosp.*, No. 11 Civ. 3889, 2012 WL 6135354, at *3 (S.D.N.Y. Dec. 11, 2012) (describing split within district regarding whether CPLR § 2104 is a substantive or procedural rule that warrants applicability), *report and recommendation adopted sub nom*, 2013 WL 427178 (S.D.N.Y. Feb 1, 2013).

4

Further, the Second Circuit has yet to rule on the question "[b]ecause . . . there is no material difference between [New York] law or federal common law standard." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997). Under the circumstances of this case, there is no need to resolve this issue as the Court finds the February Agreement to be nonbinding whether § 2104 applies or not.

## DISCUSSION

A. Validity of Settlement Agreement

The issue here is whether the parties intended to be bound by an agreement, in which they orally agree to settle the matter but fail to sign the documents to that end. *See Powell*, 497 F.3d at 129 ("Parties who do not intend for the agreement to be enforceable until the agreement is fully executed are not bound until that time."). To answer the question, courts consider the following four factors: "(1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). The factors "may be shown by oral testimony or by correspondence or other preliminary or partially complete writings." *Id.* at 80 (internal quotation omitted). No one factor is dispositive. *Ciaramella*, 131 F.3d at 323.

1. *Express Reservation*

Although not dispositive, the first *Winston* factor is entitled to great weight. *Lyman*, 2012 WL 6135354, at *5; *see also Case v. City of New York*, No. 12-cv-2189, 2012 WL 5951296, at *5 (S.D.N.Y. Nov. 28, 2012) ("The first factor, the parties' objectively-expressed

intent, is the most important[.]"). Indeed, the Second Circuit has stated that "where there is a writing between the parties showing that one party did not intend to be bound[,] a court need look no further than the first factor." *Kaczmarcysk v. Dutton*, 414 Fed. App'x 354, 355 (2d Cir. 2011) (internal quotation marks and citations omitted).

Here, the first factor heavily favors the Defendants. Although there is no express reservation of rights, there is evidence in the record and in the February Agreement of an implied reservation of rights. In a letter dated January 28, 2016 to the Court, Plaintiffs referred to the February Agreement as "proposed" and requested the Court's approval so "that the Parties may obtain signatures, *consummating this settlement*." ECF No. 233 (emphasis added). The correspondence to the Court makes clear that the Parties considered the February Agreement nonbinding until it was executed. The Second Circuit in *Winston* found similar language by plaintiff's counsel, including referring to the settlement agreement as "the proposed agreement" in one letter and writing in another letter that an amount was "in escrow pending execution by my client and delivery to you of two fully executed copies of the agreement," to reveal an intent to reserve the right not to be bound until execution of the document. *Winston*, 777 F.2d at 81. Accordingly, the language in Plaintiffs' correspondence demonstrates that same intent.

Further, the text in the February Agreement demonstrates that the parties reserved a right not be bound until the agreement was signed. First, the agreement contains a provision with language from merger clauses: "This Agreement may only be modified, altered [,] or changed in writing, signed by the Parties." Harman Decl. Ex. H. ¶ 24. Such language is "persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Kaczmarcysk*, 414 Fed. App'x at 355 (quoting *Ciaramella*, 131 F.3d at 324).

Courts have routinely found that this language in merger clauses demonstrates the parties' intentions not to be bound until written execution. *See, e.g., Nieves v. Community Choice Health Plan of Westchester, Inc.*, No. 08 Civ. 0321, 2011 WL 5533328, at *4 (S.D.N.Y. Aug. 31, 2011) (describing merger clauses that the Second Circuit have held to show a reservation for the parties not to be bound). Second, the agreement also refers to execution: "Agreement may be executed in any number of counterparts." Harman Decl. Ex. H. ¶ 26. Such references to execution demonstrate an intent not to be bound until then. *Nieves*, 2011 WL 5533328, at *5 (finding that language such as "[t]his Agreement may be *executed* in two (2) or more counterparts" to indicate an intent by the parties to not be bound until execution). Third, the agreement contains blank signature lines for the attorneys for each party and the Defendants. *Id.* (citing *Ciaramella*, 131 F.3d at 324).

The correspondence with the Court and language in the February Agreement strongly demonstrate that the agreement would not be binding barring execution by all parties. Although finding that this factor favors invalidity is enough to deny the Plaintiffs' motion to enforce settlement, *Nieves*, 2011 WL 5533328, at *6, the balance of the other factors also bolsters this conclusion.

2. *Partial Performance*

Partial performance occurs when "one party has partially performed and that performance has been accepted by the party disclaiming the existence of the agreement." *Ciaramella*, 131 F.3d at 325. Here, there has been partial performance of the contract. Plaintiffs partially performed by signing and delivering their Individual Releases along with other settlement papers. *See, e.g., Wesley v. Corr. Officer Badge No. 9417*, No. 05 Civ. 5912, 2008 WL 41129,

at *3 (S.D.N.Y. Jan. 2, 2008) (partial performance when party prepared and finalized all of the necessary paperwork and mailed them to the other party for signature); *Case*, 2012 WL 5951296, at *6 (partial performance when party sent settlement paperwork and stopped pursuing discovery). However, by not signing the agreement or initiating any payment, Defendants did not "accept" Plaintiffs' performance. *See Waite v. Schoenbach*, No. 10 Civ. 3439, 2011 WL 3425547, at *7 (S.D.N.Y. Aug. 5, 2011). Accordingly, this factor is neutral. *See Case*, 2012 WL 5951296, at *5.

3.    *Terms Remaining for Negotiation*

This factor focuses on whether the parties have agreed on all material terms. *Ciaramella*, 131 F.3d at 325. Plaintiffs contend that all of the terms were agreed to when they submitted the February Agreement for approval. Unlike the December Agreement which the Court rejected but was indeed signed by all parties, the February Agreement was materially different in that the agreement did not have a confidentiality provision or a general release. That the Agreement was not signed by Defendants or their attorney demonstrates that these changes from the December to February Agreement were material because they were part of Defendants' consideration for continuing to defend the action. *See Ciaramella*, 131 F.3d at 325 (observing that even minor differences between draft settlement agreements are sufficient to suggest that not all terms were agreed to). Defendants possibly could not stomach the Court ordered changes in the February Agreement and thus desired to continue litigating the matter or to request some other consideration from Plaintiffs. Accordingly, this Court finds that agreement has not yet been reached on all terms of the settlement.

4.    *Type of Contract Committed to Writing*

"Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326. Moreover, especially here, where there have been three years of litigation and protracted settlement negotiations, "prudence strongly suggests that [the] agreement be written in order to make it readily enforceable, and to avoid still further litigation." *Winston*, 777 F.2d at 83. Further, the agreement is governed by New York law, and CPLR § 2104 suggests a strong preference in New York law for committing settlement agreements to writing. *See Lyman*, 2012 WL 6135354, at *8 (citing *Bonnette v. Long Island College Hospital*, 3 N.Y.3d 281, 285–86 (N.Y. 2004)). Accordingly, this factor favors non-enforcement of the February Agreement.

B.    *Cheeks*

Also of significance, and ultimately dispositive, is the type of settlement agreement at issue here: an FLSA settlement. Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 204 (2d Cir. 2015), all FLSA settlements require the approval of the district court (or Department of Labor). In *Cheeks,* the Second Circuit held that parties "cannot" settle their FLSA claims "through a private stipulated dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii)" without the approval of a district court or the Department of Labor. *Id.* Therefore, an agreement to settle FLSA claims does not become enforceable until it is approved by a district court or the DOL. *Sanchez v. Burgers & Cupcakes, LLC*, 16-CV-3862, 2017 WL 2171870, at *2 (S.D.N.Y. Mar. 16, 2017) ("In contractual terms, FLSA plaintiffs lack capacity to enter into a binding agreement with the defendant that is not conditioned on court or Department approval."). Indeed, the February Agreement contemplates such approval as the last step in the agreement before the settlement amount is paid. Harman Decl. Ex. H. ¶ 7

("Provided that . . . the Court approves this settlement and endorses the stipulation of Dismissal, the settlement amount shall be paid as follows . . ."). A prerequisite before submission for approval by the court is a fully executed settlement agreement. *Samaroo v. Deluxe Delivery Systems*, 11 Civ. 3391, 2016 WL 1070346, at *3 (S.D.N.Y. Mar. 21, 2016) (denying approval of FLSA settlement as to certain of plaintiffs who did not sign the Settlement Agreement).

Although the Court has approved the February Agreement as to its form, a fully executed settlement agreement has not been submitted to the Court for *Cheeks* approval and the Court has not endorsed the stipulation of dismissal. Therefore, the settlement is not binding. This reason alone is enough of a basis to deny Plaintiffs' motion. *Lin v. Grand Sichuan*, 15-cv-2950, 2016 WL 5497837, at *1 (S.D.N.Y June 23, 2016) (denying motion to enforce stipulated FLSA settlement agreement because no such agreement was presented to the DOL or the court for approval).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel enforcement of the February Agreement is DENIED.

**SO ORDERED.**

Dated:  **October 25, 2017**
        **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

10